8915-0048/dmf

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x

DEWEY R. BOZELLA,

                                    Plaintiff,                 10 CIV 4917 (CS)

        -against-

THE COUNTY OF DUTCHESS, THE CITY OF
POUGHKEEPSIE, WILLIAM J. O'NEILL and ROBERT J.
DeMATTIO,

                                    Defendants.
---------------------------------------------------------------------x


**DEFENDANT DeMATTIO'S MEMORANDUM OF
LAW IN SUPPORT OF DISMISSAL**


McCABE & MACK LLP
David L. Posner
*Attorneys for Defendant Robert J. DeMattio*
63 Washington Street
P.O. Box 509
Poughkeepsie, NY 12602-0509
Tel: (845) 486-6800

8915-0048/dmf

# TABLE OF CONTENTS

**Page**

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The Complaint and General Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I

    The Complaint Fails to State a Claim that DeMattio
    Conspired with O'Neill to Violate Plaintiff's Due
    Process Rights or Rights to a Fair Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT II

    DeMattio is Entitled to Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8915-0048/dmf

## PRELIMINARY STATEMENT

This memorandum is submitted in support of Robert DeMattio's motion to dismiss for failure to state a claim.  He urges the conspiracy cause of action against him fails to meet the basic pleading requirements of <u>Twombley v. Bell Atlantic</u> and <u>Iqbal v. Ashcroft</u>.  Also, what little conduct is ascribed to him is blameless as well as, in part, barred by the statute of limitations.  Furthermore, he seeks summary judgment based upon qualified immunity should the Court determine the complaint can survive his 12(b)(6) motion.  (The complaint is annexed as <u>Exhibit "A"</u>.  Throughout the brief it will be cited to by paragraph number).

## THE COMPLAINT AND GENERAL DISCUSSION

The single claim against DeMattio is contained in the fourth cause of action and states that he conspired with assistant district attorney and co-defendant William J. O'Neill, and another Poughkeepsie police officer, William Grey, who has not been sued, to deny plaintiff due process and a fair trial[1].  However, the complaint allegations are glossy generalities and conclusions and bespeak of no improper conduct on his part.

In order, as alleged in the complaint, ¶4 merely states in bald conclusory fashion  that these three individuals "conspired to suppress and conceal exculpatory and impeachment evidence."  This is not entitled to "the assumption of truth" on a 12(b)(6) motion.

The next mention of DeMattio is in ¶37 which harmlessly alleges he and another officer arrested plaintiff pursuant to a warrant on June 30, 1977.  The warrant is not alleged to

---

[1]    Although the complaint states Grey was not sued because of his personal bankruptcy (¶14) in reality it had to be a strategic decision since relief from the bankruptcy stay was easily obtainable, 11 U.S.C. §362(d), and Grey would be entitled to a defense and indemnification from Poughkeepsie under Public Officer's Law §18 insulating his personal assets.

8915-0048/dmf

have been the by-product of any police misconduct and DeMattio is not alleged to have had anything to do with its issuance.  Annexed as <u>Exhibit "B"</u> to the Posner affidavit is the report of Detective Siegel who, together with DeMattio, arrested plaintiff in Queens where he was being held on unrelated charges and the felony complaint.  Although not physically attached to the complaint the Court can consider these documents on defendant's 12(b)(6) motion.  As alleged by plaintiff, his 1977 arrest is an integral part of the complaint.  He alleges it was pursuant to a warrant which of course is an integral part of DeMattio's assertion that it was privileged on his part.  Since plaintiff alleges there was a warrant he can hardly object to defendant's confirmation of this fact through use of an official police report.  The accusatory instrument is also an integral part of the complaint.  And while ¶37 alleges the police "filed warrants" for his arrest of course the police only filed the felony complaint and thereafter the Court issued the warrant.  Except for this misstatement the felony criminal complaint is specifically referred to in this complaint.  Documents which are an integral part of a complaint can be considered on a 12(b)(6) motion.  <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 75 (2d Cir., 2006), as can documents referred to in a complaint or about which the court can take judicial notice.  <u>Necis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 100 (2d Cir., 2005); <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 773 (2d Cir., 1991).

The report clearly reflects how innocuous DeMattio's role was in securing plaintiff's arrest in 1977.  (Despite the palpably benign nature of DeMattio's role, plaintiff saw fit to refer to it two additional times apparently believing that by repetition it would morph into something ominous and implicate DeMattio in a conspiracy to violate his constitutional rights).  (See, ¶¶62, 237).

8915-0048/dmf

DeMattio welcomes the Court's required assumption that the facts alleged in ¶37 are truthful.  Ruotulo v. City of New York, 514 F.3d 184, 188 (2d Cir., 2008).

Additionally, the charges against plaintiff were dropped a few months later when the Grand Jury "no billed" the case (¶44).  The complaint does not specify when this occurred. The Court may consider Exhibit "C" which establishes the Grand Jury acted on November 16, 1977.  The complaint goes on to allege that Mr. Bozella was re-arrested and indicted in April 1983 (¶¶92-104) and convicted in December of that year (¶120).  He secured a reversal on appeal (¶¶121-122), was re-tried and convicted again in 1990 (¶142) and ultimately released and the indictment dismissed in 2009 (¶¶153-156).  Any claim he may have had against DeMattio, or anyone else, arising out of his 1977 arrest is time barred and thus even if there were some whiff of impropriety surrounding DeMattio's role in that arrest it could not be pursued in this litigation.

The next mention of DeMattio is ¶54 which merely notes he worked on the King murder investigation which is hardly of constitutional significance to Mr. Bozella.  Nowhere does the complaint allege he was involved in the Crapser investigation and by this silence plaintiff clearly concedes that DeMattio had no role in the investigation that led to both his initial arrest in 1977 and second arrest and convictions in 1983 and 1990.

By contrast, the complaint makes detailed mention of several Poughkeepsie police officers who plaintiff alleges played significant roles in the Crapser investigation and the violation of his rights although none of them have been sued.  See, e.g., ¶25 Pete Murphy; ¶26 Art Regula; ¶28 Enno Groth.  See also, ¶¶30, 32, 33, 43 and 48 and Exhibit "B" noting the initial felony murder complaint was prepared by Regula and Groth and based upon "an investigation performed by your deponents", i.e., them.

8915-0048/dmf

The next mention of DeMattio is in connection with the interview of Saul Holland on February 23, 1978 as part of the King murder investigation. Plaintiff alleges this took place after one participant in the murder, Anthony Wise, confessed his role and he, his girlfriend and three sisters all advised police that his brother, Donald Wise, and Saul Holland also participated in the crime. (¶¶59-62).

It is then alleged that Holland, while being interviewed by O'Neill, Officer Grey and DeMattio, stated Donald Wise had told him he had previously committed a similar crime in order to recruit him to participate in the King crime. After stating this Grey told Holland, "Well, I don't want to get into that because we're liable to get confused". (¶66). Holland's confession was recorded and preserved in the District Attorney's files with respect to the King matter. (¶68).

Plaintiff alleges that DeMattio violated his rights by failing to further investigate Holland's "lead" into a possible role for Donald Wise in the Crapser murder and by failing to give a copy of Holland's statement to his defense team. (¶¶67, 70). However, this defense team did not exist in 1978. The charges against Bozella were dropped months earlier after the Grand Jury refused to indict him and he was not re-arrested until April 1983, over five years later. Also, the King case was closed with the conviction of the Wise brothers and Holland's guilty plea in 1978. (See, ¶71 and  Exhibit "C").

The next and last mention of DeMattio is in "Count IV", ¶¶234-239, which alleges the conspiracy between he and O'Neill.

Paragraph 235, totally in conclusory terms, again merely alleges they "agreed among themselves and with others, to act in concert to deprive Mr. Bozella of his rights to due process and a fair trial."

8915-0048/dmf

Paragraph 236, despite the clarity with which the complaint earlier recites verbatim Grey's comment to Holland (¶66), disingenuously alleges twice that DeMattio "instructed Holland not to discuss Donald Wise's role in the Crapser murder.[2]  It then alleges in conclusory fashion that this conduct - in reality no more than his presence in the room - "evidences an agreement among them [O'Neill, DeMattio and Grey] to act in concert to inflict a constitutional injury upon Mr. Bozella".

Paragraph 237 repeats the earlier allegation with respect to the time barred 1977 arrest which is insulated from attack by the warrant.  Paragraph 238 is pure sophistry based upon the assumption DeMattio was part of a conspiracy for which he did not withdraw akin to the mock cross-examination question "When did you stop beating your wife?".  The complaint's concluding paragraph, ¶239, is a boilerplate re-statement of plaintiff's legal conclusion, i.e., his rights were violated because of defendant DeMattio's actions.

Patently, there are very few mentions of DeMattio in the complaint and those made are plain vanilla legal conclusions that he and O'Neill "conspired" with each other which are entitled to no deference on a 12(b)(6) motion.  Others recite no more than routine, non-actionable activity which cannot plausibly link him to a conspiracy to inflict constitutional injury on plaintiff.  As such the complaint fails to state a claim and must be dismissed.  Also, at a minimum, DeMattio is entitled to qualified immunity as it was objectively reasonable for him to act in the fashion he did.  He did not violate any of plaintiff's clearly established constitutional rights.

---

[2]Stressing that DeMattio did not make any comment to Holland does not imply that Grey's comment is actionable, only that since DeMattio did not make it it is of no moment to plaintiff's case against him.

8915-0048/dmf

## POINT I

### THE COMPLAINT FAILS TO STATE A CLAIM
### THAT DeMATTIO CONSPIRED WITH O'NEILL
### TO VIOLATE PLAINTIFF'S DUE PROCESS RIGHTS
### OR RIGHTS TO A FAIR TRIAL

The fourth cause of action must be dismissed as it fails to state a claim that DeMattio conspired to violate plaintiff's constitutional rights.

On a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Ruotulo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008); Gonzalez v. Caballero, 572 F.Supp.2d 463, 466 (SDNY, 2008). However, while detailed factual allegations are not required "entitlement to relief requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Most recently, in Ashcroft v. Iqbal, 128 S.Ct. 1937 (2009), the court held mere legal conclusions in a complaint are "not entitled to an assumption of truth." They must be supported by factual allegations which create a plausibility of entitlement to relief. Together, Twombly and Iqbal teach that legal conclusions in a complaint are not considered in evaluating whether or not it states a claim and that the factual allegations must "be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombley, supra at 555. They must create a plausible scenario that actionable constitutional harm has been visited upon the plaintiff by the defendant. Under this standard the fourth cause of action alleging a conspiracy between DeMattio and O'Neill fails to state a claim.

As noted above ¶¶4, 235, 238 and 239 harmlessly allege, for these purposes, no more than the boilerplate conclusion that DeMattio and O'Neill "conspired", "agreed" and/or "acted in concert" to violate plaintiff's rights. A "formalistic recitation of the elements of the cause

8915-0048/dmf

of action will not do".  Id. at 555.  Under Twombly and Iqbal conclusory allegations are not

entitled to an assumption of truth when being reviewed on a 12(b)(6) motion.  And the factual

allegations "must state a claim that is plausible on its face".  Twombley at 570.

 There are only two things DeMattio is accused of doing.  First, arresting Mr. Bozella,

with a warrant, on June 30, 1977 (¶37).  A felony murder complaint had been filed by Regula

and Goth and a warrant issued by the Poughkeepsie City Court (Exhibit "B").  However, on

November 16, 1977 the Grand Jury "no-billed" the case finding "insufficient evidence" and

the charges were dismissed.  (¶44, Exhibit "C").  Bozella was free of charges relating to the

Crapser murder until his re-arrest in April 1983.  (¶104).  He thus had nearly six years to

commence an action alleging Fourth Amendment violations as a result of the 1977 arrest

and/or malicious prosecution.  He did neither and cannot seek relief in 2010 based upon this

plainly time-barred conduct.  Wilson v. Garcia, 42 U.S. 261, 105 S.Ct. 1938 (1985); Owens v.

Okure, 488 U.S. 235, 109 S.Ct. 573 (1989) (three year statute of limitations for §1983

actions).  Stale allegations of wrongdoing are not revived when included in claims of a

conspiracy so long as the plaintiff knew or ought to have known about the wrong committed

when it occurred.  Pinaud v. County of Suffolk, 52 F.3d 1139, 1156-67 (2d Cir., 1995);

Singleton v. City of New York, 632 F.2d 185 (2d Cir., 1980) cert. den. 450 U.S. 920 (1981).

Mr. Bozella certainly knew he was arrested in June 1977 and that the prosecution terminated

favorably in November 1977 and thus he cannot now claim that this was wrongful or part of a

conspiracy.

 Moreover, the conduct itself is blameless as a police officer is insulated from such

claims when the arrest is pursuant to a warrant.  And here plaintiff does not allege any

impropriety in the warrant or that DeMattio had any role in obtaining it.  Walczyk v. Rio, 496

F.3d 139, 155 (2d Cir., 2007); Gleis v. Buehler, 2010 US App. LEXIS 8569 *4-5 (2d Cir.,

8915-0048/dmf

April 26, 2010).

Detective Siegel's report documents he and DeMattio were simply called upon to bring plaintiff back from custody in Queens, New York where he was being held on unrelated charges.   (Exhibit "B").

And under Twombly/Iqbal there is nothing in the complaint that even remotely suggests DeMattio was part of any agreement in 1977 to falsely charge Bozella.  In fact, the complaint goes at great length to allege the conduct, or misconduct, of other police officers which led to the decision to file the murder complaint, see, e.g., ¶¶25, 26, 28, 30, 32, 33 and 43 evidencing plaintiff recognizes DeMattio had nothing whatsoever to do with the Crapser investigation.  Thus it is not plausible to suggest that DeMattio was part of a conspiracy with O'Neill to violate plaintiff's constitutional rights with respect to his 1977 arrest for the murder of Emma Crapser.

The second, and last, thing DeMattio did was be present during the February 1978 interrogation of Saul Holland as part of the investigation into the King murder during which it is alleged Holland implicated Donald Wise in an earlier crime similar to it, presumably, according to plaintiff, the Crapser murder.  (¶¶62-63).  The complaint falsely alleges that DeMattio "instructed" Holland not to talk about that topic, thereby allegedly suppressing development of exculpatory Brady material (¶236).  It is plain from the quoted text of the interrogation that William Grey made the statement.  (¶66).  Paragraph 236 then alleges this conduct, so "instructing" Holland, "evidences an agreement among [O'Neill, Grey and DeMattio] to act in concert to inflict a constitutional injury upon" plaintiff.

It does no such thing and under Twombly and Iqbal simply alleging a person was in the same room at the same time another person did something is insufficient to elevate the phrase "evidences an agreement among them" from pure supposition and unsupported

8915-0048/dmf

conclusion to plausible fact upon which a conspiracy claim may be based.

Moreover, the complaint alleges the tape of the Holland interview was in the possession of the District Attorney's office and thus the police had no further duty with respect to it under <u>Brady</u>.  (¶68).  In <u>Walker v. New York City</u>, 974 F.2d 293, 299 (2d Cir., 1992), *cert. den.* 507 U.S. 961 (1993) the Court held:

> It is appropriate that the prosecutors, who possess the requisite legal acumen, be charged with the task of determining which evidence constitutes <u>Brady</u> material that must be disclosed to the defense...Since [plaintiff] has alleged that the police shared all exculpatory evidence with the prosecutors, [plaintiff's] claim against the police relating to suppression of exculpatory evidence fails to state a claim upon which relief can be granted.

And, as argued by the co-defendant County and O'Neill, the Holland interview was not <u>Brady</u> material as there was in fact no recognized connection between the King and Crapser murders.  DeMattio adopts and incorporates that portion of their motion in its entirety into this brief.

Thus, the events surrounding the Holland tape do not suggest any wrongdoing by DeMattio or participation in a conspiracy.  He had no duty to turn the tape over to Mr. Bozella (he was not indicted until April 1983 whereas the tape was made in February 1978 and the King murder closed with convictions that year.  (¶71, <u>Exhibit "D"</u>).  He made no instruction or suggestion to Holland during the interview and he certainly had no duty to Mr. Bozella to investigate Holland's statement about Donald Wise.

The complaint does not plausibly allege that DeMattio entered into a conspiracy with O'Neill to violate plaintiff's constitutional rights during either his 1983 or 1990 trials by his mere presence in the room during the Holland interview in February 1978.

Plaintiff's fourth cause of action alleging a conspiracy between DeMattio and O'Neill fails to state a claim and must be dismissed.

8915-0048/dmf

# POINT II

## DeMATTIO IS ENTITLED TO QUALIFIED IMMUNITY

While DeMattio strenuously urges he did not violate any of plaintiff's constitutional rights and the complaint fails to state a claim that he did, he must, in an exercise of caution, alternatively urge that should the Court find the complaint alleges otherwise, he is nonetheless entitled to dismissal on the grounds of qualified immunity as it was objectively reasonable for him to believe nothing he did violated a clearly established constitutional right.

The standard for qualified immunity for a public official is well know. "It protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, ___ U.S. ____, 129 S.Ct. 808, 815 (2009) quoting from Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S.Ct. 2727 (1982). It applies to mistakes of law, of fact and to mixed questions of law and fact. Pearson, supra at 808. And, since it is an immunity from suit not just damages it should be decided as early in the litigation as possible as it is effectively lost if the matter proceeds to trial. Id. at 808.

Prior to Pearson the Court had adopted a mandatory two step process for evaluation of qualified immunity claims. After Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2117 (2001), the district court first had to determine if the facts alleged by the plaintiff make out a constitutional violation, and if so, the second step required a finding with respect to whether or not the right in issue was clearly established at the time of the alleged conduct. Id. at 201. After Pearson, the Saucier two step analysis was no longer mandatory. It left to the sound discretion of the lower court the manner in which immunity issues would be tackled but certainly did not foreclose following the Saucier model.

Here, DeMattio urges regardless of which question the court tackles first, i.e., does the

8915-0048/dmf

complaint allege a constitutional violation on his part or if so was that right "clearly established" at the time of his conduct immunity is appropriate.

First, as noted, the complaint does not allege a constitutional violation. The 1977 arrest was pursuant to a warrant and as such, in addition to being time barred, clearly authorized by the Fourth Amendment. Second, he played no role in the Holland interview, except being present, and Holland's taped interview, of whatever value it had to plaintiff, was in the hands of the District Attorney's office immediately upon its creation in February 1978. There is no known constitutional obligation on DeMattio to turn over to plaintiff a copy of this tape  - if he ever had one - in 1983 when plaintiff was charged with Ms. Crapser's murder. Although Walker v. City of New York, 974 F.2d 293 (2d Cir., 1992) was decided after these events occurred there is no suggestion in that opinion that the Court was reversing a well-established constitutional requirement that police themselves provide Brady material directly to a defendant rather than to the prosecuting authorities who then decide what to do with it.

It is thus plain that the complaint does not allege a constitutional violation on DeMattio's part and, as set forth in POINT I, the boilerplate conspiracy allegations do not change this.

With respect to the other prong of the Saucier test, was the right "clearly established", DeMattio urges that while defendant's Brady rights and prosecutor's Brady obligations were well known, in this situation no reasonable police officer would believe he had any obligation to Mr. Bozella with respect to the 1978 Holland tape and despite Brady it was not clearly established that a police officer had an obligation to provide potentially exculpatory material directly to a defendant rather than the prosecution.

Finally, as argued by O'Neill and the County, it is doubtful that the Holland tape was Brady material ab initio since no link between the Crapser and King murders had been

8915-0048/dmf

established.  At a minimum such a link was an open question again showing it was objectively reasonable for DeMattio to believe he had no obligation to turn over the tape to Bozella.

In the event the Court does not grant DeMattio's 12(b)(6) motion dismissing the complaint he is nonetheless entitled to qualified immunity and dismissal on this independent ground.

It is unreasonable to presume a police officer like DeMattio, investigating a crime in early 1978 (King) - which was closed with convictions and a plea in that year - would six years later link a statement made by a suspect in that investigation - to another crime, with which the officer was not involved, and somehow retrieve that recorded statement from the District Attorney and provide it to the new defendant accused in 1983 of a different crime (Crapser).

**CONCLUSION**

For the foregoing reasons the complaint against DeMattio should be in all respects dismissed.

Dated: Poughkeepsie, New York
       October 8, 2010

_____
DAVID L. POSNER (0310)