8915-0048/kag

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

DEWEY R. BOZELLA,

                                Plaintiff,               10 CIV 4917 (CS)

    -against-

THE COUNTY OF DUTCHESS, THE CITY OF
POUGHKEEPSIE, WILLIAM J. O'NEILL and ROBERT J.
DeMATTIO,

                                Defendants.
------------------------------------------------------------------------x

### DEFENDANT DeMATTIO'S REPLY MEMORANDUM
### OF LAW IN SUPPORT OF DISMISSAL

                                      McCABE & MACK LLP
                                      David L. Posner
                                      *Attorneys for Defendant Robert J. DeMattio*
                                      63 Washington Street
                                      P.O. Box 509
                                      Poughkeepsie, NY 12602-0509
                                      Tel: (845) 486-6800

8915-0048/kag

# TABLE OF CONTENTS

**Page**

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Facts and General Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

POINT I

      The Complaint Fails to State a Claim Against DeMattio. . . . . . . . . . . . . . . . . . . . . .  2

POINT II

      DeMattio is Entitled to Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

8915-0048/kag

## PRELIMINARY STATEMENT

This memorandum is submitted in further support of Robert J. DeMattio's motion to dismiss under Rule 12(b)(6) or, alternatively, upon the grounds of qualified immunity and in reply to plaintiff's opposition to that relief.

## FACTS AND GENERAL DISCUSSION

Initially, DeMattio notes that plaintiff has abandoned any argument that his participation in the June 1977 arrest has anything to do with this case.

This is seen first by reviewing his Preliminary Statement which only references the allegations stemming from the February 1978 Holland interview (pl. memo in opp. at p. 3). Second, he acknowledges his only claim against DeMattio is for conspiring with O'Neill during the Holland interview (pl. memo in opp. at pp. 44-55). And third, he alleges DeMattio individually violated his rights (as opposed to being responsible for O'Neill's action) after the Holland interview (pl. memo in opp. at pp. 48-49).

There also is no allegation against DeMattio with regard to the destruction of notes. While plaintiff cites the Doherty comment to assistant district attorney D. James O'Neil from June 1983 (Burke Ex. "C", p. 1968) as evidence against the City that there was such a policy, he has not alleged anything with respect to this in his claim against DeMattio.

Of equal significance, plaintiff overstates the nature of his allegations against DeMattio and the scope of his alleged conspiracy with O'Neill.

With regard to the Holland interview plaintiff only alleges DeMattio failed "to investigate" the lead it provided that Donald Wise may be responsible for the Crasper Murder(¶65, 236). He specifically alleges the tape of the interview was kept by the District Attorney and that this office, not DeMattio, took no steps to ensure O'Neill or another district attorney "preserved this evidence in connection with the Crasper murder and produce it to

8915-0048/kag

plaintiff (¶69). Despite the specific and limited allegations concerning the scope of the conspiracy between DeMattio and O'Neill, plaintiff erroneously argues the complaint alleges DeMattio knew, as part of the conspiracy, that O'Neill would not turn over the Holland tape to his defense (pl. memo in opp. at pp. 46 and 47). There is no such allegation in the complaint and the scope of its allegations cannot be enlarged by counsel's arguments in a memo of law.

## POINT I

### THE COMPLAINT FAILS TO STATE
### A CLAIM AGAINST DeMATTIO

The pleading rules announced in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) are well known but still warrant this succinct citation:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." (citation omitted) A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. (citation omitted) The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" (citing Twombly v. Bell Atlantic, 550 U.S. 544, 127 S. Ct. 1955 (2007)).

> Two working principals underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F. 3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Ashcroft v. Iqbal, supra at 1949 -1950.

8915-0048/kag

Here the only allegation that remotely suggests DeMattio joined a conspiracy is in Paragraph "236", which twice falsely alleges he, together with O'Neill and Grey, "instructed" Holland not to discuss Donald Wise's role in the Crasper murder.[1]  Since DeMattio in fact did not give any instruction or make any comment to Holland, it is solely his presence in the room during the interview which is the factual predicate for the "plausibility" of the complaint against him.[2]  This fact, his presence in the room, does "not permit the court to infer more than the mere possibility of misconduct" and therefore the complaint must be dismissed.  Id. at 1950.  (Plaintiff has not responded to DeMattio's invitation to explain why he has been sued in lieu of Officers Regula, Murphy, Groh and/or Grey, all of whom the complaint alleges actually did things that violated his rights).

The cases plaintiff cites do not support his position.  While it is certainly true that an agreement to conspire against a person need not be directly expressed by words or deeds, Rousenville v. Zahl, 13 F3d. 625, 632 (2d Cir. 1994) this bromide cannot be relied upon to implicate someone in the alleged misdeeds of another merely because he is in close physical proximity to him at some point in time.  In Rousenville, the local justice of the peace was accused of conspiring with two citizens who maliciously filed a criminal charge against the local tax assessor.  Interestingly, the District Court dismissed the §1983 conspiracy claim

---

[1] The transcript of the Holland interview incontrovertibly evidences it was Det. Grey who made the comment to Holland, which fact is specifically quoted by plaintiff in ¶66 of his complaint making the accusation against DeMattio in ¶236 inexplicable.  (This excerpt from the Holland interview is annexed as Ex. "E" to the supplemental Posner affidavit submitted with this reply memorandum.  The transcript of the entire interview is before the Court as Burke Ex. "C", pp. 1975-2015 in support of Dutchess County's and O'Neill's motion and it is incorporated by reference by DeMattio.)

[2] DeMattio literally said nothing during the entire interview, except respond "no" to Grey's query at the end "if he had anything?"  Burke Ex. "C", 2015.

8915-0048/kag

which was <u>not</u> appealed.  The Second Circuit discussed the conspiracy allegation only in the context of whether or not to uphold the lower court's Rule 11 sanction against the plaintiff's attorney for making the claim.  The facts it did discuss, however, demonstrate substantial activity by the judge which included his presence at public rallies protesting tax assessments and the criminal complaint was sworn out by the co-defendants at his home and typed by his wife.  The judge was also known to have discussed the issues alleged in the accusatory instrument against the tax assessor with his co-defendants at earlier times.

In <u>Hafner v. Brown</u>, 983 F2d. 570 (4th Cir. 1994), Officer Brown was found liable for a 1983 conspiracy in connection with excessive force utilized by fellow officers which he witnessed and did not stop, hence plaintiff's citation to its "mere acquiescence" language.  However, Brown "was the first officer on the scene, called for the assistance of the other officers, he first kicked Hafner . . . he looked on while his colleagues continued beating Hafner, and he ignored his obligation as an officer to prevent such misconduct".  And although the jury did not find that his kick of the handcuffed plaintiff was itself excessive force, the court noted "while not amounting to excessive force, the kicking may have acted to initiate the beating by others".  *See also*, <u>Rosario v. Coughlin</u>, No. 88-CV-56, 1995 U.S. Dist. LEXIS 1721 (NDNY) cited by plaintiff for the general proposition that "tacit collaboration" can create liability.  A review of the case demonstrates it involved two correction officers who extracted revenge on the plaintiff for threatening them during a prison disturbance.  While they denied personal involvement in plaintiff's beating the court found not only did they fail to intervene and then condoned the use of force on plaintiff "they in fact set the plaintiff up to be beaten by other co-defendants".  *24-26

And, as plaintiff suggests, "conspiracies are by their very nature secretive operations and may be proven by circumstantial rather than direct evidence".  <u>Pangbush v. Culbertson</u>,

8915-0048/kag

2008 F3d. 65, 72 (2d. Cir. 1999). This early case however does not excuse non-compliance with Iqbal and Twombly. It has been well known, even before these Supreme Court cases, that conclusory allegations of a §1983 conspiracy are insufficient to state a claim. Dwares v. City of NY, 985 F2d. 94, 99-100 (2d. Cir. 1993).

Ricciuti v. NYCTA, 124 F3d. 123 (2d. Cir. 1997) cited by plaintiff for the general proposition that one conspirator can be responsible for the acts of others is also, on its facts, vastly different from this case and of no help to him. There, since Officer Lopez was personally accused of participating with co-defendant Wheeler in distribution of a knowingly false confession and lying about the circumstances of the plaintiff's arrest he could also be found responsible for other bad acts of Wheeler in which he did not participate. Id. 131.

Plainly the underlying factual allegations against the purported conspirator in each of these cases are substantially more detailed with regard to their alleged wrongdoing and since factually more detailed, plausible with regard to the existence of a conspiracy. None involve action so peripheral to, ephemerally associated with and temporally removed from the underlying claim (failure to turn over Brady material in 1983 and 1990) as Mr. DeMattio's. His presence in the room in 1978 when Grey questioned Holland does not "evidence an agreement" between O'Neill, Grey and DeMattio as alleged in ¶236. It is a completely innocent fact and this Court's "judicial experience and common sense" are called upon by DeMattio to recognize the complaint against him fails to state a plausible claim that he conspired with O'Neill to violate plaintiff's constitutional rights. Read with a generosity it does not deserve the complaint at best pleads facts that are "merely consistent with" DeMattio's liability and "does not permit the court to infer more than a mere possibility of misconduct". Iqbal, supra.

The complaint does not satisfy the "plausibility" test of Iqbal and should be dismissed.

8915-0048/kag

# POINT II

## DeMATTIO IS ENTITLED TO QUALIFIED IMMUNITY

DeMattio's actions did not violate any clearly established right of plaintiff and it was certainly reasonable for DeMattio to believe he had no constitutional obligation to undertake an investigation of Holland's comment about Donald Wise and a prior crime. Moreover, he had no duty to ensure the 1978 Holland tape was given to plaintiff's defense upon his arrest in 1983.

As is well known, DeMattio was not part of the investigation of the Crapser murder. He was on the King case which was the context in which Holland was interviewed. Assistant district attorney William O'Neill was present and took the recorded interview back to his office.

Plaintiffs argues DeMattio had an obligation to ensure assistant district attorney D. James O'Neil received the tape in 1978 because he was "the prosecuting attorney" and it was only "happenstance" that William O'Neill became the trial prosecutor in 1983 and 1990. (Pl. memo in opp., at p. 49). First, there was no ongoing prosecution at the time of the Holland interview and plaintiff had no rights under Brady then. Those rights only attach when an actual prosecution exists. DeMattio had no obligation to ensure D. James O'Neil got the tape and certainly could rely upon the commonsense belief that the tape would be given to whomever was appropriate in the District Attorney's office. Plaintiff's reliance upon Freeman v. Georgia, 599 F.2d 65 (11th Cir., 1979) is of no solace as it holds no differently. There a corrupt police officer repeatedly and falsely denied knowledge of the whereabouts of a material witness who may have had exculpatory information. He made these denials to representatives of the district attorney's office who sought to locate the witness. The Court found a Brady violation even though the district attorney was not responsible for it. The case

8915-0048/kag

says nothing about a duty on the police to provide <u>Brady</u> material directly to the individual assistant district attorney trying the case as opposed to a colleague in the office and certainly nothing about when the <u>Brady</u> duty arises such that, as in this case, William O'Neill was not a proper party to give the tape to because he only became the trial prosecutor later.  And <u>Freeman</u> is not a case from the Supreme Court or Second Circuit so it does not provide controlling precedent for this Circuit as to what is clearly established constitutional law for the purposes of evaluating qualified immunity.  DeMattio asserts there are no cases holding he had a duty in 1978 to ensure the Holland tape was given to D. James O'Neil rather than William O'Neill.

To the extent it can be asserted a reasonable police officer would have believed he had a <u>Brady</u> obligation to Mr. Bozella in 1978 with respect to the Holland tape he certainly could reasonably believe that duty was discharged by the fact that the tape was in the possession of the district attorney's office.  <u>Walker v. New York City</u>, 974 F.2d 293, 299 (2d Cir., 1993).

With respect to the claim that DeMattio had a duty to investigate the lead the Holland interview is alleged to have provided no such duty exists on the facts of this case.  Minimally, it was objectively reasonable for DeMattio to believe he was not obligated to Mr. Bozella by clearly established constitutional law to investigate the implication in Holland's statement that Donald Wise was at least partially responsible for the Crapser murder.

Plaintiff cites to no precedents from the United States Supreme Court or Second Circuit that it was clearly established that in this, or a comparable situation, DeMattio owed Bozella a duty to investigate. (See <u>Young v. County of Fulton</u>, 160 F.3d 899, 903 (2d Cir., 1998); <u>Brown v. City of Oneonta</u>, 106 F.3d 1125, 1131 (2d Cir., 1997) holding Supreme Court or Second Circuit precedence required to clearly establish the right in question in this Circuit).

8915-0048/kag

Plaintiff relies upon Russo v. City of Bridgeport, 479 F.3d 196 (2d Cir., 2007) to establish a refusal to investigate readily available exculpatory evidence can violate the due process rights of the arrestee. In that case the defendant officer immediately obtained store surveillance video showing the robbery suspect with no tattoos. Russo, who bore a facial resemblance to the perpetrator, was arrested. He had elaborate tattoos and repeatedly urged that the video be reviewed by the police. It was and they misled him by saying it showed tattoos and kept the video in one of their desks rather than have it processed properly as evidence. Russo was incarcerated for seven months until his pleas, and his attorneys, were finally headed and the tape made available to the district attorney. When it was, the charges were dismissed and he was freed the next day. These egregious facts do not translate to DeMattio and Russo is no precedent that he owed Bozella a duty to proactively investigate further into Holland's statement.

And similarly the facts in McCray v. City of New York, 2007 U.S. Dist. LEXIS 90875 No. 03 CIV 9685 (SDNY, December 11, 2007) bespeak of significantly more egregious misconduct by the defendant police officer sufficient to support a §1983 conspiracy claim including the fabrication of plaintiffs' statements, concealing that fabrication and ignoring substantial direct evidence, known within days of the crime, that a different individual was a likely suspect against whom this early and additional evidence was for years ignored.

There is no case which holds a police officer must investigate all claims of innocence or all possibly exculpatory evidence and indeed the law is to the contrary. Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir., 2001); Ricciuti v. NYCTA, 124 F.3d 123, 128 (2d Cir., 1997); Gisondi v. Town of Harrison, 72 N.Y.2d 280, 284-285, 532 N.Y.S.2d 234 (1988). Absent the glaring misconduct of the type involved in Russo and McCray a defendant cannot hold the police responsible for not, from his perspective, doing a more thorough investigation.

8915-0048/kag

DeMattio urges that Mr. Bozella had no clearly established constitutional right that he, DeMattio, do something with the information received from Holland and it was certainly objectively reasonable for DeMattio to believe he had none here.

Should the Court determine the complaint does state a claim DeMattio is nonetheless entitled to dismissal on qualified immunity grounds.

## CONCLUSION

For the foregoing reasons, and those set forth in DeMattio's moving papers, the complaint against him should be dismissed.

Dated: Poughkeepsie, New York
December 3, 2010

_____
DAVID L. POSNER (0310)