UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
DEWEY R. BOZELLA,

               Plaintiff,

               -against-

THE COUNTY OF DUTCHESS; THE CITY OF
POUGHKEEPSIE; WILLIAM J. O'NEILL;
ROBERT J. DeMATTIO,

               Defendants.
---------------------------------------------------------------x

Civil Action No.: 10-CV-4917 (CS)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

JACOBOWITZ & GUBITS, LLP
By: David Gandin, Esq.
Attorneys for Defendant - City of Poughkeepsie
158 Orange Avenue, P.O. Box 367
Walden, New York 12586
(845) 778-2121

## **Table of Contents**

Table of Authorities...................................................................................................ii

I.  STATEMENT OF FACTS..............................................................................1

II. ARGUMENT.....................................................................................................2

    A.  Standard of Law.......................................................................................2
    B.  Plaintiff's Complaint...............................................................................3
    C.  The Facts Alleged in Support of the Claim................................................4

        1.  The Four Categories of Alleged Brady Material............................5

    D.  Monell.....................................................................................................8

        1.  Standard for Stating a Monell "Policy" Claim...............................8
        2.  Standard for Stating a Monell "Failure to Train" Claim................8

    E.  Plaintiff Fails to Make Factual Allegations in Support of any Alleged
        "Policy" or "Failure to Train"..................................................................9

III. CONCLUSION..................................................................................................12

## Table of Authorities

Ad-Hoc Committee of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2d Cir. 1987)............................................................................2

Aretakis v. Durivage, 2009 U.S. Dist. LEXIS 7781 (NDNY 2009)....................................9

Aschcroft v. Iqbal, ____ U.S. _____, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).........2,3

Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987)............................................................10

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).......................................................2

Brady v. Maryland, 373 U.S. 83...........................................................................................4

City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)....................................................6

Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)...........................................8

Fiacco v. City of Rensselaer, 783 F.2d 319, 328 (2d Cir. 1986).........................................8

Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006)............................................8,9,10

Jenkins v. City of New York, 478 F.3d 76, 95 (2d Cir. 2007)...........................................8,9

Matican v. City of New York, 524 F.3d 151 (2d Dept. 2008).............................................6

Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978)..............................8

Porter v. White, 483 F.3d 1294, 1307 (11th Cir. 2007).....................................................10

United States v. Bagley, 473 U.S. 667, 682 (1985).............................................................4

Walker v. City of New York, 974 F.2d 293, 299 (2d Cir. 1992).........................................5,6

# I.  STATEMENT OF FACTS

The relevant facts as alleged in plaintiff's complaint are set forth herein and in the

Argument set forth below.  On June 14, 1977, Emma Crapser was murdered at her home in

Poughkeepsie, NY. Both the Dutchess County District Attorney's Office and City of

Poughkeepsie police department promptly investigated the matter.  Following an investigation of

the crime scene and witness interviews, warrants were issued for the arrest of plaintiff and two

other individuals.  On June 30, 1977, City of Poughkeepsie police officers executed the warrant

and arrested plaintiff.

On July 28, 1977, plaintiff was released from custody based on the failure of the District

Attorney's Office failure to indict or proceed with a preliminary hearing.

In 1983, a Dutchess County Grand Jury indicted plaintiff for the murder of Emma

Crapser.  Following a three week trial, plaintiff was convicted of the murder.

The Appellate Division subsequently reversed the conviction based on a Batson challenge

raised to the prosecution's use of peremptory challenges to strike prospective African-American

jurors.

In 1990 a retrial ensued. Plaintiff was again convicted for the murder of Emma Crapser

and was sentenced to an indeterminate term of imprisonment of twenty years to life.

In 2009 plaintiff moved the Dutchess County Court to vacate his conviction based on a

claim of newly discovered evidence and actual innocence.  Plaintiff asserted that he had recently

become aware of previously undisclosed Brady material.  The court granted the motion and

1

vacated plaintiff's conviction based on a finding that he had been prejudiced by the District Attorney's Office failure to disclose <u>Brady</u> material. The court, however, found that plaintiff had failed to present any evidence exonerating him of the murder and denied his "actual innocence" claim.

The Dutchess County District Attorney's office opted not to retry the plaintiff a third time and dismissed the indictment.  Plaintiff was released from custody and this action followed.

## II.  ARGUMENT

### A.  *Standard of Law*

Under Federal Rules of Procedure 12(c);(h)(2) a party may make a motion for judgment on the pleadings based on the failure to state a claim upon which relief can be granted.  In adjudicating the motion the Rule 12(b)(6) standards apply. See, e.g., <u>Ad-Hoc Committee of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College,</u> 835 F.2d 980, 982 (2d Cir. 1987); 5 A.C. Wright & A. Miller, Federal Practice and Procedure §1367, at 515 (1990).

To sufficiently state a claim to relief under Rule 12(b)(6), the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly,</u> 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Id. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal,</u>    U.S.    , 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

2

Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

The aforementioned pleading requirements cannot be relaxed on the ground that the plaintiff has yet to receive discovery. *See,* Iqbal, 129 S. Ct. at 1954.  A plaintiff whose complaint fails to state a claim, "is not entitled to discovery . . . . " Id.


**B.      *Plaintiff's Complaint***

Within plaintiff's two-hundred and thirty-nine paragraph (239), fifty-three (53) page Complaint lies an obscured narrative of a fairly straightforward series of events.  Stripped of its hyperbole, the Complaint makes a very simple, yet tenuous, 42 U.S.C. §1983 Monell claim against the City of Poughkeepsie.  Drawing all reasonable factual inferences in favor of the plaintiff, the claim is as follows: At the time the police were investigating the Crapser murder, the City maintained "policies, customs, and/or practices of instructing Officers to destroy exculpatory and impeachment evidence in violation of . . . Brady and fail [sic] to memorialize, preserve, and disclose exculpatory and impeachment evidence."  Complaint ¶202.  The complaint further alleges that the "City failed to adequately train its Officers to memorialize, preserve, and disclose exculpatory and impeachment evidence, and to conduct adequate investigations."  Complaint ¶205.  Plaintiff alleges that these policies, customs, and/or practices proximately and directly caused a violation of the his due process rights.

While not expressly articulated, the due process right underlying plaintiff's claims against the City is an alleged failure to preserve and disclose exculpatory evidence in violation of Brady

3

v. Maryland, 373 U.S. 83.[1]

A careful reading of the complaint, as more fully set forth below, reveals that plaintiff's

Monell claim against the City is based entirely on an allegation that police officers Peter Murphy

and Arthur Regula failed to record or disclose an oral statement made during the investigation of

the Crapser murder.  Plaintiff fails to allege any other conduct attributable to the City in support

of his claim that practices, policies and/or a failure to train led to his conviction.  Based on this

one event, plaintiff makes a broad, speculative claim that: 1) the City of Poughkeepsie Police

Department had a policy, practice or custom of not recording exculpatory and impeachment

evidence; and 2) this practice and policy resulted in a constitutional deprivation that contributed

to his conviction.

The allegation that an officer failed to record or disclose a single witness statement about

hearing noises in an alley is insufficient as a matter of law to demonstrate that the City of

Poughkeepsie Police Department had a policy, practice or custom of destroying, or not recording

exculpatory and impeachment evidence.  Thus, plaintiff has failed to state a claim for relief under

Monell and 18 U.S.C. §1983.

## C.    *The Facts Alleged in Support of the Claim*

Plaintiff does not directly assert that any specific City of Poughkeepsie police officer

failed to disclose Brady material.  Instead, plaintiff complains of a systemic failure

-------------------------------------------------------------------

[1]Brady precludes the suppression by the prosecution of evidence favorable to an accused
where the evidence is material either to guilt or to punishment. Brady v. Maryland, 373 U.S. at
87.  Evidence is material "if there is a reasonable probability that, had the evidence been
disclosed to the defense, the result of the proceeding would have been different." United States v.
Bagley, 473 U.S. 667, 682 (1985).

to disclose <u>Brady</u> based on unspecified practices, customs, or policies. Plaintiff does, however, specifically state that the "[t]he District Attorney and Defendant O'Neil failed to produce . . . four categories of <u>Brady</u> material . . . ." <u>See</u> <u>Complaint</u> § 118.

Presumably plaintiff has drafted the complaint in this manner based on an inability to make specific factual allegations evidencing a custom, practice or policy of the City of Poughkeepsie police department, and in recognition of the well-settled principal that police officers satisfy their Brady obligations by turning over evidence to the prosecutor. <u>Walker v. City of New York</u>, 974 F.2d 293, 299 (2d Cir. 1992).

Plaintiff claims his constitutional rights were violated based on the District Attorney's failure to disclose four separate categories of <u>Brady</u> material. <u>See</u> <u>Complaint</u> § 118 ("[plaintiff] discovered four categories of . . . [Brady evidence] establishing that the Defendants violated his constitutional rights"). Of the four categories of <u>Brady</u> identified in the complaint, it is undisputed that three of the four concern documents that were discovered in files maintained by the Dutchess County District Attorney's Office. Thus, the only <u>Brady</u> material allegedly not disclosed to the Dutchess County District Attorney's Office was a short, unrecorded oral statement made to officer Peter Murphy.

1.    ***The Four Categories of Alleged Brady Material***

Plaintiff asserts that the four separate categories of alleged undisclosed <u>Brady</u> material are as follows.[2]

---

[2]For the purposes of this motion, defendant is accepting as true plaintiff's allegations that the material was in fact undisclosed <u>Brady</u>. Defendant is by no means conceding the failure to disclose or the materiality of the contested material. To establish that the material was not <u>Brady</u>

The four claimed newly discovered items are:

a.) A police report authored by Police Officer Arthur Regula made on or about June 25, 1977, which included statements of four neighbors contradicting Moseley's and Lamar Smith's testimony.  See Complaint § 146.

Plaintiff does not allege that officer Regula failed to disclose this report to defendant O'Neil or the Dutchess County District Attorney's Office.  To the contrary, plaintiff specifically claims that "[d]espite Mr. Bozella's Brady requests, *the District Attorney and Defendant O'Neil never provided trial counsel with these statements*." *See*, Complaint ¶¶ 147; 163.  Hence, plaintiff makes direct claims that O'Neil either possessed or was aware of the report,[3] and under Walker v. New York City, *supra*, the police bear no responsibility for ADA O'Neil's alleged failure to disclose the report.

b.) Officer Pete Murphy told Regula that a witness had told him that "she heard loud noises in an alley adjacent to Ms. Craspser's home . . . and that the noises sounded like one or

---

requires an analysis of documents that are outside the scope of the pleadings. Thus, defendant is unable to make such argument in the instant motion but expressly reserves the right to do so in a later application to the Court.

While paragraph 29 of the complaint alleges that a cassette tape of an interview with Stanley and Lamar Smith was destroyed prior to plaintiff's indictment, nowhere in the complaint does plaintiff allege that the police or prosecution had a constitutional obligation to preserve the tape. Therefore the alleged destruction of the tape cannot serve as a basis to impose liability under Monell and 18 U.S.C. § 1983. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Matican v. City of New York, 524 F.3d 151(2d Dept. 2008)(holding there can be no municipal liability unless there is a showing of a constitutional violation).

[3]The Dutchess County Court's decision granting plaintiff's §440 motion references an affidavit by plaintiff's trial attorney that stated that only a "portion" of the police report was not disclosed. Such a statement further evidences that the report was in the possession of the District Attorney's Office, as there is no allegation that the police had any direct contact with or directly disclosed any documents to trial counsel.

6

more garbage cans were moved."

The People allege that neither Murphy nor Regula entered this information in a report or relayed the information to the District Attorney's Office.   *See,* Complaint §§ 25, 26, 148.

c.) The Holland tape: "which Bozella's current counsel collected in 2009 during an inspection of the District Attorney's files from the murder."   *See,* Complaint § 149.

d.) The "Dobler Reports" evidencing that Donald Wise was the perpetrator of an attack similar to the Crapser murder.   *See,* Complaint § 150.

Plaintiff's complaint states that the Dobler reports were located in file maintained by the District Attorney's Office. *See,* Complaint ¶150.   This is confirmed by the Dutchess County Court's § 440 decision annexed to the complaint stating that plaintiff's current counsel located these reports in the District Attorney's Office file for the King murder.  Thus any failure to disclose the reports is solely attributable to the District Attorney's Office and defendant O'Neil, not the City of Poughkeepsie Police Department.

Hence, three of the four categories of alleged undisclosed Brady material bear no applicability to plaintiff's claims against the City.  The sole conduct underlying the plaintiff's Brady claim as it pertains to the City of Poughkeepsie Police Department is that officers Murphy and Regula failed to record and/or disclose a neighbor's statement that she heard noises in the alley that sounded like garbage cans being moved.

The mere allegation that these officers failed to record or disclose one brief oral statement, even if accepted as true, is insufficient to state a Monell claim.

**D.      *Monell***

Under Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), a

municipality may only be liable for a constitutional violation if the violation results from: 1) an

official policy or custom; or 2) negligent training or supervision.  The plaintiff must demonstrate

a causal link between the deprivation of a constitutional right and a specific municipal policy or

custom or the failure to train.

### 1.      *Standard for Stating a Monell "Policy" Claim*

A plaintiff cannot establish a municipal policy, custom or practice solely by inference

from evidence of the occurrence of the incident in question. Fiacco v. City of Rensselaer, 783

F.2d 319, 328 (2d Cir. 1986).  *A single incident alleged in a complaint, especially if it involved*

*only actors below the policy making level, generally will not suffice to raise an inference of the*

*existence of a custom or policy*." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)

(overruled on other grounds)(emphasis added);  Green v. City of New York, 465 F.3d 65, 81 (2d

Cir. 2006).


### 2.      *Standard for Stating a Monell "Failure to Train" Claim*

"The simple recitation that there was a failure to train municipal employees does not

suffice to allege that a municipal custom or policy caused the plaintiff's injury.  Dwares v. City of

New York, 985 F.2d 94, 100 (2d Cir. 1993) (overruled on other grounds).  To state a claim based

on an alleged failure to train, a plaintiff must identify a specific deficiency in the police' officers

training and supervision in such a way that such deficiency "actually caused the constitutional

deprivation." Green v. City of New York, 465 F.3d at 81 (citation omitted); see also Jenkins v.

8

City of New York, 478 F.3d 76, 95 (2d Cir. 2007).  As one court has noted, a training program is

not rendered inadequate "merely because a few of its graduates deviate from what they were

taught." Jenkins v. City of New York, 478 F.3d at 95.  Thus, evidence of an unconstitutional

action by a police officer is not, on its own, enough to establish that an officer received

inadequate training.  See Green v. City of New York, 465 F.3d at 81; Aretakis v. Durivage, 2009

U.S. Dist. LEXIS 7781 (NDNY 2009).


E.      *Plaintiff fails to Make Factual Allegations in Support of any Alleged "Policy" or
        Failure to Train*

        As set forth below, other than plaintiff's allegations relating to the failure of officers to

record or disclose a witness statement, the remainder of the complaint is entirely devoid of

factual allegations that could support a Monell claim.  Each specific allegation that could be

deemed supportive of a Monell claim is set forth below.

        1)  Paragraphs 25 and 26 of plaintiff's complaint contain the only clear factual allegations

offered in support of plaintiff's Monell claim.  Paragraph 25 asserts that in the course of his

investigation Officer Pete Murphy interviewed a female neighbor, who informed him that she

heard loud noises in an alley adjacent to Ms. Crapser's home . . . and that the noises sounded like

one or more garbage cans were moved."  Paragraph 26 states: "Officer Murphy did not record

the neighbor's statement.  Officer Murphy informed his partner, Officer Art Regula of the sum

and substance of the statement, but Officer Regula failed to record in writing the statement as

well."

        Notably, there is no allegation therein asserting that the failure to record or disclose the

9

statement was the result of inadequate training or a municipal policy.[4]  See Green v. City of New

York, 465 F.3d at 81; Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (to state a claim plaintiff

must assert facts alleging that he was a victim of acts undertaken pursuant to a practice

equivalent to a de facto policy).

2) Paragraph 5 of the Complaint asserts that "in response to training from the District

Attorney, the Police adopted an official policy, custom, and/or practice of destroying detectives'

and police officers' notebooks after reducing their notes into official reports for the express

purpose of ensuring that the notebooks would not have to be produced to defense counsel in

connection with criminal trials . . . ."

In addition to being vague and conclusory, the allegation has no relevance to plaintiff's

claim against the City.  Plaintiff's claims against the City are based entirely on allegations of a

policy and/or lack of training that led to Brady violations.  None of the alleged Brady violations

stem from the alleged destruction of documents, and the only Brady violation arguably

attributable to the City is plaintiff's claim that Officer Murphy failed to record or disclose an oral

statement.  Plaintiff's complaint does not contain a singly factual allegations that the *destruction*

of police notebooks resulted in a constitutional deprivation.   Hence, the inclusion of this

unsupported, irrelevant allegation serves only to obfuscate the issues before the Court and does

nothing to support plaintiff's Monell claim.

3) Paragraph 7 of the Complaint, referring to the language of paragraph 5 set forth above,

simply makes another conclusory assertion that "[t]hese and other policies, and/or practices

---

[4]Mere negligence by a law enforcement officer in failing to disclose Brady material is insufficient to trigger liability under 42 U.S.C. § 1983. See Porter v. White, 483 F.3d 1294, 1307 (11th Cir. 2007).

demonstrated a deliberate indifference towards the constitutional rights of individuals, and . . . directly caused violations of Mr. Bozella's constitutional rights." This summary recitation of certain elements of a Monell claim is devoid of any underlying factual allegations.

4) The next mention of any policy or failure to train occurs in paragraph 165. There, the Complaint repeats it assertion that "upon information and belief, in furtherance of the District Attorney's policies, customs, and/or practices, Defendant O'Neil and other[s] . . . trained Officers in the City of Poughkeepsie Police Department to *destroy* interview notebooks after the Officers reduced their notes into official reports for the express purpose of ensuring that the District Attorney would not have to produce the notebooks to defense counsel as Brady material . . . ."

As set forth above, plaintiff's alleged Brady claim attributable to the City is entirely premised on an allegation that two officers failed to record or disclose an oral statement. His claim is *not based on the destruction of notes*. Accordingly, this factual allegation offers no factual support for plaintiff's Monell claim against the City  - whether Officer Murphy's failure to record and/or disclose a witness' oral statement was pursuant to an official custom, practice or policy or a training failure.

5) Paragraph 179 of the Complaint states that "in furtherance of the the City's policies, customs, and/or practices, Officers in the City of Poughkeepsie Police Department did not record in writing all statements taken from eyewitnesses in connection with felony investigations." Initially, there is no constitutional obligation that police officers reduce to writing every witness statement offered in connection with a police investigation. Thus, the assertion fails to assert a basis for a Monell claim. The statement further fails to offer any factual specificity and merely

11

highlights plaintiff's attempts to impose liability under <u>Monell</u> based on Officer Murphy's alleged failure to record one witness statement.

6) Paragraph 180 of the Complaint makes the conclusory assertion that the Police Chief knew that officers did not record all eyewitness statements and that he failed to initiate training to ensure that officers complied with Brady. The allegation is somewhat non-sensical in that <u>Brady</u> mandates the disclosure of exculpatory evidence. There is no requirement under <u>Brady</u> and its progeny that witness statements be reduced to writing. Plaintiff's complaints of such conduct demonstrate an attempt to impose constitutional liability based on conduct that is not required by law.

Plaintiff's general claim that Chief Bowles and City policy makers failed train officers about <u>Brady</u> is sweeping in nature and is unsupported by any specific allegations of fact. The broad claim underscores that plaintiff has no factual basis to support his <u>Monell</u> claim against the City other than his allegation that officer Murphy failed to disclose one oral statement.

7) Plaintiff's final allegations of a custom or failure to train are contained in Count II, paragraphs 202 - 207 of the Complaint. Again, these paragraphs merely state in conclusory fashion the existence of a policy and a failure to train. There is a complete absence of factual allegations supporting the formulaic recitation of the <u>Monell</u> elements.

### III. CONCLUSION

Plaintiff's Complaint is replete with nothing more than conclusory assertions that his conviction was the result of City policy or a failure to train officers to record or disclose witness statements. His <u>Monell</u> claim is based exclusively on one isolated incident involving the alleged

12

failure of two officers to record or disclose one brief oral statement. Notably, plaintiff fails to make a direct claim that this one alleged failure was the direct product of a departmental custom, practice or policy.

Defendant City of Poughkeepsie respectfully submits that stripped of its rhetoric and conclusory allegations, plaintiff is seeking to impose liability based on an allegation that a police officer failed to disclose one brief oral statement obtained during a lengthy investigation. It is well settled that an isolated incident involving a police officer is insufficient as a matter of law to state a <u>Monell</u> 18 U.S.C. § 1983 claim. Accordingly, plaintiff's complaint should be dismissed in its entirety as against the City of Poughkeepsie.

Dated:   October 13, 2010
         Walden, New York

                              Respectfully yours,

                              _____
                              David Gandin (DG-0553)
                              Jacobowitz & Gubits, LLP

13