UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DEWEY R. BOZELLA,

                              Plaintiff,

                                                                    Civil Action No.: 10-CV-4917 (CS)

            -against-


THE COUNTY OF DUTCHESS; THE CITY OF
POUGHKEEPSIE; WILLIAM J. O'NEILL;
ROBERT J. DeMATTIO,

                              Defendants.
-----------------------------------------------------------------x


### REPLY BRIEF


David Gandin, Esq.
JACOBOWITZ & GUBITS, LLP
*Attorneys for Defendant - City of Poughkeepsie*
158 Orange Avenue, P.O. Box 367
Walden, New York 12586
(845) 778-2121

## **Table of Contents**

Table of Authorities..........................................................................................................i

Preliminary Statement......................................................................................................1

Argument..........................................................................................................................2

    A.    An allegation of a single <u>Brady</u> violation is Insufficient as a matter of
law to impose municipal liability under <u>Monell</u>...................................................2

    B.    Even if a single <u>Brady</u> violation is sufficient to establish a municipality's
failure to train, Plaintiff has failed to plead the required causation.........................3

    C.    Claims regarding the Destruction of Documents are irrelevant...............................4

        1.    Claims regarding the destruction of documents are irrelevant and
intentionally misleading..........................................................................4

    D.    The Complaint misrepresents the facts of Mr. Bozella's prosecution
to this Court.............................................................................................................5

        1.    The City cannot be bound by the Dutchess County Court's determination
that the neighbor's oral statement is <u>Brady</u> material.....................................5

        2.    Plaintiff concedes that the Oral Statement did not affect the
outcome of the Trial................................................................................7

        3.    Inadmissible evidence is not <u>Brady</u> material.................................................8

        4.    The Neighbor's oral statement was Public Knowledge and available
to Mr. Bozella........................................................................................9

Conclusion.......................................................................................................................10

## Table of Authorities

### Federal Cite Cases

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n.8................................................2

Coe v. Bell, 161 F.3d 320, 344 (6th Cir. 1998)...........................................................10

Conner v. Travis County, 209 F.3d 794, 797 (5th Cir. 2000)......................................2

Connick v. Thompson, 130 S. Ct. 1880 (U.S. 2010).....................................................2

Fiacco v. City of Rensselaer, 783 F.2d 319, 328 (2d Cir. 1986)..................................2

Goldman v. Belden, 754 F.2d 1059, 1065-1066 (2d Cir. N.Y. 1985)...........................9

La. Mun. Police Emples. Ret. Sys. v. Blankfein, 2009 U.S. Dist. LEXIS 63558
        (S.D.N.Y. July 20, 2009)...................................................................................7

Monell v. New York City Dep't of Social Services, 436 U.S. 658, 692-4 (1978)......1, 3

Montana v. United States, 440 U.S. 147, 153 (1979)...................................................6

Myers v. County of Orange, 157 F.3d 66, 73 (2d Cir. 1998)........................................3

Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)............................2

Pickens v. Gonzalez, 2009 U.S. Dist. LEXIS 122704, *15(C.D. Cal. Nov. 17, 2009)..............10

Puertas v. Overton, 2006 U.S. App. LEXIS 8219 (6th Cir. Mich. 2006)....................10

Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 124 (2d Cir. 1991)............................2

Rios v. City of Del Rio, 444 F.3d 417, 427 (5th Cir. 2006).........................................2

Shakur v. United States, 32 F. Supp. 2d 651, 671 (S.D.N.Y. 1999)............................9

United States v. Grossman, 843 F.2d 78, 85 (2d Cir. 1988)........................................9

United States v. United States Currency in Amount of $228,536.00, 895 F.2d 908, 918
(2d Cir.), cert. denied, 495 U.S. 958 (1990)...............................................................6

U.S. v. Bagley, 473 U.S. 667, 682 (1985)...................................................................7

**State Cite Cases**

People v. Bozella, 25 Misc.3d 1215(A), 2009 WL 3364575, at *15 (Dutchess Cnty Ct. Oct. 14, 2009)............................................................................................5, 8, 9

People v. Roberts, 178 A.D.2d 622, 622-23 (N.Y. App. Div. 1991)............................................5

DEFENDANT CITY OF POUGHKEEPSIE ("City") respectfully submits this Reply Memorandum in further support of the City's motion to dismiss, dated October 13, 2010.

## PRELIMINARY STATEMENT

Plaintiff has clearly failed to allege facts sufficient to establish liability under Monell v. New York City Dep't of Social Services, 436 U.S. 658, 692-4 (1978). The sole allegation offered in support of establishing liability against the City is that Officer Murphy failed to record or disclose a brief oral statement made by an unidentified neighbor.

Armed with only this one alleged Brady violation, Plaintiff has launched a series of conclusory assertions and deliberate mischaracterizations in an attempt to craft a compelling narrative and obfuscate the tenuous nature of his claims against the City.

Even if Officer Murphy's conduct constituted a Brady violation, the allegation of a single Brady violation does not suffice as a matter of law to demonstrate a custom, practice or policy. Further, Plaintiff fails to make factual allegations that a municipal policy, practice or custom was the direct or proximate cause of the alleged Brady violation. Finally, while the issue is premature for determination, a review of the Plaintiff's complaint clearly reveals that the oral statement was not "material" within the meaning of Brady and thus does not support the claimed Brady violation. Wherefore, Plaintiff's Complaint against the City of Poughkeepsie must be dismissed in its entirety.

**ARGUMENT**

A.  Plaintiff's allegation of a single Brady violation is insufficient as a matter of law to impose municipal liability under Monell.

The Complaint's allegation of a singular <u>Brady</u> violation on the part of the City can not sustain a <u>Monell</u> claim.   Plaintiff cannot establish a municipal policy, custom or practice solely by inference from evidence of the occurrence of the incident in question. <u>Fiacco v. City of Rensselaer</u>, 783 F.2d 319, 328 (2d Cir. 1986). "If the need for training in this area was "so obvious" and the failure to train was 'so likely to result in the violation of constitutional rights' - that the [Plaintiff] would be able to identify other instances of harm arising from the failure to train." <u>Conner v. Travis County</u>, 209 F.3d 794, 797 (5th Cir. 2000) (<u>See also Rios v. City of Del Rio</u>, 444 F.3d 417, 427 (5th Cir. 2006) (granting a motion to dismiss where "there was no allegation of any prior incident in which [a similar constitutional violation occurred]")[1].

Moreover, to plead a <u>Monell</u> cause of action, "a complaint must allege *facts* suggestive of [the proscribed] conduct."   <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (alteration in original) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563 n.8) (emphasis added).  Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 234. <u>See also Ricciuti v. N.Y.C. Transit Auth.</u>, 941 F.2d 119, 124 (2d Cir. 1991) ("Our prior cases suggest that an allegation of municipal policy or custom would be insufficient if wholly conclusory.") (reversed on other grounds).

Plaintiff seeks to portray a single alleged instance of non-disclosure as the product of a

---

[1] The specific issue of whether failure to train liability may be imposed on a district attorneys office for a single, deliberate Brady violation where there is no history of similar violations is currently before the U.S. Supreme Court. <u>Connick v. Thompson</u>, 130 S. Ct. 1880 (U.S. 2010).

widespread systematic failure on the part of the City to train its police officers. This stretch, however, is supported purely by speculation rather than the required allegations of factual content. Plaintiff alleges that "the need for the City's policymakers to act was obvious and the failure to act so likely to result in constitutional violations that City's policymakers' failure to act rose to deliberate indifference." Complaint ¶ 204. Notwithstanding the "obvious need," Plaintiff is unable to allege a single instance of a City of Poughkeepsie police officer failing to record and disclose oral witness statements other than the claim that Officer Murphy's failed to disclose one oral statement.[2] Absent such factual allegations, the Complaint falls short of sufficiently pleading a failure to train and thus Plaintiff's Monell claim must fail.

B.   Even if a single Brady violation was sufficient to establish a municipality's failure to train, Plaintiff has failed to plead the required causation.

Plaintiff acknowledges that he "must prove a causal nexus between the municipal policy and the constitutional injury he has suffered" Plaintiff Brief at 18 (citing Myers v. County of Orange, 157 F.3d 66, 73 (2d. Cir 1998), yet fails to do so. Plaintiff merely states "Officer Murphy and Officer Regula each violated Mr. Bozella's Brady rights when they failed to record or ultimately disclose an exculpatory statement from Ms. Crapser's next door neighbor. These allegations state a claim against the City." (Plaintiff Brief at 32). The assertion that Officer Murphy and Officer Regula allegedly violated Mr. Bozella's Brady rights is not an assertion that the City, by failing to train its police officers, caused a constitutional injury, and only supports a *respondent superior* theory of liability which is expressly prohibited by Monell v. New York City

---

[2] Plaintiff's expansive discovery demands, which are annexed hereto, further amplify that Plaintiff's claims are based on pure conjecture and that he is on an utter fishing expedition for factual content that would support his claim against the City. This type of entirely speculative pleading is exactly the type of pleading ripe for dismissal. (See Appendix "A")

Dep't of Social Services, 436 U.S. 658, 692-4 (1978).  Moreover, Plaintiff tip-toes around the

heart of the causation issue by burying it in footnote (Plaintiff Brief at 11).  That footnote

references Paragraph 181 of the Complaint, which contrary to Plaintiff's mischaracterization,

states:

> The Officers' destruction of notebooks and failure to record in
> writing all statements taken from eyewitnesses in connection with
> felony investigations directly caused the violation of Mr. Bozella's
> constitutional rights.  Specifically these practices proximately and
> directly caused both Officer Murphy and Officer Regula to fail to
> record the exculpatory statement of Ms. Crapser's neighbor.[3]

This assertion does not contain any allegation that Murphy and Regula's failures were the result

of the City's failure to train or supervise.  Absent allegations of causation, Plaintiff's claim

against the City must fail.

C.      Claims regarding the destruction of documents are irrelevant and intentionally
        misleading.

        1.      **Plaintiff's allegations that the City has a policy of instructing officers to
                destroy their notes is a red herring, irrelevant, and based on
                misrepresentations.**

        Plaintiff's makes one singular constitutional claim against the City based on one

undisclosed oral statement, not the destruction of any documents or notes.  Complaint ¶ 148.

While the complaint makes allegations that the County trained City Police Officer's to destroy

notebooks, there is no underlying allegations of a destruction of police notes or any other

constitutional violation resulting from the alleged destruction of documents.

        Plaintiff's claims as to the destruction of police notebooks appears to be an effort to

---

[3]  The complaint does not allege that Officer Regula interviewed the neighbor, hence he
could not record her statement. All he could record would be Officer Murphy's hearsay
statement.  Moreover, the Complaint does not allege that Officer Regula knew his partner did not
record and disclose the statement.

obfuscate the issues before the Court and to somehow incorporate People v. Roberts, 178 A.D.2d

622, 622-23 (N.Y. App. Div. 1991) into his complaint. See Complaint at 166. In that 1991

decision, the Court found improper a *Town of Poughkeepsie* Police Department practice of

destroying notes after their content had been reproduced in official police reports.(Appendix "B")

The instant case involves claims against the City of Poughkeepsie. The City and Town of

Poughkeepsie are two unrelated municipalities each with their own policy makers, policies and

police departments. Hence, Plaintiff's inclusion of People v. Roberts is wholly irrelevant, does

not lend any support to his claims against the City, and is deliberately misleading.

Finally, the alleged destruction of a tape recording of a Lamar Smith interview is also

irrelevant, as there is not an allegation that there was any legal obligation to preserve such tape.

Notably, Plaintiff has not alleged that the destruction of the tape was improper or illegal, and

there is no allegation in the Complaint that the destruction of the tape, was the result of a City

policy.

D.    The neighbor's oral statement is not Brady material.

    1.    **The City cannot be bound by the Dutchess County Court's determination
that the neighbor's oral statement is Brady material.**

Plaintiff argues the County is collaterally estopped from disputing that the neighbor's oral

statement is Brady material, based on the earlier determination of the Dutchess County Court.

(Plaintiff Brief at 26) (citing People v. Bozella, 25 Misc. 3d 1215(A), 2009 WL 3364575, at \*15

(Dutchess County Ct. Oct. 14, 2009)). Later in his brief, Plaintiff improperly applies that same

collateral estoppel argument to the City of Poughkeepsie (Plaintiff Brief at 32, n. 11).

Collateral estoppel, or issue preclusion, operates to preclude a party to a prior action from

re-litigating in a subsequent action an issue that previously was decided against it in the prior

action.  Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153, (1979).  To determine whether collateral estoppel bars the instant claims, the Court must analyze whether (1) the issues as to which preclusion is sought are identical to the issues decided in the prior proceeding; (2) the party against whom preclusion is presently sought had a full and fair opportunity to litigate the issue in the prior proceeding; and (3) the issues were necessarily decided in the prior proceeding. See United States v. United States Currency in Amount of $ 228,536.00, 895 F.2d 908, 918 (2d Cir.), cert. denied, 495 U.S. 958 (1990).

Plaintiff conveniently ignores the fact that the City was not a party in the § 440 motion and did not have any opportunity to litigate the issue of whether the neighbor's oral statement was Brady material subject to disclosure.  Initially, the District Attorney's opposition to Plaintiff's § 440 motion was pathetic at best.  The opposition consisted of a scant ten page response with no references to the record or case law giving the County Court no choice but to side with Mr. Bozella.  With regards to the neighbor's oral statement, the only alleged Brady violation attributable to the City, the District Attorney's response affirmation was devoid of any legal analysis of the Brady standards.  Nor was there any analysis presented which discussed the weight to be given to  Officer Regula's double hearsay recollection that Officer Murphy orally told him what the neighbor allegedly orally told Murphy.  As is discussed below, had the District Attorney more rigorously opposed the motion, the Court would have likely found that the neighbor's oral statement was not Brady material.

2.     **Plaintiff concedes that the oral statement did not affect the outcome of the trial**.

The City respectfully suggests that the issue of whether the neighbor's oral statement was material under <u>Brady v. Maryland</u> is not ripe for adjudication in the context of a motion to dismiss on the pleadings. Such a determination requires a detailed analysis of the trial transcripts and other matters outside the pleadings. A review of such materials will enable the Court to determine the theories of prosecution and defense, and thus determine whether the statement was "material" under <u>Brady</u>. Notably, such transcripts have yet to be disclosed through discovery. *See* City's Memorandum of Law in Support of Motion to Dismiss, pg 5, note 2).

Should the Court deem it appropriate to make such a determination based on the pleadings, an examination of Plaintiff's complaint reveals that the statement is not Brady material as a matter of law.[4]

In order for there to be a Brady violation, the suppressed evidence must be material, meaning there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>U.S. v. Bagley</u>, 473 U.S. 667, 682 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. <u>Id</u>. at 682.

The Dutchess County Court found that, "the statement clearly supports the Defendant's theory that Donald Wise gained access through a window and corroborates Madeline Dixon

---

[4]For the purposes of deciding the instant Motion, this Court must deem Plaintiff's factual allegations as true. The Court, however, is not required to accept Plaintiff's legal conclusions as to whether documents or statements constitute <u>Brady</u> material. <u>La. Mun. Police Emples. Ret. Sys. v. Blankfein</u>, 2009 U.S. Dist. LEXIS 63558 (S.D.N.Y. July 20, 2009) ("Although a court must accept- well-pleaded allegations of the Complaint as true, a court is not required to credit Plaintiff's legal characterizations and conclusions.")

South's testimony that Donald Wise claimed to have gained to Emma Crapser's apartment through an alley window and was involved in the murder." People v. Bozella, [2009 WL 3364575], at *15, (Dutchess Cnty Ct. Oct. 14, 2009). The Complaint concedes that, "*[d]espite the Defendants' concealment and suppression of exculpatory and impeachment evidence from Mr. Bozella implicating Donald Wise, Mr. Bozella's counsel presented the evidence it had assembled indicating that Donald Wise was the murderer.*" Complaint ¶ 137. This evidence included fingerprints inside the victim's home as well as eye witness testimony by Ms. South in 1983 that established that Donald Wise entered through the window at Plaintiff's 1990 re-trial. Complaint ¶¶ 137-140. Thus, accepting the Complaint as true, Mr. Bozella did not need the statement to create a doubt in the jury's mind as to whether the murderer was the Plaintiff or Donald Wise. The Complaint further states, "[d]espite the paucity of evidence against Mr. Bozella, and *wealth of evidence pointing to an alternate suspect,* a jury convicted Mr. Bozella of second degree murder and the trial judge sentenced Mr. Bozella to twenty years to life. Complaint ¶ 142 (emphasis added). There is no allegation that oral statement would have tipped the scales and been anything more than redundant of the "wealth of evidence already presented."

3.    **Inadmissible evidence is not Brady material.**

Plaintiff's complaint alleges that oral statement in question was made by an unidentified "female neighbor." Complaint ¶ 25. The Complaint further alleges that "Officer Regula averred that a witness informed Officer Murphy that 'she heard loud noises in an alley adjacent to Ms. Crapser's home ...'" Complaint ¶ 148. Accepting these assertions as true, Officer Regula's testimony is a double hearsay and inadmissible. Suppressed information that would be inadmissible at trial does not violate Brady since it could not have affected the trial's outcome.

<u>Shakur v. United States</u>, 32 F. Supp. 2d 651, 671 (S.D.N.Y. 1999) ("undisclosed evidence cannot form a basis for post-trial relief [under Brady] if that evidence could not have been admitted at the trial in any event").

      4.      **The neighbor's oral statement was public knowledge and available to Mr. Bozella.**

Even if, for the sake of argument, the neighbor's oral statement would have altered the course of Mr. Bozella's trial, there is no Brady violation because as is asserted in the Complaint, the statement was publically available to Mr. Bozella and his defense counsel. "Brady does not require the government to turn over exculpatory evidence if the Defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence. The rationale for our rule is that Brady is designed to assure that the Defendant will not be denied access to exculpatory evidence only known to the Government." <u>United States v. Grossman</u>, 843 F.2d 78, 85 (2d Cir. 1988) (internal citations omitted).

Exhibit A to the Complaint contains the Dutchess County Court's decision in Plaintiff's § 440 motion to vacate his conviction. That decision states, "This neighbor was identified in the Poughkeepsie Journal two days after the murder (see Firsenbaum Affirmation, Ex. 6)." <u>People v. Bozella</u>, 2009 WL 3364575, at *15.[5] That newspaper article, annexed hereto for the Court's convenience (Appendix "C"), was located on the front page with a 36 point font headline and reported that,

> "In an apartment next door, Mrs. Mary Nathan
> remembered hearing some noise Tuesday night

---

[5] The pleading is deemed to include any document attached to it as an exhibit, or any document incorporated in it by reference. <u>Goldman v. Belden</u>, 754 F.2d 1059, 1065-1066 (2d Cir. N.Y. 1985).

outside her window near Miss Crapser's home. "I
heard a sound like someone had bumped up against
something," she said. "Then I heard this heaving
running, but I thought it was the cat and dog that are
always running around. This morning I looked out
the window and someone had moved a garbage can
in front of her window and it looked like someone
cut the screen."

Clearly, Mr. Bozella's defense counsel had ready access to the allegedly exculpatory statement

which they claim they were denied. Not surprisingly, Plaintiff chose not to highlight this

newspaper article in his pleadings because doing so is fatal to Plaintiff's Monell claim against the

City. Coe v. Bell, 161 F.3d 320, 344 (6th Cir. 1998) ("There is no Brady violation ... where the

evidence is available ... from another source, because in such cases there is really nothing for the

government to disclose.") (reversed on other grounds); See also Puertas v. Overton, 2006 U.S.

App. LEXIS 8219 (6th Cir. 2006) (unpublished) (no Brady violation found where investigation

was published in the newspaper); Pickens v. Gonzalez, 2009 U.S. Dist. LEXIS 122704, * 15

(C.D. Cal. Nov. 17, 2009) ("petitioner has failed to convince the Court that the media articles,

which were publicly available at the time of trial, were suppressed within the meaning of

Brady").

## CONCLUSION

The Complaint, accepted as true, fails to state a Monell claim. The allegation of one

Brady violation is insufficient in and of itself to demonstrate a practice, custom or policy.

Moreover, the complaint fails to plead factual allegations supporting its claim that the City failed

to train, and further fails to plead the requisite causation. Finally, Plaintiff's own claims

demonstrate that the unidentified neighbor's oral statement would not meet the materiality

standard Brady material. Thus, Plaintiff fails to allege an underlying constitutional violation on

which to impose liability on the City of Poughkeepsie. The City, therefore, respectfully requests

that the Plaintiff's complaint be dismissed in its entirety.

Dated: December 3, 2010
      Walden, New York

                                    Respectfully yours,

                                    David Gandin, Esq. (DG-0553)
                                    Jacobowitz & Gubits, LLP
                                    *Attorneys for Defendant*
                                    *City of Poughkeepsie*
                                    158 Orange Avenue
                                    Walden, NY 12586
                                    (845) 778-2121

TO:

      Peter J. MacDonald, Esq.
      Wilmer, Cutler, Pickering, Hale & Dorr, LLP
      *Attorneys for Plaintiff*
      399 Park Avenue
      New York, NY 10022
      (212) 230-8800

      Michael Burke, Esq.
      Burke, Miele & Golden
      *Attorneys for Defendants County of Dutchess and O'Neill*
      40 Matthews Street, P.O. Box 216
      Goshen, NY 10924
      (845) 294-4080

      David L. Posner, Esq.
      McCabe & Mack, LLP
      *Attorneys for Defendant DeMattio*
      63 Washington Street, P.O. Box 509
      Poughkeepsie, NY 12602
      (845) 486-6800

Appendix "A"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DEWEY R. BOZELLA,

      Plaintiff,

      v.

THE COUNTY OF DUTCHESS; THE
CITY OF POUGHKEEPSIE; WILLIAM J.
O'NEILL; AND ROBERT J. DEMATTIO

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 10 Civ. 4917 (CS)

PLAINTIFF DEWEY R.
BOZELLA'S FIRST REQUEST
FOR PRODUCTION OF
DOCUMENTS PROPOUNDED
ON DEFENDANT CITY OF
POUGHKEEPSIE

## PLAINTIFF DEWEY R. BOZELLA'S
## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED ON
## DEFENDANT CITY OF POUGHKEEPSIE

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the

Local Civil Rules of the United States District Court for the Southern District of New York (the

"Local Rules"), Plaintiff requests that defendant City of Poughkeepsie ("City") produce

documents responsive to the following requests within the time specified by Rule 34(b) of the

Federal Rules of Civil Procedure.  As required by Rule 26(e) of the Federal Rules of Civil

Procedure, the City must promptly amend or supplement answers or disclosures within the time

specified by Rule 34(b) of the Federal Rules of Civil Procedure, or as is mutually agreed upon.

## DEFINITIONS

1.      These document requests incorporate by reference the Uniform Definitions and Rules set forth in Local Rule 26.3.

2.      "440 Decision" means the Opinion and Order of the Dutchess County Court (Hon. James Rooney, sitting in designation) dated October 14, 2009, in the action *People v. Bozella*, 25 Misc. 3d 1215(A), 2009 WL 3364575 (Dutchess Co. Ct. Oct. 14, 2009).

3.      "Brady Evidence" means the four categories of material deemed to be *Brady v. Maryland*, 373 U.S. 83 (1963) material by the Dutchess County Court in the 440 Decision, at *9- 15, including the Saul Holland Statement, portions of the Upstairs Neighbors' Statements, Dobler Report, and Next-Door Neighbor's Oral Statement, as defined herein.

4.      "Communication" is defined pursuant to Rule 26.3(c)(1) of the Local Rules.

5.      "Complaint" means the complaint, dated June 24, 2010, filed in this action.

6.      "Concerning" means relating to, referring to, describing, evidencing or constituting.

7.      "Crapser Murder" means the June 14, 1977 murder of J. Emma Crapser in Poughkeepsie, New York.

8.      "Defendants" means, collectively, the defendants in this action.

9.      "District Attorney" means the Dutchess County District Attorney's Office and all attorneys, employees, agents, representatives, and other individuals, present and former acting on behalf of the Dutchess County District Attorney's Office.

10.      "Dobler Assault" means the August 2, 1977 attack of Estelle Dobler in Poughkeepsie, New York.

11.      "Dobler Report" means the Complaint Report of the Detectives Division of the

2

City of Poughkeepsie Police Department dated August 3, 1977 and signed by Detective James Precious (attached as Exhibit 10 to the Firsenbaum Affirmation and described in greater detail in the 440 Decision at *13-14).

12.     "Document" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and Local Rule 26.3(c)(2).

13.     "Firsenbaum Affirmation" means the Affirmation of Ross E. Firsenbaum in Support of Motion Pursuant to C.P.L. § 440.10, dated March 31, 2009, in the action captioned *People v. Bozella*, Indictment No. 102/83.

14.     "King Murder" means the February 20, 1978 murder of Mary King on Balding Avenue in Poughkeepsie, New York.

15.     "Next-Door Neighbor's Oral Statement" means the statement set forth in paragraph 4 of the Regula Affidavit, namely that a female witness informed Detective Pete Murphy that "she heard loud noises in an alley adjacent to Ms. Crapser's home at 15 North Hamilton Street in Poughkeepsie on the night of Ms. Crapser's murder" and "that the noises sounded like one or more garbage cans being moved" (as described in greater detail in the 440 Decision at *15).

16.     "Police" or "Police Officers" means the City of Poughkeepsie Police Department and all police officers, detectives, investigators, forensic examiners, employees, agents, representatives, and other individuals, present and former, acting on behalf of the City of Poughkeepsie Police Department.

17.     "Regula Affidavit" means the Affidavit of Art Regula in Support of Motion Pursuant to C.P.L. § 440.10, dated February 4, 2009, in the action captioned *People v. Bozella*, Indictment No. 102/83.

3

18.    "Saul Holland Statement" means the statements set forth in Exhibit 38 of the Firsenbaum Affirmation made by Saul Holland on February 23, 1978 (as described in greater detail in the 440 Decision at *12-13).

19.    "Upstairs Neighbors' Statements" means the statements of four individuals found on the pages of the Complaint Report of the Detective Bureau of the City of Poughkeepsie Police Department dated June 25, 1977 (attached as Exhibit 1 to the Firsenbaum Affirmation and as described in greater detail in the 440 Decision at *9-12).

20.    The words "you" or "your" or "Defendant" or "City" mean Defendant City of Poughkeepsie, and any of the employees, agents, representatives, attorneys, paralegals, investigators, or other persons or entities acting or purporting to act for or on behalf of the City of Poughkeepsie.

## INSTRUCTIONS

1.    The instructions set forth in Local Rule 26.2 are adopted and incorporated by reference herein.

2.    As used in this document request, (i) the connectors "and" and "or" shall be construed both conjunctively and disjunctively so as to give this document request the broadest possible scope, (ii) the terms "any" and "all" shall be construed as "any and all," and (iii) the singular of any word shall include the plural and vice versa.

3.    Each document request shall be construed and answered separately. Each answer shall set forth verbatim the document request to which it responds. The specificity of any document request shall not be construed or understood as limiting the generality or breadth of any other document request.

4

4.     This document request requires you to produce documents that are in your possession, custody, or control.  Thus, your obligation to produce documents is not limited to documents in your physical possession; you must also produce all documents that you have the right or ability to obtain on demand.

5.     If you object to any document request, state in full the basis for your objection.  If you object to part of a document request, specify the portion of the request to which you object and answer so much of the request as is not objectionable.

6.     If you withhold a document from production on the basis of a privilege or any other protection from disclosure, you shall identify: (a) the privilege asserted and the particular basis for asserting the privilege; (b) the author(s) and date of each allegedly privileged document at issue; (c) the identity of all persons who have seen each allegedly privileged document or are aware of allegedly privileged information; and (d) the nature and general subject matter of each allegedly privileged document and any allegedly privileged information.  All claims of privilege also shall be consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure and Local Rule 26.2(a).

7.     Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and copying original documents as they are kept in the usual course of business in their original folders, binders, covers, and containers or facsimile thereof.

8.     All documents that are stored in electronic or computer format shall be produced on a CD or DVD.  Documents either stored by you or received from other parties in electronic form or format of any kind are to be produced in the form or format in which they are stored by you or in which they were received by you.

9.     This request shall be deemed continuing in nature, and you are under a duty to supplement or correct any responses that are incomplete or incorrect and otherwise supplement your responses in accordance with the Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

Document Request No. 1.

All Documents concerning the Crapser Murder, including but not limited to Documents concerning the investigation and prosecution of any individual for the Crapser Murder.

Document Request No. 2.

All Documents concerning the Brady Evidence.

Document Request No. 3.

All Documents concerning Lamar Smith, Stanley Smith, Wayne Moseley, Elbert Pittman, Donald Wise, Anthony Wise, Madeline Dixon South and Saul Holland. [ arrest files ]

Document Request No. 4.

All Documents concerning Dewey Bozella, including but not limited to all Documents concerning all crimes for which Dewey Bozella was convicted, indicted, charged, held in custody, or considered as a suspect.

Document Request No. 5.

All Documents concerning J. Emma Crapser, including but not limited to any purported criminal incidents that took place at her residence at 15 North Hamilton Street prior to June 14, 1977.

Document Request No. 6.

All Documents concerning the Dobler Assault, including but not limited to the investigation and prosecution of any individual for the Dobler Assault.

6

Document Request No. 7.

All Documents concerning the King Murder, including but not limited to the investigation and prosecution of any individual for the King Murder.

Document Request No. 8.

All Documents concerning attacks of women over the age of 65 years old in a residence in Poughkeepsie, New York from January 1, 1977 through December 31, 1983 other than the Crapser Murder, King Murder, and Dobler Assault.

Document Request No. 9.

All Documents concerning the 440 Motion, including but not limited to all Documents concerning the Police or District Attorney's investigation of the Crapser Murder after the date of the 440 Motion.

Document Request No. 10.

Documents sufficient to show the organizational structure of the Police from May 13, 1963 through December 31, 1991, and the present.

Document Request No. 11.

Documents sufficient to show the identity of any individual who made policy, was responsible for making policy, implemented policy, or oversaw policy in the Police from May 13, 1963 through December 31, 1991.

Document Request No. 12.

All policies and training manuals of the Police from May 13, 1963 through the present.

Document Request No. 13.

All Documents concerning policies, customs, practices, procedures, and/or training administered by the Police or received by Police Officers, concerning the following topics from

May 13, 1963 through December 31, 1991, and the present, including but not limited to policy

manuals, training manuals, syllabi, and internal memoranda concerning each topic:

  a.      Compliance with *Brady v. Maryland* and it progeny;

  b.      The interrogation or interview of a witness or suspect;

  c.      The decision whether to record to writing a statement by a witness or
          suspect concerning an open investigation;

  d.      The documentation and preservation of Documents (including but not
          limited to interview notes and cassette tapes) from the interrogation or
          interview of a witness or suspect;

  e.      The offering of a promise, reward, or inducement to a witness or suspect;

  f.      Coercing, threatening, pressuring, or intimidating a witness or suspect;

  g.      Mechanisms to ensure that evidence collected in connection with an open
          investigation was cross-checked with evidence collected in other pending
          similar investigations;

  h.      Pursuing exculpatory leads during an open criminal investigation;

  i.      Roles and responsibilities at the scene of a homicide; and

  j.      Updates in constitutional law concerning the rights of criminal suspects,
          including but not limited to all Documents concerning procedures
          implemented to ensure that assistant district attorneys and Police Officers
          protected criminal suspects' constitutional rights.

<u>Document Request No. 14.</u>

All Documents concerning William O'Neill or D. James O'Neil.

8

Document Request No. 15.

All Documents concerning training provided by the District Attorney to the Police, including but not limited to all Documents concerning training concerning preserving or destroying interview notebooks and the Police's obligations under *Brady v. Maryland.*

Document Request No. 16.

All Documents concerning the subject matter of the case reported as *People v. Roberts,* 178 A.D.2d 622-23 (N.Y. App. Div. 1991), including but not limited to the Police's entire case file and all Documents concerning the "procedure established within the Poughkeepsie Police Department [whereby] the detectives destroyed [] notes after they had been transcribed into a formal report," as referenced in the reported opinion.

Document Request No. 17.

All Documents concerning the Police's policies, customs, practices, procedures, and/or training concerning recording and preserving eyewitness statements, including but not limited to any training the District Attorney provided to the Police concerning the decision to record and preserve an eyewitness statement.

Document Request No. 18.

The complete personnel files of Stuart Bowles, Robert DeMattio, William Grey, Art Regula, Pete Murphy, Enno Groth, Jon Doherty, and Neil Polay from May 13, 1963 – December 31, 1991, including without limitation all Documents concerning each individual's:

     a.     Complete application for employment with the Police;

     b.     Promotions or changes of assignment, including but not limited to applications for promotion and promotion-related examinations or interviews;

9

    c.      Training received, including but not limited to any syllabi, course descriptions, records of attendance at any in-house or outside training courses, and training-related evaluations and testing results;

    d.      Performance evaluations; and

    e.      Salary, payment, compensation, and expense records and reports.

Document Request No. 19.

All Documents concerning any complaints, whether substantiated or not, received by the District Attorney concerning Stuart Bowles, Robert DeMattio, William Grey, Art Regula, Pete Murphy, Enno Groth, Jon Doherty, and Neil Polay from May 13, 1963 through December 31, 1991, including but not limited to:

    a.      All Documents concerning any civil complaints concerning each individual;

    b.      All Documents concerning any criminal proceedings concerning each individual where such individual was a suspect or defendant in such proceedings;

    c.      All Documents concerning any internal allegations, complaints, or investigations of misconduct concerning each individual;

    d.      All Documents concerning any action taken by the Police in response to any allegation of misconduct of any kind by each individual;

    e.      All Documents concerning any criticism, discipline, or remediation, in any form, by the Police concerning the conduct or lack of conduct of each individual; and

    f.      All Documents concerning any allegation of misconduct by each individual from any source.

Document Request No. 20.

All Documents concerning any allegation from any source that the Police, including but not limited to Stuart Bowles, Robert DeMattio, William Grey, Art Regula, Pete Murphy, Enno Groth, Jon Doherty, and Neil Polay, pressured, intimidated, abused, threatened, coerced, or made promises, rewards, or inducements to any witness, crime victim, or suspect, whether or not the allegation was substantiated, from May 13, 1963 through December 31, 1991, including without limitation any charges, statements, notes, reports, memoranda or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities and civil, administrative, or criminal complaints originating from any source.

Document Request No. 21.

All Documents concerning any allegation from any source that the Police, including but not limited to Stuart Bowles, Robert DeMattio, William Grey, Art Regula, Pete Murphy, Enno Groth, Jon Doherty, and Neil Polay, fabricated evidence, whether or not the allegation was substantiated, from May 13, 1963 through December 31, 1991, including without limitation any charges, statements, notes, reports, memoranda or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities and civil, administrative, or criminal complaints originating from any source.

Document Request No. 22.

All Documents concerning any allegation from any source that the Police, including but not limited to Stuart Bowles, Robert DeMattio, William Grey, Art Regula, Pete Murphy, Enno Groth, Jon Doherty, and Neil Polay, destroyed, concealed, and/or withheld exculpatory, impeachment, or material evidence from either the District Attorney or a criminal defendant, whether or not the allegation was substantiated, from May 13, 1963 through December 31, 1991,

11

including without limitation any charges, statements, notes, reports, memoranda or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities and civil, administrative, or criminal complaints originating from any source.

Document Request No. 23.

All Documents concerning the supervision and discipline of Police Officers from May 13, 1963 through December 31, 1991, including without limitation policies, procedures, customs, and practices, whether written or oral, reflecting the supervision and discipline of all Persons working for the Police who participated in the investigation or prosecution of the Crapser Murder.

Document Request No. 24.

All Documents concerning any policy and/or decision by the City or Police to indemnify or refuse to indemnify any Police Officer, including defendant Robert DeMattio, for misconduct in the scope of his or her employment.

Document Request No. 25.

All Documents concerning insurance policies covering the City, the Police, or the City or Police's employees, whether or not you believe the policy to cover the acts and omissions alleged in this lawsuit.

Document Request No. 26.

All Documents concerning any Communication by the City with any witness or potential witness in this lawsuit, including but not limited to any Defendants, D. James O'Neil, William Grey, and any individual listed by any party in their initial disclosures (as subsequently amended) in this lawsuit.

Document Request No. 27.

All Documents relied upon by the City in support of its motion for a judgment on the pleadings; in responding to interrogatories, requests for admission or any other discovery request in this action; or to otherwise defend itself against the allegations in the Complaint.

Plaintiff reserves the right to supplement and amend the foregoing requests for production of documents.

Dated:  New York, New York
        October 19, 2010

                              WILMER CUTLER PICKERING
                              HALE AND DORR LLP

                         By:_____
                              Peter J. Macdonald
                              Ross E. Firsenbaum
                              Margaux J. Hall
                              Somil Trivedi
                              399 Park Avenue
                              New York, New York 10022
                              Tel.:  (212)-230-8800
                              Fax:   (212)-230-8888
                              *Attorneys for Dewey R. Bozella*

## **CERTIFICATE OF SERVICE**

I, Ross E. Firsenbaum, an attorney, hereby certify that on Tuesday, October 19, 2010, I

caused to be served by federal express a true and correct copy of Plaintiff Dewey R. Bozella's

First Request For Production of Documents Propounded on Defendant City of Poughkeepsie on

the individuals shown below:

| | |
|---|---|
| David Gandin, Esq.<br>Jacobowitz & Gubits LLP<br>158 Orange Avenue<br>Walden, NY 12586<br>*Counsel for Defendant City of Poughkeepsie* | Patrick T. Burke, Esq.<br>Burke, Miele & Golden LLP<br>30 Matthews Street, Suite 209<br>P.O. Box 216<br>Goshen, NY 10924<br>*Counsel for Defendants County of Dutchess and William J. O'Neill* |
| David L. Posner, Esq.<br>McCabe & Mack LLP<br>63 Washington Street<br>P.O. Box 509<br>Poughkeepsie, NY 12602-0509<br>*Counsel for Defendant Robert DeMattio* | |
| Dated:  October 19, 2010<br>New York, New York | Ross E. Firsenbaum |

Appendix "B"

PURSUANT TO CIVIL RIGHTS LAW SECTION 50(b), THE IDENTITIES
OF THESE VICTIMS, WHO ARE MINORS, SHALL BE CONFIDENTIAL AND
THIS DOCUMENT SHALL NOT BE MADE AVAILABLE FOR PUBLIC
INSPECTION.

STATE OF NEW YORK
COUNTY COURT : DUTCHESS COUNTY
----------------------------------------x

  THE PEOPLE OF THE STATE OF NEW YORK

        – against –           INDICTMENT #85/87

      MATTHEW H. ROBERTS

----------------------------------------x

### Dated the 21st day of July, 1987

      THE GRAND JURY OF THE COUNTY OF DUTCHESS, by this

Indictment, accuses MATTHEW H. ROBERTS of the crime of

SODOMY IN THE SECOND DEGREE, A CLASS D FELONY, in violation

of Section 130.45 of the Penal Law of the State of New York,

committed as follows:

      The said defendant, in the Town of Poughkeepsie,

County of Dutchess and State of New York, on or about the

15th day of July, 1987, being more than eighteen years old,

engaged in deviate sexual intercourse with ███████████,

who was less than fourteen years old.

                    WILLIAM J. O'NEILL
                    Acting District Attorney

                    A TRUE BILL

                    KENNETH C. SCHAEFFLER
                    Acting Foreman of the
                    Grand Jury
                    Fourth Term – 1987

Appendix "C"

Thursday, June 16, 1977

# Burglar's gag killed woman, 92

**By Peter Sleight**
**Journal staff writer**

A burglar's gag smothered a 92-year-old woman whose bound body was found in her tiny North Hamilton Street apartment late Wednesday morning.

That was the conclusion reached by a doctor who performed an autopsy on the woman's body Wednesday, according to City of Poughkeepsie Police Chief Stewart Bowles.

The woman, identified as Miss J. Emma Crapser, was found lying on her back on her kitchen floor, still wearing the coat she had worn to bingo at St. Joseph's Church the night before, Bowles said.

A tight cloth gag had cut off her air supply, he said, and her killer had wrapped her hands and legs with wire.

"This is just a wanton, brutal slaying," Bowles said today. "It's one of the most reprehensible crimes I've seen."

Initial findings suggest that Miss Crapser surprised a burglar as she walked into her home after a night of playing bingo, they said. One of the women at the church that night, Mrs. Dorothy Gumbinger, remembered that Miss Crapser had once forgone the bingo games for several weeks after her home had been broken into.

Wednesday afternoon, city detectives began the laborious task of interviewing people who may have known or seen Miss Crapser and sifted her belongings in a search for clues. Their work revealed a story of an elderly woman, with only a single close relative and an elderly couple for friends, who lived out her last years in her modest, but clean, apartment.

She lived alone in her 15 N.

Hamilton Street apartment, the chief said. Evelyn Peterson, Miss Crapser's cousin and only known relative, had gone to check on her Wednesday morning as usual before opening her business, The Shape Shop, a women's undergarment store just a few houses up the street.

As she opened the door to Miss Crapser's first floor apartment, she saw the room had been ransacked, Bowles said, and without checking further ran to call the police.

Patrolmen Richard Sauter and Mark Lillis found the body.

The police said they believe Miss Crapser might have walked in on a burglar. But she still wore rings, and a television set was left undisturbed, Bowles said.

In an apartment next door, Mrs. Mary Nathan remembered hearing

See CITY page 12)



# City woman died of suffocation

## From page 1

From page 1

**Thursday, June 16, 1977**

ome noise Tuesday night outside er window near Miss Crapser's ome.

"I heard a sound like someone ad bumped up against omething," she said. "Then I eard this heavy running, but I 1ought it was the cat and dog that re always running around. This 1orning I looked out the window nd someone had moved a garbage an in front of her window and it >oked like someone cut the :reen."

Mrs. Nathan said she often saw liss Crapser, a frail figure with ray hair, waiting in front of her house.

"She'd be out waiting for someone to pick her up and take her wherever it was she went," she said.

Miss Crapser lived alone, Bowles said, in her clean four-room apartment packed with curios, boxes, papers, old pictures, newspapers, and other memorabilia. The chief said detectives spent most of the day Wednesday sifting the woman's belongings, trying to see if some items might be missing or clues left to the identity of her killer.

The people who last saw Miss Crapser alive were her only known friends, Bowles said.

The couple had taken Miss Crapser to bingo Tuesday night, and dropped her off at her home at 11:20 p.m. and watched her walk up the steps, open the door, and step inside, the chief said.

Whether someone was waiting inside or broke in later is not clear yet, police said.

Parishioners of St. Joseph's Church said they did not know Miss Crapser well. Mrs. Charles Juras, who was at the bingo game that night, said she did not remember Miss Crapser winning.

The only other tenants in the building where Miss Crapser lived were two women, who told police they heard nothing unusual the night of the murder.

## No leads reported in slaying

City of Poughkeepsie Police detectives have found no substantive leads yet in their investigation of the suffocation slaying of a 92-year-old city woman, they said today.

The woman, Miss J. Emma Crapser, was found dead Wednesday lying on her kitchen floor. She had been bound and gagged.

An autopsy has revealed that the gag smothered the elderly woman, who lived alone in her tiny North Hamilton Street apartment, police said.

Law enforcement authorities said Thursday afternoon that the gag was in fact a scrap of cloth which had been jammed halfway down the woman's throat.

**Friday, June 17, 1977**