UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DEWEY R. BOZELLA,

                         Plaintiff,

      -against-

THE COUNTY OF DUTCHESS; THE CITY OF
POUGHKEEPSIE; WILLIAM J. O'NEILL; AND
ROBERT J. DEMATTIO,

                        Defendants.
-------------------------------------------------------------x

**10 CIV 4917**

## MEMORANDUM OF LAW

Burke, Miele & Golden, LLP
*Attorneys for Defendants Dutchess*
*County and William J. O'Neill*
40 Matthews Street, Suite 209
Post Office Box 216
Goshen, New York 10924
(845) 294-4080

# TABLE OF CONTENTS

I.    Standard of Review ...................................................................................... 1

      A. Malicious Prosecution ........................................................................ 4

      B. Malicious Abuse of Process ............................................................... 4

      C. Suppression of Exculpatory and Impeachment Evidence ................. 5

      D. Failed to Investigate Leads ................................................................ 5

II.   William O'Neill is Entitled to Absolute Immunity ..................................... 5

III.  *Brady* Violations .......................................................................................... 10

      A. Limits of the Prosecution's Duty under *Brady* ................................ 11

            I.    The government is not required to make available all evidence in its file ...... 11

            II.   The government need not disclose evidence available to Defendant from other sources such as public records ............................................................. 12

            III.  Evidence is not suppressed if the defendant knew or should have known ...... 13 of the favorable evidence

            IV.   The government need not disclose favorable witnesses' actual statements .... 14

      B. Materiality ......................................................................................... 14

IV.   O'Neill is Absolutely Immune from the Conspiracy Claim ....................... 15

V.    No Plausible Cause of Action is Alleged Against Dutchess County ........... 15

      Conclusion       ......................................................................................... 17

## TABLE OF CASES

*Adickes v. S.H. Kress & Co.,*
398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ............................................17

*Ashcroft v. Iqbal,* ---U.S.---, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...........................1, 2

*Barrett v. United States,* 798 F.2d 565, 571-72 (2d Cir. 1986) ............................................6

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65 ......................1, 2

*Belot v. Wieshaupt,* 1997 WL 218449 *7 (S.D.N.Y. Apr. 29, 1997) .................................7

*Bernard v. County of Suffolk,* 356 F.3d 495, 506 (2d Cir. N.Y. 2004)................................9

*Bivens v. Six Unknown FBI Narcotics Agents,* 403 U.S. 388 ...........................................2

*Buckley v. Fitzsimmons,* 509 U.S. 259 (1993)........................................................4, 5, 8, 9

*Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir. 1995) ..................................16

*Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir. 1994) ...................................................................4

*Cousin v. Small,* 325 F.3d 627, 646 (5th Cir. 2003) .............................................................6

*Crews v. County of Nassau,*
2007 WL 4591325 at *15 n. 15 (E.D.N.Y. Dec. 27, 2007) ...............................................7, 8

*Deskovic v. City of Peekskill,* 2009 U.S. Dist. LEXIS 71911 at *30 (S.D.N.Y. 2009)...6, 7

*Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir. 1994) ............................................................6, 8, 15

*Easton v. Sundram,* 947 F.2d 1011, 1017 (2d Cir. 1991) .....................................................4

*Genzler v. Longanbach,* 410 F.3d 630, 639 (9th Cir. 2005)..................................................6

*Hill v. City of New York,* 45 F.3d 652, 660-62 (2d Cir. 1995) .............................................8

*Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir. 1995)..................................................9

*Imbler v. Pachtman,* 424 U.S. 409, 430-31 (1976) ......................................................5, 8, 9

*Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2nd Cir. 1991).......................................3

*Krause v. Bennett,* 887 F.2d 362, 371-72 (2d Cir. 1989) ....................................................9

*KRL v. Moore*, 384 F.3d 1105, 1111 (9th Cir. 2004) ............................................................6

*Kyles v. Whitley*, 514 U.S. 419, 437 (1995)...............................................................11, 14

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) .........................3

*Magglione v. Briggs*, 748 F.2d 116-118 (2nd Cir. 1984) .......................................................7

*Malley v. Briggs*, 475 U.S. 335, 343 (1986) ........................................................................7

*Monell v. Dept of Soc. Servs.*,
436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)....................................15, 16, 17

*Phillips v. Corbin*, 132 F.3d 867, 869 (2d Cir. 1998).........................................................9

*Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) ......................................9

*Price v. Thurmer*, 514 F.3d 729, 732 (7th Cir. 2008).......................................................12

*Russell v. Smith*, 68 F.3d 33, 35 (2d Cir. 1995)................................................................4

*Savino v. City of New York*, 331 F.3d 63, 76-77 (2d Cir. 2003)..........................................4

*Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ...............................5, 9, 10

*Smith v. Garretto*, 147 F.3d 91 (2d Cir. 1998) ...................................................................8

*Strickler v. Greene*, 527 U.S. 263, 281 (1999) ................................................................14

*United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ..............11

*United States v. Bermudez*, 526 F.2d 89 (2d Cir. 1975) ....................................................12

*United States v. Brown*, 582 F.2d 197 ......................................................................13, 14

*United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)..............................................13

*United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982)................................................13

*United States v. Mercado-Irizarry*, 404 F.3d 497, 501 (1st Cir. 2005) ..............................12

*United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) .............................................12

*United States v. Ruggiero*, 472 F.2d 599, 604 (1973) ................................................11, 13

*United States v. Stewart*, 513 F.2d 957 (2d Cir. 1975)..............................................13, 14

*United States v. Torres*, 719 F.2d 549, 555 (2d. Cir. 1983) ...............................................10

*United States v. Zagari*, 111 F.3d 307, 320 (2d Cir. 1997) ................................................12

*Van de Kamp v. Goldstein*, ___ U.S. ___, 129 S.Ct. 855, 860 (2009) ......................6, 9, 11

*Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ............................................................10

*Ying Jing Gan v. City of New York*, 996 F.2d 522, 531 (2d Cir. 1993)...........................8, 9

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

DEWEY R. BOZELLA,

                                        Plaintiff,

          v.                                                     **MEMORANDUM**
                                                                 **OF LAW**

THE COUNTY OF DUTCHESS; THE
CITY OF POUGHKEEPSIE; WILLIAM J.
O'NEILL; AND ROBERT J. DEMATTIO,
                                                                 **10 Civ. 4917**

                                        Defendants.

------------------------------------------------------------------

  This memorandum is submitted on behalf of the defendants Dutchess County and

William J. O'Neill in support of their motion under Federal Rules of Civil Procedure 12(b)(6) to

dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted.

## I. Standard of Review

  Rule 12(b) (6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to

dismiss a case for failure to state a claim upon which relief can be granted. Fed.R.Civ.P.

12(b)(6). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff 's obligation to provide the grounds of his or her entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's

elements will not do. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65,

167 L.Ed.2d 929 (2007) (internal citations and quotations omitted). In 2009, the Supreme Court

expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face' " *Ashcroft v. Iqbal,* ---U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)

(quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show [n],' 'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To perform a proper analysis of a federal complaint to determine whether it will withstand a motion to dismiss under FRCP Rule 12(b)(6), we must study the substantive law underpinning the specific allegations found in the complaint. *Twombley* was a Section One, Sherman Act action alleging a conspiracy in restraint of trade and, although the *Twombley* complaint contained numerous allegations of specific facts which would establish, if proven, that the conspirators had engaged in parallel conduct and, although such evidence might circumstantially establish the existence of a conspiracy, because *Twombley's* complaint set forth only conclusory allegations of an illicit agreement, it failed to state a claim upon which relief could be granted. Parallel conduct is not forbidden by the Sherman Act, only collusive conduct is. There were insufficient, non-conclusory allegations of a conspiratorial agreement in the lengthy, detailed Twombley complaint for it to survive a motion to dismiss.

*Iqbal* presents a scenario closer to our own. *Iqbal* was a Pakistani Muslim arrested after September 11, 2001 and detained under restrictive conditions. Because of the harsh restrictions placed upon him, *Iqbal* filed a *Bivens* action against the Attorney General and the Director of the FBI, (*Bivens v. Six Unknown FBI Narcotics Agents*, 403 U.S. 388) among others. In *Iqbal*, one of the Supreme Court's observations was that the defendants before it – the Attorney General and the FBI Director – were entitled, for long standing policy reasons, to assert the defense of qualified immunity. Since the only allegations against the Attorney General and the FBI

2

Director were conclusory ones without any reference to a factual context, Iqbal's complaint was dismissed.

The prosecutorial actions of William O'Neill are protected by absolute, not qualified, immunity. This rule of law is the reason that Bozella's current attorneys strain to place Assistant District Attorney O'Neill's actions in the investigatory and not the prosecutorial category. As the analysis set forth below shows, this attempt is unavailing to Bozella.

In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). However, in this case, this Court may consider the record developed in the criminal trials of Dewey Bozella and in his CPL 440 proceeding. In particular the 440 record since plaintiff has attached to his complaint the 440 decision. This is so because, among other reasons, courts may also consider matters as to which they may take judicial notice. *See* Fed.R.Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding."). *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2nd Cir.1991).

It is highly impractical and inconsistent with Fed.R.Evid. 201 to preclude a district court from considering such publically disclosed documents when faced with a motion to dismiss. Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure. *Kramer,* 937 F.2d at 774.

Bozella claims that William O'Neill individually violated his constitutional rights under the Fifth and Fourteenth Amendment based upon his responsibilities for a Malicious Prosecution, Suppression of Exculpatory and Impeachment Material, Failure to Investigate Known Exculpatory Leads and Malicious Abuse of Process.

3

Each of these claims will be dealt with below all of which Mr. William O'Neill is entitled to absolute immunity.

### A. Malicious Prosecution

A claim of malicious prosecution in violation of a person's federal civil rights is analyzed under the same standard as a common law malicious prosecution claim. *Cook v. Sheldon,* 41 F .3d 73, 79 (2d Cir.1994); *Easton v. Sundram,* 947 F.2d 1011, 1017 (2d Cir.1991).

To state a claim for malicious prosecution under New York law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Russell v. Smith,* 68 F.3d 33, 35 (2d Cir.1995) As is set forth in the cases above, O'Neill is entitled to absolute immunity as to three of the four elements of Bozella's malicious prosecution claim.

### B. Malicious Abuse of Process

Malicious abuse of criminal process is actionable under Section 1983 where the elements under New York law are met. *Savino v. City of New York,* 331 F.3d 63, 76-77 (2d Cir.2003). New York law dictates that "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.* at 76.

O'Neill is also absolutely immune from Bozella's malicious abuse of process claim. A prosecutor's actions "which occur in the course of his role as an advocate for the State (as O'Neill was performing here) receive absolute immunity" *Buckley v. Fitzsimmons,* 509 U.S. 259,

4

273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

### C. Suppression of Exculpatory and Impeachment Evidence

Again our affidavit in support it reveals that plaintiff's allegation of suppression of the four categories of Brady material is false. Second, even if exculpatory or impeachment material was suppressed by O'Neill (it was not) he would be afforded absolute immunity.

### D. Failed to Investigate Leads

We discuss below under our treatment of the plaintiff's *Brady* claims, the precedence which establish that a prosecutor has no duty to follow any or all leads.

## II. William O'Neill is Entitled to Absolute Immunity

It is firmly established that "prosecutors are entitled to absolute immunity from suits for damages arising from activities that are 'intimately associated with the judicial phase of the criminal process.'" *Imbler v. Pachtman,* 424 U.S. 409, 430-31 (1976) In particular, "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York,* 424 F.3d 231,236 (2d Cir.2005) In *Shmueli* the Circuit found that the prosecutors were acting within the scope of their duties were absolutely immune for the initiation of the prosecution and for their post arrest/arraignment actions regardless of personal motivations. *Id* at. 236-239. In *Shumeli* the Circuit referred to *Buckley v. Fitzsimmons*, 509 U.S. 259, (1993)(indicating that absolute immunity protects a prosecutor against §1983 claims in the nature of malicious prosecution was based in part on the "common law tradition of immunity for a prosecutor's decision to bring a indictment whether he has probable cause or not.")   In the present case, there was an arrest warrant grounded in probable cause from a City of

Poughkeepsie Court Judge authorizing the arrest of Dewey Bozella. Bozella was brought before a Dutchess County Court and arraigned on murder charges. He was ultimately released prior to the required date for a preliminary hearing. The matter was presented to a Dutchess County Grand Jury in November of 1977 and the grand jury did not return an indictment.

The absolute immunity accorded to prosecutors "encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation. *Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986) (emphasis added). It is clear, "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate" are protected from liability by absolute prosecutorial immunity. *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir. 1994)

The line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw. The Circuit found in *Shumeli* that the critical moment in the spectrum of investigative versus prosecutorial actions was the arrest and arraignment. *Shumeli supra.* at 236 Still others have pointed to commencement of a grand jury proceeding *Deskovic* v. *City of Peekskill* 2009 U.S. Dist. LEXIS 71911, at *30 (S.D.N.Y. 2009)(KMK), *citing, Genzler v. Longanbach*, 410 F.3d 630, 639 (9th Cir. 2005); *KRL v. Moore*, 384 F.3d 1105, 1111 (9th Cir. 2004); *Cousin v. Small*, 325 F.3d 627, 646 (5th Cir. 2003). While most have resisted drawing any bright line rule related to the timing or stage of the criminal action, recognizing instead that "the timing of the challenged conduct is relevant, but not dispositive."*Id.* In a recent decision upholding and expanding prosecutorial immunity, a unanimous Supreme Court reaffirmed that a prosecutor is immune from all acts "underlying a 'decision to initiate a prosecution.'" *Van de Kamp v. Goldstein*, ___ U.S. ___, 129 S.Ct. 855, 860 (2009). Certainly the decision to initiate a prosecution cannot commence only with the initiation of grand jury proceedings. There must

necessarily be an evaluative period preceding that decision, where the prosecutor assesses

evidence and determines whether the case warrants the convening of a grand jury and, if so, what

charges will be presented to it. This evaluation and assessment of whether criminal charges

should be pursued is as closely associated with the judicial process as the grand jury proceedings

themselves, and "exposing the prosecutor to liability for the initial phase of his prosecutorial

work could interfere with his exercise of independent judgment at every phase of his work."

*Malley v. Briggs*, 475 U.S. 335, 343 (1986).

The analysis of whether a particular function is one of advocacy or investigation is

factually intensive and must be performed on a case by case basis. Certainly a prosecutorial

action is not investigative merely because a plaintiff calls it such. *Belot v. Wieshaupt*, 1997 WL

218449 *7 (S.D.N.Y. Apr. 29, 1997) ("[I]t is not enough for plaintiff to allege simply that

defendants 'performed investigative functions' (as the plaintiff has done here) or that they were

'involved' in the criminal investigation, plaintiff must also identify wrongdoing by defendants in

their investigative capacity"); *Crews v. County of Nassau*, 2007 WL 4591325 at *15 n.15

(E.D.N.Y. Dec. 27, 2007) ("[P]laintiffs' labeling various actions 'investigative' or

'administrative' in the complaint is of no moment."); *Deskovic*, 2009 U.S. Dist. LEXIS 71911

(S.D.N.Y. Aug. 12, 2009). In *Magglione v. Briggs*, 748 F2d. 116-118 (2nd Cir. 1984), the Circuit

not only found that the prosecutor was afforded absolute immunity for the presentation of a case

to the grand jury, it remanded the case to the District Court for a determination of awarding

attorneys fees to the defendants under §1988 as a prevailing party because of the frivolous,

unreasonable, and groundless nature of the plaintiff's claims.

"The Supreme Court has identified 'evaluating evidence and interviewing witnesses' as

falling on the absolute immunity side of the line, leaving 'searching for clues and corroboration'

that might lead to a recommendation for an arrest on the qualified immunity side." *Smith v. Garretto* , 147 F.3d 91, at 94 (2d. Cir. 1998) (*quoting, Buckley*, 509 U.S. at 273).

The types of actions which have been held to be prosecutorial, rather than investigative, include: (1) the decision to initiate prosecution, alleged use of false evidence and withholding exculpatory evidence at grand jury proceedings, *Hill v. City of New York*, 45 F.3d 652, 660-62 (2d Cir. 1995); (2) alleged coercing of witnesses to commit perjury at trial and withholding of exculpatory material from the defense, *Dory v. Ryan*, 25 F.3d 81 (2d Cir. 1994);(3)decision not to prosecute and advising police not to arrest suspect, *Ying Jing Gan v. City of New York*, 996 F.2d 522, 531 (2d Cir. 1993)

Moreover, "[c]laims based on an alleged *failure* to investigate come within the absolute immunity afforded by *Imbler*". *Crews v. County of Nassau*, 2007 WL 4591325 at *15 n. 15 (E.D.N.Y. Dec. 27, 2007)(citations omitted). *Imbler* first established that prosecutors were absolutely immune from suit under section 1983 for their acts in initiating and prosecuting a criminal action.  The allegations in *Imbler* are similar to those here – it was that the prosecutor relied on evidence that he knew or should have known to be false while suppressing potentially exculpatory evidence, the criminal case against the plaintiff significantly relied on the testimony of a witness whose credibility was questionable at best, and the prosecutor engaged in a conspiracy to convict plaintiff. *Imbler v. Pachtman*, 424 U.S. 409, 411-16 (1976).  Since *Imbler*, plaintiffs bringing a section 1983 claim against a prosecutor, in order to overcome this immunity, must identify actions by the prosecutor that are outside the realm of the traditional prosecutorial function.

Here, this action challenges the William O'Neill's evaluation of evidence and presentment to the grand jury, which, as is well established, is a prosecutorial and not an

8

investigative function. He is afforded absolutely immunity even if exculpatory evidence is suppressed (it was not here) or presented perjured testimony to the grand jury (which also did not occur). It is settled that the decision to seek an indictment or to prosecute, as well as the selection of the actual charges contained in the indictment are protected by absolute immunity. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 531 (2d Cir. 1993), *citing Imbler*, 424 U.S. at 426-428. *See also Buckley*, 509 U.S. at 274; *Van de Kamp*, 129 S.Ct. at 860; *Bernard v. County of Suffolk*, 356 F.3d 495, 506 (2d Cir. N.Y. 2004); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995).

This analysis does not change even though the first Bozella grand jury "no billed" the matter. The City of Poughkeepsie police had probable cause to arrest Bozella as was evidence by the City Court's issuance of an arrest warrant and the "grand jury's refusal to indict does not establish a lack of probable cause to arrest." *Phillips v. Corbin*, 132 F3d. 867,869 (2d. Cir. 1998) *see also, Krause v. Bennett*, 887 F2d. 362, 371-72 (2d. Cir. 1989). The decision to seek an indictment and re-present the Bozella case to a second grand jury, after receiving permission from the Court, is also protected by absolute immunity.

Plaintiff complains that the District Attorneys' office made deals with the Smith brothers and Moseley. In the complaint plaintiff alleges that it was Assistant District Attorneys D. James O'Neil and Mark Whalen who made these deals. Obviously, a decision not to prosecute or enter in a cooperation agreement with a co-defendant are prosecutorial functions that are afforded absolute immunity. *See i.e., Ying Jing Gan v. City of New York*, 996 F.2d 522, 531 (2d Cir. 1993). "[A] defendant's motivation in performing such advocacy functions as deciding to prosecute is irrelevant to the applicability of absolute immunity." *Shmueli v. City of New York*,

424 F.3d 231, 237 (2d Cir. 2005) (citations omitted). There is nothing improper with making an agreement with a criminal to secure his or her testimony against another criminal.

Moreover, plaintiff complains that William O'Neill is responsible for the actions of Assistant District Attorneys James O'Neil and Mark Whalen for their involvement in pursuing Moseley's truthful testimony. But, § 1983 imposes liability only upon those who have actually caused a deprivation of rights. "Personal involvement of the defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d. Cir 1994). And even if making a deal with Moseley were wrongful, the plaintiff must provide proof of direct and personal involvement on part of the defendant William O'Neill for him to be held individually liable. No such showing was made.

## III. *BRADY* VIOLATIONS

The defendant's *Brady* claims are without merit, as all of the allegedly exculpatory information was either disclosed, available, immaterial or all three. A violation under *Brady* requires three components: First, that the evidence is suppressed; second, that it is exculpatory, and third, that it is material. Under the first prong, evidence is not suppressed where it is readily available to, or already in the possession of, the defendant. *United States v. Torres,* 719 F.2d 549, 555 (2nd Cir. 1983). This is especially true where a defendant and the state have the same access to the sought-after information. *Brady* does not require the government to turn over information which, with any reasonable diligence [the defendant] can obtain himself.

The second prong of *Brady,* whether the information is exculpatory, is obviously a case by case determination based on the specific facts involved.

The third prong, materiality, entails a determination of whether, had the information been provided defense counsel, there ". . . is reasonable probability the result of the proceeding would have been different . . ." . *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

As will be seen, all the *Brady* materials Bozella claims he was denied were actually given to him or were easily available to or already in the possession of defense counsel, and hence were not suppressed within the framework of *Brady*.

### A. Limits of the Prosecution's Duty under *Brady*

*I. The government is not required to make available all evidence in its file*

"[T]he prosecutor is not required to deliver his entire file to defense counsel." *U.S. v. Bagley*, 473 U.S. 667, 675 (1985). A requirement that the prosecutor disclose all "evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgments." *Id.* at 675 n.7."

The Supreme Court has never held that the Constitution demands an open file policy. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). "The purpose of the *Brady* rule is not to provide a defendant with a complete disclosure of all evidence in the government's file which might conceivably assist him in preparation of his defense, but to assure that he will not be denied access to exculpatory evidence known to the government but unknown to him." *U.S. v. Ruggiero*, 472 F.2d 599, 604 (1973).

If the prosecution is not required to make available all of the evidence in its file for a particular case, then it should also not be required to make available all of the evidence in its *other* case files. *See,Van de Kamp v. Goldstein*, ___ U.S. ___, 129 S.Ct. 855, 860 (2009).

(finding that a prosecutor's office is not required to have a cross-referencing system in place to cross reference *Giglio* material from different cases). Same result must apply here.    The prosecutor's advised Bozella's attorneys' of all of the *Brady* materials known to them. The fact that his trial attorneys never saw the Detective's file is of no moment. He knew of it's contents. He had the identity of all potentially helpful witness and the substance of their statements. He was entitled to no more.

   *II. The government need not disclose evidence available to Defendant from other sources such as public records*

Where the statement "was referred to in multiple reported cases before the start of [defendant's] trial, and could easily have been discovered by [defendant's counsel],... it is doubtful there is any *Brady* claim." *U.S. v. Mercado-Irizarry*, 404 F.3d 497, 501 (1st Cir. 2005).

"*Brady* cannot be violated if the defendants had actual knowledge of the relevant information or if the documents are part of public records and 'defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation.'" *U.S. v. Zagari*, 111 F.3d 307, 320 (2d Cir. 1997), *citing U.S. v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995).

Where an indictment "was a matter of public record readily available to [defendant's] lawyer,... the prosecution had no obligation to disclose it to the defense." *Price v. Thurmer*, 514 F.3d 729, 732 (7th Cir. 2008).

"Documents that are part of public records are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation." *U.S. v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995), *citing U.S. v. Bermudez*, 526 F.2d 89 (2d Cir. 1975), *cert. denied*, 425 U.S. 970 (1976).

*III. Evidence is not suppressed if the defendant knew or should have known of the favorable evidence*

"Evidence is not 'suppressed' if the defendant either knew... or should have known... of the essential facts permitting him to take advantage of any exculpatory evidence." *U.S. v. LeRoy*, 687 F.2d 610, 618(2d Cir. 1982), *citing U.S. v. Brown*, 582 F.2d 197 (2d Cir), *cert. denied*, 439 U.S. 915 (1978), and *U.S. v. Stewart*, 513 F.2d 957 (2d Cir. 1975). In *LeRoy*, the government was not required to disclose grand jury testimony where the defense was on notice of essential facts (e.g., that the witnesses "might have testified before the grand jury and that their statements might have supported the defendant's defense") that would have allowed him to call the witness to take advantage of any favorable testimony that the witness could have provided. *LeRoy*, 687 F.2d at 619. *See also U.S. v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988) (holding that "[t]he government has no duty actually to turn over grand jury testimony where the defendant knows of the witness' identity; that the witness 'might have testified before the grand jury'; and that '[the witness'] statements might have supported [the defendant's] defense'[,]" *citing LeRoy, supra*).

Similarly, in *U.S. v. Ruggiero*, 472 F.2d 599 (2d Cir. 1973), the prosecution did not disclose two witnesses' grand jury testimony that was favorable to the defense. However, the defendant Ruggiero knew the witnesses, where they could be found, and what they would likely say if asked to testify. The court held that, where the defendant is "on notice of the essential facts required to enable him to take advantage of ... exculpatory testimony[,]" there is no *Brady* violation. *Id.* at 604.

13

*IV. The government need not disclose favorable witnesses' actual statements*

The prosecution doesn't have to provide the defendant with a witness' actual statement. In *U.S. v. Brown*, 582 F.2d 197 (2d Cir. 1978), *cert. denied* 439 U.S. 915 (1978), the defense claimed that the prosecution committed a *Brady* violation by failing to disclose that the government's witness gave vacillating statements before trial.

In *U.S. v. Stewart*, a witness' statement that could have been favorable to the defendant was not given to the defense. However, the defense knew of the witness' identity and participation in the robbery 6 weeks before the trial and could have interviewed him or called him as a witness. The court found that the government was not required to make the witness' statement known to the defense:

**B. Materiality**

"[T]here is never a real Brady violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 289-90, *citing Kyles v. Whitley*, 514 U.S. 419, 434 (1995). In *Strickler*, the Court found that the evidence was favorable and was suppressed but that no Brady violation resulted because the defendant could not prove materiality. In this light, the statements of the four "unbiased witnesses" are of questionable materiality. They were-in any event-properly disclosed.

14

**IV. O'Neill is Absolutely Immune from the Conspiracy Claim.**

Count IV alleges a conspiracy claim against O'Neill and Detective Robert DeMattio for conspiracy.   Just as absolute immunity applies to other individual claims against O'Neill it applies to any conspiracy claim as well. *See, Dory v. Ryan,* 25 F3d. 81, 83 (2d. Cir. 1994)(prosecutor who allegedly conspired to present false evidence at trial was held to be absolute immune because prosecutorial immunity applies to "all actions relating to their advocacy," including conspiracies).

**V. No Plausible Cause of Action is Alleged Against Dutchess County**

"Under the decisions of the Supreme Court and [the Second Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving' force' is the policy or custom." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) The three attribution principles identified here-a policymaker, an official policy and the "moving force" of the policy-are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. Plaintiff Bozella's complaint alleges that the County maintained a policy and or practices of concealing, suppressing and withholding exculpatory and impeachment evidence and conducting constitutionally inadequate investigations and prosecutions. However, the only facts that the plaintiff points to attempt to support this claim are the purported *Brady* violations in his own case. Bozella complaint states no non-conclusory allegations to support this claim.

In order to maintain a *Monell* claim the plaintiff must establish: (1) policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the

15

~~municipality's lawmaking officers or by an official to whom the lawmakers have delegated~~
policy-making authority; or (2) a persistent, widespread practice of city officials or employees,
which, although not authorized by officially adopted and promulgated policy, is so common and
well settled as to constitute a custom that fairly represents municipal policy or (3)actual or
constructive knowledge of such custom must be attributable to the governing body of the
municipality or to an official to whom that body had delegated policy-making authority.

 Since Bozella's allegations against the County appear only to be in relation to his case he
does not allege that a custom is responsible for his harms. "Isolated violations are not the
persistent, often repeated constant violations that constitute custom and policy as required for
municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir
1995)(internal quotations and citation omitted). Bozella's complaint also does not contain
allegations from which an inference fairly may be drawn regarding a policy or custom. "The
court is not required to conjure up unpled allegations or construe elaborately arcane scripts to
save a complaint. Further, conclusory allegations or legal conclusions masquerading as factual
conclusions will not suffice to prevent a motion to dismiss." *Id.* at 975 Therefore, Plaintiff's
complaint lacks the policy element necessary to obtain relief under § 1983. *"Monell* and later
decision reject municipal liability predicated on *respondeat superior,* because the text of section
1983 will not bear such a reading.")

 In the complaint, plaintiff seems to allege that the County is vicariously liable for the acts
of William O'Neill and other unidentified assistant district attorneys under the doctrine of
respondeat superior. As explained above, such a theory is not permitted under Section 1983. See
*Monell,* 436 U.S. at 692, 98 S.Ct. 2018; *Sauers,* 1 F.3d at 1129. *Pembaur,* 475 U.S. at 482-83,
106 S.Ct. 1292 (fact that particular official-even a policymaking official-has discretion in

exercise of particular functions does not without more give rise to municipal liability based on exercise of that discretion; official must be responsible for establishing final government policy respecting such activity before municipality can be liable).

The Supreme Court has defined municipal customs that may give rise to Section 1983 liability as those discriminatory practices by city officials which are so "persistent and widespread" that they essentially have the force of law. *Monell*, 436 U.S. at 690-91, 98 S.Ct. 2018 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

Here, again the policy and custom complained off is solely related to plaintiff case. There is no other allegation to support a systemic, persistent and widespread practice to have the force of law. The complained of infractions are alleged to have been as of the actions of lower level non-policy making assistant district attorneys. *Monell* prohibits *respondeat superior* liability as alleged in plaintiff's complaint. The allegations as to the County must also be dismissed.

### Conclusion

Dewey Bozella's artfully crafted complaint fails to state a claim upon which relief maybe granted. Pursuant to 12(b)(6) it should be dismissed.

Respectfully submitted,

Michael K. Burke (MKB 7554)
Burke, Miele, & Golden LLP
*Attorneys for the Defendants William
O'Neill and County of Dutchess*

17