UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DEWEY BOZELLA

                   Plaintiff,

     -against-

THE COUNTY OF DUTCHESS AND
WILLIAM J. O'NEILL
                Defendants.
-------------------------------------------------------------X

10 CIV 4917 (CS)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF OF THEIR OBJECTIONS TO THE MARCH 13, 2012 DECISION OF MAGISTRATE JUDGE YANTHIS GRANTING DISCLOSURE OF CASE FILES CONTAINED IN PLAINTIFF'S AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Mr. Bozella seeks discovery of the entirety of nine closed Dutchess County District Attorney criminal case files in the hope of finding material evidencing a *Brady* violation similar to the one that he says occurred in his case because of an alleged unconstitutional policy, promulgated by the County, which he claims required the suppression of *Brady* material to a defendant unless it was "truly exculpatory". He seeks not only those materials that were sought, turned over, subjected to motion practice, court proceedings and judicial determinations as well as appeals during the criminal proceedings, but the entirety of the District Attorney's case file so that his counsel may now, many years after these cases were closed, supplant the determination of Criminal Courts, the Appellate Division and the Assistant District Attorney handling the case with his or her own subjective view of the evidence and "test" whether, by not disclosing a particular piece of evidence he may find within those files and that he subjectively believes would have been "favorable" to the guilt or innocence of the defendant, a *Brady* violation occurred, determine that such violation was similar to the one that allegedly occurred in his case,

and then that the non-disclosure of that evidence was done pursuant to an unconstitutional policy promulgated by the County. Despite a request from Judge Yanthis, Plaintiff's Counsel were unable to articulate what might be in these files that might be relevant to a ***Brady policy*** violation other than to say "just about the entire file." (3/13/12 T. p. 18 -21, p. 25 line 25) and to seek further support for disclosure by discussing the materiality element of a *Brady* violation. (3/13/12 T. p. 26 line. 3 – 11).

Defendants objected to this overly broad and irrelevant disclosure. Instead, Defendants requested that disclosure from these files be limited to the type of disclosure ordered by Judge Yanthis at the September 20, 2011 conference and further agreed to by the defendants, i.e. to provide *Brady* disclosure demands, responses, omnibus motions and opposition, court decisions, orders, trial transcripts, appellate briefs and appellate decisions.

On March 13, 2012, Judge Yanthis issue a directive granting disclosure of the entirety of the case files, subject to privilege and relevancy, notwithstanding his prior ruling from September 20, 2011 that limited such case file production as set forth in the annexed Declaration. Judge Yanthis' prior ruling is the correct one here, although it was issued with respect to discovery in connection with the plaintiff's now failed failure to train claim against the County with respect to Brady disclosure obligations. The issue at the heart of the failure to train claim is similar to the issue at the heart of plaintiff's unconstitutional disclosure policy claim; i.e. what was an ADA's understanding of her or his Brady disclosure obligation.

Defendants respectfully submit this memorandum of law in support of their objections, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, to the March 13, 2012 Decision of Judge Yanthis. Judge Yanthis' ruling will not lead to the discovery of evidence material and relevant to the claimed unconstitutional disclosure policy of suppressing *Brady* material unless it

was "truly exculpatory." Firstly, Plaintiffs seek discovery from nine case files spanning 14 years. The District Attorneys office handled numerous cases during that time period of which the case files requested are but a fraction.It is unclear how discovery of these case files is likely to lead to admissible evidence that establishes the existence, let alone the permanency, of such a policy. Secondly, even if Plaintiff finds a piece of evidence within those files that he subjectively believes was "favorable" and therefore should have been turned over, such a discovery, would only be the first step. Plaintiff would have to prove that the evidence was "material", that its non-disclosure had the probability to affect the outcome of the case and that it occurred as the result of an unconstitutional disclosure policy promulgated by the County. Thirdly, discovery of the entire case files will allow plaintiffs to launch a fishing expedition and allow him to replace the decisions made by the Assistant District Attorneys with their own subjective determinations and will require this Court, before any determination can be made that the undisclosed evidence is evidence of 1) a *Brady* violation and 2) evidence of a *Brady* violation similar to the one that allegedly occurred in Mr. Bozella's case, to review each of the criminal proceedings to assess whether or not the undisclosed evidence had the probability of effecting the outcome of the trial. And if this court was to conduct a review and make such a determination, any non-disclosed evidence would not be relevant to the issue of whether the non-disclosure was the result of an unconstitutional disclosure policy to only turn over only "truly exculpatory" material promulgated by the County.

What would be useful to the Plaintiff is what Judge Yanthis proposed in his September 20, 2011 ruling when he granted limited disclosure along the lines set forth in Defendants' Proposed Response to Plaintiff's Third Set of Requests for Demands for discovery of the Louis Taylor case files. Moreover, plaintiff has served an interrogatory seeking documents the

evidences the County's policy per *Brady v. Maryland* and its progeny. Judge Yanthis has ruled that the request was overbroad but directed that if there was "some type of memo that went out during the time period or some type of directive, anything of that nature", that should be produced. (3/13/12 Tr. P. 50, Line 9 - 10)And, Plaintiff intends to conduct multiple depositions of various Assistant District Attorneys among other witnesses.   Presumably counsel's questions will include those related to the ADA's understanding of their Brady disclosure obligations.

Permitting disclosure of the entirety of the case files will not result in evidence relevant to the Plaintiff's unconstitutional policy claim. Rather it will only allow Plaintiff to speculate that any document therein not disclosed was "favorable" and thus should have been disclosed. The law does not permit such speculation. Judge Yanthis' March 13, 2012 ruling should be overturned particularly because Plaintiff failed to articulate any basis warranting such disclosure, and because that ruling is contrary to Judge Yanthis' prior discovery determination setforth in his September 20, 2011 decision from which the Plaintiff did not appeal.

<u>STATEMENT OF FACTS</u>

For a statement of facts relevant to their objections, Defendants refer the Court to the Declaration of Michael K. Burke in Support of Defendants' Objections to the March 23, 2012 Decision of Magistrate Judge Yanthis granting the Plaintiff disclosure of the case files contained in the Plaintiff's Amended Complaint.

<u>ARGUMENT</u>

<u>POINT I</u>

<u>THE STANDARD OF REVIEW</u>

Rule 72(a) of the Federal Rules of civil Procedure provides, in relevant part, that "[a] magistrate judge to whom a pretrial matter not dispositive of a claim … of a party is referred to

hear and determine shall promptly conduct such proceedings ... and ..enter into the record a written order setting forth the disposition of the matter ... The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. Proc. 72 (a). As the Decision addresses discovery related matters, its review is subject to the dictates of Rule 72(a). See *Catskill Dev., L.L.C. v. Park Place Entertainment Corp.*, 206 F. R. D. 78, 86 (SDNY 2002).

The magistrate judge assigned to supervise discovery has discretion in resolving dispositive matters. His decision may be overturned when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Surles v. Air France*, No. 00 Civ. 5004, 2001 WL 1142231 at *1 (SDNY 2001). And, "an order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure". *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp.2d 70, 74 (NDNY 2000) (citations omitted).

POINT II

THE FEDERAL RULES OF DISCOVERY DO NOT EXTEND<br>SO FAR AS TO ALLOW FOR "FISHING EXPEDITIONS"

Pursuant to 26(b)(1) of the Federal Rules of Civil Procedure, as amended in 2000, provides in pertinent part:

> "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.   Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

As the court noted in *Surles*, supra, "the 2000 amendments, while not intended to alter dramatically the scope of discovery, were intended to make it "narrower than it was, in some meaningful way." *Surles*, supra at *1, n.3; see also *Collens v. City of New York*, 222 FRD 249, 252 (SDNY 2004). The amendments "were designed to 'focus [discovery] on the actual claims and defenses involved in the action,' and '[w]hen judicial intervention is invoked, the actual scope of discovery should be determined according to thereasonable needs of the action.'" *Collens*, supra at 252 citing Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes to 2000 Amendments. And, "while Rule 26(b) (1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a "fishing expedition" into actions or past wrongdoing not related to the alleged claims or defenses." *Collens*, supra at 253 citing, *Tottenham v. Trans World Gaming Corp.*, No. 00 Civ. 7697, 2002 WL 1967023, at *2 (SDNY June 21, 2002); *Surles v. Air France*, supra at *4 (Maas, M.J.) (stating that even under amended version of Rule 26(b)(1), courts "would routinely decline to authorize fishing expeditions"), aff'd *Surles*, *Spina v. Our Lady of Mercy Med. Ctr.*, No. 97 Civ. 4661, 2001 WL 630481 @ supra *2-3 (SDNY June 7, 2011) (citing text of Rule 26(b)(1).

As set forth in the Declaration in support of this application, Plaintiff's counsel was unable to articulate a reasonable basis for the production of the entirety of the case files as it relates to his claim of an unconstitutional policy. The information contained in these files, other than what the defendants have agreed to produce, will not lead to the discovery of admissible evidence relevant to the plaintiff's claim that his civil rights were violated as the result of an unconstitutional Brady disclosure policy pursuant to which all but "truly exculpatory" evidence was disclosed. The Plaintiff's position that "just about the entire file" (3/13/12 T. p. 25 line 25) might be relevant to a ***Brady policy*** in addition to a violation (3/13/12 Tr. P. 25 line 18 -21) was

the best answer counsel could give to Judge Yanthis when he asked for the basis of the need for complete disclosure of the files. It is respectfully submitted that discovery may not be based upon pure speculation and conjecture. See *Tottenham*, supra at *2.

POINT II

THE DECISION TO ALLOW DISCOVERY OF THE ENTIRE
CASE FILES IS AN ERROR THAT WILL RESULT IN
THE ABUSE OF THE DISCOVERY PROCESS
AND WILL NOT LEAD TO THE DISCOVERY OF EVIDENCE
RELEVANT AND MATERIAL TO THE CLAIMED UNCONSTITUTIONAL
BRADY DISCLOSURE POLICY

One of the major concerns in *Bell Atlantic Corp. v. Twombly, 550 U.S. 5441 (2007)* was the potential for discovery abuse. *Twombly* was an anti-trust conspiracy case against all of the "Baby Bells" born after the split-up of AT &T. In the initial *Twombly* District Court decision, Judge Lynch (whose decision was reversed by the Second Circuit and then adopted by the Supreme Court) noted that "allowing simple allegations of parallel conduct *to entitle plaintiffs to discovery* circumvents both §1's (of the Sherman Act) requirement of a conspiracy and Rule 8's requirement that complaints state claims on which relief can be granted."*Id.* at 181. (Emphasis added.) The potential for discovery abuse was an important consideration underpinning the *Twombly* decision. That potential exists every bit as much in a *Monell* claim as it does in an anti-trust conspiracy case.

As stated by the Court in *Weinstock v. Columbia Univ.*, 224 F.3d 33, 49 – 50 (2d Cir. 2000) in connection with a motion for summary judgment, but equally applicable to the scope of discovery of the case files, "Plaintiff would have us follow the advice of David Copperfield's mentor, the amicable Mr. Micawber, and let matters proceed in the hope that "something will turn up." Indeed, as noted by the Court in *Ashcroft v Iqbal*, 2008 WL 4063959, the Supreme Court in *Twombly* "was guided in part by concerns that discovery in antitrust cases is often

7

burdensome and costly, which – similar to Bivens cases – opens the door to abuses by plaintiffs." *Id.* at 14; citing*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1967 (2007). Thus, the *Iqbal* court "observed that 'it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the *potentially enormous expense of discovery* in cases with no 'reasonably founded hope that [discovery] process will reveal relevant evidence' ...'" *Iqbal*, supra at 14 (emphasis added); citing *Twombly* at 1967 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). (Emphasis added.)

Here, the plaintiff brings a 1983 *Monell* claim against a municipality grounded in a claim based upon a policy promulgated by the County, that the County's prosecutors had a restrictive view of their disclosure obligations under *Brady v. Maryland, 373 U.S. 83(1963). Brady* held that "the suppression of evidence favorable to an accused upon request violated due process where the evidence is material either to the guilt or to punishment." *Id.* at 87.

The plaintiff was tried twice for murder by Dutchess County prosecutors: in 1983 and in 1990. The status of the law concerning *Brady* during that time frame was to require disclosure of exculpatory material pursuant to a general request for information or even no request at all if it was likely to lead to a different verdict or judgment. See, for example, *U.S. v. Agurs*, 427 U.S. 97 (1976);*U.S. v. Bagley*, 473 U.S. 667 (1985). The Supreme Court in *Bagley*, articulated that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682. "Reasonable probability was defined as "a probability sufficient to undermine confidence in the outcome" of the case. *Id.* at 682.However, it is well-settled that *Brady* did not "require the prosecution to disclose his entire file to defense counsel, but only to disclose exculpatory and impeachment material "that, if suppressed, would deprive the defendant of a fair trial." *Id.* at

108, see also *U.S. v. Bagley*, 473 U.S. 667, 675 (1985). And, in New York, at the time of the trials of the plaintiff, disclosure pursuant to *Brady* was articulated as evidence that is "truly exculpatory". *People v. Martin*, 240 AD.2d 5 (1st Dept. 1998). Indeed, multiple judicial departments in this state look to whether the evidence in question is "truly exculpatory" to determine whether disclosure was required for *Brady* purposes. See, for example, *People v. Crandall*, 38 AD3d 995 (3d Dept. 2007); *People v. Carter*, 258 AD2d 409 (1st Dept. 1999), and *People v. Davis*, 168 Misc.2d 26 (Co. Ct., Nassau Co, 1995) ("would tend to exculpate").

Plaintiff wants access to complete case files in order to discover if there have been *Brady* **violations** in those cases that might establish that the Dutchess County DA had an unconstitutional policy with regard to its disclosure obligations.  Plaintiff's desires here parallel, in many respects, what the *Twombly* plaintiffs wanted to do in view of myriad alleged examples of parallel conduct among ostensible competitors.  The *Twombly* plaintiffs wanted to discover evidence of the existence of an anti-competitive agreement in the files of the Baby Bell defendants. The Court held in *Twombly* that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Twombly*, supra at 556.

Here, plaintiff wants access to complete case files from the period of 14 years in order to search for undisclosed data so that he may subjectively determine that such evidence should have been disclosed but was not because of the existence of an unconstitutional policy that required only the disclosure of evidence if it was "truly exculpatory," (which happens to be the correct standard at the time). Plaintiff's current factual basis for the claim that there may be evidence of *Brady* violations found in those files pursuant to a County policy in those cases is found in a single affidavit that includes the "truly exculpatory" language (see, 3/13/12 Tr. P. 25 line 12-14, see also Amended Complaint). A review of the allegations in the Amended Complaint reveal that

9

the other affidavits relied on in support of the allegations in their Amended Complaint do not contain this language.

As set forth herein, there is more to *Brady* than the question of "favorable evidence". "Rather, evidence is material in the Brady context only if 'its suppression undermines confidence in the outcome of the trial. *U.S. v. Coppa*, 267 F.3d 132 (2d Cir. 2001); citing *Bagley*, supra at 67.Thus, not every piece of data that arguably diminishes the prosecution's theory is *Brady* material. Rather, only evidence that "undermines confidence in the outcome" is material. And, the prosecutor's pre-trial analysis of that which must be disclosed under *Brady* includes the judgment call of whether or not some information is both "favorable" and "material". Open file discovery is not to this day required and it was not required in 1983 and 1990. See, for example, *U.S. v. Caro Muniz*, 406 F.3d 22 (1st Cir. 2005) citing *Weatherford v. Bursy*, 429 U.S. 545 (1977). The judgment as to what is *Brady* material is a matter of prosecutorial discretion. See *Van de Kamp v. Goldstein*, 555 U.S. 335 (2005). The line prosecutors' responses here are in accord with the decisions of the New York Court of Appeals and the United States Supreme Court set forth herein.

Judge Yanthis properly limited disclosure from case files in his September 20, 2011 order. His decision on March 13, 2012 to permit open discovery of these case files is contrary to the law and will not lead to the discovery of evidence admissible at trial. Additionally, from a practical matter, allowing plaintiff to achieve that which he seeks, will require this court to conduct ten mini-trials to "test" the materiality of each piece of evidence that Plaintiff's counsel subjectively believes to be "material" and determine whether there is sufficient probability to conclude that the outcome of the trial would have been different had it been disclosed. It is entirely unclear how, in the event that the court is willing to conduct such a process, it will lead

10

to evidence admissible at trial that such non-disclosure was the result of a policy promulgated by the County with respect to the suppression of Brady material unless it was "truly exculpatory." As set forth by the court in *Van de Kamp*, supra, citing *Imbler v. Pachtman*, 424 U.S. 409, 425-426 (1976), "defending prosecutorial decisions, often years after they were made, could impose 'unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.'" *Van de Kamp*, supra at 348,

It is respectfully submitted, that without more than a vague need for "just about everything in the file" to justify what types of documents might be revealed that would be relevant to Plaintiff's asserted *Monell* claim, Judge Yanthis' decision to allow complete file disclosure is contrary to the law.  It is respectfully submitted that Judge Yanthis' ruling should be overruled by this court. Instead discovery should be limited to the case files as set forth in Defendants' Proposed Response to Plaintiffs' demands together with the trial transcripts from those case files in accordance with the guidelines established by Judge Yanthis at the September 20, 2011 conference.  Alternatively, the Defendants would suggest that this Court conduct an *in camera* review of the case files to determine the scope of their contents' production beyond what was has been agreed to by the Defendants' subject to Defendants' assertion of privilege and make a determination as to whether complete disclosure is warranted.

CONCLUSION

For the reasons set forth herein and in the annexed Declaration, it is respectfully requested that this Court review the March 13, 2012 decision of Magistrate Judge Yanthis with respect to the production of the case files and upon review limit the production of documents to the guidelines established by Judge Yanthis on September 20, 2011 and as agreed to herein by the Defendants.

Dated: March 29, 2012
      Goshen, New York

Michael K. Burke, Esq.
Burke, Miele & Golden, LLP
*Attorneys for County of Dutchess and*
*William J. O'Neill*
40 Matthews Street, Suite 209
Post Office Box 216
Goshen, New York 10924
(845) 294-4080