

## BURKE, MIELE & GOLDEN, LLP

40 MATTHEWS STREET
SUITE 106
POST OFFICE BOX 216
GOSHEN, N.Y. 10924
(845) 294-4080
FAX (845) 294-7673

PATRICK T. BURKE
ROBERT M. MIELE *
RICHARD B. GOLDEN
MICHAEL K. BURKE

DENNIS J. MAHONEY, III
KELLY M. NAUGHTON**
JENNIFER S. ECHEVARRIA***
PHYLLIS A. INGRAM ****

ROCKLAND COUNTY OFFICE:
499 ROUTE 304
NEW CITY NY 10956

PLEASE REPLY TO
GOSHEN OFFICE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/27/13

February 26, 2013

Hon. Cathy Seibel, District Court Judge
Southern District of New York
300 Quarropas Street–Room 218
White Plains, New York 10601-4150

Via Fax – 914-390-4278 and Mail
15 pages

Dear Judge Seibel,

    This is in response to Dewey Bozella's request for a pre-motion conference prior to a proposed partial summary judgment motion based upon collateral estoppel flowing from a 2009 decision of a Dutchess County County Court on Bozella's motion for a new trial (CPL 440). It is respectfully submitted that collateral estoppel does not apply here; Bozella's proposed motion is inappropriate. Some background: Emma Crapser was murdered on June 14, 1977. On March 31, 1983, Bozella was indicted under two theories: intentional and felony murder. On December 3, 1983, he was found guilty of felony murder, only. In 1990, Bozella's conviction was reversed because of a *Batson* violation. He was re-convicted on December 13, 1990. In December of 2009, thirty-two years after Ms. Crapser's murder and twenty-six years after Bozella's first conviction, Bozella's new lawyers, Wilmer Hale, filed a successful motion for a new trial which, because of the passage of time, the Dutchess County District Attorney's office did not pursue. The subject civil rights suit ensued. There are several reasons Bozella's proposed motion is inappropriate.

    For collateral estoppel to apply "there must be an identity of issue which has been decided in the prior action and is decisive of the present action', and (2) there must have been a full and fair opportunity to contest the decision said to be controlling." *Mitchell v. Keane*, 974 F.Supp. 332, 339 (SDNY 1997). Collateral estoppel applies "only if it is quite clear that these requirements have been satisfied lest a party be 'precluded from obtaining at least one full hearing on his or her claim'" *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995). As to the second prerequisite, Dutchess County was not a party to Bozella's 440 motion. It did not have a full and fair opportunity to litigate the issue before the 440 Court. "When prosecuting a criminal matter a District Attorney . . . represents the State of New York and not the County." *Baez v. Hennessy*, 853 F.3d 73 (2d Cir. 1988). And, the relationship between a municipality and a district attorney is not one of privity. *Jenkins v. City of New York*, 478 F.3d 76 (2007), citing *Brown v. City of New York*, 60 NY2d 897 (1983). *Peo ex rel Dowdy v. Smith*, 48 NY 2d 477 (1979) cited by Bozella is limited to its peculiar circumstances. The *Dowdy* Court said: "As to the identity of parties we encounter no difficulty in concluding, that *for present purposes* the People as prosecutors in the criminal action stood in sufficient relationship with the Division of Parole in the parole proceeding to meet the requirements of the doctrine in this regard." id. at

482, emphasis added. Neither the "purposes" present before the *Dowdy* court nor the relationship between the parties sought to be bound by collateral estoppel are present here. *Dowdy* is inapplicable. See also, *Peo. ex rel Matthews v. Greenberg*, 58 NY2d 196 (1983). Here, the District Attorney's office and the County "are separate entities which do not stand in sufficient relationship to one another to warrant invocation of collateral estoppel." *Doe v. City of Mount Vernon*, 156 AD2d 329 (2d Dep't 1989). And, the issues which pertain to Dutchess County in this case were not before the 440 court. Here, the preliminary issue is whether or not, as the result of an unconstitutional policy, Bozella was denied access to *Brady* materials. The 440 Court did not make that determination; that was not an issue before the 440 court. There are four determinations which Wilmer Hale claims were made by the 440 Court which bind Dutchess County. They are the "four categories of ("*Brady*") evidence which they claim "were not disclosed to Bozella: "(i) pages of a police report and related voluntary witness statements; (ii) a statement by Saul Holland to defendant William J. O'Neill and two detectives on or about February 23, 1978; (iii) two police reports regarding the August 2, 1977 attack of Estelle Dobler; and (iv) an oral statement to detective Pete Murphy by Ms. Crapser's neighbor stating she heard loud noises that sounded like one or more garbage cans being moved in an alley adjacent to Ms. Crapser's home on the night of the murder." (This last alleged failure cannot be attributable to the County under any circumstances.) Wilmer Hale letter 4/1/13 letter at 2. Presciding for the moment from the infirmities of the findings, the case Wilmer Hale uses to support the proposition that these findings are binding here is not helpful to it. *Benjamin v. Coughlin*, 905F2d 571 (2d Cir. 1990) involved related disputes in which the same defendants were sued in both the state and federal courts and in which those same defendants "(i)n the district court, presented much of the same evidence that they presented in the state courts . . ." 905 F2d at 576. That is not the case here. The issues of "whether *Brady* material was disclosed to Bozella prior to the 1990 re-trial *and* whether the non-disclosure was material to the 1990 verdict" have not been fairly resolved.

### The *Brady* disclosures not revealed to the 440 court by Wilmer Hale[1]

Q. We went through earlier today the two *Brady* letters that you received from the D.A.'s office prior to the '83 trial? (Exs. A & B).
A. You call—I don't call them *Brady* letters. There was a letter dated June 14th, 1983 and June 21st, 1983.
Q. Those two letters which you agree you received prior to the 1983 trial, you did not show Judge Rooney. They were not part of your affirmation in support of the motion?
A. Correct.

\*   \*   \*

Q. And you didn't think it would be relevant to Judge Rooney's decision for him to learn the materials that were disclosed to you prior to the 1983 trial?
A. Again, I am submitting an affirmation as trial counsel . . . Okay? I don't make the lead argument . . . I don't put it all together. That's not my job. I was a fact witness here, okay, and I believe these to be the relevant facts—that I was never provided with certain materials which came under the rubric of a *Brady*.

---

[1] Examination of Mickey Steiman, Esq., Bozella's trial counsel

> Q. Okay. And my question again is, and it's a simple one, did you provide Judge Rooney (the 440 Court) with the materials you received from the District Attorney's office prior to the 1983 trial?
>
> A. No.

In the context of the claims made in this case, it was deceptive not to have advised Judge Rooney of the 1983 *Brady* disclosures. In *In re Sony Corp. SXRD Rear Projection Television Marketing, etc.* 09-MD-2101 (RPP), the plaintiffs' attorneys truncated a two-sentence statement of a confidential informant leaving a false impression of what the informant said. Judge Patterson found that to be "objectively unreasonable" (Op & Order, 7/22/10, p. 22). Bozella's issue before the County Court (and here) was that he never received important impeachment evidence which he could use to diminish the credibility of two central prosecution witness: Lamar Smith and Wayne Moseley. Both Bozella's trial attorney and his current attorneys eliminated any reference to the *Brady* disclosures which had occurred from the 440 proceeding. Bozella's attorneys should have advised *this* Court of the full *Brady* disclosures which were made to their client.

Also, prior to Bozella's 1983 trial, ADA William J. O'Neill delivered to Bozella's attorney the City of Poughkeepsie Police Department's file and other records under his CPL 240.45 obligation, the *"Rosario"* rule. (Ex. C) This was unknown to the 440 Court. At the time of the 440 Motion, the District Attorney did not have access to the entire file of the Crapser murder case. ADA Edward Whitesell, who responded to Wilmer Hale's 440 Motion in 2009[2], was asked at his deposition: ". . . were there any obstacles which you encountered to getting a full understanding of the underlying circumstances?" (101:21-102:3). He responded: ". . . The last obstacle and the biggest was . . . I didn't get the whole file from records management (103:19-21) . . . what was missing . . . was the vast majority of the motion practice from the '83 case (105:20-22) (and) (t)here was a three or four page handwritten series of notes captioned at the top *Rosario* (Ex. C) . . . Those are the things that would have mattered to me . . . that I became aware of afterwards." (109:12-23). By the time Wilmer Hale filed its amended complaint, the *Rosario* disclosures were known. Wilmer Hale was asked, under the Safe Harbor provisions of Rule 11, FRCP, to withdraw its complaint. We reiterate that request at this time.

At the appropriate time we would welcome a Summary Judgment motion. We are preparing one now but discovery is not quite complete. At the time of a full submission, we will be seeking summary judgment in favor of Dutchess County and William J. O'Neill and Rule 11 sanctions against Wilmer Hale.

Very truly yours,

*Patrick T. Burke*

Patrick T. Burke

PTB:vc
c: Wilmer Hale—via e-mail *ross.firsenbaum@wilmerhale.com*
    via e-mail *peter.macdonald@wilmerhale.com*

---

[2] By this time William J. O'Neill had retired and D. James O'Neil had left the DCDAO for private practice.

**EXHIBIT A**



## THE DISTRICT ATTORNEY OF DUTCHESS COUNTY
### COURTHOUSE
### POUGHKEEPSIE, N. Y. 12601
### (914) 431-1940

JOHN R. KING
DISTRICT ATTORNEY

June 14, 1983

Mickey Steiman
Steiman and Steinberg
136 Parker Avenue
Poughkeepsie, N. Y.   12601

Re: People vs. Dewey Bozella – Brady Material

Dear Mr. Steiman:

Please find enclosed herewith Brady Material in the above-captioned case.

1. Grand Jury testimony – Lily May Harris – November 16, 1977.

2. Testimony of Terralyn Brown – November 16, 1977.

3. Testimony of Cornelius Moseley – November 16, 1977.

4. Police statement – Terralyn Brown – July 8, 1977.

5. Testimony of Viola Green – September 1977 – Grand Jury.

6. Testimony of Wayne Moseley – September 1977 – Grand Jury.

7. Testimony of Joan Moseley – September 1977 – Grand Jury.

8. Tape recorded statement given by Elbert Pittman to City of Poughkeepsie Police Department – March 1983. (tape is in possession of James Brands)

9. On April 11, 1983, I was advised by Edward Gable, Esq. that he had information regarding a Madeline South. Mr. Gable told me that Elbert Pittman's sister had had a conversation with Madeline South. During that conversation Madeline South told her that Donald Wise admitted to, during the Crapser murder. On April 11, 1983, I conferred with Madeline South that on the night of the Crapser murder, Donald Wise, Wayne Wise, Anthony Wise, had gone to the house to do as she called a movie. A movie was to refer to a murder. Shortly thereafter they returned to the house with a pocketbook which they said belonged to the old woman. Mrs. South said that the next day the Wises took her to the residence, pointed it out and said that was where they had done the murder. The residence which they pointed out was

Subject to Federal Rule of Evidence 502

WH-BOZELLA-0006280

Confidential Treatment Requested by
Wilmer Cutler Pickering Hale and Dorr LLP

the residence of Emma Crapser. When Madeline South was called before the Grand Jury, a few days later, she repeated the same story to me in my office before taking the oath.

10. Jim O'Neil notes, dated February 16, 1983.

11. Jim O'Neil notes, dated February 23, 1983.

12. Jim O'Neil memo, dated February 25, 1983.

13. Autopsy report.

14. New York State Police Laboratory Report.

15. Testimony of Sonya Williams.

16. Letter to Federal Bureau of Investigation, dated May 3, 1983.

17. Federal Bureau of Investigation Report, dated July 1977.

18. Case submission report, dated June 28, 1977.

19. Case Submission report, dated June 17, 1977.

20. Letter to New York State Police laboratory, dated August 23, 1977.

21. Letter to Federal Bureau of Investigation, dated June 24, 1977.

22. Letter to Federal Bureau of Investigation, dated August 11, 1977.

23. Letter to Federal Bureau of Investigation, dated November 29, 1977.

24. Federal Bureau of Investigation report, dated September 14, 1977.

25. Federal Bureau of Investigation report, dated March 17, 1978.

26. Federal Bureau of Investigation letter, dated December 15, 1977.

27. The City of Poughkeepsie Police interviewed Cecil Carpenter, 15 North Hamilton Street, second floor, during 1977. Mr. Carpenter said that he was going to play basketball at the Morse School on Mansion Street. He said he stayed ther until 9:30 -9:45 p.m. and left. When Mr. Carpenter said he entered 15 North

Subject to Federal Rule of Evidence 502

WH-BOZELLA-0006281

Confidential Treatment Requested by
Wilmer Cutler Pickering Hale and Dorr LLP

Hamilton Street, he observed absolutely nothing outside. The outer door was locked. He unlocked it with his key and went in, the lights were out at that point. He said that he locked his door and went upstairs to his apartment. He said that he got to the house at approximately 10:00p.m.

28. In June of 1977, Elbert Pittman was arrested by the City of Poughkeepsie Police Department. He denied any knowledge whatsoever of the crime. He said that he never participated with Dewey Bozella and Dwayne Moseley in a murder, he said he knew nothing of the burglary.

29. The police interviewed Cheryl Ellerby who also resides at 15 North Hamilton Street. She confirmed the statement of Cecil Carpenter that he came home at 10:00p.m.

30. The City of Poughkeepsie Police also interviewed Linda Miller who was alleged to have been upstairs in the second floor apartment over 15 North Hamilton Street. Linda Miller says that she heard nothing from the downstairs apartment on the evening in question.

31. The City of Poughkeepsie Police interviewed Christopher Gill, 210 Main Street, Poughkeepsie, N.Y., apartment 1F, during June of 1977. Mr. McGill said that on June 14, 1977 He recalled being in the vacinity of Main Street and North Hamilton Street. He said that he did not see LeMar Smith, Stanley Smith, Elbert Pittman, Dewey Bozella or Wayne Moseley that evening.

32. The police intervied Wanda Elting, 225 Smith Street, Apartment 5C4. Mrs. Elting told the police that LeMar and Stanley Smith had stayed at her apartment the evening of June 14, 1977. She said that they arrived between 6:00 and 6:15p.m. and stayed there until 11:00p.m.

33. On June 25, 1977, LeMar Smith and Stanley Smith were interviewed by the City of Poughkeepsie Police Department. They denied any involvement of knowledge in the homicide. The Smiths repeated this statement to the police on numerous ocassions.

Very truly yours,

JOHN R. KING
District Attorney

By _____
D. James O'Neil

DJO:cr

Subject to Federal Rule of Evidence 502

Confidential Treatment Requested by
Wilmer Cutler Pickering Hale and Dorr LLP

WH-BOZELLA-0006282

**EXHIBIT B**



## THE DISTRICT ATTORNEY OF DUTCHESS COUNTY
### COURTHOUSE
POUGHKEEPSIE, N.Y. 12601
(914) 431-1940

JOHN R. KING
DISTRICT ATTORNEY

June 21, 1983

Mickey Steiman
Steiman & Steinberg
136 Parker Avenue
Poughkeepsie, NY  12601

     Re:  People v. Dewey Bozella

Dear Mickey:

  This letter follows our conversation of Tuesday, June 14, 1983 regarding the above defendant. At that time, I turned over numerous items of Brady material. Those items are set forth on a letter dated June 14, 1983. In addition, I advised you of the following facts.

  (1) Wayne Moseley was not indicted for the crime of murder because he was a juvenile at the time. This was one reason why he was not prosecuted.

  (2) Lamar and Stanley Smith both told the police originally that they knew nothing of the crime. Those statements may have been recorded on tapes that possibly are now missing.

  (3) I rejected the defense's request to name the confidential informant who was told by the defendant during October of 1982, certain facts regarding the crime. I conceded that this statement would only be used as a Harris statement and could not be used as direct proof. I advised you that there were no tape recordings during this conversation between the confidential informant and the defendant.

  (4) I advised you that the telephone call received at the City of Poughkeepsie Police Department should have been recorded. There is no tape at this time. The police advise me that the tape may have been erased.

  (5) I told you that Lamar Smith is living at 162 North Clinton Street in the City of Poughkeepsie, and Stanley Smith is living on Eastman Terrace. These two individuals were shown the photographs referred to in the waive notice.

Subject to Federal Rule of Evidence 502

Confidential Treatment Requested by

WH-BOZELLA-0006284

Mr. Mickey Steiman
June 21, 1983
Page 2

(6) I advised you that I would attempt to get any notes that Detective Enno Groth took during the time that he talked with your client. The substance of this statement is set forth in the Huntley notice already provided.

(7) I told you that Wayne Moseley is now living in the City of Poughkeepsie.

(8) I advised you that Elbert Pittman did not testify in the Grand Jury. I further advised you that Elbert Pittman gave an inculpatory tape to the City of Poughkeepsie Police Department in 1977. This tape is in the possession of James Brands, and will be turned over to you as soon as it is returned to me.

(9) I agreed to show you the photograph of Dewey Bozella which was shown to Lamar and Stanley Smith.

(10) I advised you that Leonard Dreideblis, a fingerprint technician with the Federal Bureau of Investigation, found a fingerprint of Donald Wise on a window leading into the bathroom of the Crapser residence. I told you that Madaline South mentioned the names of the Wise's as having committed this crime and that I subsequently sent the fingerprint to the Federal Bureau of Investigation.

(11) I advised you that Madaline South originally told me that the Wise's had committed the Crapser murder. I told you that she informed me of this at her apartment and again in the District Attorney's Office. I advised you that Madaline South then testified before the Grand Jury. I advised you that her testimony before the Grand Jury was not exculpatory.

(12) I advised you that I interviewed Anthony Wise and that he denied any knowledge of the Crapser murder or the fingerprint on the bathroom window.

(13) I told you that a fingerprint was taken from the front door to the residence. This fingerprint belonged to someone who lived upstairs over the Crapser residence.

(14) I told you that I would provide you with the criminal history of Elbert Pittman, Wayne Moseley, Lamar Smith and Stanley Smith.

(15) I advised you that Enno Groth can be located at Maneri's Tavern located at Route 9, Wappingers Falls, New York.

Subject to Federal Rule of Evidence 502

Confidential Treatment Requested by

WH-BOZELLA-0006285

Mr. Mickey Steiman
June 21, 1983
Page 3

(16) I told you that I would oppose your request for personnel records relating to Enno Groth. I told you that he did have some problems that I was aware of prior to the termination of his employment. I advised you that I indicated to the Grand Jury that Madaline South had made inconsistent statements to me prior to her testimony.

(17) I told you that the names of the expert witnesses which the People expect to call would be on the autopsy report, New York State Police Laboratory Report and the Federal Bureau of Investigation Report. I also advised you that the people might call Eugene Rooney of the City of Beacon Police Department, Investigator Jack Fox of the New York State Police and Dr. Michael Baden of the Suffolk County Medical Examiner's Office.

(18) I told you that the People claim that the defendant entered the apartment through the front door.

(19) I told you that I would provide you with the polygraph examination report relating to Elbert Pittman conducted by Nat Laurendi. I also told you that I would provide you with a report of the polygraph examination conducted by Investigator Thomas Samon.

(20) I advised you that there is direct evidence linking the defendant to this murder.

(21) I advised you that Sandra Williams would testify that she was standing on a corner near Mill Street and North Hamilton Street sometime during the month of June, and she would say that Anthony Wise, Wayne Wise, and Donald Wise walked in the direction of the Crapser residence.

(22) I advised you that James Grey had a conversation with Wayne Moseley relating to the murder. I said that a transcript had been prepared but that the police had up to this point been unable to locate the tape.

(23) I advised you that the defendant had made another statement to someone in the Dutchess County Jail. The first name of this person is William. I told you the complete substance of this statement and advised that I would file an amended Huntley notice.

Subject to Federal Rule of Evidence 502

Confidential Treatment Requested by

WH-BOZELLA-0006286

Mr. Mickey Steiman
June 21, 1983
Page 4

        Thank you for your consideration.

                              Very truly yours,

                              JOHN R. KING
                              District Attorney

                        By:
                              D. JAMES O'NEIL
                              Assisting District Attorney

DJO:pab

Subject to Federal Rule of Evidence 502

Confidential Treatment Requested by

WH-BOZELLA-0006287

**EXHIBIT C**

Rosario   11/22/83          Provided
                              to Mirken
                              Sherman
                              11/22/83

Depositions:
    J<sup>ms</sup> Gray    9/10/77
    Wanda Elting   6/27/77   2 pages
    Mildred White   6/15/77
    Christopher Whitaker   7/5/77   2 pages
    Curtis Carpenter   6/15/77
    Shirley Ellerbee   6/16/77
    Linda Miller   6/15/77   2 pages
    Cecil Carpenter   6/15/77
    Diedre Walker   6/15/77

GJ Testi:
    John White    77 + 83
    Evelyn Peterson   "
    Richard Sawyer   "
    Arthur Regula   "
    Eno Groth   "
    Frank McMahon -   83
    autopsy
    Lamar Smith    77 + 83   w/ waiver
    Stanley "       "        w/ waiver
    Wayne Moseley     "
    Peter J. Murphy    83
    Ray Lane     77 + 83

Police reports -
    Sawyer   6/15/77   2 pages
    Skelly   6/15/77   8 pages
    Regula   6/15/77   15 pages
    Regula   6/15/77   9 pages
    Regula   6/15/77   4 pages
    McCaffrey   6/30/77   2 pages
    Siegel   6/30/77   1 page
    Slater   6/15/77, 6/30/77, 7/1/77  2 reports
    Rooney   6-16-77   2 pages

DA file:
    Gray-Moseley Tape   9/10/77
    DJO Memos   2/17/83  re 2/16/83
                2/18/83  re 2/17/83
                2/25/83  re 2/23/83
      Notes     3/25/83
    TJW Memo   3/15/82 - 5 pages

004203

Moseley letter to clerk Sup Ct. 9/20/82
TJW reply 9/28/82
JRK, DJO Agreement 3/24/83    440 motion
    "      "         "        3/24/83    no perj. pro
Certif. of Immunity J/(Hillary) 2/11/83
Notice of Motion to set aside sentence Ind. 46/81
    by Noel Tepper, Esq.
Order Vacating Sentence + Plea Ind. 46/81
                                              4/15/8

Tape of Lamar + Stanley Smith interview
    of 6/29/77  given to defense 11/18/83
NYSSIS of W. Moseley given to defense 11/18/

NYSSIS — with dispositions — Lamar + Stanley
Smith to be provided 11/23/83. — due
                                    w/o
                                    11/23/83

— 11/25/83 — all negatives — 57 + 11 + 19 +
4 of photos by State + Lane shown to ∆
lawyers at DA's office — w/o —

11/28/83 — copies of all PD Ewick Central
Cards P 4508 thru 4606
            4946 thru 4651
    updated NYSIIS Moseley, +2 Smiths

004204