**MEMO ENDORSED**

Application Granted/Denied ~~So Ordered.~~ *The parties shall submit a proposed amended briefing schedule by 4/8/13.*

*Cathy Seibel*
Cathy Seibel, U.S.D.J.
Dated: 3/29/13

**WilmerHale**

March 25, 2013

Peter J. Macdonald
+1 212 937 7223 (t)
+1 212 230 8888 (f)
peter.macdonald@wilmerhale.com

**VIA HAND DELIVERY**

Honorable Cathy Seibel
United States District Court for the Southern District of New York
The Honorable Charles L. Brieant Jr. Federal Building and United States Courthouse
Room 218
300 Quarropas Street
White Plains, NY 10601-4150

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/29/13

Re: *Bozella v. County of Dutchess, et al.*, No. 10 Civ. 4917 (S.D.N.Y.)

Dear Judge Seibel:

I write on behalf of Plaintiff Dewey R. Bozella to request permission to expand the scope of Mr. Bozella's motion for partial summary judgment to add an alternative basis for partial summary judgment. The additional basis does not affect the current briefing schedule and would require no material expansion of the summary judgment record to be submitted. Mr. Bozella therefore asks to include the alternative argument that the Holland Tape, Dobler Reports, and Upstairs Neighbors' Statements (each defined below) constitute *Brady* material.

These issues are ripe for summary judgment. The Court can decide as a matter of law that Mr. Bozella's constitutional *Brady* rights were violated. *See, e.g., Takeall v. Ambach*, 609 F. Supp. 81, 85 (S.D.N.Y. 1985) (granting plaintiff's motion for partial summary judgment regarding defendant's violation of plaintiff's due process rights in Section 1983 action, and noting that "the question is ripe for determination" on summary judgment where "the facts material to the issue of whether plaintiff's [constitutional rights were] violated are not in dispute"). Resolution would streamline the trial because one element of Mr. Bozella's *Monell* claim (the violation of his constitutional rights) will be decided in its entirety regarding the Holland Tape and Dobler Report, and as to the Upstairs Neighbors' Statements, the only issue remaining for the jury would be whether that evidence was disclosed.[1] The trial can thus focus on whether the County has an unconstitutionally narrow *Brady* policy that caused the violations of Mr. Bozella's constitutional rights.

The following is a brief overview of why the Holland Tape, Dobler Reports, and Upstairs Neighbors' Statements are *Brady* material.

The Holland Tape. The "Holland Tape" is a recording of an interrogation by two City of Poughkeepsie detectives and Assistant District Attorney William J. O'Neill (the prosecutor in Mr. Bozella's two trials) of Saul Holland regarding the King Murder, a crime similar to the

---

[1] The County agrees that the Holland Tape and the Dobler Reports were not disclosed; it does appear to dispute that the Upstairs Neighbors' Statements were withheld.

Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007
Beijing    Berlin    Boston    Brussels    Frankfurt    London    Los Angeles    New York    Oxford    Palo Alto    Waltham    Washington

**WILMERHALE**

Honorable Cathy Seibel
March 25, 2013
Page 2

Crapser Murder for which Donald Wise and Saul Holland were convicted.  *See* Ex. A (transcript of Holland Tape).  During the interrogation, one of the detectives asked Holland, "[w]hat did [Donald Wise] say about him and his brother?"  *Id.* at 00201.  Holland responded that "they had did one of these jobs here before," and that "around about nine or ten or eleven, that's when the, the lady came home. . . ."  *Id.* at 00201-02.  Holland's description of the prior "job" that Donald Wise committed matched the undisputed testimony in Mr. Bozella's 1990 re-trial that Ms. Crapser's attackers were inside her home when she arrived around 11:00 p.m.  Holland's statement supported the defense theories at trial that Donald Wise had entered Ms. Crapser's home through the bathroom window before killing her and that the two key prosecution witnesses (Wayne Moseley and Lamar Smith) were lying.  Indeed, the statement pointing to Donald Wise as the perpetrator was consistent with fingerprint evidence placing Donald Wise inside Ms. Crapser's home, and Madeline Dixon South's testimony that Donald Wise had also confessed to committing the Crapser Murder.

The Dobler Reports.  The "Dobler Reports" are two police reports documenting the attack of Estelle Dobler inside her home at roughly 11:30 p.m. on August 2, 1977.  Ex. B (Dobler Reports).  This attack and the Crapser Murder were around six blocks from each other, occurred at the same time of day, involved elderly victims, and were less than two months apart.  The reports show that Ms. Dobler described her attacker as a black male "short-about 5'1" to 5'2"" with a "good build," *id.* at 1572, which matched the description of Donald Wise.  The reports also document the statement of another witness identifying Donald Wise as the perpetrator.  *See id.* at 1573.  The reports document an attack evidencing the same modus operandi as in the Crapser Murder insofar as both crimes involved stuffing objects in the victim's mouth.  *See id.* at 1571.  In short, the reports supported the defense theories at trial that Donald Wise murdered Ms. Crapser and that Moseley and Lamar Smith were lying.

The Upstairs Neighbors' Statements.  The "Upstairs Neighbors' Statements" are eyewitness accounts of five individuals as they entered, were present in, exited, and/or were near the apartment above Ms. Crapser's apartment at the time of her murder (approximately 11:00 p.m.). *See* Ex. C (15-page City of Poughkeepsie Police Department Complaint Report) at WH-BOZELLA-0016603–09, and Ex. D (Voluntary Statements of Shirley Ellerbee, Linda Miller, Cecil Carpenter, and Curtis Carpenter).  These statements directly contradicted the testimony of Moseley and Lamar Smith—the prosecution's key witnesses at the 1990 re-trial.  Moseley and Smith testified that Moseley and Mr. Bozella committed a burglary just before 11:00 p.m. while Elbert Pittman served as a lookout in the street and Lamar and Stanley Smith watched from across the street.  Yet, by way of example only, Cecil Carpenter told police that he left the house between 11:00 and 11:30 p.m. and "did not observe anything unusual." Ex. C at WH-BOZELLA-0016606.  Similarly, Cynthia Murphy, who lived next-door to Ms. Crapser, informed the police that she was outside with a view of 15 North Hamilton Street at 11:00 p.m. and knew Lamar Smith, his brother Stanley, and Pittman, but observed "nothing unusual in the street" and

WILMERHALE

Honorable Cathy Seibel
March 25, 2013
Page 3

"did not observe [Lamar, Stanley, or Pittman] at any point during that evening." *Id.* at WH-BOZELLA-0016609.

Mr. Bozella believes that, based on the undisputed record of facts, all three categories of evidence constitute *Brady* material as a matter of law. *See, e.g., United States v. Mahaffy*, 693 F.3d 113, 119 (2d Cir. 2012) ("[T]he government's failure to disclose portions of [exculpatory and impeaching] transcripts violated *Brady* and . . . these *Brady* violations undermined confidence in the jury's verdict."); *Boyette v. Lefevre*, 246 F.3d 76, 91 (2d Cir. 2001) (evidence that "helped the defense suggest an alternative perpetrator or impeach [witnesses] constituted *Brady* material"). Accordingly, partial summary judgment should be granted on this alternative basis.

Since many of the issues underlying Mr. Bozella's proposed expansion were discussed during the March 5, 2013 pre-motion conference, we do not believe that a second conference is necessary, subject of course to the Court's wishes.

Respectfully submitted,

*/s/ Peter J. Macdonald*

Peter J. Macdonald

cc:     Patrick T. Burke, Esq. (*via email*)

Encs.