UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DEWEY R. BOZELLA

                                                 10 CIV 4917 (CS) (GAY)

                        Plaintiff,

    -against-

THE COUNTY OF DUTCHESS AND
WILLIAM J. O'NEILL

                        Defendants.
------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTIONS**
**TO THE MAY 16, 2013 DECISION OF MAGISTRATE JUDGE GEORGE A. YANTHIS STRIKING DEFENDANTS' DISCLOSURES DATED APRIL 24, 2013 PRIOR TO THE CLOSE OF COURT ORDERED DISCOVERY, APRIL 29, 2013**

PRELIMINARY STATEMENT

Defendants submit this memorandum of law in support of their objection to that portion of Judge Yanthis' May 16, 2013 Decision which granted Plaintiff's request for preclusion pursuant to Federal Rule 37 and struck Defendants' April 24, 2013 disclosure of supplemental documents from 25 case files while discovery was still pending and prior to its closure on April 29, 2013. For the reasons set forth herein Defendants respectfully submit that Judge Yanthis' Decision is contrary to well-established law which permits the exchange of discovery during the pendency of the discovery period and erroneously considered Plaintiff's claim of prejudice. Accordingly, for the reasons set forth herein, Defendants request that this Court exercise its discretion and overturn Judge Yanthis' Decision of May 16, 2013.

During the course of discovery, Plaintiff had reviewed at least 15, if not more, case files in the Dutchess County Clerk's office prior to disclosing carefully selected

discovery documents from those case files during the course of discovery in this litigation. The documents disclosed by plaintiff consisted of a mix of discovery pleadings exchanged by the prosecution and defense in those cases and the Court's decisions with regard thereto as well as other publicly filed documents. (See Appendix "A" case files listed bearing WH-BOZELLA bates stamp numbers). However, the documents Plaintiff disclosed from those case files were in many instances incomplete. For example, for the case file *People v. Ali*, Plaintiff disclosed only the Affirmation in Support of Motion and the Affirmation in Answer to an Omnibus Motion but failed to disclose the Notice of Omnibus Motion, or the Court's Decision and Order on the Motion; all documents which would have been on file in the County Clerk's office. See Appendix "A" annexed to the Ingram Declaration as part of Exhibit "E".

In an effort to complete the documentation previously produced by Plaintiff (in 15 case files) and by Defendant (in 9 case files) Defendants disclosed additional documents from those case files (discovery pleadings, motions papers, and Court Orders and Decisions) so that the other previously disclosed documents could be put in the context of the entirety of the discovery documents and rulings for each of those case files. Additionally, for six of those 24 case files, Defendants also included certain pieces of correspondence that related to the exchange of discovery from the District Attorney's office.

In addition Defendants disclosed documents from a 25th case file, *Kirkpatrick*, which had been identified during discovery as the depraved indifference matter tried by William Grady.

It is evident, based upon Plaintiff's articulated objection to the April 24 Supplemental Disclosure, that Plaintiff seeks to use the Federal Court Discovery Rules as both a shield and a sword. Plaintiff is essentially claiming he has the right to rely on documents from 51 case files, and simultaneously seek to preclude Defendants from completing the disclosure of documents from 24 of those very same case files. He does so based upon a claim that he is "prejudiced" due to Defendants' "late" disclosure on April 24, 2013. He claims such disclosure, if permitted, would require the re-opening of discovery to permit the review of 25 case files, the taking of unidentified witness depositions and the supplementation of Plaintiff's expert report. The circularity of Plaintiff's reasoning is beyond cavil. But it was based on just such circularity or simply a misunderstanding of the nature of the documents disclosed that Judge Yanthis erroneously granted Plaintiff's request.

Judge Yanthis' decision reflects a misunderstanding of what occurred, reliance on Plaintiff's misrepresentation to the court and a failed understanding of the nature of the discovery previously exchanged for 24 of the 25 case files. During the May 16, 2013 proceeding, Plaintiff argued that pursuant to Rule 26 Defendants should have produced all of the documents it intended to rely on prior to April 24, 2013. The Federal Rules require Defendants to comply with discovery orders and produce discovery timely. Defendants did just that. An examination of the 455 pages of documents produced from the 24 case files reflects that copies of those documents would have been part of the County Clerk's files. Plaintiff's counsel readily admitted that those documents would have been part of those files (see Tr. p 26). Plaintiff cannot deny that he reviewed 15 of the County Clerk case files because documents from 15 of the case files bear Wilmer

3

Hale Bates stamp numbers. With respect to the remaining 9 case files (excluding the 25th case file, Kirkpatrick), documents from those case files had previously been exchanged discovery between the parties, Plaintiff may even have reviewed the County Clerk files for those cases but simply chose not to produce any other documents from those files.

In substance, a review of the May 16, 2013 transcript demonstrates Plaintiff's concession that the discovery pleadings and decisions would be contained in the County Clerk files (thus 455 pages of the 591 page April 24 Supplement Disclosure were from case files known to Plaintiff and were available to Plaintiff without reliance on Defendants) and of the remaining 60 pages of documents comprising discovery letters from 6 Dutchess County District Attorney case files, the majority came from the Andros case file. See Exhibit "A" attached to the Ingram Declaration. Plaintiff was aware of each of the 6 case files and had even reviewed documents from at least one of them in the County Clerk's office. (See, McIntosh and Andros bearing WH Bates numbers) prior to Defendants' April 24 Supplemental Disclosure.

Plaintiff's argument that additional discovery would be needed if the documents are not struck to obtain trial transcripts that were not disclosed is nothing but a red herring. Plaintiff asserted at oral argument that trial transcripts exist for each of the 24 case files without a basis for such a statement. Indeed, Defendants disclosed the names of the cases tried by Assistant District Attorneys that could be recalled by identified ADAs over the course of a 40 year period. See Exhibit H. Plaintiff never sought access to a single one of those files to review the trial transcripts. And, Plaintiff's expert relied on documents given to him from 51 case files. Of those 51 case files only the Bozella and Taylor cases contained trial transcripts. If Plaintiff's counsel believed trial

4

transcripts from any of the previously disclosed case files (which presumes that there were in fact trials from any of those cases) were relevant to his claim and/or his expert's opinion, Plaintiff could have and should have requested copies of such transcripts long ago. Plaintiff cannot blame Defendant when he had the same ability and information available to him and chose not to take the opportunity to review the case files. The disclosure of a portion of the trial transcript in the *Kirkpatrick* case was made for the purpose of refuting the deposition testimony of John Garrity.

It is undisputed that at the time of April 24 Supplemental Disclosure, discovery in this matter was still pending. Thus, Defendants were within their right to supplement their discovery so that a complete presentation of the relevant discovery could be made. Additionally, because Defendants had not violated the court's discovery orders, it was equally erroneous of the Court to consider any claim that Defendants disclosure was harmless or prejudicial. Accordingly, for the reasons set forth herein it is respectfully requested that this court exercise its discretion and set aside those portions of Judge Yanthis' May 16, 2013 Decision which precluded the Defendants April 24 Supplemental Disclosure.

## ARGUMENT

### POINT I

**PURSUANT TO THE APPLICABLE STANDARD OF REVIEW THE MAY 16, 2016 RULING OF JUDGE YANTHIS SHOULD BE SET ASIDE**

Pursuant to the court's holding in *Catskill Dev., LLC v. Park Place Entertainment Corp.*, 206 F. R. D. 78, 86 (SDNY 2002) the review of decisions of the Magistrate Judge relating to discovery matters are subject to the dictates of Rule 72 (a). Federal Rule of Civil Procedure 72 (a) provides that a decision of a magistrate judge to whom a case has

5

been assigned may be modified or set aside by the District Judge upon consideration of objections to it where the Magistrate Judge's order is found to "be clearly erroneous or contrary to law." *Id.* An "order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v R. J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (NDNY 2000) (citations omitted). And, pursuant to *Surles, v. Air France*, No. 00 Civ. 5004, 2001 WL 1142231 at *1 (SDNY 2001), the decision of the Magistrate Judge must be overturned when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* Here, based upon a review of the entire evidence before the court, it is respectfully requested that this court set aside that portion of Judge Yanthis' May 16, 2013 Decision and Order which precluded Defendants' April 24, 2013 disclosure from the record.

## POINT II

### DEFENDANTS COMPLIED WITH THEIR DUTIES AND OBLIGATIONS PURSUANT TO FEDERAL RULE 26 AND THUS THE ISSUANCE OF THE PRECLUSION SANCTION WAS NOT JUSTIFIED

Pursuant to Rule 26 (a) (1)(A) (ii) "a party must, without awaiting a discovery request, provide to the other parties: ... a copy- or a description by category and location –of all documents, electronically sorted information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;". Additionally, pursuant to Rule 26 (e) (1) "A party who has made a disclosure under Rule 26(a)-or who has responded to an interrogatory, request for production or request for admission must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect,

6

and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;".

Pursuant to Rule 37 (c)(1) "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Accordingly based upon the foregoing, Defendants were under an obligation to supplement prior disclosures in a timely manner (i.e, during the pendency of discovery) or risk the imposition of a Rule 37 sanction. The facts set forth herein and as articulated to Judge Yanthis in the May 2, 2013 correspondence and at the May 16, 2013 proceeding demonstrate that Defendants' April 24 Supplemental Disclosure satisfied their obligations under Rule 26.

Defendants' April 24 Supplemental Disclosure was made during the pendency of the Court Ordered Schedule for the completion of discovery and was therefore timely. The parties entered into a court ordered schedule for the completion of discovery on April 3, 2012. The amendments to this schedule were upon consent of the parties and not through fault of the Defendants. During the course of discovery over 60,000 documents have been exchanged by the Plaintiff and the Defendants. Pursuant to the Court order scheduled, the deadline for the exchange of discovery was April 29, 2013. Based upon a plain reading of the Discovery schedule's language, the only fact discovery deadline contained in the Discovery Schedule which established a date prior to April 29, 2013 was the date set for the completion of <u>fact</u> <u>depositions</u>. See, Discovery Schedules Docket #s 89, 101 and 106. Prior to the close of discovery Defendants had the right to supplement the information provided to correct or complete prior disclosures.

7

Thus, on April 24, 2013 when Defendants served their supplemental disclosure of documents from 24 case files previously disclosed by both the Plaintiff and the Defendants during the course of discovery, Defendants supplemental disclosure was indeed "timely." Rule 26 (a) and (e) allow for and require a party to supplement its disclosure during the course of discovery. Indeed, a party's obligation to supplement its disclosure is a continuing one and Rule 37 serves to preclude a party from using evidence that it failed to produce pursuant to its obligations under Rule 26.

In Plaintiff's April 29, 2013 letter to Judge Yanthis in opposition to Defendants' April 24 Supplemental Disclosure, Plaintiff relied on the Court's holding in *Pal v. NYU*, No. 06 Civ. 5892, 2008 WL 2627614, at *3 (SDNY June 30, 2008) misrepresenting to the Court the facts in *Pal* by stating that in *Pal* the defendant "first served its supplemental disclosures 'on the very last day of a discovery deadline that had been extended five times.'" See, Exhibit I p. 2 and *Pal*, supra at *3-4. In fact, the full quote reads, and upon which the court based its decision, that "no supplemental disclosures regarding these witnesses were served while discovery was underway, and NYU first served its supplemental disclosures *after business hours* on the very last day of a discovery deadline that had been extended five times." *Id.* *3. Thus, unlike the actual situation presented in *Pal*, and not as presented to the Court by Plaintiff, the Defendants herein supplemented their discovery during the pendency of the discovery deadline and as such it was timely made.

As set forth in the Ingram Declaration, Defendants undertook to review all of the case files finally identified by the Plaintiff in Appendix A to expert's report dated January 17, 2013 and Second Request for Admission dated February 8, 2013 in an effort to

8

comply with their obligations under the Rules, and for the purpose of Responding to Plaintiff's Second Request for Admission. The outcome of that review was the discovery of previously disclosed partial discovery documents and discovery documents that were not included in the discovery documents for each of the case files upon which that it appeared Plaintiff intended to rely. Accordingly, for the purpose of presenting to the court a complete picture of the discovery exchanged in each of the case files rather than the selectively spliced and edited version of documents presented by the Plaintiff, Defendants served the April 24 Supplemental Disclosure. Thus, despite Plaintiff's protestations to the contrary, the timeline within which Defendants had to supplement their disclosure was from February 8, 2013 to April 29, 2013 during which time Defendants conducted a diligent review of 32 plus case files.

As set forth this review was extensive and time consuming. It is to be noted that 484 of the 591 documents produced are discovery pleadings and court decisions and even Plaintiff's counsel admits these documents would have been available in the County Clerk's case files. Indeed documents from 15 case files Plaintiff apparently reviewed because other documents from those same case files bear the Wilmer Hale Bates stamp number and were produced by Plaintiff during the course of discovery.

Plaintiff's reliance on *Schiller v. City of New York*, 2008 WL 4525341 (SDNY 2008) is similarly misplaced as the factual circumstances therein are inapposite to those herein. In *Schiller*, the Plaintiff waited until **ONE AND A HALF YEARS after** the close of discovery to identify 84 previously undisclosed witnesses. Such is clearly not the case herein.

9

## POINT IV

## THE PRECLUSION SANCTION GRANTED BY JUDGE YANTHIS WAS ERRONEOUSLY GRANTED BASED UPON THE APPLICABLE FACTS AND LAW

The law is well-established that "a preclusion sanction may not come into play unless there first has been a violation of a disclosure obligation imposed by Rule 26(a) or 26(e)(1)." See, *Lore v. City of Syracuse*, 2005 WL 3095506 at 2 (NDNY 2005) citing 7 Moore's Federal Practice at S 37.60[1] (2000). And, even in that instance, the mandatory preclusion sanction is not warranted UNLESS an untimely disclosure was not harmless. *Id.* (emphasis added). Indeed, it is within the court's discretion to decide whether to issue the extreme sanction of preclusion pursuant to Rule 37. See, *Pal*, supra at *3. It "is a harsh sanction which should be imposed with caution." *Id.* It is well-established that the purpose of a Rule 37 is "to prevent the practice of 'sandbagging' an adversary with new evidence." *American Friends of Yeshivat Orh Yerushalayim, Inc. v. U.S.*, 2009 WL 1617773 at *6 citing, *Ventra v. United States*, 121 F.Supp.2d 326, 322 (SDNY 2000) (citing *Johnson Elec. N.A. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (SDNY 1999). No such sandbagging occurred by Defendants.

As set forth herein, based upon the factual circumstances of this matter, and despite Judge Yanthis' finding to the contrary, Defendants' April 24 Supplemental Disclosure was timely. Contrary to one of Plaintiff's many representations to the Court on May 16, Defendants did not decide "to add to [previously disclosed documents] after the rest of discovery ended." (see, Tr. p. 21) This is simply factually inaccurate. Discovery did not end until April 29, 2013 --- FIVE DAYS AFTER DEFENDANTS' DISCLOSURE.

Moreover, Rule 37c(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or Rule 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed." *Lore*, supra at *3; citations omitted. Thus, the sanction of preclusion is a "drastic remedy." *Id.* See, also *Ward v. National Geographic Society*, 2002 WL 27777 (S.D.N.Y. 2002). Accordingly, "the Second Circuit has held that preclusion is a discretionary remedy even if the trial court finds that there is no substantial justification and the failure to disclose is not harmless. *Theriot v. Jaspan Schlesinger Hoffman, LLP*, 2010 WL 4038765, *4 (EDNY 2010) citing *Pal*, supra at *3, and cases cited therein. Thus, even in the most egregious of cases, preclusion is not mandatory rather it is with the discretion of the Court and "to determine whether evidence should be precluded, a court should consider: (1) the explanation for the failure to disclose, (2) the importance of the evidence to be precluded, (3) prejudice if the evidence were not precluded, and (4) the possibility of a continuance." See, *Theriot* supra at *5 citing *DeSanti v. Deutshce Bank Trust Co. Ams., Inc.*, 05-CV-10868, 2009 WL 66351 at *4 (SDNY 2009) (citing *Patterson v. Balsimico*, 440 F.3d 104, 117 (2d Cir. 2006). Judge Yanthis failed to consider and/or misapprehend all of these factors and erroneously concluded based that preclusion was warranted.

(A) Explanation for failure to disclose:

Defendants do not concede that they failed to disclose any evidence in a timely manner. As set forth herein, and as explained to Judge Yanthis, it was not until receipt of Plaintiff's Second Request for Admission on February 8, 2013 which included documents

11

from 32 case files (comprising 100s of pages of documents) and Plaintiff's expert response on January 17, 2013, that the identity of the 51 case files Plaintiff apparently intended to rely on became known. Even Plaintiff's response to Defendants latest request for documents dated January 19, 2013 failed to identify any such documents. Thereafter, Defendants undertook to review each of the case files, compare the discovery documents for which authentication was sought to the actual document, and undertook to determine, where possible, whether each case file had a complete copy of the discovery pleadings, motions, and court orders together with any applicable correspondence. Defendants also undertook to review the *Kirkpatrick* case file which had been identified as the depraved indifference speeding case file during the course of discovery. Plaintiff never requested access to the *Kirkpatrick* file despite having knowledge of it and despite the fact that it is referenced as an unidentified case in his Amended Complaint. Defendants included documentation from the *Kirkpatrick* file in the April 24 Supplemental Disclosure for the purpose of impeaching the testimony of the non-party witness John Garrity. Although the Rules do not require disclosure of documents that will be used solely for impeachment purposes, Defendants disclosed documents from this case file so as to avoid any argument that they had not previously been disclosed.

B) The Importance of the Discovery to be Disclosed:

The 515 pages of documents from the 24 case files and in particular the 455 pages of discovery pleadings, affirmations in opposition and in support of motions, notice of motions and the Courts Decisions and Orders thereon that supplement prior discovery pleadings, affirmations, and Court Decision and Orders in the 24 case files that were previously disclosed are material and necessary to the defense of the claims alleged in

this matter. The Supplemental Disclosure allows for a presentation of a complete set of discovery pleadings and motions and the Court's Decisions thereon in each of the case files upon which Plaintiff and his expert seek to rely. Plaintiff's counsel admitted at the May 16, 2013 oral argument that it, had in fact reviewed two of the 24 case files in the District Attorney's office, *Whitted* and *Williams*, and had chosen not to copy and produce the documents that Defendants included in the April 24 Supplemental Disclosure for those case files. (See Tr. page 26). Accordingly, at a minimum it was error for Judge Yanthis to preclude these documents. Plaintiff disingenuously represented to the Court that the April 24 Supplemental Disclosures were "new Dutchess County District Attorney files" they didn't "have access to." Tr. p. 26. Plaintiff had access to these case files and in fact accessed them by accessing the County Clerk's files. Plaintiff's cannot hide behind the shield of "access" when they deliberately chose to review the County Clek's files and not the Dutchess County District Attorney files.

The Supplemental Disclosure was required to place the other discovery documents previously disclosed into context and to present to the Court a complete picture of the discovery exchanged in each of the case files so that the Court may view the language contained in the discovery pleadings, motions and trial Court's Decision therein in their totality rather than in the edited context Plaintiff's seek to utilize. The supplemental pages of correspondence (60 pages) that was also disclosed is similarly intended to place into context the process through which discovery was exchanged in these cases rather than relying on surmise and conjecture which Plaintiff seeks to do. As for the documents disclosed in the *Kirkpatrick* case file, as previously set forth, these

13

documents are necessary to refute the testimony of the John Garrity with respect to what did or did not occur at the trial during the time that he was present.

3) The Prejudice if the Discovery is not Disclosed:

If this court does not overrule the harsh sanction of preclusion imposed by Judge Yanthis, the Defendants will sustain enormous prejudice. Without the use of these documents, the scales of justice will be tipped unfairly in favor of the Plaintiff whose hands are not clean in this regard. The Court will not have presented before it a complete picture of the discovery documents exchanged prior to and during motion practice or the Court's Decisions with regard thereto in those case files. Moreover, Plaintiff will be permitted to come before this Court and claim at once that it did not have "access" to the District Attorney's case files for the 24 case files when it in fact had access to 455 of the very same documents through the County Clerk's office and in fact produced documents from 15 of the very same 24 case files utilizing the County Clerk's office case files which Plaintiff now seeks to preclude Defendants from supplementing.

Additionally, Plaintiff will have the benefit of having been on notice of the identity of the *Kirkpatrick* file while discovery was pending and while they could have asked to review that file but chose not to as well as the benefit of precluding Defendant from utilizing any documents from that file. Plaintiff will also have the benefit of being permitted to have waited until the end of January and the beginning of February, respectively when it served its expert report and Second Request for Admission and having objected in January, 2013 to identifying the specific documents it intended to rely on to support its Monell claim, and simultaneously claim that Defendants "delayed" in turning the documents contained in the April 24 Supplemental Disclosure over because it

14

did not do so back in November. Defendants did not know in November which case files or which documents from which case files Plaintiff intended to rely. Preclusion of the April 24 Supplemental Disclosure will undoubtedly result in a miscarriage of justice based upon the circumstances of the disclosures that took place and will impact Defendants' ability to visorously defend Plaintiff's Monell claim against the County.

Plaintiff should not be permitted to come before the Court knowing full well that it had access to all but 60 pages of the very documents disclosed from 24 of the 25 case files and claim prejudice and/or the need for additional discovery. Such a claim is nothing more than a veiled attempt to mislead the Court. It should not be permitted especially where prejudice to the Defendants will result.

4) The Possibility of a Continuance:

Simply put there is no need for additional discovery from any of the case files. With the exception of 60 pages of documents, every document disclosed from 24 of the 25 case files was available to Plaintiff from the County Clerk's files. Moreover, Plaintiff was previously aware of the identity of each of the 25 case files. Had Plaintiff believed that the Dutchess County District Attorney's case files contained relevant documents, Plaintiff could have, at any time, sought to review the District Attorney Case files. Plaintiff never took this opportunity. Instead, Plaintiff chose to review the County Clerk files. Now in an effort to excuse its own neglect Plaintiff claims, such a review would have been contested. Judge Yanthis should not have relied on such an argument. It is nothing more than conjecture and in fact Plaintiff has successfully obtained virtually all the discovery it has sought throughout this litigation. It cannot now come in and say discovery needs to be reopened, unidentified witnesses need to be deposed. In fact,

15

plaintiff noticed for deposition several Assistant District Attorneys and chose not to depose them while fact depositions were pending. Plaintiff's time for such depositions has passed.

Likewise, there is no need for Professor Gershman to supplement his report. Professor Gershman purportedly reviewed the documents listed on Appendix A from the 51 case files included thereon, 24 of which are also included in the list of case file documents included in the April 24 Supplemental Disclosure. Had Professor Gershman believed that a review of the documents included in the April 24 Supplemental Disclosure which were from case files included in the 51 case files he reviewed were necessary for him to form an opinion with regard to the Dutchess County District Attorney's interpretation of the law regarding their *Brady* obligations, then the time to seek that additional information was when he knew he did not have sufficient documentation before him. Presumably such knowledge was known to him or should have been known to him at some point prior to the time he drafted his report. Certainly Plaintiff's counsel was aware that it had less than complete documentation for many of the case files when the documentation was provided to Professor Gershman. Plaintiff's Counsel understands quite well the basis of his claims and, in fact, for many of the case files, full sets of documents were provided to Professor Gershman. See Appendix A. The basis for Plaintiff's objection to the inclusion of the additional discovery pleadings, motion papers, and Court Decisions and the need to open discovery to review these case files is entirely without merit. There are only six case files of the 24 which contain documents other than documents which were available to Plaintiff through the County Clerk's office. Plaintiff cannot even argue that those documents should be precluded

16

because as previously contended, Plaintiff had knowledge of those files prior to the April 24 Supplemental Disclosure and could have reviewed those files while discovery was pending. The same is true for the *Kirkpatrick* file.

The issuance of a preclusion sanction is an extreme and harsh. While bad faith is not necessary for the sanction to be imposed, it has been held that the Courts will look to the conduct of the "offending" party to determine whether under the circumstances the sanction is warranted. See, for example, *Theriot* supra at 4, citing *Decision Strategy, Inc. v. Davis*, 469 F.3d (2d Cir. 2006).

Here, Defendants diligently undertook to review the case files identified in Plaintiff's expert report Appendix A and in Plaintiff's Second Request for Admission which included 18 of the 24 case files supplemented in the April 24 Supplemental Disclosure, and produced the supplemental disclosures from those files as swiftly as possible. There was no misconduct by the Defendants in this regard. There is no evidence of bad faith committed by the Defendants. The task of reviewing the 32 case files contained in Plaintiff's Second Request for Admission which comprised hundreds of pages of documents was a Herculean task which Defendants undertook. That as a result, Defendants discovered partial documents had been previously disclosed or other relevant discovery documents had not been disclosed, should have been anticipated by Plaintiff when he served the Requests for Admission. Defendants supplemental disclosure was nothing more than the result of diligent efforts undertaken to authenticate the documents sought for Admission by Plaintiff. Plaintiff set the process in motion at the late date of February 8, 2013.

Judge Yanthis' decision striking the April 24 Supplemental Disclosure reflects a misapprehension of the circumstances surrounding the April 24 Supplemental Disclosure, the nature of the documents disclosed, and reliance upon the generalized representations made by Counsel for Plaintiff that failed to articulate the facts as they actually exist. As a result, Judge Yanthis' decision is contrary to well-established law and should be overturned.

## CONCLUSION

For the reasons set forth herein as well as the accompanying Declaration of Phyllis A. Ingram and the Exhibits annexed thereto and made a part thereof, it is respectfully requested that this Court exercise is discretion and set aside that part of Judge Yanthis' May 16, 2013 Decision which struck the entirety of Defendants' April 24 Supplemental Disclosure.

Dated: Goshen, New York
May 30, 2013

                                    Respectfully submitted,

                                    Phyllis A. Ingram (0650)
                                    Burke, Miele & Golden, LLP
                                    40 Matthews Street, Suite 209
                                    P. O. Box 216
                                    Goshen, New York 10924
                                    845-294-4080

TO:    Ross E. Firsenbaum, Esq.
         Wilmer Cutler Pickering Hale and Dorr, LLP
         7 World Trade Center
         250 Greenwich Street
         New York, New York 10007