UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DEWEY R. BOZELLA,

        Plaintiff,

v.

THE COUNTY OF DUTCHESS and
WILLIAM J. O'NEILL,

        Defendants.

No. 10 Civ. 4917 (CS)

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF DEWEY R. BOZELLA'S
# MOTION FOR PARTIAL SUMMARY JUDGMENT

WILMER CUTLER PICKERING
HALE AND DORR LLP

Peter J. Macdonald
Ross E. Firsenbaum
Shauna K. Friedman
Craig R. Heeren
Christine D. Ely
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Plaintiff Dewey R. Bozella*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 3

I.   Mr. Bozella Is Entitled To Partial Summary Judgment That The *Brady* Evidence
     Was Favorable, Material, And Not Disclosed In Violation Of His Constitutional
     Rights Under *Brady*. ............................................................................................. 3

     A.   The County Is Collaterally Estopped From Re-Litigating The Dutchess
          County Court's Finding In Mr. Bozella's Favor On Each Of These Issues. .......... 3

          1.   The Dutchess County Court Necessarily Decided That None Of
               The *Brady* Evidence Was Disclosed, And That It Was Evidence
               Favorable To Mr. Bozella and Material To The Outcome Of The
               1990 Trial. .......................................................................................... 4

          2.   Dutchess County Had A Full And Fair Opportunity To Litigate
               The *Brady* Issues In The 440 Action. ........................................... 5

               a.   Dutchess County Is In Privity With The Dutchess County
                    District Attorney ...................................................................... 5

               b.   The County's "New" Evidence Claims Do Not Satisfy Its
                    Burden ........................................................................................ 11

     B.   Even If Collateral Estoppel Does Not Apply, The County Cannot
          Demonstrate A Genuine Issue Of Fact Regarding The Non-Disclosure Of
          The Holland Statement, Dobler Reports, And Alleyway Witness
          Statement. ............................................................................................................ 15

     C.   Even If Collateral Estoppel Does Not Apply, The County Cannot
          Demonstrate A Genuine Issue Of Fact Regarding The Favorability Of The
          *Brady* Evidence. ................................................................................................ 15

     D.   Even If Collateral Estoppel Does Not Apply, The County Cannot
          Demonstrate A Genuine Issue Of Fact Regarding The Materiality Of The
          *Brady* Evidence. ................................................................................................ 22

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

## CASES

*37-01 31st Ave. Realty Corp. v. Safed,*
  20 Misc. 3d 762 (N.Y. Civ. Ct. 2008) ................................................................6

*Ali v. Reno,*
  22 F.3d 442 (2d Cir. 1994) ................................................................13

*Amalgamated Sugar Co. v. NL Indus., Inc.,*
  825 F.2d 634 (2d Cir. 1987) ................................................................8

*Benjamin v. Coughlin,*
  905 F.2d 571 (2d Cir. 1990) ................................................................4

*Boyette v. LeFevre,*
  246 F.3d 76 (2d Cir. 2001) ................................................15, 19, 21, 23

*Brown v. City of New York,*
  60 N.Y.2d 897 (N.Y. 1983) ................................................................9

*Buechel v. Bain,*
  97 N.Y.2d 295 (N.Y. 2001) ................................................................4, 6, 9

*Covanta Niagara, L.P. v. Town of Amherst,*
  70 A.D.3d 1440 (N.Y. App. Div. 2010) ................................................6

*D'Arata v. New York Central Mutual Fire Insurance Co.,*
  76 N.Y.2d 659 (N.Y. 1990) ................................................................5

*Doe v. City of Mount Vernon,*
  156 A.D.2d 329 (N.Y. App. Div. 1989) ................................................10

*Giglio v. United States,*
  405 U.S. 150 (1972) ................................................................15

*Hickerson v. City of N.Y.,*
  146 F.3d 99 (2d Cir. 1998) ................................................................12

*In re Corporate Woods 11, L.P. v. Board of Assessment Review of Colonie,*
  83 A.D.3d 1250 (N.Y. App. Div. 2011) ................................................8

*In re Juan C. v. Cortines,*
  89 N.Y.2d 659 (N.Y. 1997) ................................................................6

*In re Stephania UU,*
    66 A.D.3d 1160 (N.Y. App. Div. 2009) ........................................................6

*Jackson v. County of Nassau,*
    No. 07-cv-0245, 2009 WL 393640 (E.D.N.Y. Feb. 13, 2009) ....................7

*Jenkins v. City of New York,*
    478 F.3d 76 (2d Cir. 2007) ..........................................................................9

*Justice v. Hoke,*
    90 F.3d 43 (2d Cir. 1996) ...........................................................................23

*Kapps v. Wing,*
    404 F.3d 105 (2d Cir. 2005) .........................................................................3

*Kentucky v. Graham,*
    473 U.S. 159 (1985).......................................................................................7

*Kyles v. Whitley,*
    514 U.S. 419 (1995).....................................................................................22

*Leka v. Portuondo,*
    257 F.3d 89 (2d Cir. 2001) .........................................................................17

*Mendez v. Artuz,*
    303 F.3d 411 (2d Cir. 2002) ...........................................................19, 21, 23

*Monell v. Department of Social Services of New York,*
    436 U.S. 658 (1978).......................................................................................7

*Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills,*
    701 F. Supp. 2d 568 (S.D.N.Y. 2010) ..........................................................7

*Munsch v. Evans,*
    No. 11 Civ. 2271, 2012 WL 528135 (E.D.N.Y. Feb. 17, 2012).....................6

*Myers v. County of Orange,*
    157 F.3d 66 (2d Cir. 1998) ...........................................................................7

*Oliveri v. Thompson,*
    803 F.2d 1265 (2d Cir. 1986) .......................................................................7

*People v. Bozella,*
    No. 102/83, 2009 WL 3364575 (N.Y. Cnty. Ct. Oct. 14, 2009) ................... *passim*

*People v. McGriff,*
    130 A.D.2d 141 (N.Y. App. Div. 1987) ...................................................6

*People v. Vilardi,*
    76 N.Y.2d 67 (N.Y. 1990) ...................................................................5

*People ex rel. Dowdy v. Smith,*
    48 N.Y.2d 477 (N.Y. 1979) ...................................................................6

*Ryan v. New York Telephone Co.,*
    62 N.Y.2d 494 (N.Y. 1984) .................................................................12

*Sammarco v. Board of Trustees, Local 812 Health Fund,*
    No. 03 Civ. 433, 2004 WL 1488210 (S.D.N.Y. July 1, 2004) ..............13

*Scott v. Nichols,*
    No. 9:10-CV-230, 2013 WL 2237840 (N.D.N.Y. May 21, 2013) ..................12, 14

*Shaid v. Consolidated Edison Co. of New York, Inc.,*
    95 A.D.2d 610 (N.Y. App. Div. 1983) .................................................12

*Smith v. Cain,*
    132 S. Ct. 627 (2012) ...................................................3, 15, 17, 23

*Smith v. Secretary of New Mexico Department of Corrections,*
    50 F.3d 801 (10th Cir. 1995) ..............................................................19

*Staatsburg Water Co. v. Staatsburg Fire District,*
    72 N.Y.2d 147 (N.Y. 1988) ...................................................................6

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,*
    374 F.3d 158 (2d Cir. 2004) ...............................................................14

*Taylor v. Texgas Corp.,*
    831 F.2d 255 (11th Cir. 1987) ............................................................15

*United States v. Agurs,*
    427 U.S. 97 (1976) ..............................................................................23

*United States v. Bagley,*
    473 U.S. 667 (1985) .............................................................................22

*United States v. Mahaffy,*
    693 F.3d 113 (2d Cir. 2012) .........................................................15, 17

*Walker v. City of New York,*
  974 F.2d 293 (2d Cir. 1992) ...................................................................7

*Watts v. Swiss Bank Corp.,*
  27 N.Y.2d 270 (N.Y. 1970) .....................................................................8

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ...................................................................................3

Plaintiff Dewey R. Bozella respectfully submits this memorandum of law in support of his motion for partial summary judgment on the first element of his *Monell* claim against Defendant Dutchess County (the "County"): that the County violated his constitutional rights under *Brady v. Maryland* and its progeny by virtue of the non-disclosure of the *Brady* Evidence.[1]

## PRELIMINARY STATEMENT

On October 14, 2009 the Dutchess County Court granted Mr. Bozella's motion to vacate his 1991 judgment of conviction for murder, and thereafter released him after more than 26 years in prison. Over the Dutchess County District Attorney's opposition, the Dutchess County Court found four violations of Mr. Bozella's constitutional rights under *Brady* (the same four violations underlying Mr. Bozella's *Monell* claim against the County in this action). The court determined that the Dutchess County District Attorney did not disclose the *Brady* Evidence at issue here, and that it was favorable to Mr. Bozella, and material to the outcome of his 1990 Trial. *People v. Bozella*, No. 102/83, 2009 WL 3364575, at *15 (N.Y. Cnty. Ct. Oct. 14, 2009) ("the evidence against Dewey Bozella was far from overwhelming . . . [T]he only evidence connecting him to the crime was the testimony of two extremely interested witnesses with serious credibility problems, who were admittedly on mind altering substances"); *see also id.* at *16 (the court was "firmly and soundly convinced of the meritorious nature of the defendant's application" and concluded that "[t]he legal and factual arguments advanced in support of the motion are compelling, indeed overwhelming."). Because those *Brady* issues were litigated between Mr. Bozella and the Dutchess County District Attorney in the prior proceeding, and decided in Mr. Bozella's favor, the County is collaterally estopped from re-litigating them now.

---

[1] The undisputed, material facts relevant to this motion may be found in the accompanying Rule 56.1 Statement in Support of Plaintiff's Motion for Partial Summary Judgment, dated June 14, 2013 (the "Rule 56.1 Statement" or "SOF"). Capitalized terms used in this memorandum of law have the same meaning set forth in the Rule 56.1 Statement.

The County's justification for evading the application of collateral estoppel—that the County is not in privity with the Dutchess County District Attorney—disregards the relevant legal principles and the undisputed record. The County's policymaker regarding *Brady* disclosure—Dutchess County District Attorney William Grady—directly controlled the opposition to Mr. Bozella's 440 Motion. He individually supervised the response, mandating an investigation, selecting the lawyers, participating in strategy and decision-making, and advocating vigorously the same position that the County advocates in this case: that the disputed evidence was either disclosed, or lay outside the scope of *Brady.* He considered the matter to be of the highest priority, and assigned his most experienced trial Assistant to the matter, who personally believed Mr. Bozella to be guilty and therefore defended against the 440 Motion with the utmost zeal. After losing the motion, District Attorney Grady met with his Chief Assistant, as well as the Assistant whom he had assigned to lead the opposition to the 440 Motion, and together with them determined that there was no factual or legal basis to challenge the Dutchess County Court's determination. That the County's policymaker with respect to *Brady* disclosure, District Attorney Grady, had direct control of and involvement in the 440 Motion leaves no dispute that the County had a full and fair opportunity to litigate the *Brady* issues in the prior proceeding.

Moreover, even if collateral estoppel does not apply, partial summary judgment should be granted because the County does not dispute the fact that three categories of the *Brady* Evidence—the Holland Statement, Dobler Reports, and Alleyway Witness Statement—were not disclosed to Mr. Bozella at or prior to the 1990 Trial. The undisputed record also establishes the favorability and materiality of the same *Brady* Evidence, and that no genuine issue of fact remains to be tried on those points.

For these reasons, the Court should enter partial summary judgment in Mr. Bozella's favor ruling that the County violated Mr. Bozella's constitutional rights under *Brady* by not disclosing at or prior to the 1990 Trial any of the *Brady* Evidence, which was favorable to Mr. Bozella and material to the 1990 Trial.

## ARGUMENT

*Brady* and its progeny require the government to disclose "evidence that is favorable to the defense and material to the defendant's guilt or punishment." *See, e.g.*, *Smith v. Cain*, 132 S. Ct. 627, 630 (2012). Here, no genuine issue of fact remains regarding the four *Brady* violations alleged in the Amended Complaint. Accordingly, the Court should enter partial summary judgment on these issues in Mr. Bozella's favor. *See, e.g.*, *Kapps v. Wing*, 404 F.3d 105, 126 (2d Cir. 2005) (affirming district court's order granting plaintiffs' motion for partial summary judgment); Fed. R. Civ. P. 56(a) (a party "may move for summary judgment identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought").

**I.      Mr. Bozella Is Entitled To Partial Summary Judgment That The *Brady* Evidence Was Favorable, Material, And Not Disclosed In Violation Of His Constitutional Rights Under *Brady*.**

      A.      <u>The County Is Collaterally Estopped From Re-Litigating The Dutchess County Court's Finding In Mr. Bozella's Favor On Each Of These Issues.</u>

The Dutchess County Court concluded that four pieces of evidence—the Upstairs Neighbors' Statements, the Holland Tape, the Dobler Report and the Alleyway Witness Statement— were improperly withheld in violation of Mr. Bozella's constitutional rights under *Brady*. *People v. Bozella*, 2009 WL 3364575, at *16. Collateral estoppel bars re-litigation of an issue when (i) the identical issue was "necessarily decided in the prior action" and (ii) the party against whom collateral estoppel would apply had "a full and fair opportunity to contest the issue

in the prior action." *See, e.g.*, *Benjamin v. Coughlin*, 905 F.2d 571, 575 (2d Cir. 1990) (internal quotations and citations omitted).[2]  An equitable doctrine "grounded in the facts and realities of a particular litigation, rather than rigid rules," it is designed to avoid re-litigation of a decided issue and the possibility of inconsistent results.  *See, e.g.*, *Buechel v. Bain*, 97 N.Y.2d 295, 303 (N.Y. 2001).  Collateral estoppel applies here because the court in the prior proceeding necessarily decided that the *Brady* Evidence was undisclosed, favorable, and material, and the County had a full and fair opportunity to argue otherwise.

        1.     *The Dutchess County Court Necessarily Decided That None Of The Brady Evidence Was Disclosed, And That It Was Evidence Favorable To Mr. Bozella and Material To The Outcome Of The 1990 Trial.*

The Amended Complaint alleges that the County did not disclose the *Brady* Evidence to Mr. Bozella at or before the 1990 Trial.  *See, e.g.*, Am. Compl. [Dkt. No. 80-2] ¶¶ 18-20, 26-33, 42-47, 58-68, 128, 150-54, 177, 211.  The 440 Motion contended the same.  SOF ¶¶ 1-67.  The Dutchess County Court, considering the entire record submitted by Mr. Bozella and the Dutchess County District Attorney (as well as the Dutchess County Clerk's file), issued a detailed Decision and Order granting the 440 Motion.  *Id.* ¶ 106; *People v. Bozella*, 2009 WL 3364575, at *1, n.1, *15-*16.  The sole basis for granting the 440 Motion was the non-disclosure of the favorable *Brady* Evidence, which was found to be material to the outcome of the 1990 Trial. *People v. Bozella*, 2009 WL 3364575, at *16 ("Bozella's *Brady* claim is dispositive of that branch of his 440 motion seeking a new trial.  Therefore, the court need not address his alternate claim for relief . . .").  Thus, the court in the prior proceeding necessarily decided that none of the *Brady* Evidence had been disclosed to Mr. Bozella at or before his 1990 Trial, and that it was favorable to Mr. Bozella and material to the outcome of the trial.  *See, e.g., Coughlin*, 905 F.2d at

---

[2] In an action pending in federal court, the law of the state where the prior proceeding occurred determines the application the collateral estoppel.  *Coughlin*, 905 F.2d at 575.

576 (collateral estoppel applied to issue of whether policy violated §1983 plaintiff's constitutional rights where state court previously determined that the policy was unconstitutional).[3]

2. *Dutchess County Had A Full And Fair Opportunity To Litigate The Brady Issues In The 440 Action.*

The County had a full and fair opportunity to challenge these claims in the prior proceeding. SOF ¶¶ 68-105, 107-15. As the party opposing collateral estoppel, the County has the burden of establishing "the absence of a full and fair opportunity to litigate" the issue in the prior action. *See, e.g.*, *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 664 (N.Y. 1990). The County's response to Mr. Bozella's pre-motion letter, *see* Declaration of Craig R. Heeren, dated June 14, 2013 ("Heeren Decl.") Ex. 35, suggests two lines of argument to attempt to avoid application of collateral estoppel, both of which are wrong as a matter of law and fact.

a. **Dutchess County Is In Privity With The Dutchess County District Attorney**

The County's principal argument against collateral estoppel is that "Dutchess County was not a party to [Mr.] Bozella's 440 Motion." Heeren Decl. Ex. 35 at 1. But it is black-letter law that collateral estoppel binds not only the actual parties to a prior proceeding, but also their privies. *See, e.g.*, *D'Arata*, 76 N.Y.2d at 664. The undisputed record here establishes that the County, through its policymaker District Attorney Grady, is in privity with the Dutchess County

---

[3] While the Dutchess County Court only had to consider whether there was a reasonable "possibility" rather than "probability" that the *Brady* Evidence would have changed the verdict had it been properly disclosed, *see People v. Vilardi*, 76 N.Y.2d 67, 77 (N.Y. 1990), it unquestionably determined that the *Brady* Evidence was material under either standard. *See, e.g.*, *People v. Bozella*, 2009 WL 3364575, at *16 (stating that the court was "firmly and soundly convinced of the meritorious nature of the defendant's application" and concluding that "[t]he legal and factual arguments advanced in support of the motion are compelling, indeed overwhelming.").

District Attorney, which had every incentive to litigate, and actually did litigate, the 440 Motion challenging the Dutchess County's District Attorney's own conduct. SOF ¶¶ 68-105, 107-15.

Privity "does not have a single well-defined meaning." *Buechel*, 97 N.Y.2d at 304. The doctrine "is a flexible one" requiring "case-by-case analysis of the facts and realities." *Id.* While it "is an amorphous concept not easy of application" at its core, collateral estoppel binds "those who control an action although not formal parties to it [and] those whose interests are represented by a party to the action . . . .'" *Id.* (quoting *In re Juan C. v. Cortines*, 89 N.Y.2d 659, 667-68 (N.Y. 1997) (citations omitted)); *see also Staatsburg Water Co. v. Staatsburg Fire Dist.*, 72 N.Y.2d 147, 153 (N.Y. 1988) ("[c]ollateral estoppel is an elastic doctrine"). Where, as here, government entities are involved, "the source of authority of [the] government entities is not dispositive of whether they are in privity for collateral estoppel purposes." *In re Juan C.*, 89 N.Y.2d at 668 (internal quotations and citation omitted). Rather, "both the circumstances of the actual relationship between the two agencies as demonstrated by the record and their statutory relationship are relevant." *Id.*

Applying these principles, state and federal courts in New York have found privity between a government entity and another entity. *See People ex rel. Dowdy v. Smith*, 48 N.Y.2d 477, 482 (N.Y. 1979) (district attorney's office in privity with division of parole); *Munsch v. Evans*, No. 11 Civ. 2271, 2012 WL 528135, at *10 (E.D.N.Y. Feb. 17, 2012) (same); *People v. McGriff*, 130 A.D.2d 141, 150 (N.Y. App. Div. 1987) (district attorney's office in Queens County in privity with district attorney's office in New York County); *37-01 31st Ave. Realty Corp. v. Safed*, 20 Misc. 3d 762, 766-67 (N.Y. Civ. Ct. 2008) (district attorney's office in privity with police department); *Covanta Niagara, L.P. v. Town of Amherst*, 70 A.D.3d 1440, 1442 (N.Y. App. Div. 2010) (town in privity with town garbage and refuse district); *accord In re*

*Stephania UU*, 66 A.D.3d 1160, 1163 (N.Y. App. Div. 2009) ("[w]e perceive no basis in the record that would support a conclusion that the interests of the Dutchess County Department of Social Services in prosecuting allegations of child abuse and neglect against respondents were in any material respect different from those of [the Columbia County Department of Social Services").

Here, the privity question turns on whether the Dutchess County District Attorney, in a matter supervised and controlled by District Attorney Grady, fairly represented the interest of the County with respect to the litigation of the claimed *Brady* violations. SOF ¶¶ 68-105, 107-15. The undisputed facts demonstrate that the Dutchess County District Attorney did precisely that. *Id.* District Attorney Grady, the County's policymaker regarding *Brady* disclosure, controlled the Dutchess County District Attorney's opposition to the 440 Motion, removing any doubt about whether privity exists in this case. *Id.*; *see, e.g.*, *Myers v. County of Orange*, 157 F.3d 66, 76-77 (2d Cir. 1998) (the District Attorney is the county policymaker regarding *Brady* disclosure).[4] He was actively involved in, and fully informed of, the Dutchess County District

---

[4] Indeed, the very basis of Mr. Bozella's *Monell* claim (like, any *Monell* claim) is that the municipal policymaker (here, District Attorney Grady) caused the violation of Mr. Bozella's constitutional rights (here, by implementing an unconstitutionally narrow disclosure policy under *Brady*). *See Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir. 1992) ("it is only when the municipality itself commits the misdeed, that is, 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). And, for this reason, District Attorney Grady himself (in his official capacity) could be substituted for the County as the defendant in this action. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity") (quoting *Monell*, 436 U.S. at 690); *Oliveri v. Thompson*, 803 F.2d 1265, 1279 (2d Cir. 1986) ("[t]o the extent that [the policymaker] was sued in his official capacity, the complaint alleges no more than, and is to be judged by the same standard as, a claim against the county itself"); *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 591 (S.D.N.Y. 2010) (municipal defendants and policymakers sued in their official capacities are "one and the same"); *Jackson v. County of Nassau*, No. 07-cv-0245, 2009 WL 393640, at *4

Attorney's investigation of, and response to, the 440 Motion. SOF ¶¶ 68-105, 107-15. He received the 440 Motion, read it, discussed it with two of his most senior Assistants, and informed the public that a "full inquiry" would be made concerning its allegations. *Id.* ¶¶ 68-77. He assigned his most experienced trial prosecutor (Mr. Whitesell) to respond to it, and checked in with Mr. Whitesell throughout his investigation. *Id.* ¶¶ 73-76, 84-86. Mr. Whitesell spent more than three months investigating the claimed *Brady* violations. *Id.* ¶ 78. With "full support" from the City of Poughkeepsie Police Department, Mr. Whitesell interviewed key witnesses and reviewed relevant documents during that investigation. *Id.* ¶¶ 78-86. Based on his investigation, Mr. Whitesell prepared the 440 Opposition, which opposed each of the claimed *Brady* violations in the 440 Motion. *Id.* ¶¶ 78-103. District Attorney Grady conferred with Mr. Whitesell to discuss the 440 Opposition before it was filed, and authorized Mr. Whitesell to file it. *Id.* ¶¶ 84-86, 104. Then, after the Dutchess County Court's decision granting the 440 Motion, District Attorney Grady conferred with the Chief of his Appeals Bureau (Ms. Steller) and Mr. Whitesell and elected not to appeal because "the record was totally deficient of information or facts" that would support such an effort. *Id.* ¶ 109; *see also id.* ¶¶ 71, 107-08, 110-15.

The County's own policymaker regarding *Brady* disclosure controlled the opposition to the 440 Motion, thus insuring that the County's interests in defending against the claimed *Brady* violations were protected. *See, e.g.*, *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987) ("[O]ne whose interests were adequately represented by another vested with the authority of representation is bound by the judgment").[5] Because the 440 Motion alleged

---

(E.D.N.Y. Feb. 13, 2009) (claim against district attorney in his official capacity "would essentially be one[] against Nassau County").

[5] *See also, e.g., Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277-78 (N.Y. 1970) (privity between widow's sisters and executors of widow's estate where one of the executors "had practical control of all proceedings"); *In re Corporate Woods 11, L.P. v. Bd. of Assessment Review of*

serious constitutional violations committed by Dutchess County District Attorney itself, the

Dutchess County District Attorney had every incentive to litigate the claimed *Brady* violations

with vigor.[6] And Mr. Grady confirmed that his hand-picked prosecutor handling the matter

believed that Mr. Bozella was, in fact, guilty. SOF ¶ 112 (Mr. Grady: "you don't ask an

Assistant to try a case at all unless they believe the person they're going to prosecute is guilty.

So I asked Mr. Whitesell if that was the case, if he had any reservations about the guilt of

Bozella. He said, no, I firmly believe that he's guilty."); *see also Buechel*, 97 N.Y.2d at 305-06

("Defendants' interests were aligned with Rhodes' . . . where millions of dollars were at issue.

Thus, it is appropriate to bind them by the judgment in [the prior proceeding] under the doctrine

of collateral estoppel."). Here, the Dutchess County District Attorney, in defending its own

conduct and believing that Mr. Bozella was guilty, had the same interest as (if not greater interest

than) the County in resisting Mr. Bozella's 440 Motion.

The County's reliance on two cases involving claims for false arrest against police

departments after the disposition of a prosecution in a criminal proceeding does not alter the

outcome here. *See* Heeren Decl. Ex. 35 at 1. *Brown v. City of New York* involved a prior

prosecution for resisting arrest. 60 N.Y.2d 897, 898 (N.Y. 1983). At the criminal trial there was

a finding that the police department's arrest of the criminal defendant was unlawful. *See id.* The

criminal defendant then sued the police for false arrest and sought to bar the police from re-

litigating that issue. *See id.* In declining to apply collateral estoppel, the New York Court of

Appeals concluded that there was no privity between the Queens County District Attorney (the

prosecutors in the criminal proceeding) and the police (the defendants in the second proceeding)

---

*Colonie*, 83 A.D.3d 1250, 1252 (N.Y. App. Div. 2011) (property owner in privity with leasee
based on property owner's "acquiescence and assistance" in prior action).

[6] Mr. Grady also had an individual reputational stake in the outcome of the 440 Motion since he
was the Dutchess County District Attorney at the time of the 1990 Trial. SOF ¶ 69.

because the police were not parties to the prior criminal proceeding and had no control over it. *See id.* Similarly, *Jenkins v. City of New York* involved a prior prosecution where, during a pre-trial suppression hearing, the court found that the police lacked probable cause to arrest the criminal defendant. 478 F.3d 76, 82, 85 (2d Cir. 2007). Again, the criminal defendant sued the police for a false arrest. *See id.* at 85. The court did not apply collateral estoppel because, as in *Brown*, the police "were witnesses in, but not parties to, [the] criminal proceeding" and thus did not (and could not) control the prior proceeding. *See id.*[7]

Here, the undisputed facts show that, unlike the cases that the County cites, (i) the underlying conduct at issue in the prior criminal proceeding (the 440 Motion) was the conduct of the prosecutors in the Dutchess County District Attorney (not the police), SOF ¶¶ 1-67, (ii) the Dutchess County District Attorney (unlike the police) had complete control over the prior proceeding and was able to attempt to defend its own conduct, *id.* ¶¶ 68-105, 107-15, and (iii) the County is now sued for the same misconduct of the very same prosecutors in the very same district attorney's office that controlled and lost the prior proceeding. And perhaps the greatest distinction is that, unlike any of the cases the County relies on, the prior proceeding here was not an underlying criminal trial (or pre-trial motion) controlled by a line prosecutor, but instead was

_____

[7] A third case relied upon by the County, *Doe v. City of Mount Vernon*, *see* Heeren Decl. Ex. 35 at 2, involved a prior prosecution of several individuals for sexual abuse that resulted in convictions. 156 A.D.2d 329 (N.Y. App. Div. 1989). In the second action, the abuse victims sued the county on a negligence theory and argued that the county should be collaterally estopped from defending against the tort claims based on the prior convictions. *See id.* at 329-30. The court did not apply collateral estoppel against the county because the district attorney did not pursue or otherwise advance a negligence (or any other) theory of liability against the county in the prior criminal proceeding. *See id.* And the county, of course, had no reason to defend itself against a negligence (or any other) theory of liability in the criminal prosecution of the individuals. *See id.* The opinion also does not indicate whether any relationship existed between the criminal defendants and Westchester County in the second action. *See id.* Nevertheless, it is clear that the criminal defendants were not county prosecutors and the conduct at issue in the second action was not that of county prosecutors; thus, *Doe* presented facts far afield from those present here. *See id.*

a well-publicized post-conviction motion attended to and opposed by Dutchess County District Attorney William Grady, the County's relevant policymaker, himself. SOF ¶¶ 1-115. Thus, unlike where the police were mere witnesses with no control over the prior proceedings or stakes in their outcome, and unlike a typical prosecution, where the county policymaker may not have any personal involvement, this case presents the unusual circumstance where the policymaker was actively involved in, and controlled, the prior proceeding. *Id.*

In short, a straightforward application of New York law to the undisputed record demonstrates that, in this case, the County and Dutchess County District Attorney are in privity. The County—through its policymaker District Attorney Grady and his most seasoned trial and appellate prosecutors in the Dutchess County District Attorney—spent more than three months investigating these violations and presenting its opposition to the Dutchess County Court. SOF ¶¶ 68-105. After the Dutchess County Court ruled in Mr. Bozella's favor, SOF ¶ 106; *People v. Bozella*, 2009 WL 3364575, at *15-*16, District Attorney Grady and his colleagues found no basis to appeal the Dutchess County Court's decision, SOF ¶¶ 107-15. That resolved this issue. The County should be barred from wasting this Court's resources by seeking a "do-over" on an issue that it fought and lost simply because it does not agree with the Dutchess County Court's conclusion, and hopes for a different, and conflicting result the second time around.

        b.      ***The County's "New" Evidence Claims Do Not Satisfy Its Burden.***

The County's remaining argument, based on several documents not presented to the court with the 440 Opposition, fails for the simple reason that County had the documents before and during consideration of Mr. Bozella's 440 Motion. SOF ¶¶ 116-17. The first document, the Rosario Notes, consists of two pages of Mr. O'Neill's handwritten notes that the County claims were "unknown to the 440 court." Heeren Decl. Ex. 35 at 3, at Ex. C. The County contends that

the Rosario Notes evidence disclosure of the Upstairs Neighbors' Statements to Mr. Bozella before his 1983 trial, that they are "new" because "[a]t the time of the 440 Motion, the District Attorney did not have access to the entire file of the Crapser murder," and that the County's current counsel first discovered them after Mr. Bozella filed the Complaint in this action. *See id.*

Putting aside whether the "Rosario Notes" prove what the County claims they do (and they do not), the notes have unquestionably been in the County's possession at all times since Mr. Bozella filed the 440 Motion. SOF ¶¶ 116-17. Thus, the evidence is not "new" and cannot defeat collateral estoppel. *See, e.g.*, *Hickerson v. City of N.Y.*, 146 F.3d 99, 108 n.6 (2d Cir. 1998) (a party cannot "avoid issue preclusion simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first") (citation omitted); *Scott v. Nichols*, No. 9:10-CV-230, 2013 WL 2237840, at *6 (N.D.N.Y. May 21, 2013) ("evidence that is in existence at the time of an earlier proceeding, and capable of being discovered at that time, is not 'new evidence' merely because it is offered for the first time in a subsequent action for purposes of defeating collateral estoppel"); *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 504-05 (N.Y. 1984) ("Having been afforded a full opportunity" in the prior proceeding to present supposedly dispositive evidence, "the failure to do so . . . does not somehow transform [it] into 'new evidence' and is certainly not a basis for defeating the application of collateral estoppel.").[8]

Moreover, the Rosario Notes are not even "new." SOF ¶¶ 116-17. Although the County's counsel most recently told this Court in March 2013 that he did not "***think*** [h]e

---

[8] *See also Shaid v. Consolidated Edison Co. of N.Y., Inc.*, 95 A.D.2d 610, 625-26 (N.Y. App. Div. 1983) ("[W]here the evidence in question was possessed by the opponent of issue preclusion at the time of the prior case, and no attempt was made to have that evidence admitted, it makes no sense at all to say that that party . . . was not thereby afforded a full and fair opportunity to litigate . . . the policies of promoting fairness for all parties and of promoting judicial efficiency are hardly furthered by encouraging litigants to keep some evidence from the fact finder in the first case so that, if there is an adverse verdict, this 'new' evidence can magically appear to prevent collateral estoppel.") (Gibbons, J., concurring).

discovered [them] until after [Mr. Bozella] brought the lawsuit," Heeren Decl. Ex. 36 at 9:20-21

(emphasis added), he claimed exactly the opposite earlier in this action.  After filing the Rosario

Notes on the docket in February 2011, the County's counsel accused Mr. Bozella's counsel of

misconduct in connection with the 440 Motion in claiming that:

> [WilmerHale] has been given access to 'five boxes of documents
> concerning the Crapser murder' which are in the possession of the
> Dutchess County District Attorney's office.  ***These documents are
> the same documents which we are reviewing***. . . .  Along these
> lines as you know, yesterday we forwarded to Judge Cathy Seibel a
> two page writing found in the District Attorney's files [the Rosario
> Notes]. . . .  ***[T]hese two documents were most certainly in the
> District Attorney's five boxes when we went through them and
> we have been assured that they have been there all along,
> including during the period when you studied the files***.

Heeren Decl. Ex. 33 at 1-2 (emphasis added).  The County's counsel then reiterated the assertion

that **both parties** had the Rosario Notes well before the 440 Motion was fully submitted or

decided, stating that "the 'Rosario' pages ***were within the files [WilmerHale] reviewed on June

18, 2009 at the Dutchess County District Attorney's Office***."  Heeren Decl. Ex. 34 at 2

(emphasis added).  That two weeks *before* the County filed its opposition to the 440 Motion, and

nearly *four months* before the Dutchess County Court ruled on that motion, the Rosario Notes

were in the very boxes that the Dutchess County District Attorney reviewed when preparing its

opposition to the 440 Motion, eviscerates any claim that they constitute "new" evidence

defeating summary judgment.  SOF ¶¶ 87, 106, 117; Heeren Decl. Ex. 34 at 2; *see, e.g.,

Sammarco v. Bd. of Trs., Local 812 Health Fund*, No. 03 Civ. 433, 2004 WL 1488210, at *6

(S.D.N.Y. July 1, 2004) (trial counsel's admission in correspondence binding on client for

purposes of summary judgment); *see also Ali v. Reno,* 22 F.3d 442, 446 (2d Cir. 1994)

(admission by counsel binding on litigant).

The remaining documents identified by the County are two letters that Assistant District Attorney D. James O'Neil sent to Mr. Bozella's defense counsel approximately six months prior to Mr. Bozella's 1983 trial, each with the word "Brady" in its subject line. Heeren Decl. Ex. 35 at 2-3, at Exs. A & B. The letters purport to identify some *Brady* material, but do not disclose the *Brady* Evidence at issue in the 440 Motion or here. SOF ¶ 118. The County claims that it did not have a full and fair opportunity to respond to the 440 Motion because "[b]oth [Mr.] Bozella's trial attorney and his current attorneys eliminated any reference to [these memoranda] which had occurred from the 440 proceeding." Heeren Decl. Ex. 35 at 3. Putting aside just how Mr. Bozella might have "eliminated any reference" to documents that the Dutchess County District Attorney possessed, *see id.*; *see also* SOF ¶¶ 116-17, the documents themselves are irrelevant, and Mr. Bozella had no reason to present them to the court. Nothing in either letter suggests that any of the *Brady* Evidence was disclosed, and Mr. Bozella never contended in the prior proceeding that ***no*** *Brady* material at all was disclosed. SOF ¶¶ 5, 118. That Mr. Whitesell did not rely on these documents suggests only that they do not support the County's challenge to Mr. Bozella's claimed *Brady* violations, not that Mr. Bozella or his attorneys somehow committed misconduct that entitles the County to a do-over.

The County now says that "the DA's office should have given [the Dutchess County Court] those papers" since the office had them when opposing the 440 Motion. Heeren Decl. Ex. 36 at 9:9-10; SOF ¶¶ 116-17. Even if counsel's criticism were fair, the County had the two letters, disposing of any argument based on "new evidence." SOF ¶¶ 116-17; *see, e.g.*, *Scott*, 2013 WL 2237840, at *6 ("[e]schewing to present this evidence during the State Court proceeding does not somehow transform them into 'new evidence' and is certainly not a basis for defeating the application of collateral estoppel") (citation omitted); *see also State St. Bank &*

*Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (denying Rule 60 motion; where movant admitted that a letter that the other party supposedly concealed was already present in its files, it could not "claim that it was prevented from fully presenting its case") (citation omitted); *see also Taylor v. Texgas Corp.*, 831 F.2d 255, 259-60 (11th Cir. 1987) (where defendant already possessed information supposedly concealed by the plaintiff, the defendant could not establish that the plaintiff's failure to reveal that same information prevented it from "fully and fairly presenting its case") (citation omitted).

B.    Even If Collateral Estoppel Does Not Apply, The County Cannot Demonstrate A Genuine Issue Of Fact Regarding The Non-Disclosure Of The Holland Statement, Dobler Reports, And Alleyway Witness Statement.

Even if collateral estoppel does not apply, the County concedes that the Holland Statement and Dobler Reports were not disclosed to Mr. Bozella at or prior to the 1990 Trial, and there is no dispute that the Alleyway Witness Statement also was not disclosed.  SOF ¶¶ 252-54. Accordingly, no genuine issue of fact remains on these issues.

C.    Even If Collateral Estoppel Does Not Apply, The County Cannot Demonstrate A Genuine Issue Of Fact Regarding The Favorability Of The *Brady* Evidence.

Evidence is favorable under *Brady* "if it is either exculpatory or impeaching."  *United States v. Mahaffy*, 693 F.3d 113, 127 (2d Cir. 2012).  Favorable evidence thus includes evidence contradicting the testimony of the prosecution's key witness.  *See, e.g.*, *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (statements contradicting testimony of the only witness linking the criminal defendant to the crime favorable under *Brady*); *Giglio v. United States*, 405 U.S. 150, 154 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [the] general rule [of *Brady*]") (internal quotations and citation omitted); *Mahaffy*, 693 F.3d at 131 ("*Brady* applies to material that 'would be an effective tool in disciplining witnesses during cross-examination'") (citation

omitted). It also includes evidence supporting the defense's theory of the case, including that the crime was committed by a different person. *See, e.g.*, *Boyette v. LeFevre*, 246 F.3d 76, 91 (2d Cir. 2001) (evidence was "classic *Brady* material" because it "could have helped the defense suggest an alternative perpetrator.").

Here, there can be no dispute that each item of *Brady* Evidence was favorable to Mr. Bozella. SOF ¶¶ 6-29, 33-47, 50-60, 64, 122-225, 255-57. The prosecution's theory of the case was that Mr. Bozella and Wayne Moseley forcibly entered the front door of 15 North Hamilton Street just prior to 11:00 p.m. and that, when Ms. Crapser arrived home from Bingo, they attacked and murdered her. *Id.* ¶¶ 119, 125-26, 129-51, 194-202. The only evidence at trial placing Mr. Bozella near Ms. Crapser's home was the testimony of Moseley and Lamar Smith, which collectively described a chaotic burglary involving Mr. Bozella and Moseley breaking through two doors, a young man named Elbert Pittman roaming the street serving as a lookout, and Lamar Smith and his brother Stanley Smith watching the key events from across the street. *Id.* ¶¶ 134-51, 194-202, 224-25.

The Upstairs Neighbors' Statements. The Upstairs Neighbors' statements are contemporaneous statements of five individuals who either entered or exited the second floor apartment above Ms. Crapser's apartment, or approached her home, between 10:00 and 11:30 on the night of the Crapser Murder. SOF ¶¶ 6-29. In particular:

- Linda Miller, one of the two residents of the apartment, stated that she walked her guest Shirley Ellerbee downstairs to the front landing of the two-family home sometime between 10:30 p.m. and 11:15 p.m., where they spoke briefly about Ms. Crapser, and where Ms. Miller "did not notice anything out of the ordinary." *Id.* ¶¶ 9-13. Ms. Miller further told police that she went to bed at 12:30 a.m. and "didn[']t hear any noise downstairs" that evening. *Id.* ¶ 14.

- Cecil Carpenter, the other resident of the upstairs apartment, stated that he arrived at 15 North Hamilton Street around 10:00 p.m. and "observed absolutely nothing outside" when he came home. *Id.* ¶¶ 15-16. He further stated that he walked his brother Curtis out of the house

around 11:00 or 11:30 p.m., and at the time "did not observe anything unusual." *Id.* ¶ 17; *see id.* ¶ 18.

• Curtis Carpenter, Cecil's brother, stated that he did not see anybody when he left 15 North Hamilton Street at around 11:30 p.m. *Id.* ¶¶ 24-25.

• Shirley Ellerbee stated that she was in the upstairs apartment until sometime between 10:30 p.m. and 11:00 p.m. and, during that time, stationed herself so that she could observe out the apartment window onto North Hamilton Street to check on her car. *Id.* ¶¶ 19-21. When she left the apartment, she "observed no one in the vicinity and nothing out of the ordinary." *Id.* ¶ 22; *see id.* ¶ 23.

• Cynthia Murphy, who resided in the house next to Ms. Crapser's home at 13 North Hamilton Street and knew Lamar Smith, Stanley Smith, and Pittman, stated that she sat with her aunt on a bench on the corner of North Hamilton Street and Main Street from about 7:00 p.m. until about 11:00 p.m., "returned to her apartment around 11:00 p.m.," and "observed nothing unusual in the street and [did] not recall seeing any pedestrian in the block of her house and the [vi]cinity" at the time. *Id.* ¶¶ 26-29.

These statements were favorable to Mr. Bozella. SOF ¶¶ 6-29, 122-225, 255-57. In contrast to the prosecution's only evidence at trial implicating Mr. Bozella, *id.* ¶¶ 134-51, 194-202, 224-25, the Upstairs Neighbors informed authorities that, during the very same time (around 11:00 p.m.), they did not see anyone in the street, hear anything unusual, or observe anything wrong with two doors that Mr. Bozella and Moseley supposedly broke through, *id.* ¶¶ 9-29. Thus, these statements "would have seriously called into question the testimony of the People's key witnesses, testimony which was already rife with credibility problems." *See People v. Bozella*, 2009 WL 3364575, at *11 ("the potential testimony of the neighbors, at best, wholly contradicts the People's eyewitnesses and, at least, seriously calls their version of the events into question"); *see also, e.g.*, *Smith*, 132 S. Ct. at 630-31 (evidence impeaching witness' testimony favorable where that witness' testimony was the only evidence linking defendants to the crime); *Mahaffy*, 693 F.3d at 132 ("Romero's SEC testimony would have done more than merely provide an additional basis for impeachment. It would have called squarely into question the credibility of Amore, the government's key cooperating witness"); *Leka v. Portuondo*, 257 F.3d

89, 107 (2d Cir. 2001) (eyewitness statement favorable and material because it cast doubt on identification of petitioner and description of events by other witnesses to the crime).

The Holland Statement. The statements of Saul Holland during his February 23, 1978 interrogation for the King Murder also were favorable to Mr. Bozella. SOF ¶¶ 33-49, 122-250, 255-69. Holland detailed a gruesome attack of the elderly King sisters in their own home late at night that was notably similar to the Crapser Murder, and which happened less than ten blocks from Ms. Crapser's home and less than eight months after Ms. Crapser was murdered. *Id.* ¶¶ 37-46, 119, 125, 129-41, 269. Then, when a detective asked Holland how his co-conspirator Donald Wise recruited him to burglarize the King home, Holland responded that "[Donald and his brother Anthony Wise] had did one of these jobs before" and gotten away with it. *Id.* ¶¶ 43-44. When Holland described the prior job to the detective (as well as Mr. O'Neill and a second detective), he said that Donald Wise told him that "when [Donald and Anthony Wise] got to the house, there wasn't nobody there you know, and they just found all this money and stuff and then around, you know – they said around 9 or 10 or 11, that's when the lady came home." *Id.* ¶¶ 44-45. One of the detectives immediately responded, "Well I don't want to get into that because we're liable to get confused," thus acknowledging at least some similarity between the "prior job" and King Murder. *Id.* ¶ 46.

Holland's description of Donald Wise's prior crime matched the Crapser Murder. SOF ¶¶ 45, 119, 125, 127-51, 194-202, 226-50, 259-69; *see People v. Bozella*, 2009 WL 3364575, at *13 ("The record is barren of any other crime which could fit the description conveyed by Saul Holland to the police."). The prosecution's theory of the case at the 1990 Trial was that Ms. Crapser's assailants were inside her apartment and attacked her when she arrived home, *e.g.*, *id.* ¶¶ 148-49, and that Ms. Crapser arrived home just before 11:00 p.m., *e.g., id.* ¶ 129. Had

Holland's statement been disclosed, it could have been used, at the very least, to impeach Moseley and Smith (whose accounts did not include Donald or Anthony Wise as part of the conspiracy). *Id.* ¶¶ 142-51, 194-202, 246, 250, 255. Mr. Bozella also could have used the statement to support his defense at trial that Donald Wise was the actual perpetrator. SOF ¶¶ 226-50; *see People v. Bozella*, 2009 WL 3364575, at *13 ("there was enough information conveyed during this interview, especially given the timing of the interview in relation to law enforcement officials' reported contemporaneous belief that the King and Crapser crimes could be related, to constitute information favorable to the defense and material to guilt . . . . Surely, had the defendant been made aware of this information at the time . . . the defense would have further investigated the source of the statement . . . . This potential evidence would have also corroborated other evidence adduced at trial which supported the defendant's theory of the case" that Donald Wise had committed the Crapser Murder) (internal quotations and citation omitted); *see also, e.g.*, *Mendez v. Artuz*, 303 F.3d 411, 413-16 (2d Cir. 2002) (evidence was favorable where it suggested alternative perpetrator); *Boyette*, 246 F.3d at 91 (same); *Smith v. Secretary of N.M. Dep't of Corr.*, 50 F.3d 801, 829 (10th Cir. 1995) (police report from other crime containing information pointing to other suspect was favorable because it would have aided impeachment of prosecution witness and "immeasurably strengthened" defense that defendant was not the perpetrator).

　　The Dobler Reports. The two police reports documenting the August 1977 assault of Estelle Dobler were also favorable to Mr. Bozella. SOF ¶¶ 50-63, 122-250, 255-69. The reports show that Ms. Dobler, who survived her attack, observed that one of her two attackers was "short-about 5'1 to 5'2, good build." *Id.* ¶ 55. That description matched Donald Wise, who was reported to be between 5'1 and 5'4, 130 pounds, and "in good shape." *Id.* ¶ 258. The reports

also document that Christopher Gill stated that Donald Wise "had been the perpetrator" of this assault and had confessed to him. *Id.* ¶¶ 58-60.

The Dobler Reports documented an attack evidencing a common modus operandi with the Crapser Murder and King Murder involving burglarizing and beating an elderly woman in her own home late at night and attempting to stuff material into her mouth. *Compare* SOF ¶¶ 51-60 (Dobler Assault) *with id.* ¶¶ 38-42, 238-43, 248-50, 259-69 (King Murder) *and id.* ¶¶ 125, 129-41, 269 (Crapser Murder). They reveal that when Ms. Dobler's attacker entered her home, she was "struck [] in the forehead . . . with [a] fist knocking her backwards and to the floor" and "squeezed around the chest and punched to the floor again at which time she lost consciousness," and that she was found "laying on the floor [with] her hands, legs, and mouth . . . bound with black electrical tape" and with "a stocking [] stuffed in her mouth and then covered with tape." *Id.* ¶¶ 52-54. The stuffing of material in Ms. Dobler's mouth matched Catherine King's testimony that the attacker in the King Murder started "to tie a thing around my throat and stuff something into my mouth." *Compare id.* ¶ 53 *with id.* ¶ 264. And it strongly resembled the attack of 92-year old Emma Crapser, who was brutally beaten, whose hands and feet were tied with "some kind of cord" and had "five other pieces of material jammed and wrapped with granny knots into her mouth, pushing her tongue back into the back of her throat." *Id.* ¶¶ 53, 134-41.

The Dobler Reports were favorable to Mr. Bozella because they indicate that Donald Wise was the prime suspect in a crime matching both the Crapser Murder and the King Murder. SOF ¶¶ 51-60, 125, 129-41, 238-43, 248-50, 259-69. Specifically, it was the third attack of an elderly woman in her own home late at night in the same eight block area in Poughkeepsie, during the same eight month period. *E.g., id.* ¶¶ 33, 39, 50-52, 54, 60, 119, 125, 129-33, 259,

261-62, 268-69; *see People v. Bozella*, 2009 WL 3364575, at *14 ("Although the People attempt to minimize the similarities among the three assaults, the record reveals otherwise. Indeed, the similarities are striking. In addition to the advanced age of the victims, the proximity of the crimes in time and location and information connecting Donald Wise to all three assaults, the perpetrators tried to or did stuff material down the victims' throats. Further, in the King and Crapser murders, the perpetrators had apparently gained entry to their victims' apartments earlier in the day to 'case' the location."). Indeed, the fact that the Dobler Reports were in the Dutchess County District Attorney's files for the King Murder demonstrates that the Dutchess County District Attorney viewed the Dobler Reports as evidence useful to prosecute Donald Wise for the King Murder. SOF ¶ 50. The same evidence would have been favorable to Mr. Bozella to show that Donald Wise was responsible for all three crimes, which shared a similar modus operandi. *See People v. Bozella*, 2009 WL 3364575, at *14 ("[g]iven that the Dobler Report was located inside the King file and the People and police reportedly considered a link between the King and Crapser murders, the court finds that this information would have been favorable to the defense and material to guilt") (internal quotations and citation omitted); *see also, e.g.*, *Mendez*, 303 F.3d at 413-16; *Boyette*, 246 F.3d at 91.

The Alleyway Witness Statement. The Alleyway Witness Statement is a statement of a female neighbor on either June 15 or June 16, 1977 informing City of Poughkeepsie Detective Pete Murphy that she heard loud noises in an alley adjacent to Ms. Crapser's home on the night of the Crapser Murder and that the noises sounds like garbage cans being moved. SOF ¶ 64. Detective Murphy and Lieutenant Regula proceeded to investigate whether the window to Ms. Crapser's bathroom—which faced the same alley—could have been the point of entry. *Id.* This statement was favorable to Mr. Bozella because it "clearly support[ed]" his theory at the 1990

Trial that Donald Wise was the actual perpetrator of the Crapser Murder and gained access through the bathroom window. *People v. Bozella*, 2009 WL 3364575, at *15; *see* SOF ¶¶ 226-50. Indeed, this contemporaneous evidence matched the physical evidence of Donald Wise's fingerprint evidence on the inside of Ms. Crapser's bathroom window presented at trial as well as Madeline Dixon South's trial testimony that Donald Wise claimed to have gained access to the home through an alley window and was involved in the murder. *See id.*

D.      Even If Collateral Estoppel Does Not Apply, The County Cannot Demonstrate A Genuine Issue Of Fact Regarding The Materiality Of The *Brady* Evidence.

The materiality standard for a *Brady* violation is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). "[A] showing of materiality does not require [a] demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.* at 434. Rather, the criminal defendant must show only a "reasonable probability of a different result." *Id.* (internal quotation marks omitted) (citing *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

Here, there is no genuine issue of fact regarding the materiality of the *Brady* Evidence. *E.g.*, SOF ¶¶ 6-29, 33-47, 50-60, 64, 119, 122-269. As the Dutchess County Court concluded after reviewing the 1990 Trial transcript, "the evidence against Dewey Bozella was far from overwhelming." *People v. Bozella*, 2009 WL 3364575, at *10, *15. As the court noted:

> The heart of the People's case consisted of the testimony of two career criminals, who repeatedly changed their stories during the long history of this case, who admittedly were under the mid-altering substances the day of the murder and who finally testified for the prosecution only after receiving favorable deals in exchange for their testimony, years after Emma Crapser was murdered. Lamar Smith and Wayne Moseley were the only witnesses who placed the defendant at the scene, and only Moseley placed [Mr. Bozella] inside the victim's apartment. Their testimony was contradicted by Lamar's brother, Stanley Smith,

> Wayne Moseley's mother, and Madeline Dixon South and, moreover, was wholly unsupported by any forensic evidence. Indeed the only forensic evidence tending to connect anyone to this crime is the fingerprint of Donald Wise, who allegedly confessed to Madeline Dixon South that he was involved in the Crapser Murder and who was convicted of murdering another elderly woman in an alarmingly similar incident.

*See id.* at *10; *see also* SOF ¶¶ 122-250, 259-69.

Given the lack of evidence implicating Mr. Bozella at trial, "additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *See, e.g.*, *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996) (quoting *United States v. Agurs*, 427 U.S. 97, 113 (1976)). And, where, as here, evidence contradicts the prosecution's key witness and points to another suspect, there can be no doubt that such evidence would be likely to change a guilty verdict. *See, e.g.*, *Smith*, 132 S. Ct. at 630-31; *Mendez*, 303 F.3d at 413-16; *Boyette*, 246 F.3d at 91.

**CONCLUSION**

For the foregoing reasons, the Court should grant Mr. Bozella partial summary judgment that the County violated Mr. Bozella's constitutional rights under *Brady* by not disclosing at or prior to the 1990 Trial any of the *Brady* Evidence, which was favorable to Mr. Bozella and material to the outcome of the 1990 Trial.

Dated:   New York, New York
              June 14, 2013

Respectfully submitted,

**WILMER CUTLER PICKERING
   HALE AND DORR LLP**

By: /s/ Peter J. Macdonald
Peter J. Macdonald
Ross E. Firsenbaum
Shauna K. Friedman
Craig R. Heeren
Christine D. Ely
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone:  (212) 230-8800
Fax:  (212) 230-8888

*Attorneys for Plaintiff Dewey R. Bozella*