# WILMERHALE

January 17, 2014

Peter J. Macdonald

+1 212 937 7223 (t)
+1 212 230 8888 (f)
peter.macdonald@wilmerhale.com

**VIA ECF**

Honorable Cathy Seibel
United States District Court
 for the Southern District of New York
The Honorable Charles L. Brieant Jr. Federal Building and
 United States Courthouse, Room 218
300 Quarropas Street
White Plains, NY 10601-4150

Re:   *Bozella v. County of Dutchess, et al.*, No. 10 Civ. 4917 (S.D.N.Y.)

Dear Judge Seibel:

      I write on behalf of Plaintiff Dewey R. Bozella pursuant to the Court's January 8, 2014 Order regarding the applicability of *Matusick v. Erie Cnty. Water Auth.*, No. 11-1234, 2014 WL 30694 (2d Cir. Jan. 6, 2014) ("*Matusick*") and *Jones v. City of New York*, No. 12-CV-1739, 2013 WL 6814796 (E.D.N.Y. Dec. 20, 2013) ("*Jones*") to the parties' summary judgment motions.

      ***Collateral Estoppel.*** *Matusick* confirms that the issues here and in the 440 Action are "identical" under New York collateral estoppel law. *See* Pl. Mem. at 4-5; Pl. Reply at 1-2, 6, 9-10. In *Matusick*, a state agency initiated an administrative hearing against an employee based on alleged misconduct. 2014 WL 30694, at *3-4. The hearing officer found misconduct supporting the employee's termination. *Id.* In the employee's subsequent employment discrimination action, the agency argued that collateral estoppel barred re-litigation of the discrimination claim—which required proof of discriminatory intent—because the hearing officer had already concluded that there were legitimate bases for the employee's dismissal. *Id.* at *7.

      The Second Circuit noted that the "critical" question in determining if an issue is "identical" is whether it is one of fact or law. *Id.* at *11. If "factual," then it "need only deal with the same past events to be considered identical." *Id.* (internal citation omitted). But if legal, then "the legal standards to be applied must also be identical." *Id.* The Court then held that collateral estoppel barred re-litigation of the hearing officer's "factual findings"—*i.e.*, that the employee engaged in misconduct. *Id.* at *12. But the Court held that collateral estoppel did not apply to the hearing officer's legal conclusions because the legal framework in the administrative action (focused solely on whether the employee engaged in misconduct) "differ[ed] substantially from the legal framework . . . applicable to [the] federal [action]" (where a finding of discriminatory intent is independent of employee misconduct). *Id.*

      Here, Judge Rooney unquestionably concluded that each category of *Brady* Evidence was not disclosed to Mr. Bozella at or before the 1990 Trial, a "factual finding" identical to the issue

Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007
Beijing    Berlin    Boston    Brussels    Frankfurt    London    Los Angeles    New York    Oxford    Palo Alto    Waltham    Washington

WILMERHALE

Honorable Cathy Seibel
January 17, 2014
Page 2

of non-disclosure in this action. *See* Pl. Mem. at 4-5; Pl. Reply at 1-2. Similarly, there is no dispute that the issue of whether the *Brady* Evidence was favorable to Mr. Bozella is a legal question presenting an identical standard in both actions. *See* Pl. Mem. at 4-5; Pl. Reply at 6. Accordingly, *Matusick* confirms that these two issues are identical in both actions.

Mr. Bozella acknowledges that the "reasonable probability" standard here differs from the "reasonable possibility" standard in state court. *See* Pl. Mem. at 5, n.3; Pl. Reply at 9. But these standards do not "differ substantially" as both require comparing the *Brady* Evidence to the 1990 Trial record. *See* Pl. Reply at 9-10. And unlike the hearing officer in *Matusick*, Judge Rooney performed this calculus and concluded that the *Brady* Evidence was "compelling" and "overwhelming" and thus obviously material under either standard. *See id.* In any event, even if the Court declines to apply collateral estoppel to this issue, *Matusick* confirms that the differing legal standard could preclude a finding of collateral estoppel only as to materiality, not to the separate issues of non-disclosure and favorability.

**The County's Unconstitutional Policy**. *Matusick* also confirms that disputed facts remain regarding the unconstitutional *Brady* policy. *See* Pl. Opp. at 4-9. *Matusick* re-affirms that a policy need not be formally documented or adopted, but can be based on non-policymaking employees' actions that are "sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisors must have been aware." 2014 WL 30694, at *24 (internal citation omitted). In *Matusick* the "pervasiveness" of discrimination and harassment and "lack of response" by supervisors permitted a reasonable jury to conclude that the supervisors' acquiescence "allowed the harassment to become the custom and practice, if not the policy, of the [municipality]." *Id.* at *25. Here, too, a reasonable jury could conclude that the ADAs' pervasive use, and DA Grady's knowledge and endorsement, of an unduly narrow *Brady* standard gives rise to a policy or custom. Pl. Opp. at 4-9.

**Immunity**. Both *Matusick* and *Jones* confirm that controlling Circuit authority mandates a conclusion that the County is not immune. Pl. Opp. at 18-21 (citing cases). In *Jones*, Judge Weinstein granted the city's motion to dismiss because the plaintiff failed to allege adequately that the Kings County DA was on notice of a need to train ADAs regarding disclosure of exculpatory DNA evidence. *See* 2013 WL 6814796 at *1, 5. In dicta, Judge Weinstein opined that sovereign immunity "should" shield the City from liability (*id. at* *9), but acknowledged that his belief is contrary to Second Circuit precedent. *See id.* at *6 (acknowledging that the Circuit holds that the DA is a state actor only when deciding "when and in what manner to prosecute a suspected offender"); *id.* (acknowledging that the Circuit held in *Walker* that "the City [] is the municipal entity for which the [DA] is the policymaker when deciding training policies regarding legal responsibilities of ADAs in their prosecutorial functions" but opining that the Circuit's reasoning was "unexplained"); *id.* at *7 (acknowledging that *Walker* "suggest[s]" that "unlike prosecutorial conduct, the disciplinary and administrative practices of district attorneys

WILMERHALE

Honorable Cathy Seibel
January 17, 2014
Page 3

are municipal functions"); *id.* (acknowledging that *Walker* holds that "when acting as a manager of personnel or office administrator, the [DA] is a municipal policymaker and that supervising and training prosecutors on their *Brady* obligations are municipal administrative functions"). The opinion also does not refer to the Second Circuit's later decision in *Myers* re-affirming *Walker*, *see* Pl. Opp. at 18-19 & n.15, as well as New York Appellate Division cases articulating the same rule as *Walker*, *see id.* at 18-20 & n.13 (citing *Ramos* and *Johnson*).

Respectfully, Judge Weinstein errs in relying on *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009). The Supreme Court has held that a municipality is liable for conduct for which an individual enjoys immunity. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 474 n.2, 484 (1986) (county liable where prosecutor was absolutely immune); *see also Owen v. City of Independence,* 445 U.S. 622, 638 (1980). The Second Circuit re-affirmed this very point last week. *See Matusick,* 2014 WL 30694, at *24 (holding a municipal entity "does not enjoy **absolute or qualified immunity** from section 1983 suits") (emphasis added); *see also* Pl. Opp. at 18 n.11. And, as Judge Weinstein acknowledges, *see Jones,* 2013 WL 6814796, at *9, the Ninth Circuit rejected this analysis in a case arising directly out of *Van de Kamp,* concluding that, even though individual prosecutors were immune, a *Monell* claim against the municipality was valid because the DA acted as a local official "when establishing policy and training related to the use of jailhouse informants" (which led to a *Brady* violation in Goldstein's criminal case), *see Goldstein v. City of Long Beach,* 715 F.3d 750, 751-53, 760 (9th Cir. 2013), *cert denied,* No. 13-415, 2014 WL 102431 (U.S. Jan. 13, 2014).[1] Indeed, the Ninth Circuit expressly held that *Van de Kamp* was inapplicable because the *Monell* and absolute immunity inquiries "are separate." *Id.; see also id.* at 765 (Reinhardt, J. concurring) (noting that the Second Circuit in *Walker* "c[a]me to the same conclusion that we reach here").

Finally, Judge Weinstein's analysis in *Jones* implicitly rejects the County's attempt to distinguish *Walker* as a failure to train claim distinct from Mr. Bozella's unconstitutional policy claim. *See* Pl. Opp. at 19-20. Judge Weinstein recognizes that a municipality is not immune for "what can be categorized as municipal policies or customs." *Jones,* 2013 WL 6814796, at *9; *see id.* at *8 (opining that immunity should attach because *Jones* "does not deal with [] an administrative municipal policy or custom"); *see also Myers v. Cnty. of Orange,* 157 F.3d 66, 76 (2d Cir. 1998) (*Monell* applying to DA policy, not failure to train).

---

[1] This week the Supreme Court denied a petition for *certiorari* on the following question: "Under *McMillian,* **Van de Kamp** and *Pitts,* do California [DAs] act on behalf of the State and not a county in formulating policy regarding the creation and use of an information-management system concerning jailhouse informants in preparing for and prosecuting cases at trial?" Pet. for Writ of Cert., *Cnty. of Los Angeles v. Goldstein,* No. 13-415 (Sept. 30, 2013) (emphasis added).

3

WILMERHALE

Honorable Cathy Seibel
January 17, 2014
Page 4

Respectfully submitted,

*[signature]*

Peter J. Macdonald