UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DEWEY R. BOZELLA,                                    10 CIV 4917 (CS)

                            Plaintiff,
   -against-

THE COUNTY OF DUTCHESS,

                            Defendant.
--------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION AND TO REARGUE

Patrick T. Burke, Esq.
Michael K. Burke, Esq.
Phyllis A. Ingram, Esq.
Burke, Miele & Golden, LLP
*Attorneys for Defendant County of Dutchess*
40 Matthews Street, Suite 209
Post Office Box 216
Goshen, New York 10924
(845) 294-4080

## TABLE OF CONTENTS

Preliminary Statement..................................................................................................1

A.  The evolution of Plaintiff's claim demonstrates it is predicated upon a custom and policy claim and not upon a failure to "set policy", to "implement a policy or practice" or to "manage the office according to a policy or practice" (Exhibit A at 23, 41, 56)............................................................1

B.  The Court should have found that the County was entitled to summary judgment as a matter of law ...............................................................................5

C.  The Court erroneously based its decision on conduct of Mr. Grady not alleged in the AC and therefore misapplied controlling law and consequently erroneously found that the DA as a final policy maker could bind the County rather than the State for the alleged acts in the Amended Complaint ........................................................................................9

Selected Factual Errata  .............................................................................................14

A.  The Court's description of the location from which Cynthia Murphy said "she did not see the plaintiff or the witness Lamar Smith…" is wrong (i.e. p. 3-4 on a park bench near the front door of Ms. Crapser's building..................14

B.  The Court distinguishes two cases cited by the defendant (*Grossman* and *Volpe*) ...............................................................................................................14

Conclusion    ...............................................................................................................15

## TABLE OF CASES

*Baez v. Hennessey*, 853 F.2d 73 (2d Cir. 1988)..................................................................9

*Berry v. Baca*, 379 F.3d 764 (9th Cir. 2004) ......................................................................8

*Board of County Commrs. v. Brown*, 520 U.S. 397 (1997)................................................8

*City of Canton v. Harris*, 489 U.S. 378 (1989)...................................................................5

*City of St. Louis v. Prapotnik*, 108 S.Ct. 915 (1988) ..........................................................6

*Connick v. Thompson*, 131 S.Ct. 1350 (2013) ....................................................................2

*Davis v. City of New York*, 228 F.Supp.2d 327 (S.D.N.Y. 2002) .......................................5

*Deskovic v. City of Peekskill*, 2012 WL 4435316 (S.D.N.Y. 2012) ...................................5

*Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991) ...........................................9, 12

*Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013) .......................................13

*In re Dayton*, 786 F.Supp.2d 809 (S.D.N.Y. 2011) ............................................................5

*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000) ..................................................................5, 7

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) .........................................................7

*Jones v. City of New York*, 988 F.Supp.2d 305 (E.D.N.Y. 2013) ...............................11, 12

*McLaurin v. New Rochelle Police Officers*, 368 F.Supp.2d 289 (S.D.N.Y. 2005)....5, 9, 10

*McMillian v. Monroe Cnty.*, 520 U.S. 781 (1997).............................................................12

*Miller v. County of Nassau*, 2013 WL 1172833 (E.D.N.Y. 2013) ....................5, 9, 10, 13

*Monell v. Dept of Soc. Servs.*, 426 U.S. 658 (1978) ..............................1, 2, 3, 5, 6, 7, 8

*Myers v. County Orange*, 157 F.3d 66 (2d Cir. 1998)............................................9, 10, 12

*Ramos v. City of New York*, 285 AD.2d 284 (1st Dept. 2001)..........................................12

*Reynolds v. Giulani*, 506 F.3d 183 (2d Cir. 2007)..............................................................7

*Ryan v. City of Watertown*, 1998 WL 709798 (N.D.N.Y 1998)...................................9, 10

*Schloss v. Bouse*, 876 F.2d 287 (2d Cir. 1989) .................................................................... 10

*Shah v. Helen Hayes Hosp.*, 252 F.App'x 364 (2d Cir. 2007) ............................................ 13

*Sorluco v. NYC Police Dept.*, 971 F.2d 864 (2d Cir. 1992) .................................................. 8

*Taylor v. Kavanaugh*, 640 F.2d 450 (2d Cir. 1981) ............................................................ 10

*Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999) .................................................................. 13

*Triano v. Town of Harrison, NY*, 895 F.Supp.2d 526 (S.D.N.Y. 2012) .......................... 7, 8

*Van De Kamp v. Goldstein*, 55 U.S. 335 (2009) ....................................................... 11, 12, 13

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) ....................................... 9, 12, 13

**PRELIMINARY STATEMENT**

This Court's September 23, 2014 decision which denied that part of Defendant's motion for summary judgment on Plaintiff's *Monell* claim against Defendant County of Dutchess ("County") based upon the finding of a question of fact as to whether a custom and policy existed was erroneous. The Court's decision also erroneously found DA Grady could be considered a final policymaker for the County rather than the State based upon the allegations in the Amended Complaint ("AC") and incorrectly applied controlling law. Reconsideration is appropriate because it appears this Court misapprehended the nature of Plaintiff's claim. Plaintiff's AC is predicated upon the claim that a County custom and practice allegedly caused a violation of his constitutional rights. It is not predicated upon any policymaker's authority or management of the District Attorney's office in the area that caused Mr. Bozella's alleged constitutional violation. (AC ¶¶210, 211) Thus, this Court's finding that "the conduct challenged in the instant case involves his (Grady's) managerial role in allegedly implementing an unconstitutional policy" misapprehended Plaintiff's claim. (Burke Aff., Ex. AAAAAA at ¶¶210-211)

**A) The evolution of Plaintiff's claim demonstrates it is predicated upon a custom and policy claim and not upon a failure to "set policy", to "implement a policy or practice" or to "manage the office according to a policy or practice" (Exhibit A at 23, 41, 56)**

In his original complaint, Plaintiff sought to attach liability against the County pursuant to 42 USC 1983 based upon two theories of *Monell* liability: 1) a failure of the DA to train prosecutors to comply with *Brady* and, 2) the delegation of policymaking authority to assistant district attorneys by allowing them to decide what constituted *Brady* material. Therefore, Plaintiff alleged that in the *absence* of an official policy regarding *Brady*, Defendant O'Neill acted as an official policymaker when he violated *Brady* (Original Complaint ("OC") at ¶¶186-196 [Dkt. No. 1]). To this end, Plaintiff asserted "***Each ADA applied Brady as he or she understood it***". (*Id.* at ¶ 160;

1

*see also, Id.* at ¶¶157-172 (emphasis supplied). Plaintiff's original complaint specifically contained allegations that DA Grady and King knew of O'Neill's practices, but failed to initiate training or supervision to ensure they were altered, and that the County's need to "act was obvious and the failure to act so likely to result in constitutional violations that County's policymakers' failure to act rose to deliberate indifference." (*Id.* at ¶¶ 161-164, 194).

In dismissing Plaintiff's original claims against the County the Court found that Plaintiff had failed to plead a pattern of similar violations as required by the Supreme Court's decision in *Connick v. Thompson,* 131 S. Ct. 1350 (2013) and therefore could not impose liability against the County as a matter of law. (Burke Affirmation, Ex. ZZZ at 29-31)[1] The Court aptly noted that "if the delegation of individual case-related decisions to trial prosecutors rendered them policymakers, *Monell's* and *Pembaur's* protections would be eviscerated, as every ADA would be a "final policymaker" for a given case. No authority exists for such a proposition." *Id*. at 32.

Plaintiff then sought to amend his Complaint and submitted a Proposed Amended Complaint (See "PAC", Docket 67-1). Plaintiff's PAC eliminated allegations of liability predicated on acts of individual ADAs and substituted a theory that the County permitted and encouraged misconduct of its subordinate employees and required such conduct as part of their policies and alleged that the County had an unconstitutional disclosure policy that caused Mr. Bozella's alleged rights violations, and that DA Grady as final policy maker for the County, failed to act to train and/or supervise Assistant District Attorneys. (*Id*. at ¶8(a-d)) Plaintiff alleged that DA Grady, as the final policymaker was "aware of *Brady* material in Mr. Bozella's case," and "as

---

[1] Reference to Burke Affirmation is to the Affirmation submitted in support of the Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment. Defendant incorporates by reference the exhibits annexed to the Defendants' motion and reply as well as the statements contained in its statement of facts and counter-statement of facts.

2

administrator of the office and supervisor of Defendant O'Neill, ensured [it] was not disclosed." (*Id*. at ¶ 8(c)) Specifically, it alleged that the County was "sued for the constitutional harm Mr. Bozella has suffered as a direct result of the County's policies, customs, and/or practices with respect to *Brady*; acts of a County policy-maker in violation of *Brady*, such that the policies, customs, and/or practices and implementation were one; and a County policy-maker's failure to act in training and supervising assistant district attorneys with regard to *Brady* and federal law when the need was so obvious that the failure to act demonstrated deliberate indifference to criminal suspects' constitutional *Brady* rights." (*Id*. at ¶¶ 282-287).[2]

The Court's decision on Plaintiff's motion to file a PAC, correctly found Plaintiff had failed to assert a Section 1983 claim against the County based upon a training/supervision theory because despite Plaintiff's "new information" it had failed to plead the requisite pattern of similar acts. (Burke Aff., Ex. JJJ at 26-28) The Court also correctly dismissed the claims against Mr. Grady as a final policymaker. (*Id*. at 26:18-20). This Court permitted Plaintiff to proceed against the County only on "the *Monell* claim against the County for the alleged unconstitutional policy of not disclosing *Brady* material unless it's truly exculpatory." (Burke Aff., Ex. JJJ)

Thus, limited by the Court's prior rulings, Plaintiff's Amended Complaint ("AC") filed on January 31, 2014, asserts only a single *Monell* Count against the County predicated upon the claim that "the County maintained an unconstitutional disclosure policy in violation of the requirements set forth in *Brady* and it progeny."  (Burke Aff., Ex. AAAAAA at ¶ 210, ¶ 6).  It does not contain the allegations found in PAC ¶ 8(a-d) (and that part of PAC ¶12 that relates to acts of a policy maker in violation of *Brady* and the County's policy maker's failure to act to train and supervise

---

[2] The County was also sued on the theory that it had allegedly instructed the City of Poughkeepsie police officers to destroy their notebooks.  (*Id*. at ¶¶ 280-281).

3

Assistant District Attorneys regarding *Brady*). Plaintiff's claim asserts a single count against the County that "this unconstitutional policy directly caused the violation of Mr. Bozella's constitutional rights." (*Id*. ¶ 211)  Plaintiff's AC contains no allegations and/or claim that any final policymaker "managed", "implemented", "supervised", or even "acquiesced in" an unconstitutional policy.  There is no claim that any alleged management duties of a final policymaker caused Mr. Bozella's constitutional violation.  Rather, it is the alleged unconstitutional policy itself that plaintiff claims caused the violation of his constitutional rights. (*Id*. ¶ 6, 211).

Despite the foregoing, in his opposition to defendant's motion for summary judgment, the Plaintiff argued that his claim was based:

> "on the district attorney's management of Brady issues in the office" (P's MOL p. 2 no reference to the Amended Complaint provided); 2) that "Mr. Bozella alleges that DA Grady was the final policymaker regarding the County's unconstitutional *Brady* disclosure policy" (citing to Am. Compl. ¶6) (however, AC ¶ 6 alleges only that the County had delegated to DA Grady final policymaking authority for the "supervision and control" of the office generally);  3) that Mr. Bozella's claim "that the DCDAO implemented an unconstitutionally narrow disclosure policy under *Brady* (see, e.g., Am. Compl. ¶ 3, 6, 33, 46, 68, 166-200, 205-213), is based on DA Grady's managerial duties …)" (See P.MOL p. 19) (however, an examination of the referenced AC paragraphs reflects an absence of any articulation that any District Attorney "implemented" any policy or was based on "DA Grady's managerial duties") and 4)  that Plaintiff's "claim is that the County's policymaker's implementation of an unconstitutional policy caused his wrongful conviction." (See PMOL p. 20 ftnte. 14, referring to AC¶¶166-200; however with the exception of ¶ 200, these allegations set forth only the instances where the alleged unconstitutional action is claimed to have been practiced by various ADAs. ¶200 alleges that neither DA Grady or DA King promulgated a policy manual on *Brady*).

Indeed, none of the varied articulations of a contended management theory of liability by and through a final policy maker of the DCDAO argued by the Plaintiff in his opposition papers is found in the AC. Nor is any such theory alleged to have caused any constitutional deprivation.  It is well settled that a party may not argue in a motion paper a claim that is not alleged in his

4

complaint *Miller v. County of Nassau,* 2013 WL 1172833 at *5 (E.D.N.Y. 2013)*; citing Deskovic v. City of Peekskill,* 2012 WL 4435316 at *14 n. 27 (S.D.N.Y. 2012).

**B) The Court should have found that the County was entitled to summary judgment as a matter of law**

It is well-settled that "in determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *In re Dayton*, 786 F.Supp.2d 809, 820 (S.D.N.Y. 2011), citing *Davis v. City* of New York, 228 F.Supp.2d 327 (S.D.N.Y.2002) aff'd, 75 Fed Appx. 827 (2d Cir. 2003) (See DMOL, 5) As set forth by Defendant in its motion for summary judgment, a plaintiff may establish a policy, custom or practice by alleging and establishing that:

> "a municipal official with final policymaking authority directly committed or commanded the alleged constitutional violation" citing *Monell*, 426 U.S. 16 690; *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) "that a policy maker indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy, *Monell*, supra at 694; *Jeffes*, supra at 61; or that a municipal policymaker failed to adequately train subordinates, if such failure amounts to "deliberate indifference" to the rights of the individuals who interact with he municipal employees." *Miller, supra at 313-314* citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Jeffes*, supra at 61.

*Miller v. County of Nassau*, 467 F.Supp.2d 308, 313-314 (EDNY 2006). (See also *McLaurin v. New Rochelle Police Officers*, 368 F.Supp.2d 289, 293 (S.D.N.Y 2005) cited to in Defendant's MOL at 5)

Plaintiff's claim against the County here is predicated upon a policy which was established solely through a "custom and usage", i.e. the alleged practice of ADAs within the District Attorney's Office of failing to produce to defense counsel all favorable evidence. (Burke Aff., Ex. AAAAAA at ¶ 210, MOL at 11-17). To establish a claim against a municipality predicated on this "custom and usage" theory it is well-settled that "such practices of state officials" need "be so

5

permanent and well settled as to constitute a 'custom or usage with the force of law." *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978); see also, *City of St. Louis v. Prapotnik*, 108 S.Ct. 915 (1988).

In its motion for summary judgment Defendant contended that the Plaintiff had failed to establish a question of fact as to the existence of a long-standing custom, practice or policy that the County did not adhere to the rule of Brady and its progeny by not producing all favorable evidence, including impeachment evidence or evidence that pointed to an alternative suspect. (DMOL at 11-17 and SOF referenced therein; DReplyMOL at 8-11 and CSOF referenced therein) Defendant submitted proof that in fact, established the "non-existence" or "non-maintenance" of any manifest misconduct as a matter of law. (*See Id*. and SOF and CSOF referenced therein) Indeed, the evidence submitted in connection with Defendant's motion for summary judgment, reflected that on two occasions in 1978, the words "truly exculpatory," the alleged offensive language were articulated in disclosure documents but were not articulated at any other time, that sometimes the words "tends to exculpate" were tersely articulated but many times they were supplemented with language relating to specific requests and/or documentation that acknowledged the duty to disclose favorable, impeachment or alternative suspect information, that there was an absence of any evidence of *Brady* violations which occurred within the office (despite the Plaintiff having had access to the County Clerk's files and those of the District Attorney), that the Appellate Division had dismissed claims by two criminal defendants that a *Brady* violation had occurred in their cases, and that the testimony and affidavits from personnel currently and formerly within the district attorney's office showed an absence of any such *Brady* policy that could satisfy the standard required by *Monell*; i.e, a custom or practice so persistent and widespread that it carried the force of law. Monell, supra at 690. (See DMOL at 11-17 and SOF referenced therein; RMOL

at 8-11, SOF and CSOF referenced therein)

This Court's finding that there were some instances where the *Brady* disclosure obligation was properly articulated and that there was some evidence suggesting a non-duly narrow reading of *Brady*, and vice versa, (9/23/14 Decision at 44) should have, as a matter of law, provided a basis for the court to find summary judgment on behalf of the County. There was clearly no evidence of a "widespread offensive practice." By virtue of the proof of evidence of proper articulation and practice that could have provided constructive notice to the final policymaker of a need to act that was "permanent and well-settled" the possibility of satisfying *Monell's* requisite rigorous standard is vitiated. (See, *Monell*, supra 691)

It is well-settled that "*Monell's* policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giulani*, 506 F.3d 183 192 (2d Cir. 2007). See, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 109 (1989) (municipal liability may attach where policy maker acquiesces in longstanding practice that 'constitutes operating procedure of local government'); *Green v. City of NY*, 465 F.3d 65, 80 (2d Cir. 2006). "Such a pattern, if sufficiently persistent or widespread as to acquire the force of law may constitute a policy or custom within the meaning of *Monell*." *Reynolds*, supra at 192 citing *Monell*, supra at 690-691, *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000); *Turpin v. Mailet*, 619 F.2d 196 (2d Cir. 1980). The standard required to make such a determination is "stringent causation and culpability". *Reynolds*, supra at 192. Only "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" *Triano*

*v. Town of Harrison*, NY, 895 F.Supp.2d 526, 534 (SDNY 2012), citations omitted. Subordinate misconduct must be "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Triano*, supra at 534 citing, *Sorluco v. NYC Police Dept.*, 971 F.2d 864, 871 (2d Cir. 1992). (See, DMOL 16, RMOL at 10-11) Not only does the Plaintiff not allege the existence of a pattern, or that any policymaker was deliberately indifferent to subordinate employees' misconduct so as to constitute "acquiescence" in it, the proof in the record establishes the absence of any pattern of misconduct or of policymaking official's deliberate indifference to it. The Plaintiff failed to raise an issue of fact in this regard.

In this decision, this Court said that whether "you call it "setting policy" or "implementing a policy or practice" or "managing the office according to a policy or practice," I still think it meets *Monell*." Plaintiff's claim, however, is not predicated upon a challenge to a decision made by the County to "implement" or to "set" an unconstitutional policy (Ex. A at 56). Plaintiff does not allege that the DA implemented "a policy **to apply** *Brady* too narrowly" (Ex A. at 41, 56). Nor does Plaintiff claim that the DA managed his office with an unconstitutional *Brady* policy. Plaintiff's claim is not a supervisory liability claim. The Court's finding in this regard was incorrect. Rather Plaintiff challenges the alleged unconstitutionally narrow policy itself (Burke Aff., Ex. AAAAAA at ¶ 210) and claims that the policy itself, not the act of or the inaction of policymaker caused his alleged violation (*Id*. at ¶ 211). This is a distinction with a difference. See, for example, *Berry v. Baca*, 379 F.3d 764, 768, 770, 771 (9th Cir. 2004) where the court distinguished between the two types of theories. Thus, based upon the allegations in the AC Plaintiff must establish the existence of a constitutionally offensive practice and custom and its causal connection to the injury. See, *Board of County Commrs. v. Brown*, 520 U.S. 397, 398 (1997). Accordingly, in its motion for summary judgment, Defendant not only argued that the proof in the record failed to establish the

existence of any custom or practice as a matter of law but that there was no proof of the necessary causal link between the alleged practice and custom to Mr. Bozella's alleged constitutional violation. (DMOL 11-17 and RMOL 5-11)

**C) The Court erroneously based its decision on conduct of Mr. Grady not alleged in the AC and therefore misapplied controlling law and consequently erroneously found that the DA as a final policy maker could bind the County rather than the State for the alleged acts in the Amended Complaint**

In its September 23, 2014 decision this Court did not apply *Miller v. County of Nassau*, 467 F. Supp.2d 308, (EDNY 2006). The Court's holding in *Miller* is, however, applicable to the issue of whether the County can be bound for the acts alleged by the identified final policy maker or whether she serves as a State actor. *Miller* is binding on the court because it was based upon precedential case law from this Circuit that is controlling. This Court found rather that "Plaintiff's claim that the DA managed his office with an unconstitutional *Brady* policy that failed to require disclosure of evidence unless it was truly exculpatory, constitutes an allegation that fits with the realm of *Walker* and *Myers*." (Ex. A at 41)

In *Miller*, Plaintiff alleged that when District Attorney Rice became the District Attorney she implemented the alleged offensive plea bargaining policy. *Miller* supra at 311. At the commencement of its analysis the *Miller* court noted that "In this Circuit, a county may be liable pursuant to §1983 for the actions of the district attorney in limited circumstances" *Miller,* supra at 314 citing *Ryan v. City of Watertown*, 1998 WL 709798, *5, (NDNY 1998). The Court reviewed the law regarding the role of the District Attorney and the circumstances in which a municipality may be held liable for the District Attorney's actions.[3] The *Miller* court noted that in *Walker* the

---

[3] The Miller court cited to *Baez v. Hennessey*, 853 F.2d 73 (2d Cir. 1988), *Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991), *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), *Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998), *Ryan*, supra, *McLaurin*, supra, *McLaurin v. New Rochelle Police Officers*, 368 F. Supp.2d 289, 295 (SDNY2005) (wherein the

Plaintiff was challenging, not the district attorney's prosecutorial decisions, but rather, the district attorney's management of the district attorney's office, (allegations missing here) and specifically the failure to supervise and train assistant district attorneys (allegations also missing here). In *Miller*, based upon this Circuit's precedential case law, the court found that "to determine County liability 'the question, therefore is whether plaintiff's claims arise out of the district attorney's management of the district attorney's office" *Miller* supra at 315.

In its analysis in this regard, the court in *Miller* noted that at issue in *Ryan* was a challenge to a policy that provided that "prosecutions of matters without basis would be pursued to obtain a plea bargain and avoid liability." And, it noted that, in distinguishing *Myers*, the court in *Ryan* determined that at issue were the district attorney's *decisions* regarding the prosecution of cases and that those issues *did not* relate to the management of the district attorney's office and therefore could not be pursued against the County. *Miller* noted that the court in *Ryan* found that "the county retained no supervisory authority over the district attorney's policies regarding the prosecution of crimes." *Miller*, supra at 315, citing *Ryan* at 5-8 and *McLaurin*, *supra* at 295. The *Miller* Court found that the "negotiation of plea bargain is a normal prosecutorial duty that is a valid function of a governmental attorney." *Miller*, supra at 316, citing *Schloss v. Bouse*, 876 F.2d 287, (2d Cir. 1989); *Zachary*, *supra* at *3; see also *Taylor v. Kavanaugh*, 640 F.2d 450 (2d Cir. 1981). Accordingly, even though Plaintiff's claim in *Miller* was based upon an administrative decision to implement a policy, rather than on a challenge to the policy itself as is the case here, the court found that because the plea bargaining process is intertwined with prosecutorial decisions

---

court held that the County has no right to establish policy regarding *how* a district attorney should prosecute violations of state criminal laws), and *Eisenberg*, 847 F.Supp. 1029 (EDNY 1994)(wherein the court refused to hold the municipality responsible for the district attorney's policy of "prosecuting sex crimes merely upon the allegations of complainants, regardless of the apparent merits").

regarding prosecution and trial, they are not related to the management of the office or to the training of Assistant District Attorneys, and therefore the County cannot be held liable. *Id.* The same is true here.

As argued in Defendant's post brief letter submission on January 17, 2014, the Court's decision in *Jones v. City of New York*, 988 F.Supp.2d 305 (EDNY December 20, 2013) lends further support to the Defendants' motion for summary judgment and its ruling should have been followed. In *Jones*, the Plaintiff alleged his constitutional rights were violated "because the conduct complained of resulted from 'customs, policies, usages, practices, procedures, and rules of the City and District Attorney.'" *Id.* at 1. There, the Court found the misconduct alleged dealt with the function of prosecutorial decision making in making *Brady* determinations that were "exercises of legal judgment undertaken in preparation for trial" and were "prosecutorial in nature." *Id.* at 317. It noted that in making prosecutorial decisions, the independence of district attorneys is essential, that they "necessitate the exercise of completely impartial judgment and discretion" and in such instances the district attorney "represents the State not the County." *Id*. at 314-6 and cases cited therein. The Court further noted that the case before it did not deal with an administrative municipal policy or custom that would allow for the district attorney to be treated as a municipal policy maker such as "building management, maintenance decisions, or discrimination against employees." *Id*. at 316. This was so even though at issue in *Jones* at issue was the issue of "training ADAs in the proper disclosure of exculpatory DNA evidence." *Id*. at 317. Even in that instance Judge Weinstein, relying on the Supreme Court's holding in *Van De Kamp v. Goldstein*, 55 U.S. 335, (2009) found that that "this function is inextricably connected with prosecution of criminal cases. It involves 'legal knowledge and the exercise of related discretion.' *Van de Kamp*, 555 U.S. at 345, 129 S. Ct. 855 (2009) It is prosecutorial in nature."

*Jones*, supra at 317. Accordingly, the *Jones* Court found the local municipality could not be a liable party. *Id.* at 317.

The nature of the alleged offensive policy at issue here does not deal with an administrative policy or custom such as building management, maintenance decisions, or discrimination against employees or workplace hiring, payroll administration and the like. Rather, the nature of the alleged unconstitutional policy (i.e., the *Brady* disclosure decision making process) are "tasks directly connected with the prosecutor's basic trial advocacy and prosecutorial duties – including *Brady* decisions-should under *Van de Kamp* be treated as "prosecutorial conduct." *Id*. at 9 citing cf., *McMillian v. Monroe Cnty*., 520 U.S. 781, 786 (1997).

The Court's reliance on the holdings in the *Myers v. County of Orange*, *supra*, *Walker v. City of New York*, *supra*, Gentile *v. County of Suffolk, supra*, and *Ramos v. City of New York*, 285 AD2d 284 (1st Dept. 2001)), where the final policy maker was determined to be acting on behalf of the local municipality and not the State for the acts alleged is misplaced. In those cases, the court found that the decisions to implement "administrative policies" by a District Attorney, such as the act alleged of failing to train and supervise (*Walker*), the alleged decision to implement a formal cross-complaint policy (*Myers*), and an act of failing to discipline in face of a history of complaints (*Gentile*) which were claimed to have caused the alleged constitutional deprivation could serve as the basis of liability because the acts alleged were administrative in nature. However, at issue in those cases was the conduct of "a municipal policymaker" and "the manner in which the [DA's] office, management and supervision allegedly effectively promulgated policy amounting to deliberate indifference to, and impacting upon" the plaintiff. *Ramos, supra* at 304, citing *Walker, supra*. Plaintiff's AC is void of any similar allegations. It is well settled that "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint."

12

*Miller v. County of Nassau, supra*, 2013 WL 1172833 at *6 (EDNY 2013); citing *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007). *See also*, *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

The Court's reliance on the Ninth Circuit's holding in *Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013) is also misplaced. Not only is it not controlling in this Circuit, its decision was limited. The court specifically found only "that California district attorneys act as local policymakers when adopting and implementing internal policies and procedures related to the use of jailhouse informants" *Id*. at 755. To the extent that it reaches beyond that conclusion, it recognized that the conduct that involved prosecutorial strategy is distinct from an attack on the office's administrative procedures. *Id* at 762, citing *Van de Kamp*, *supra*, at 344. Unlike the court's finding in *Goldstein*, that the DA had "adopted and implemented" an internal policy and procedure, Plaintiff's AC is void of such affirmative act by DA Grady or DA King. Accordingly the Court should reconsider its conclusion to the contrary (Ex. A at p. 56) and its reliance upon a court's holding from another jurisdiction to preclude summary judgment in favor of the Defendant County. It is well-settled that the task of determining which evidence constitutes Brady material that must be disclosed to the defense requires "legal acumen". (*Walker v. City of New York*, *supra* at 299). As argued in Defendant's motion papers, the acts alleged are inextricably intertwined with prosecutorial strategy making and based upon the well-established law of this Circuit, the municipality may not be liable for them. (DMOL at 7-11, RMOL at 7-8)

**SELECTED FACTUAL ERRATA**

A) **The Court's description of the location from which Cynthia Murphy said "she did not see the plaintiff or the witness Lamar Smith . . . "is wrong (i.e. p. 3-4: on a park bench near the front door of Ms. Crapser's building)**

No cite to record regarding Murphy's location is found in the Court's description of it. In fact, the record indicates that Ms. Murphy was not "on a park bench near the front of Ms. Crapser's building." but that she was some distance away at the corner of Main Street and North Hamilton Street. See, Plaintiff's Rule 56.1 Statement, ¶27.

B) **The Court distinguishes two cases cited by the defendant (*Grossman* and *Volpe*) because, in those cases**

> "the government identified the witnesses as *Brady* witnesses, so the statements themselves did not have to be turned over. Here, in contrast, the witnesses were not only not characterized as *Brady* witnesses, but were arguably mischaracterized as irrelevant in the Shelly Report."

The "Shelly Report" identifies five witnesses who were upstairs from the Crapser apartment and who heard and saw nothing. The Court ignores ADA James O'Neil's letter to plaintiff's trial counsel dated June 14, 1983. The June 14th letter which bears a *Brady* material "re line" begins with the statement "Please find enclosed herewith *Brady* Material in the above-captioned case." It identifies Cecil Carpenter, Cheryl Ellerby and Linda Miller three of the five claimed *Brady* witnesses. There is no dispute over whether Plaintiff's trial counsel received the Shelly Report or the prosecutor's June 14th letter. The only dispute raised by Plaintiff's trial counsel was whether or not the statements which Det. Shelly said were attached to his report. He does not dispute receipt of the portion of the Shelly report which sets forth the identity of the witnesses and their addresses and ADA James O'Neil's July 14, 1983 *Brady* letter.

14

**CONCLUSION**

For the reasons set forth herein together with those set forth in Defendants' prior submissions on the parties' summary judgment papers, the Defendant County of Dutchess respectfully requests that the Court reconsider its decision of September 23, 2014 and upon reconsideration grant summary judgment in favor of Defendant County of Dutchess.

Dated: October 7, 2014
      Goshen, New York

                                    Respectfully submitted,

                                    BURKE, MIELE & GOLDEN

By:   /s/ Patrick T. Burke
       Patrick T. Burke, Esq. (PB 7471)
       Michael K. Burke, Esq. (MB 7554)
       Phyllis A. Ingram, Esq. (PI 0650)
       Burke, Miele & Golden, LLP
       *Attorneys for County of Dutchess*
       40 Matthews Street, Suite 209
       Post Office Box 216
       Goshen, New York 10924
       (845) 294-4080