**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DEWEY R. BOZELLA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE COUNTY OF DUTCHESS,**<br><br>**Defendant.** | **No. 10 Civ. 4917 (CS)** |

**PLAINTIFF DEWEY R. BOZELLA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE OF POLYGRAPH EXAMINATIONS**

**WILMER CUTLER PICKERING HALE AND DORR LLP**

Peter J. Macdonald
Ross E. Firsenbaum
Shauna K. Friedman
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

***Attorneys for Plaintiff Dewey R. Bozella***

## TABLE OF CONTENTS

Page

STATEMENT OF FACTS ..... 1

A. The July 7, 1977 Polygraph Examinations of Lamar and Stanley Smith ..... 1

B. The County's Improper Reliance on the Polygraph Examinations ..... 2

ARGUMENT ..... 4

I. THE POLYGRAPH EXAMINATIONS ARE IRRELEVANT ..... 4

II. THE POLYGRAPH EXAMINATIONS ARE INADMISSIBLE PURSUANT TO RULE 702 ..... 5

III. THE POLYGRAPH EXAMINATIONS ARE INADMISSIBLE HEARSAY ..... 6

IV. THE POLYGRAPH EXAMINATIONS ARE INADMISSIBLE PURSUANT TO RULE 403 ..... 7

V. THE POLYGRAPH EXAMINATIONS ARE NOT ADMISSIBLE TO IMPEACH DETECTIVE REGULA ..... 8

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bower v. Walsh*,
703 F. Supp. 2d 204 (E.D.N.Y. 2010) ........................................................................6

*Cash v. Cnty. of Erie*,
654 F.3d 324 (2d Cir. 2011)........................................................................................4

*Collins v. Bennett,*
No. 01-CV-6392, 2004 WL 951362 (W.D.N.Y. Apr. 13, 2004)...............................6

*Kyles v. Whitley*,
514 U.S. 419 (1995).....................................................................................................4

*Meyers v. Arcudi*,
947 F. Supp. 581 (D. Conn. 1996)...........................................................................6, 8

*Olivares v. Ercole*,
975 F. Supp. 2d 345 (S.D.N.Y. 2013)..........................................................................6

*People v. Bozella*,
901 N.Y.S.2d 908, 2009 WL 3364575 (Cnty. Ct. 2009) .........................................3, 5

*Sorlucco v. New York City Police Dep't*,
971 F.2d 864 (2d Cir. 1992)..........................................................................................4

*United States v. Bagley*,
473 U.S. 667 (1985).......................................................................................................4

*United States v. Canter*,
338 F. Supp. 2d 460 (S.D.N.Y. 2004)............................................................................6

*United States v. D'Angelo*,
No. 03-CR-399, 2004 WL 315237 (E.D.N.Y. Feb. 18, 2004).......................................9

*United States v. Duverge Perez,*
295 F.3d 249 (2d Cir. 2002)...........................................................................................5

*United States v. Fraser*,
206 F. App'x 100 (2d Cir. 2006) ....................................................................................7

*United States v. Kwong*,
69 F.3d 663 (2d Cir. 1995)..........................................................................................7, 8

*United States v. Lech*,
895 F. Supp. 582 (S.D.N.Y. 1995) ....................7, 8

*United States v. Logan*,
121 F.3d 1172 (8th Cir. 1997) ....................9

*United States v. Petrillo*,
821 F.2d 85 (2d Cir. 1987)....................4

*United States v. Ruggiero*,
100 F.3d 284 (2d Cir. 1996)....................5

**RULES**

Fed. R. Evid. 105 Advisory Committee Notes ....................9

Fed. R. Evid. 401 ....................4

Fed. R. Evid. 403 ....................7

Fed. R. Evid. 702 ....................5

**OTHER AUTHORITIES**

28 Charles A. Wright et al., Fed. Prac. & Proc. Evid. § 6206 (2d ed 2012)....................9

Mr. Bozella respectfully requests that this Court exclude from evidence any document or statement (or portion thereof) referencing the polygraph examinations administered to Lamar and Stanley Smith on or about July 7, 1977 (the "Polygraph Examinations").

## STATEMENT OF FACTS

### A. The July 7, 1977 Polygraph Examinations of Lamar and Stanley Smith

On June 25, 1977, the City of Poughkeepsie Police (the "Police") questioned Lamar Smith and his brother Stanley regarding the June 14, 1977 murder of J. Emma Crapser (the "Crapser Murder"). Def.'s Rule 56.1 Statement [Dkt. No. 147] ¶ 22. Lamar and Stanley told the Police that they had heard "street talk", but otherwise knew nothing about the Crapser Murder. *Id.* ¶ 22. Four days later, after the Police arrested Lamar for an unrelated crime and told him that others had implicated him for the Crapser Murder, Lamar changed his story and pointed to Mr. Bozella and Wayne Moseley. *Id.* ¶ 23. Stanley echoed Lamar's new story. *Id.* ¶ 27.

According to a police report authored by Detective Art Regula, Lamar and Stanley Smith were subjected to polygraph examinations on July 7, 1977. Omnibus Declaration of Ross E. Firsenbaum, dated Dec. 10, 2014 ("Firsenbaum Decl.") Ex. 12 (Polygraph Report). The relevant portion of the Polygraph Report reads as follows:

> Arrangements were made through the Asst. DA O'Neil to bring Lamar Smith to Troop K, HQ for purposes of him taking a polygraph test in reference to his statement concerning the homicide of J. Emma Crapser.
>
> On July 7, 1977, Det. Siegel and I brought Lamar Smith and Dist. Attorney Otto Williams to Troop K where Investigator Hulihan administered polygraph to Lamar Smith. Investigator Hulihan after the polygraph stated that upon his preliminary examination of the polygraph test he believed that Lamar Smith was telling the complete truth in reference to his statement concerning what he observed the evening of June 14, 1977. This was specifically the fact that Lamar Smith did observe Wayne Moseley and Dewy Bozella [sic] enter 15 N. Hamilton Street during that evening and remaining inside there until Lamar Smith observed the vehicle stop

> in front of the house and also the fact that he did observe Elbert Pittman walking in front of the house on the street.
>
> On July 7, 1977, Stanley Smith was brought to the offices of the District Attorney by Sgt. Witherwax and Det. Groth. He was there and given a test on a stress machine that was operated by Inv. Chickering. Inv. Chickering stated that based on his results of the test that he administered to Stanley Smith, he felt that Stanley Smith was also telling the truth in reference to the observation made on June 14, 1977, concerning Elbert Pittman, Wayne Moseley and Dewey Bozella. He stated that the only flaw in the test given to Stanley Smith was when the question was asked if anyone else participated in this burglary homicide. Stanley Smith stated no and at this time it indicated that he might be lying. Upon further examination of the fact, it is felt that the reason for this being that Lamar Smith was left there in the vicinity of the house and he did not know what Lamar Smith did after he left.
>
> Therefore, he might feel that his brother was, in some way, involved.

*Id.* at 7-8. The Polygraph Examinations were not admitted into evidence at either of Mr. Bozella's criminal trials. *See* Firsenbaum Decl. Ex. 11 (1983 Trial Tr.) 189:13-16, 1067:4 (report marked for identification, but not introduced as an exhibit); Firsenbaum Decl. Ex. 10 (1990 Trial Tr.) 432:19-24 ("THE COURT: The Court instructs the jury that you are not to consider or speculate as to whether or not this witness failed or passed a lie detector test in assessing his credibility. *It is not admissible in a court of law and has no bearing with respect to credibility*. Go ahead." (emphasis added)).

**B. The County's Improper Reliance on the Polygraph Examinations**

On February 4, 2009, Detective Regula executed a sworn affidavit in support of Mr. Bozella's motion to vacate his conviction for the Crapser Murder (the "440 Motion"). Firsenbaum Decl. Ex. 13 (Regula Aff.) at ¶ 4. Detective Regula stated, among other things, that:

> the murder of Ms. Crapser was the one case that stood out to me over the course of my entire 22 year service with the Poughkeepsie

> Police Department. . . . I [] held onto a copy of my entire case file now, for over 18 years, because I suspected that someone would one day ask me to see it. This is the only case file that I retained when I retired from police work.

*Id.* ¶ 8. Included in Detective Regula's preserved file was a June 1977 Complaint Report (a police report different than the one documenting the Polygraph Examinations)[1] and four Voluntary Statements—these statements are the "Neighbors Statements" that Judge Rooney concluded the Dutchess County District Attorney's Office (the "DCDAO") should have, but did not, provide to Mr. Bozella under *Brady* over 30 years ago. *See People v. Bozella*, 901 N.Y.S.2d 908, 2009 WL 3364575 (Cnty. Ct. 2009). The Neighbors Statements are one category of *Brady* Evidence at issue in this case as well.

Detective Regula also stated in his affidavit that he believed that Mr. Bozella was innocent of the Crapser Murder because "the only evidence implicating Mr. Bozella was the testimony of Wayne Moseley and Lamar Smith—testimony that is suspect." Firsenbaum Decl. Ex. 13 (Regula Aff.) ¶ 11. Judge Rooney did not rely on this portion of Detective Regula's affidavit in granting the 440 Motion, since he concluded that Mr. Bozella did not present "exonerat[ing]" evidence that was necessary to satisfy the high burden under New York law of vacating a criminal conviction based on "actual innocence." *See People v. Bozella*, 2009 WL 3364575, at *16.

In its summary judgment papers, the County contends that the latter statement in Detective Regula's affidavit was "misleading." *See* Def.'s R. 56.1 Statement [Dkt. No. 147] ¶¶ 212-13. The County relies on the Polygraph Examinations, which the County contends "corroborated the Smiths[']" prior statements to police on June 29, 1977 implicating Mr. Bozella

[1] Detective Regula's file also contained the report documenting the Polygraph Examinations.

for the Crapser Murder. *See id.* ¶ 231; Firsenbaum Decl. Ex. 12 (Polygraph Report) at 7-8. In light of the County's reliance on the Polygraph Examinations at the summary judgment stage of this case, Mr. Bozella moves *in limine* to prevent the County from introducing such evidence at trial.

**ARGUMENT**

The Court should exclude any evidence of the Polygraph Examinations because the examinations are irrelevant, unreliable hearsay, and unfairly prejudicial.

## I. THE POLYGRAPH EXAMINATIONS ARE IRRELEVANT

First, the Polygraph Examinations are irrelevant. *See* Fed. R. Evid. 401 ("Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact *is of consequence* in determining the action."(emphasis added)). They have no bearing on any of the three elements of Mr. Bozella's *Monell* claim: they are not relevant to whether Dutchess County maintained (1) a policy, practice, or custom that (2) caused Mr. Bozella's (3) constitutional injury. *See Cash v. Cnty. of Erie*, 654 F.3d 324, 333-34 (2d Cir. 2011); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992).

They are not relevant to the "materiality" prong of Mr. Bozella's *Brady* claim either. The "materiality" issue implicates only the *Brady* Evidence and the admitted evidence at Mr. Bozella's criminal trials. *See Kyles v. Whitley*, 514 U.S. 419, 441-54 (1995) (detailing the evidence *admitted at trial* and assessing the impact the suppressed evidence would have had on the probity of the admitted evidence); *United States v. Bagley*, 473 U.S. 667, 715 (1985) (the "materiality" question asks whether there was a reasonable probability that the withheld evidence, combined with *the evidence actually presented at trial*, would have resulted in a different verdict) (emphasis added)); *United States v. Petrillo*, 821 F.2d 85, 89 (2d Cir. 1987)

(noting that materiality "must be judged in the light of all the evidence *presented at trial*" (emphasis added)). The Polygraph Examinations fall into neither category, as they are not *Brady* evidence and were not admitted into evidence at either trial. *See supra*. Therefore the jury in this case, standing in those juries' shoes, may not consider the Polygraph Examinations under the "materiality" prong of Mr. Bozella's *Brady* claim.[2]

## II. THE POLYGRAPH EXAMINATIONS ARE INADMISSIBLE PURSUANT TO RULE 702

Even if the Polygraph Examinations were probative of some issue in the case (and they are not) the Court should exclude them because they are unreliable. *See* Fed. R. Evid. 702.

To Mr. Bozella's knowledge, the Second Circuit and lower courts in the Circuit have *never* admitted polygraph test results into evidence at trial, consistently holding that the results of polygraph examinations are too unreliable. *See United States v. Duverge Perez*, 295 F.3d 249, 253-54 (2d Cir. 2002) (no abuse of discretion where district court refused to admit polygraph evidence in connection with the defendant's sentencing); *United States v. Ruggiero*, 100 F.3d 284, 292 (2d Cir. 1996) ("While his polygraph results may suggest the truthfulness of his denials, we have previously intimated that such 'lie-detector' tests are generally not admissible in federal

[2] To the extent the County intends to rely on the Polygraph Examinations to contest the validity of Judge Rooney's opinion, *see* Def.'s R. 56.1 Statement [Dkt. No. 147] ¶¶ 212-13, the Polygraph Examinations are not relevant either. The statement in Detective Regula's affidavit that the County believes to be inaccurate was not a basis for Judge Rooney's ruling vacating Mr. Bozella's conviction based on *Brady* violations. *See People v. Bozella*, 2009 WL 3364575, at *15-16.

court because of their questionable accuracy.").[3] This reasoning applies fully to the real reason that the County seeks to introduce the Polygraph Examinations into evidence: to contest Mr. Bozella's actual innocence. *See Olivares v. Ercole*, 975 F. Supp. 2d 345, 353 (S.D.N.Y. 2013) ("For one thing, '[a] polygraph test is not reliable evidence of actual innocence.'" (quoting *Bower v. Walsh*, 703 F. Supp. 2d 204, 228 (E.D.N.Y. 2010)).

Here, there is no valid reason to depart from the well-settled practice in this Circuit to exclude the results of polygraph examinations from evidence. The Polygraph Examinations were administered nearly 40 years ago, their administrators (Investigator Hulihan and Investigator Chickering) are not on either side's witness lists, the County has not presented any evidence regarding how these Polygraph Examinations were administered, and the County is not relying on any polygraph expert to explain why these Polygraph Examinations are supposedly reliable.

## III. THE POLYGRAPH EXAMINATIONS ARE INADMISSIBLE HEARSAY

The Polygraph Examinations are inadmissible for the separate and independent reason that they are hearsay. *See* Fed. R. Evid. 802. Here the County has no evidence of actual "polygraph results" (*e.g.*, any data output of tests that are to be interpreted by an "expert" qualified under *Daubert* and can be cross examined). Rather, all the County purports to rely on is an out-of-court statement in a police report stating that someone else performed such tests and

[3] *See also United States v. Canter*, 338 F. Supp. 2d 460, 463 (S.D.N.Y. 2004) ("While the Second Circuit has reserved deciding whether polygraph technology is sufficiently reliable evidence to be admissible under Rule 702 in light of *Daubert*, both the Second Circuit and its district courts have consistently expressed serious doubt as to the reliability of such evidence, even after *Daubert*." (citation omitted)); *id.* (compiling cases in the Second Circuit where courts have excluded polygraph evidence as unreliable); *Collins v. Bennett*, No. 01-CV-6392, 2004 WL 951362, at *5 (W.D.N.Y. Apr. 13, 2004) ("[T]he 'traditional rule' in the Second Circuit is that polygraph results are inadmissible."); *Meyers v. Arcudi*, 947 F. Supp. 581, 586-590 (D. Conn. 1996) (analyzing polygraph test results under *Daubert* and excluding them for lack of reliability and prejudice).

reached a subjective (and conclusory) conclusion based on whatever that person did (which is not documented in the Polygraph Report). And the only fact witness on the either side's trial list that potentially could have had first-hand knowledge of the actual examinations—Detective Regula—has confirmed that his knowledge of the results of the Polygraph Examinations is second-hand. *See, e.g.*, Firsenbaum Decl. Ex. 9 (Regula Dep. Tr.) 72:22-24 (describing that Investigator Hulihan "indicated that Lamar Smith was being truthful"); *see also* Firsenbaum Decl. Ex. 12 (Polygraph Report) at 7 ("*Inv. Chickering stated* that based on *his results* of the test that *he administered* to Stanley Smith, *he felt* that Stanley Smith was also telling the truth . . . ." (emphasis added)).

## IV. THE POLYGRAPH EXAMINATIONS ARE INADMISSIBLE PURSUANT TO RULE 403

The Polygraph Examinations also are inadmissible for the separate and independent reason that they are unfairly prejudicial. *See* Fed. R. Evid. 403. Courts in this Circuit routinely exclude polygraph examinations on this basis as well. *See, e.g.*, *United States v. Fraser*, 206 F. App'x 100, 101 (2d Cir. 2006) ("Both the United States Supreme Court and this Court have repeatedly upheld the exclusion of polygraph evidence because of its unreliability, its potential to confuse the issues and mislead the jury, and the danger of unfair prejudice posed by its admission."); *United States v. Kwong*, 69 F.3d 663, 668 (2d Cir. 1995) ("Even assuming that polygraph results are admissible under Rule 702 (and we are unwilling to so hold because the specific testimony here would not likely 'assist the trier of fact'), we nonetheless find that the results in this case should be excluded under Rule 403. Here, the district court was correct that the questions posed to Kwong were inherently ambiguous no matter how they were answered."); *United States v. Lech*, 895 F. Supp. 582, 585 (S.D.N.Y. 1995) ("For purposes of Lech's motion, I am willing to assume that Lech's polygraph results are admissible under Rule 702 and that

therefore, no hearing is required. Even so, I find that the particular questions and answers proffered by Lech, and the opinions derived therefrom, are inadmissible under Rule 403."); *Meyers v. Arcudi*, 947 F. Supp. 581, 590 (D. Conn. 1996) ("[E]ven if it were found that plaintiff had demonstrated the admissibility of polygraph evidence under Rule 702, the balancing test of Rule 403 would bar the evidence.").

Here again, even assuming the Polygraph Examinations were relevant (which they are not) and reliable (which they are not), there is no reason to depart from the well-settled rule in this Circuit that the unfair prejudice caused by introducing the results of polygraph examinations substantially outweighs any probative value such results may have. First, the County has produced no transcript of the polygraph examinations, making it impossible to determine what, if anything, the results of the examinations are even probative of in the first instance, let alone the degree of their probity. *Cf. Kwong*, 69 F.3d at 668 (analyzing the questions to determine the probity of a polygraph examination). And there is no reason to think that this case is the exception to the general understanding that introducing polygraph results into evidence gives rise to unfair prejudice: the jury in this case would likely place far too much weight on the results of Lamar and Stanley's polygraph examinations in assessing Mr. Bozella's innocence. And since Investigators Chickering and Hulihan are not testifying in this case, Mr. Bozella would have no means of countering the jury's improper reliance on these nearly 40-year-old polygraph interactions with Lamar and Stanley Smith.

## V. THE POLYGRAPH EXAMINATIONS ARE NOT ADMISSIBLE TO IMPEACH DETECTIVE REGULA

The Polygraph Examinations are not admissible to impeach Detective Regula for at least three reasons.

*First*, the evidence is not even impeachment evidence in the first place. Mr. Bozella does not anticipate that Detective Regula will testify regarding the Polygraph Examinations on direct examination during Mr. Bozella's case-in-chief. Rather, Detective Regula's testimony will be focused on the preservation of his case file for the Crapser Murder and his provision of that case file (which included some of the *Brady* Evidence in this case) to Mr. Bozella's counsel in 2008. It would be improper for the County to expand the scope of Detective Regula's testimony for the purpose of attempting to impeach him regarding a collateral matter. *See e.g.*, *United States v. Rivera*, 273 Fed. Appx. 55, 58 (2d Cir. 2008) ("A witness may be impeached by extrinsic proof of a prior inconsistent statement only as to matters which are not collateral, *i.e.*, as to those matters which are relevant to the issues in the case and could be independently proven.").

*Second*, even if the Polygraph Examinations could be used to impeach Detective Regula, "[p]olygraphs are insufficiently reliable even for use as impeachment, let alone as affirmative evidence." *E.g.*, *United States v. D'Angelo*, No. 03-CR-399, 2004 WL 315237, at *27 (E.D.N.Y. Feb. 18, 2004).

*Third*, "[w]here the efficacy of a limiting instruction is dubious, Rule 403 gives the court discretion in an appropriate case to exclude the prior inconsistent statement for all purposes." 28 Charles A. Wright et al., Fed. Prac. & Proc. Evid. § 6206 (2d ed. 2012) (citing *United States v. Logan*, 121 F.3d 1172, 1175 (8th Cir. 1997)); *see* Fed. R. Evid. 105 Advisory Committee Notes (cautioning that when admitting evidence for a "limited purpose and instructing the jury accordingly[, t]he availability and effectiveness of this practice must be taken into consideration in reaching a decision whether to exclude for unfair prejudice under Rule 403"). Here, given the unreliability and unfair prejudice of polygraph examinations generally and the additional hearsay quality and uncorroborated results of these Polygraph Examinations in particular, no limiting

instruction would suffice to hold the jury to consider Detective Regula's prior statements about the results of the Polygraph Examinations *only* for the purposes of impeaching Detective Regula at trial. The Court should not permit the County to circumvent the Second Circuit's strong prohibition against the admission of polygraph results via Federal Rule of Evidence 613.[4]

## CONCLUSION

For these reasons, Mr. Bozella respectfully requests that this Court exclude all evidence of the Polygraph Examinations.

Dated: December 10, 2014

Respectfully submitted,

**WILMER CUTLER PICKERING HALE AND DORR LLP**

By: /s/ Peter J. Macdonald
Peter J. Macdonald
Ross E. Firsenbaum
Shauna K. Friedman
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

***Attorneys for Plaintiff Dewey R. Bozella***

[4] To the extent the Court reserves any ruling regarding use of the Polygraph Examinations for impeachment purposes until trial, Mr. Bozella respectfully requests that the Court direct the County to raise this issue (if it wishes to raise the issue at all) outside the presence of the jury after the completion of Mr. Regula's direct examination.