UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------x

DEWEY R. BOZELLA,


         -against-                              10 CV 4917 (CS)

THE COUNTY OF DUTCHESS,

                            Defendant.

-------------------------------------------------------------------------------x


**DEFENDANT DUTCHESS COUNTY'S MOTION  IN LIMINE TO PRECLUDE
PLAINTIFF FROM REFERENCING INADMISSIBLE EVIDENCE**

## PRELIMINARY STATEMENT

Defendant County of Dutchess ("County") submits this memorandum of law in support of its motion for an order prohibiting Plaintiffs from introducing (1) testimonial or other evidence regarding alleged misconduct by former Assistant District Attorney William J. O'Neill ("O'Neill) and various members of the City Poughkeepsie Police Department; (2) testimonial or other evidence that Plaintiff purportedly rejected plea bargains offered to him; (3) testimonial or other evidence offered to support a claim that Plaintiff was denied parole because he maintained his innocence;   (4) testimonial or other evidence regarding the dismissal of the indictment charging Plaintiff with the robbery and murder of Ms. Emma Crapser; and (5) the judgments and/or decisions rendered in connection with Plaintiff's direct appeals from his conviction and the post-conviction motion decided by Judge Rooney.[1]

The original complaint, filed in this matter on June 24, 2010, asserted 42 U.S.C. § 1983 claims against: (1) ADA O'Neill, for malicious prosecution, malicious abuse of process, and fabrication of evidence; (2) Dutchess County, for failing to adequately train its ADAs to comply with *Brady*, and for the unconstitutional acts of ADA O'Neill as an official policymaker; (3) the City of Poughkeepsie, for failing to adequately train police officers to memorialize, preserve, and disclose exculpatory evidence to criminal defendants, and for maintaining an unconstitutional policy mandating that police officers destroy their notebooks after they convert their notes into police reports; and (4) Officers Robert DeMattio and William O'Neill for conspiracy to deprive Plaintiff of his constitutional rights to due process and a fair trial."

---

[1] Specifically, the decisions are *People v. Bozella*, 150 A.D.2d 471, 541 N.Y.S.2d 73 (2d Dept. 1989); *People v. Bozella*, 161 A.D.2d 775, 556 N.Y.S.2d 121 (2d Dept. 1990); *People v. Bozella*, 205 A.D.2d 790, 613 N.Y.S.2d 433 (2d Dept. 1994); and *People v. Bozella*, 25 Misc. 3d 1215(A), 901 N.Y.S.2d 908 (Dutchess Co. Ct. 2009)

The Court subsequently dismissed all of these claims and all Defendants except the Monell claim against Dutchess County. Regarding O'Neill, the malicious prosecution and malicious abuse of process were dismissed by this Court's Memorandum and Order filed September 29, 2011. D.E. 65 at 20-23. The remaining claims against O'Neill were dismissed by the Court on summary judgment.

Regarding the County, the Court, in its September 29, 2011 decision, dismissed Plaintiff's failure to train claim and that part of Plaintiff's policy claim that is based on ADA O'Neil's actions in Plaintiff's case. D.E. 65 at 29-32. However, the Court permitted Plaintiff to file an Amended Complaint limited to a claim based upon the theory that the County is liable for the District Attorney's alleged policy of erroneously and narrowly interpreting the scope of its constitutionally mandated discovery obligations.[2]

In the interim between the Court's September 29, 2011 decision and the Court's decision on Defendants' summary judgment motions, Plaintiff filed a 54-page Amended Complaint, that reiterates nearly all of the allegations pleaded in the original Complaint including, those made in support of the causes of action that the Court dismissed in its September 29, 2011 decision. The result is that -- even though ADA O'Neill, the City of Poughkeepsie, and individual police officers are no longer Defendants in this action, and the Court dismissed that part of Plaintiff's policy claim against the County that is based on O'Neill's actions in the criminal prosecution of

_____

[2] In Plaintiff's pleadings and in the various omnibus motions filed by defense counsel in the Dutchess County criminal cases reviewed by Plaintiff's expert witness, the phrase, "*Brady* and its progeny," is used all too frequently, inaccurately, and indiscriminately. Assuming *arguendo* that *Brady* ever stood for the principle that the Constitution requires a prosecutor to disclose all evidence that is helpful or useful to the defense, the Supreme Court has repeatedly renounced such an expansive interpretation of *Brady*. See Memorandum of Law in Support of Defendant's Motion to Preclude Testimony of Bennett L. Gershman, at 9-15. Thus, if we can call cases such as *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667, (1985), and *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999), the "progeny of *Brady*," then they are children that have rejected their parents.

Plaintiff -- the Amended Complaint still includes allegations pleaded in support of these dismissed claims and Defendants.[3]  Moreover, the sole remaining cause of action against Dutchess County incorporates by reference all of these all allegations.  Amended Complaint, D.E. 80, at 51 ¶206.

Accordingly, Defendant requests that the Court prohibit the Plaintiff from introducing at trial, evidence that is only relevant, if at all, to support of causes of action and/or as proof against Defendants that are no longer part of this litigation.  Plaintiff should be precluded from offering any evidence to prove these now moot allegations because they are irrelevant to the sole remaining cause of action and the presentation of such evidence, which is calculated to inflame the passions of jury or curry sympathy and will undermine the reliability and integrity of the jury's verdict.  In addition, the introduction of evidence regarding these now gratuitous allegations will unnecessarily prolong and lengthen the trial.

Furthermore, there are additional grounds, discussed in Points II and III, *infra*, for precluding specific matters which are pleaded in the Amended Complaint.  For example, the Plaintiff's purported rejection of plea offers allegedly made to him and his assertion that he was refused parole because he refused to admit culpability for a crime he did not commit.  For the reasons set forth in Points IV and V, *infra*, there are additional grounds for precluding the Plaintiff from using any of the decisions entered in his criminal case to prove a fact in issue in this action.

### SUMMARY OF THE EVIDENCE THAT DEFENDANT SEEKS TO PRECLUDE

Defendant seeks an order precluding the following categories of proof.

A.  *Malicious Prosecution and Abuse of Evidence*

---

[3] This issue was previously brought to the Court's attention by letter dated February 15, 2012 from Patrick T. Burke, attached as *Exhibit A*.

The Amended Complaint accuses ADA O'Neill of maliciously and relentlessly prosecuting Plaintiff, (D.E. 80 at 2 ¶3);  jailing Plaintiff for 27 days without probable cause to indict (D.E. 80 at 9 ¶32);[4] seeking an indictment "with full knowledge that probable cause was lacking" (D.E. 80 at 9 ¶32);" trying Plaintiff in 1983 on an indictment that O'Neill knew was not based upon probable because he had "procured the Indictment through false testimony and the coercion of a key witness" (D.E. 80 at 26 ¶ 116-117); and "without probable cause, with malice, and in deliberate disregard of [Plaintiff's] constitutional rights" retrying the plaintiff "based on false testimony, the coercion of a key witness, and suppressed *Brady* material" (D.E. 80 at 28 ¶ 127).

As in the original, the Amended Complaint attempts to buttress the lack of probable cause element of Plaintiff's malicious prosecution claim with an allegation that "[a]fter  closing argument, while the jury was deliberating" the District Attorney made plea offers that would have reduced Plaintiff's sentence. The Amended Complaint, for example, alleges that these offers:

> included offers to reduce Mr. Bozella's sentence to a minimum of seven years (which would make him eligible for parole less than one year after the 1990 trial) and to reduce that sentence even further to "time-served." Mr. Bozella rejected both offers because he refused to admit to a crime that he did not commit. Defendant O'Neill and Mr. Grady also offered Mr. Bozella a Serrano-Alford plea, which Mr. Bozella was unable to consider before the jury returned its verdict.

Amended Complaint, D.E. 80, at 32 ¶146.

For reasons that we cannot divine, the Amended Complaint also alleges that Plaintiff's applications for parole were denied repeatedly "because Mr. Bozella would not admit to a

---

[4] In fact, Plaintiff was committed for mental health reasons after he attempted to kill himself.

murder he did not commit." D.E. 80 at 33.  Expanding upon this claim, Plaintiff further alleges

that the New York State Board of Parole:

> rejected his application for parole four times. . . because of Mr.
> Bozella's apparent failure to appreciate the nature and seriousness
> of "his" crime i.e., the Crapser Murder.  Of course Mr. Bozella was
> unable to do so because he always maintained his innocence.

D.E. 80 at 33 ¶ 149.

*B. Failure to Preserve Evidence and Failure to Pursue Exculpatory Evidence.*

The Amended Complaint also reiterates the allegations supporting the dismissed causes

of action against the City of Poughkeepsie.  In bolded capital letters, the Amended Complaint

repeats the allegation that THE POLICE FAILED TO RECORD AND PRESERVE BRADY

EVIDENCE, and the officers' failure to reduce witness statements to writing and the destruction

of a tape recording of statements that Lamar and Stanley Smith made to police constituted *Brady*

violations (D.E. 80 at 5-6 ¶¶ 18-20).  The Amended Complaint also reprises the allegations made

in the original complaint concerning police officers' destruction of their (presumably

handwritten) notes (D.E. 80 at 25-26 ¶¶ 112-114).

In addition, the Amended Complaint alleges that ADA O'Neill and various police

officers deliberately failed to pursue exculpatory evidence when, during the course of their

questioning of Saul Holland in connection with the King sisters' robbery and murder, Holland

allegedly made statements that, in Plaintiff's opinion implicated Donald and/or Anthony Wise, in

the robbery and murder of Ms. Emma Crapser.  The Amended Complaint charges that O'Neill

and City of Poughkeepsie police officers "failed to investigate" this "lead" by not questioning

Holland about matters beyond his involvement in the King sisters robbery and murder (D.E 80 at

14-16 ¶¶ 55-65).

The Amended Complaint also reiterates the allegations in the original complaint that ADA O'Neill obtained an indictment against Plaintiff by procuring false testimony from Wayne Moseley and "by coercing Madeline Dixon Smith to lie to the grand jury." (D.E. 80 at 17-20 ¶¶ 72-85; at 21- 24, ¶¶  94-110).

C.  *Appellate Division Decisions*

The Amended complaint reiterates the allegation that ADA O'Neill violated Plaintiff's "Batson Rights" in his Plaintiff's 1983 trial (D.E. 80 at 26-27 ¶¶ 120), alleging that ADA O'Neill "excluded all six African-Americans available in the jury venire without having race-neutral reasons for doing so" and noting that he was convicted by a jury that included no African Americans.  (In fact, one of the six African American jurors was excused for medical reasons and not because of a peremptory challenge).   The Amended Complaint also notes that after Plaintiff appealed his 1984 conviction, the Appellate Division remanded for a hearing on ADA O'Neill's reasons for excluding African American jurors and that the Appellate Division subsequently characterized O'Neill's testimony as "little more than a denial of discriminatory purpose and a general assertion of good faith" that failed to satisfy the People's burden "of establishing racially neutral explanations for the challenges."  D.E. 80 at 27 ¶ 123.

In addition, the Amended Complaint also includes a quotation from the Appellate Division's affirmance of Plaintiff's conviction after his 1990 retrial. Plaintiff states that the "Second Department concluded that O'Neill 'exceeded the court's evidentiary ruling with respect to a tape-recorded conversation, in which the defendant's accomplice had initially implicated himself and the defendant in the homicide, during both his cross-examination of the accomplice and his summary.'"  D.E. 80 at 33 ¶ 148.  Plaintiff suggests that the Appellate Division's finding that O'Neill's actions were harmless error might have been different but for

the fact that "the Second Department was not privy to the substantial *Brady* material that Defendant O'Neill had concealed from the defense, the trial court, and the jury."  D.E. 80 at 33 ¶ 148.

      *D. References to Judge Rooney's Decision*

      The Amended Complaint repeatedly cites Judge Rooney's decision on Plaintiff's post-conviction motion as support for, or proof of allegations pleaded in the Amended Complaint. For example, regarding Saul Holland's statement to police officers, the Amended Complaint states "[a]s the Dutchess County Court concluded in 2009, the Holland tape constituted *Brady* material because it implicated Donald Wise as Ms. Crapser's assailant."  D.E. 80 at 16 ¶ 67. Similarly, the Amended Complaint cites Judge Rooney's decision as establishing that statements made to police by Emma Crapser's neighbors were *Brady* material.  D.E. 80 at 8 ¶ 32  ("As the Dutchess County Court concluded in 2009, the neighbors' statements constituted *Brady* material...").

**ARGUMENT**

**POINT I**

**THE COURT SHOULD PRECLUDE EVIDENCE REGARDING FACTUAL ALLEGATIONS PLEADED IN SUPPORT OF AND ONLY RELEVANT TO CAUSES OF ACTION AND DEFENDANTS THAT HAVE BEEN DISMISSED**

      "Relevant evidence is defined in Fed. R. Evid. 401 as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Rule 402 provides that evidence which is not relevant is inadmissible." *Schrand v. Federal Pacific Electric Co*., 851 F.2d 152, 155-156 (6th Cir. 1988).  Obviously evidence offered against now-dismissed Defendants or to prove causes of action that have been dismissed cannot meet Fed. R. Evid.

8

401's definition of relevance.  Nor can the Plaintiff credibly convert the allegations relevant solely to dismissed claims and dismissed Defendants into allegations that support the remaining sole cause of action that will be presented to the jury.

For example, proof of the allegations against the City of Poughkeepsie police officers -- i.e., their actions with respect to rough notes of witness interviews, destruction of a tape recording of an interview Lamar and Stanly Smith, and their alleged premature termination of an interview with Saul Holland does not make it more probable that a completely different entity -- the Dutchess County District Attorney -- had an unconstitutional policy (written or de facto) governing how Assistant District Attorney's should respond to defense lawyer's requests made under the aegis of *Brady*.

Similarly, allegations made to support the malicious prosecution and other allegations against ADA O'Neill do not make it more likely that the Dutchess County District Attorney had an unconstitutional policy regarding disclosure of *Brady* material to all criminal defendants, not just Plaintiff.  Indeed, O'Neill's alleged malice towards Plaintiff is completely irrelevant to the cause of action that the jury must decide because under Plaintiff's theory of the case, the unconstitutional policy applied to all criminal defendants indicted in Dutchess County and was applied regardless of whether not County Dutchess believed it lacked sufficient evidence to indict a person for a crime.  Furthermore, it is not alleged that O'Neill formulated, initiated, instigated or caused other Assistant District Attorneys to act in compliance with the alleged unconstitutional policy that Plaintiff posits.  Moreover, the admission of evidence pertaining to dismissed claims or dismissed defendants would be prejudicial, confusing, mislead the jury and unnecessarily lengthen the trial.  *See* Fed. R. Evid. 403.

POINT  II

**PLAINTIFF'S PURPORTED REJECTION OF ALLEGED PLEA OFFERS
IS INADMISSIBLE BECAUSE IT IS (1) IRRELEVANT TO THE SOLE
CAUSE OF ACTION TO BE SUBMITTED THE JURY; (2) BARRED
BY PUBLIC POLICY CONSIDERATIONS; AND (3) A PRIOR
CONSISTENT STATEMENT AND HENCE INADMISSIBLE HEARSAY**

It is unclear what legitimate purpose, if any, would be served by permitting Plaintiff to attempt to prove that he was offered and rejected plea bargains while the jury was deliberating at this second trial.  Perhaps Plaintiff 's counsel believed that such proof would bolster his claims that he was prosecuted maliciously by ADA O'Neill, who lacked probable cause either for an indictment or conviction, one of the causes of action raised in the original complaint.  However, that cause of action against ADA O'Neill has been dismissed.  Consequently, Plaintiff's rejection of these alleged plea offers is inadmissible because it has no probative value regarding the sole cause of action in the Amended Complaint -- i.e., whether Plaintiff was denied material exculpatory evidence as a consequence of an allegedly unconstitutional policy.  Plaintiff's unwillingness to accept alleged plea offers does not tend to make the existence of an unconstitutional policy regarding constitutionally mandated pretrial disclosures more likely than not.[5]

Moreover, a criminal defendant's decision to reject a plea offer has such minimal probative value that in this Circuit such proof it is usually precluded.  In *United States v. Biaggi*,

---

[5] In this memorandum, we address the inadmissibility of Plaintiff's purported rejection of plea offers for the purpose of bolstering his claim against the Defendant Dutchess County.  In an abundance of caution, we also note the obvious fact that "[s]tatements made by a defendant in connection with a plea or an offer to plead may not be used substantively or for impeachment in any civil or criminal proceeding against the person who made the plea or offer."  2 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence P 410[02] at 410-30 (1992) (footnotes omitted).  *United States v. Lawson*, 683 F.2d 688 (2d Cir. 1982).  In addition, we note that any plea offers would not have been made by the County, the only defendant in this case, but by the District Attorney's office and or an individual Assistant District Attorney, and the claims against those parties have been dismissed.

909 F.2d 662, 691 (2d Cir. 1990), the Court of Appeals held that proof of a defendant's rejection of an offer of immunity was admissible.  However, the Court of Appeals also emphasized that its ruling regarding rejection of an immunity offer did not imply that a rejected guilty plea would also be admissible. To the contrary, the Court of Appeals stated that in most cases a person's rejection of a guilty plea would lack sufficient probative value to warrant its admission at trial.

> Rejection of an offer to plead guilty to reduced charges could also evidence an innocent state of mind, but the inference is not nearly so strong as rejection of an opportunity to preclude all exposure to a conviction and its consequences. A plea rejection might simply mean that the defendant prefers to take his chances on an acquittal by the jury, rather than accept the certainty of punishment after a guilty plea.

*Biaggi*, 909 F.2d at 691.

Indeed, in Plaintiffs' case -- where the alleged pleas offers were made during the course of the jury's deliberations -- rejection of the offers is as consistent with a belief the jury was likely to acquit him as it is with a heroic resolve to assert one's innocence at all costs.  Thus, in all likelihood, the Second Circuit would agree that Plaintiff's purported rejection of a plea offer lacks sufficient probative value to establish its admissibility.

In fact, since *Biaggi*, several district courts in this Circuit have precluded a defendant in a criminal case from offering testimony that he rejected a plea offer, and in one of these cases, the Court of Appeals affirmed the lower court's refusal to admit such evidence.  *United States v. Goffer*, 721 F.3d 113, 128-129 (2d Cir. 2013);  *United States v. Del Carmen*, S2 01 Crim. 420 (LAK), 2002 U.S. Dist. LEXIS 14030 (S.D.N.Y. 2002), *2-*3 (granting government's motion to preclude evidence of defendant's rejection of a prior plea offer because its minimal probative value substantially outweighed its unfair prejudicial effect); *United States v. Wilson*, 98 CR. 640 (DLC), 1998 U.S. Dist. LEXIS 17315 (S.D.N.Y. 1998) (defendant's rejection of a deferred

prosecution agreement was not admissible to prove innocence of crime with which he was charged).

Apart from the issue of the minimal probative value of evidence of the rejection of a plea offer by one charged with a crime, other courts have held that permitting the introduction of such evidence would violate the spirit of, if not the letter of, Fed. R. Evid. 410, Fed. R. Evid. 408, and Fed. R. Crim. Pro. 11.

Fed. R. Crim. Pro. 11 (f), for example, provides that "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410. Fed. R. Evid. 410 (a)(4) makes inadmissible against a defendant in a civil or criminal case, "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." "Although Fed. R. Evid. 410 explicitly precludes only statements offered by the prosecution attorneys, fairness dictates that the restriction should apply to both parties to the negotiations. If only the prosecutor is restricted, it would undermine the policy of promoting plea discussions." Jones on Evidence, 7th Ed. 23:10. For precisely this reason, the court in *Wilson*, 98 CR. 640, 1998 U.S. Dist. LEXIS 17315 at *8-*9, precluded the defendant from introducing proof that he had refused an offer of a deferred prosecution:

> The Court is mindful of the importance of preserving the 'frank and open atmosphere' for plea discussions recognized by Congress in drafting Rule 410, Fed. R. Evid., and Rule 11(e)(6), Fed. R. Crim. P. *United States v. Lawson*, 683 F.2d 688, 692 (2d Cir. 1982) (holding defendant's statements during plea discussions inadmissible for impeachment purposes). The Court believes that the Government's incentive to make offers of deferred prosecution to avoid costly trials for such minor crimes would remain substantial, and notes as well that agreements with defense counsel could likely be drawn to condition any offer of a deferred prosecution on a defendant's waiver of the right to offer evidence at trial that the offer was rejected. The Court agrees with the

Government nevertheless that the minimal probative value of this evidence does not justify any chilling effect on such offers or negotiations.

Similarly, in *United States v. Verdoorn*, 528 F.2d 103, 107 (8th Cir. 1976), the Eighth Circuit concluded that the rationale underlying Fed. R. Evid. 408,[6] which relates to the general admissibility of compromises and offers to compromise, militated against permitting a defendant to introduce evidence that he or she rejected a plea offer.   Eighth Circuit decisions have continued to rely on the *Verdoorn* rule.  *United States v. Alexander*, 679 F.3d 721, 732 (8th Cir. 2012) (*Verdoorn* required denial of defendant's application to introduce evidence she rejected a plea bargain).  *Accord*, *United States v. Greene*, 995 F.2d 793, 798 (8th Cir. 1993) (finding no abuse of discretion where trial court disallowed rejection of plea).

An additional factor militating against admitting evidence that a person rejected a plea offer is that such evidence is a prior consistent statement and, consequently, inadmissible hearsay. *Greene*, 995 F.2d at 798 ("We note, too, that all the defendant is offering is a prior statement consistent with his plea of not guilty. Such statements, when offered by the defendant, are hearsay, except in narrow circumstances not present here.").

---

[6] In *United States v. Baker,* 926 F.2d 179, 180 (2d Cir. 1991), the Second Circuit questioned whether Fed. R. Evid. 408 applied to statements made during plea negotiations noting that the language used in the rule was not commonly used to refer to plea bargaining: "Negotiations over immunity from criminal charges or a plea bargain do not in ordinary parlance constitute discussions of a 'claim' over which there is a dispute as to 'validity' or 'amount'." However, it is important to note that at issue in *Baker* was whether the district court had erred by permitting the prosecution to use statements that the defendant had made to government agents, who obviously had no authority to engage in plea negotiations. Moreover, as the Eight Circuit observed, it is not the text of Fed. R. Evid. 408 that militates in favor of excluding evidence that a person rejected a guilty plea offer or an offer of immunity, it is the underlying rationale that public policy is best served by encouraging compromise in both civil disputes and in criminal matters, at least where a guilty plea will achieve justice and spare the public the expenditures and uncertainty associated with a trial.

Finally, courts that have precluded proof that a litigant rejected a plea offer have also noted the extent to which such evidence would confuse the jury, especially when the introduction of such evidence would necessitate a mini-trial or trial-within-a-trial regarding the reasons behind the rejection of the offer. *See, e.g., Wilson,* 1998 U.S. Dist. LEXIS 17315 at *6-*7 (noting that to "analyze the probative force of the declination properly, the jury would have to understand the calculus likely undertaken by the defendant and his counsel in rejecting the offer, which would in turn require the jury to be informed as to how the Sentencing Guidelines would have applied to the defendant's conduct. Such an exposition would lead to confusion and substantially outweigh the limited probative value of the evidence.)

All of these factors warrant an order precluding Plaintiff from offering testimonial or other evidence to prove his dubious claims regarding plea bargains allegedly offered to him during jury deliberations at his second trial. Such evidence has no probative value with respect to the issue of whether the District Attorney had a policy that effectively denied criminal defendants from receiving information that the Due Process Clause of the Fifth and Fourteenth Amendments required prosecutors to provide.

First, in sharp contrast to *Biaggi*, where the defendant's belief in the lawfulness of his conduct was relevant to the issue of whether he knowingly and intentionally engaged in criminal activity, Plaintiff's state of mind is completely irrelevant to prove the existence of the unconstitutional policy he alleges was observed or implemented by the District Attorney.

Second, assuming *arguendo* he was offered a series of plea options, Plaintiff's alleged refusal to accept any of them may reflect nothing more than a choice "to take his chances on an acquittal by the jury", and consequently, it has minimal probative value with respect to whether he believed in his own innocence. In other words, even if Plaintiff's state of mind was somehow

relevant to an issue in this litigation, his alleged refusal to accept plea offers -- which may not even have been made to him --has little or no probative value as proof of consciousness of innocence.

Third, whatever minimal probative value such evidence possesses is far outweighed by its potential to confuse the jury and cause the Defendant unfair prejudice.  As noted previously, this lawsuit is not about whether Plaintiff believes in his own innocence but whether the District Attorney's office had an unconstitutional policy regarding the disclosure of evidence to criminal defendants.  Indeed, the only function the proof of rejected plea offers would serve here is to appeal to the jury's sympathy.

Fourth, because former District Attorney William Grady and ADA O'Neill,[7] deny that Plaintiff was offered a plea bargain that would have resulted in his immediate or speedy release from imprisonment, a trial-within-a-trial on this issue would be necessary.  Moreover, in addition to flatly denying that offers were made, ADA O'Neill would be entitled to explain why he would not even have considered such a plea, and such an explanation would include all of the evidence of which ADA O'Neill was aware, including evidence that was not presented to the jury – e.g., a jail house confession and a post-arrest admission by Plaintiff.  In addition, Plaintiff's claim that a particular plea offer would have allowed him to walk out of the courtroom a free man would also require an exposition of the sentencing options available under the New York Penal Law and how they would have applied to Plaintiff at that time.  Rather than further complicating what promises already to be a relatively lengthy trial that requires the jury to consider issues that, for lay persons, may be complex and arcane, the Court should exercise its authority to preclude

---

[7] *Exhibit B*, Excerpt from Deposition of William Grady at 186-194 and Excerpt from Deposition of William O'Neill at 292-293.

Plaintiff from offering any evidence in support of the claim that he was offered and rejected various plea bargains.

Finally, Plaintiff's assertion that his innocence precluded him from accepting a plea bargain is nothing more than a prior consistent statement, and, therefore, inadmissible hearsay.  It is a mere redundancy because obviously the jury will realize from the very fact that he instituted this lawsuit that he believes that he was wrongly convicted.

**POINT III**

**THE FACT THAT PLAINTIFF WAS DENIED PAROLE IS
IRRELEVANT TO ANY ISSUE THE JURY MUST DECIDE**

Plaintiff alleges that his applications for parole were denied repeatedly "because Mr. Bozella would not admit to a murder he did not commit." Amended Complaint, D.E. 80, at 33. Plaintiff further alleges that the New York State Board of Parole:

> rejected his application for parole four times. . . because of Mr. Bozella's apparent failure to appreciate the nature and seriousness of "his" crime *i.e.,* the Crapser Murder. Of course Mr. Bozella was unable to do so because he always maintained his innocence.

D.E. 80 at 33 ¶ 149.

For much the same reasons that warrant the preclusion of any evidence or argument regarding Plaintiff's rejection of an alleged plea offer, the Court should preclude any evidence or argument regarding Plaintiff's refusal to admit to the parole board any culpability for the death of Emma Crapser.

First, Plaintiff's assertion that but for his persistence in asserting his innocence he would have been granted parole has no basis in fact or law.  Consequently, his continuing claims of innocence before the Parole Board and the latter's decision not to grant him parole have little or no probative value regarding his innocence.

Indeed, it is far from a foregone conclusion that Plaintiff would have been entitled to parole if he had admitted responsibility for the death of Ms. Crapser.   The pertinent statute makes it abundantly clear that there is no right or entitlement to parole: "Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined." N.Y. EXEC. LAW § 259-i(2)(c)(A).   Also it is well established in this Circuit, that New York's parole scheme "is not one that creates in any prisoner a legitimate expectancy of release."   *Barn v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001); *Bothe v. Hammock*, 605 F.2d 661, 664 (2d Cir. 1979).

Even if an inmate's time in prison suggests that "he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society," the Board is also required by statute to consider whether release might "so deprecate the seriousness of his crime as to undermine respect for law."  N.Y. EXEC. LAW § 259-i(2)(c)(A). Although an inmate's institutional behavior and accomplishments may be "exemplary," the Board may place "particular emphasis" on the violent nature or gravity of the crime in denying parole, as long as the relevant statutory factors are considered.   *Matter of Hamilton v. New York State Div. of Parole*, 119 A.D.3d 1268, 1272 (3d Dep't 2014).   Thus, Plaintiff's claim that he would have been released but for his denials of guilt is premised upon a gross misunderstanding of New York's parole law. [8]  Furthermore, without questioning members of the Parole Board about the basis for their decisions to deny Plaintiff parole, it cannot be presumed that his persistent protestation of innocence was the sole reason that he was denied parole.  Thus, the fact

---

[8] As the Parole Board advised Plaintiff at his 2005 parole hearing, notwithstanding his claims of innocence, the Board had to assume the validity of his conviction.  *Silmon v. Travis*, 95 N.Y.2d 470, 477 (2000) ("Once an individual has been convicted of a crime, it is generally not the Board's role to reevaluate a claim of innocence, either by someone who maintains innocence in the face of a guilty verdict, or by someone who allocutes to the facts but later claims to be innocent.").

he insisted upon his own innocence at parole hearings has minimal or no probative value with respect to the issue of his consciousness of innocence.

Second, Plaintiff's insistence upon his innocence before the Parole Board has no probative value with respect to the primary issue that the jury must decide – i.e., whether the District Attorney's office that prosecuted him had a policy that deliberately denied criminal defendants evidence and or information to which the defendants were constitutionally entitled. Thus, whatever the reasons Plaintiff was denied parole, they are irrelevant to any fact in issue in this litigation.

**POINT IV**

**THE DISTRICT ATTORNEY'S DECISION TO NOT RETRY PETITIONER AGAIN IS NOT RELEVANT TO ANY FACT IN ISSUE AT TRIAL, AND IS, THEREFORE, INADMISSIBLE; ALTERNATIVELY, THE JURY SHOULD BE INSTRUCTED TO DRAW NO INFERENCES, AGAINST EITHER PARTY, FROM THE FACT THAT PLAINTIFF WAS NOT TRIED AGAIN**

"[A] district court has discretion to exclude from evidence acquittals **or other favorable outcomes**[9] of prior state court proceedings involving the same subject matter." *United States v. Brown*, 07-CR-874 (KAM) 2009 U.S. Dist. LEXIS 14722 (E.D.N.Y. 2009) (emphasis supplied), citing *United States v. Viserto*, 596 F.2d 531, 537 (2d Cir.), *cert denied*, (1979) and. *United States v. Marrero-Ortiz*, 160 F.3d 768, 775 (1st Cir. 1998). *See, e.g., United States v. Lopez*, No. 09 Cr. 525 (JFK), 2010 U.S. Dist. LEXIS 90713 (S.D.N.Y. 2010) at *15(evidence of dismissal of criminal charge was not admissible to refute claim that defendant was member of a conspiracy); *United States v. Olivieri*, 740 F. Supp. 2d 414, 417 (S.D.N.Y. 2010) (denying government's request for permission to use judgment and charging instruments to prove

---

[9] For the reasons stated below, the dismissal of the indictment against Plaintiff was not an acquittal and not based upon innocence.

materiality element of perjury charge and establish that context because judgment and indictment were hearsay and, therefore, inadmissible).

The rationale for excluding evidence of dismissals "is plain: such evidence ordinarily does not prove innocence. After all, cases are dismissed for a variety of reasons, many of which are unrelated to culpability." *Marrero-Ortiz,* 160 F.3d at 775.  In this case, it is abundantly clear from the transcript of the proceeding where the District Attorney moved to dismiss the indictment, that the decision not to try Plaintiff a third time was <u>not</u> based upon a finding by the District Attorney's office that "Mr. Bozella did not commit the crime" charged in the indictment. *Exhibit C*, Transcript of Proceeding, 10/28/2009, 11.  In addition, ADA Whitesell reminded Judge Rooney: "The fact remains that he was previously convicted by two juries, and those convictions were upheld by various appellate courts."  *Id*.

ADA Whitesell's remarks show that Plaintiff escaped re-prosecution only because the passage of time deprived the District Attorney of the physical and testimonial evidence necessary for a retrial.  ADA Whitesell stated:

> The physical evidence in this case, which was recovered by the City of Poughkeepsie Police Department as a result of their investigation of the Crapser homicide, including, but not limited to, items of evidence removed from the scene of the crime and at autopsy, was discarded in May 15, 2003, as part of the regular course of business of the City of Poughkeepsie Police Department. This action was taken with the consent of the District Attorney after a determination was made that all appeals in this case had been exhausted and the prior 440 motion had been resolved.

*Exhibit C*, 9-11.

The District Attorney's attempts to locate Lamar Smith -- one of the two witnesses who testified to Plaintiff's presence at Mrs. Crapser's house the night she was murdered -- "proved fruitless" and Mr. Moseley was not cooperative. *Id*. at 9-11.  In addition, even if both men were

available and willing to testify, the lack of physical evidence meant that ADA Whitesell would not be able to meet the corroboration requirement for accomplice testimony. *Id*. at 10-11.

 Not only does the dismissal of the indictment not permit an inference of innocence, the judgment dismissing the indictment is inadmissible because it is hearsay.  *Cf. Viserto*, 596 F.2d at 537 ("...a judgment of acquittal is hearsay.  The Federal Rules of Evidence except from the operation of the hearsay rule only judgments of conviction, Rule 803(22), not judgments of acquittal").

Finally, in an abundance of caution we note that the single cause of action that will be submitted to the jury is not the tort of malicious prosecution, where one of the elements a plaintiff must prove is favorable termination of the prosecution (which the malicious prosecution lawsuit is based upon).  To the contrary, favorable termination is apparently not an element of a claim under 42 U.S.C. § 1983, the sole cause of action here .  *Poventud v. City of New York*, 715 F.3d 57 (2d Cir. 2013) (plaintiff's guilty plea to lesser charges after his murder conviction was overturned for a *Brady* violation did not preclude a 42 U.S.C. § 1983 lawsuit seeking compensation for time spent in jail under the judgment of conviction for murder).

To recapitulate, the Court should preclude Plaintiff from introducing into evidence the fact that the indictment against Plaintiff was dismissed and Plaintiff was not tried again.  If the jury inquires whether Plaintiff was tried again for the robbery and murder of Ms. Crapser or asks about the final disposition of those charges, the Court should inform the jury that it may draw no inference either favorable or unfavorable against either party to this litigation from the fact that the District Attorney ultimately chose not to try Plaintiff again for the robbery and murder of Ms. Emma Crapser.

## POINT V

## STATE COURT DECISIONS IN THE CRIMINAL
## CASE AND POST-CONVICTION PROCEEDINGS
## ARE HEARSAY AND NOT ADMISSIBLE
## TO PROVE THE TRUTH OF A MATTER ASSERTED THEREIN

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted and is inadmissible except as provided for in the Federal Rules of Evidence.  See Fed. R. Evid. 801(c) and 802.  Judge Rooney's decision granting Plaintiff's motion under N.Y. Crim. Pro. 400.10 is hearsay if offered to prove the truth of the matter asserted in the judgment.  *United States v. Olivieri*, 740 F. Supp. 2d 414, 417 (S.D.N.Y. 2010) (holding that judgment from defendant's guilty plea was hearsay not admissible to prove materiality element of a false statement charge); *Corley v. Jahr*, 2013 U.S. Dist. LEXIS 10012 (S.D.N.Y. 2013) (the court does not take judicial notice of any factual findings recited in the state courts' opinions or any conclusions based on those findings, since those findings are not admissible for their truth in this action).  For the same reasons, the Court should preclude the Plaintiff from using decisions rendered by the Appellate Division in connection with Plaintiff's direct appeals to prove the truth of an allegation or as proof of a fact in issue.

## CONCLUSION

## FOR THE ABOVE-STATED REASONS, THE
## COURT SHOULD GRANT THE RELIEF REQUESTED

Dated: December 10, 2014
New York, New York                                        /s/ Louis M. Freeman

_____
Louis M. Freeman
Nadjia Limani
Special Counsel for Defendant
**County of Dutchess**
Freeman, Nooter & Ginsberg
75 Maiden Lane, Suite 503
New York, New York 10038
(212) 608-0808