UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

DEWEY R. BOZELLA,


             -against-                                   10 CV 4917 (CS)

THE COUNTY OF DUTCHESS,

                              Defendant.

------------------------------------------------------------------------x



**MOTION TO PRECLUDE TESTIMONY OF BENNETT L. GERSHMAN**

## PRELIMINARY STATEMENT

Defendant County of Dutchess (hereinafter the "County") requests that the Court preclude Bennett L. Gershman (hereinafter "Gershman") from testifying as an expert witness at trial.  Both the "EXPERT REPORT OF PROFESSOR BENNETT L. GERSHMAN" (hereinafter the "Report") and his testimony at a deposition held on April 25, 2013 provide ample basis for the Court to exercise its discretion under Rules 401, 403, 701, and 702 of the Federal Rules of Evidence to preclude him from testifying as an expert at the trial.[1]

Gershman should be precluded from testifying because his testimony will concern issues of law, and "as a general rule an expert's testimony on issues of law is inadmissible."  *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).  If is he permitted to testify, Gershman will usurp the Court's role as the jury's sole and exclusive advisor as to the law governing Plaintiff's contentions and the jury's role as the finder of fact.  *See infra*, Point I.

Second, for the reasons set forth in Point II, *infra*, Gershman's testimony fails to meet the conditions for admissibility specified in Fed. Evid. 702.

For the reasons stated in Point III, the Court should, assuming all or part of Gershman's anticipated testimony could pass muster under Fed. R. Evid. 702, preclude any testimony from Gershman because its potential to cause unfair prejudice substantially outweighs its probative value.

---

[1] Gershman has neither been qualified as an expert nor testified as an expert regarding *Brady* in any court.  *See*, *Exhibit C* at 28-33.

**ARGUMENT**

**POINT I**

**GERSHMAN'S TESTIMONY IS PROHIBITED BY THE GENERAL RULE
PRECLUDING EXPERT TESTIMONY ON ISSUES OF LAW**

"As a general rule an expert's testimony on issues of law is inadmissible." *United States v.*

*Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).  The rationale behind this rule is that:

> It is not for witnesses to instruct the jury as to applicable principles
> of law, but for the judge. As Professor Wigmore has observed,
> expert testimony on law is excluded because 'the tribunal does not
> need the witness' judgment. . . . (T)he judge (or the jury as
> instructed by the judge) can determine equally well. . . .' The
> special legal knowledge of the judge makes the witness' testimony
> superfluous.

*Marx & Co., Inc. v. Diners' Club Inc*., 550 F.2d 505, 509-10 (2d Cir. 1977) (quoting VII
Wigmore on Evidence s 1952, at 81).

The inherent "danger" in permitting expert testimony on legal issues is that "the jury may think

that the 'expert' in the particular branch of the law knows more than the judge—surely an

inadmissible inference in our system of law."  *Id.* at 512. See also *Hygh v. Jacobs*, 961 F.2d 359,

364 (2d Cir. 1992) ("Whereas an expert may be uniquely qualified by experience to assist the

trier of fact, he is not qualified to compete with the judge in the function of instructing the jury.").

It is evident from the Report and Gershman's deposition testimony that, if he is permitted

to testify at trial, he is likely to usurp the Court's role as the jury's sole and exclusive legal

adviser.  In both the Report and his deposition testimony, Gershman purports to set forth "what

*Brady* and its progeny" require."[2]  His testimony, however, would, in effect, erroneously instruct

---

[2] As we demonstrate in Point II*, infra*, Gershman's view of the law is incomplete, inaccurate, and
highly partisan, and, therefore, unlikely to assist the jury.  Indeed, the very phrase, "*Brady* and its
progeny," is misleading.   Assuming *arguendo* that *Brady* ever stood for the principle that the
Constitution requires a prosecutor to disclose all evidence that may be useful or helpful, every
subsequent case decided by the Supreme Court has renounced that interpretation of *Brady*.  If we

the jury that *Brady* requires the disclosure of all "favorable" evidence regardless of whether it is exculpatory. *See Exhibit A*, Report at 10 ("A request for all favorable evidence pursuant to *Brady* is not "overbroad" as the form language contends, but rather exactly what *Brady* has always required."). In addition, Gershman would advise the jury that "[e]xculpatory evidence is only one category of evidence that can be favorable to a defendant and thus constitutes only a subset of the kind of evidence that a prosecutor is obligated to disclose pursuant to *Brady*." *Exhibit A*, 10. Not only would such testimony usurp the Court's role as the jury's sole and exclusive legal adviser, it is also, for the reasons stated in Point II, *infra*, a misstatement of the law.

Furthermore, the jury does not need an expert to instruct it on the applicable law. Expert testimony may be permitted in a complex case, "[p]articluarly in complex cases involving the securities industry," where it "may help a jury understand unfamiliar terms and concepts." *Bilzerian*, 926 F.2d at 1294. However, the Supreme Court's jurisprudence regarding constitutionally mandated disclosure is neither as complex nor as esoteric as securities law. To the contrary, a concise and accurate statement of some of the relevant principles is set forth in *United States v. Mahaffy*, 693 F.3d 113, 127 (2d Cir. 2012), and this language could easily could be incorporated into a jury instruction:

> *Brady* requires that the government disclose material evidence favorable to a criminal defendant. *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004). Evidence is favorable if it is either exculpatory or impeaching, *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999), and it is material if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' *Youngblood v. West Virginia*, 547 U.S. 867, 870,

---

can call cases such as *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667, (1985), and *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999) the "progeny of *Brady*," then they are children who have rejected their parents.

126 S. Ct. 2188, 165 L. Ed. 2d 269 (2006) (quotation marks
omitted).

Since the law regarding the scope of a prosecutor's constitutionally mandated disclosure

obligations can be explained by the Court, there is no need for Gershman to shoulder that burden.

*Highland Capital Management, L.P.,* 379 F.Supp.2d at 472 (the proposed expert was not

permitted to testify where he had "not offered testimony concerning 'terms and materials'

relevant to the securities industry-except for his discussion of securities law terms that could

easily be explained by a judge to a jury.").

Precluding testimony from Gershman will also insure that that the jury, and not

Gershman, decides the fundamental issue of fact upon which the County's liability hinges --

whether the District Attorney had an unconstitutional disclosure policy.  Indeed, the multiple

factual determinations that Gershman makes in the Report[3] -- e.g., as to whether specific

individuals understood the law governing a prosecutor's constitutionally mandated disclosure

obligations -- are the exclusive province of the jury.

As the  Second Circuit has repeatedly emphasized:

> . . . expert testimony that usurps either the role of the trial judge in
> instructing the jury as to the applicable law or the role of the jury
> in applying that law to the facts before it, by definition does not aid
> the jury in making a decision; rather, it undertakes to tell the jury

---

[3] Among the factual determinations Gershman makes in his report are the following: 1)
prosecutors would fail to turn over material, such as *Brady* evidence, that they were obligated to
disclose." (*Exhibit A* at p. 13); (2) District Attorney Grady and other prosecutors who serve
under him do not understand *Brady* or are impaired by "fundamental misconceptions" or
"erroneous beliefs" (*Exhibit A* at p. 14-15); findings of a *Brady* violation in specific cases
(*People v. Williams* and *People v. West*, for example) could be inferred from "the Dutchess
County prosecutors' erroneous belief that the *Brady* standard only requires disclosure of
evidence that "tends to exculpate" instead of all evidence favorable to the defendant" (*Exhibit A*
at p. 15-16).   A more complete list of Gershman's factual findings is appended to this
memorandum as *Exhibit B*.

what result to reach, and thus attempts to substitute the expert's judgment for the jury's.

*Hollman v. Taser Int'l, Inc.*, 2013 U.S. Dist. LEXIS 32503, 24-25 (E.D.N.Y. Mar. 8, 2013) *quoting United States v. Nimely*, 414 F.3d 381, 397 (2d Cir. 2005), *quoting United States v. Duncan*, 42 F.3d 97, 100 (2d Cir. 1994*). See, e.g., United States v. Lumpkin*, 192 F.3d 280; 289 (2d Cir. 1999); *Andrews v. Metro North*, 882 F.2d 705, 709 (2d Cir. 1989); *United States v. Scop*, 846 F.2d 135, 142, *rev'd in part on reh'g on other grounds*, 856 F.2d 5 (2d Cir. 1988).

Accordingly, the Court should preclude Gershman from testifying as an expert witness in this case.

## POINT II

### GERSHMAN'S TESTIMONY DOES NOT MEET FED. R. EVID. 702'S PREREQUISITES FOR THE ADMISSIBILITY OF EXPERT TESTIMONY

The admissibility of Gershman's testimony is governed by Fed. R. Evid. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

We address each of the above factors *ad seriatim*.

> A. *Whether Gershman's specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue*

When confronted with a proffer of expert testimony, a trial judge "must determine at the outset… whether [such testimony] … will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592 (1993).  "This helpfulness requirement is akin to the relevance requirement of Rule 401, which is applicable to all proffered evidence but goes beyond mere relevance because it also requires expert testimony to have a valid connection to the pertinent inquiry." *In re: Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004).

As we have noted previously, expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it, by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's.  Since admission of Gershman's testimony would accomplish both of these prohibited ends, it fails to satisfy Fed. R. 702's helpfulness requirement.

> B.  *Whether the testimony is based on sufficient facts or data*

First, Gershman's opinions are based in part upon what is undeniably the opinions of others, including e.g., John Garrity, Jr., who considering that he ran against Grady for the position of District Attorney of Dutchess County, is hardly an unbiased party when it comes to the performance of his one-time political opponent.  Garrity's assessment of the District Attorney's office, moreover, is based at least in part upon Garrity's own inability to understand or acknowledge post-*Brady* Supreme Court cases that define the limits of a prosecutor's constitutionally mandated disclosure obligations, a deficiency that is evident in Garrity's supporting affirmation for his omnibus motion in *People v. Britton*. Gershman also bases his opinions on the opinions of Messrs. Steiman and Steinberg, the attorneys who failed twice to win

an acquittal for Plaintiff, and whose natural inclination would be to blame the District Attorney for their failure to win an acquittal for their client.

Third, the data that Gershman purportedly used to reach his conclusion -- in particular omnibus motions that defense counsel filed on behalf of their defendants, the responses filed by Assistant District Attorneys in response to defense counsel's motions, and written decisions filed by judges on these motions – is woefully inadequate.  None of these documents proves that the stance that Assistant District Attorneys took in response to requests for *Brady* material actually resulted in the denial of *Brady* material in a particular case.  Gershman merely assumes from language that he finds erroneous that criminal defendants must have been denied evidence or information that the prosecutors were constitutionally obligated to disclose.

Indeed, the most significant aspect of Gershman's data is what he did not have – e.g., appellate decisions finding that the District Attorney had violated *Brady.*  Curiously, Gershman overlooks the fact that in *People v. Taylor* -- which Gershman cites in his Report at 13-14 as an example of the District Attorney's misunderstanding of *Brady*– the Appellate Division found that no *Brady* violation had occurred because disclosure occurred in time for the defendant to make use of the alleged *Brady* material.  *People v. Taylor*, 185 A.D.2d 1004, 587 N.Y.S.2d 690 (2d Dept. 1992).   The Appellate Division's decision, moreover, is conspicuously missing from Appendix A to the Report, which lists all the documents upon which Gershman purportedly relied.

In *People v. Williams*, another case that Gershman discusses at length in the Report at page 15, the Appellate Division's opinion rejects the Appellant's right to counsel claim and then states, "[t]he defendant's remaining contentions are without merit." *People v. Williams*, 242

A.D.2d 550, 662 N.Y.S.2d 266, 267 (2d Dep't 1997).   Again, there is no indication that Gershman ever looked at the Appellate Division's decision.

Except for Judge Rooney's decision in Plaintiff's case, Gershman apparently did not review and neither in his Report nor at his deposition did he cite any decisions in post-conviction proceedings that found that criminal judgments should be vacated because subsequent events had shown that the Dutchess County District Attorney had failed to turn over *Brady* material.   Nor does his analysis appear to have included any research into federal post-conviction motions under 28 U.S.C. § 2254.

  *C.   Whether Gershman's testimony is the product of reliable principles and methods*

As used in Fed. R. Evid. 702, "the word 'knowledge' connotes more than subjective belief or unsupported speculation. The term 'applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds.'"   *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993).   The Report and Gershman's deposition testimony do not square with the known body of fact and ideas regarding "*Brady* and its progeny."   Indeed, it is highly questionable whether it is accurate to speak of a *Brady* rule given the number of times the Supreme Court has revisited or, as some critics might claim, eviscerated that decision.   There are at least two fundamental points of law that Gershman fails to acknowledge.

First, the Supreme Court has consistently denied that its 1963 decision in *Brady* ever held that the scope of a prosecutor's constitutionally mandated obligation to provide discovery encompasses everything that an accused might find helpful.   In other words, the Supreme Court disagrees with Gershman's description of the scope of a prosecutor's duty to disclose.

Second, the Supreme Court also disagrees with Gershman's claim that prosecutors are required to use a more lenient standard of materiality -- when deciding, prior to or during trial, what they must disclose -- than the appellate courts must employ in determining whether a prosecutor failed to comply with his constitutionally mandated disclosure obligations.

### A. What the Supreme Court's Opinions Say About What Prosecutors Are Required to Disclose

The actual holding in Justice Douglas's opinion for the Supreme Court in *Brady*, is:

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady*, 373 U.S. at 87.

Justice Douglas asserted at some length that his opinion[4] was rooted in the "the principle of *Mooney v. Holohan*,"[5] *Id*. at 87-88, a 1935 case where the Court held for the first time that the Due Process Clause prohibits a state from obtaining a conviction based on testimony known to be perjured.   Justice White, in a separate opinion, criticized Douglas's opinion for providing language that confused the holding of *Brady*,[6] noting that the:

> Court's due process advice goes substantially beyond the holding below. I would employ more confining language and would not cast in constitutional form a broad rule of criminal discovery. Instead, I would leave this task, at least for now, to the rulemaking or legislative process after full consideration by legislators, bench, and bar.

*Brady*, (White, J.) 93 U.S. at 92.

The "more confining" language began appearing just a few years later.

---

[4] Justice White wrote a separate opinion in *Brady* and Justice Harlan wrote a dissenting opinion, in which Justice Black joined.

[5] 294 U.S. 103 (1935).

[6] It appears that Gershman's opinion of the expansive notion of constitutionally required discovery created by *Brady* is premised on this very confusion.

For example in his plurality opinion in *Giles v. Maryland*, 386 U.S. 66, 73-74 (1967), decided only four years after *Brady*, Justice Brennan stated that the case before the Court presented "the broad questions whether the prosecution's constitutional duty to disclose extends to all evidence admissible and useful to the defense, and the degree of prejudice which must be shown to make necessary a new trial." *Giles*, 386 U.S. at 73-74.  Having framed the question, Justice Brennan immediately refused to address it, asserting instead that it was "unnecessary, and therefore inappropriate, to examine those questions."  *Giles*, 386 U.S. at 74.

If, as Gershman claims, *Brady* had established that prosecutors have a constitutional duty to disclose all evidence that is helpful or useful to the defense, then the question that Justice Brennan declined to address in *Giles* would have already have been settled by *Brady*. Moreover, Justice Brennan's plurality opinion cites *Napue v. Illinois*,[7] not *Brady*, as the basis for the Supreme Court's decision in *Giles*.

Furthermore, the most significant, and as it turns out prophetic, opinion in *Giles* is Justice Harlan's, which presages the death of *Brady*, at least as Gershman construes it:

> As I understand him, my Brother FORTAS believes that state prosecuting officials are compelled by the Fourteenth Amendment to disclose to defense counsel any information 'which is material, generously conceived, to the case, including all possible defenses.' This would include all information which is 'exonerative or helpful.' This standard would demand markedly broader disclosures than this Court has ever held the Fourteenth Amendment to require.

Justice Harlan then remarked that, to the extent *Brady* might support the existence of a right to all helpful evidence, such language was *dicta* and wholly advisory.   Justice Harlan wrote:

---

[7] 360 U.S. 264 (1959).

> The Court has held since *Mooney v. Holohan*, 294 U. S. 103, that a State's knowing use of perjured testimony denies a fair trial to the accused. Mooney has been understood to include cases in which a State knowingly permits false testimony to remain uncorrected. *Alcorta v. Texas*, 355 U. S. 28; *Napue v. Illinois*, 360 U. S. 264. The standard applied in such cases has been whether the testimony 'may have had an effect on the outcome of the trial.' *Napue v. Illinois, supra,* at 360 U. S. 272. These cases were very recently followed and applied in *Miller v. Pate, ante,* p. 386 U. S. 1. **Apart from dicta in Brady v. Maryland, 373 U.S. 83, the Court has never gone further.**

*Giles*, Harlan, J., (dissenting), 386 U.S. at 116-1171 (emphasis supplied).

The last sentence quoted above is followed by a footnote in which Justice Harlan adds:

> I cannot agree that this Court in *Brady* extended *Mooney* in any fashion. The language in *Brady* upon which my Brother FORTAS relies was quite plainly 'wholly advisory.' *Brady v. Maryland, supra,* at 92 (separate opinion of WHITE, J.).

*Giles*, Harlan, J., (dissenting), 386 U.S. at 117, n. 9.

In *United States v. Agurs*, 427 U.S. 97, 108-109 (1976), the Supreme Court chastised the District of Columbia Circuit for interpreting the scope of a prosecutor's constitutionally mandated obligations as broadly as Gershman advocates:

> The Court of Appeals appears to have assumed that the prosecutor has a constitutional obligation to disclose any information that might affect the jury's verdict. That statement of a constitutional standard of materiality approaches the 'sporting theory of justice' which the Court expressly rejected in *Brady*. For a jury's appraisal of a case 'might' be affected by an improper or trivial consideration as well as by evidence giving rise to a legitimate doubt on the issue of guilt. If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice.
>
> Whether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely does not demand that much.

In *United States v. Bagley*, 473 U.S. 667, 674-675 (1985), the Supreme Court again held that "[t]he holding in *Brady v. Maryland* requires disclosure **only** of evidence that is *both* favorable to the accused and 'material either to guilt or to punishment.'" (emphasis supplied).  In *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999), the Court reiterated the limits of *Brady*:

> the term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence  -- that is, to any suppression of so-called '*Brady* material'  --**although, strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.** There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either <u>because</u> it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

(emphasis supplied).

More recently, Justice Ginsburg reaffirmed that "[t]o establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is 'favorable to the accused, either **because it is exculpatory, or because it is impeaching**' (2) the State, suppressed the evidence, 'either willfully or inadvertently' and (3) 'prejudice … ensued.'"  *Skinner v. Swtizer*, 131 S. Ct. 1289, 1300 (2011) (emphasis supplied), *citing Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). *See also, Banks v. Dretke*, 540 U.S. 668, 691 2004 ("A *Brady* prosecutorial misconduct claim has three essential elements. *Strickler v. Greene*, 527 U. S. 263, 281–282. **Beyond debate, the first such element—that the evidence at issue be favorable to the accused as exculpatory or impeaching.**") (emphasis supplied).

At the same time that the Supreme Court has emphasized the limits of the disclosure that is constitutionally mandated, it has also acknowledged that a prosecutor's ethical and/or statutory obligations may require more than the United States Constitution.  In *Agurs*, for example, the Court observed, "[w]e are not considering the scope of discovery authorized by the Federal

Rules of Criminal Procedure, or the wisdom of amending those Rules to enlarge the defendant's discovery rights." *Agurs* at 107. In *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), and more recently in *Cone v. Bell*, 556 U.S. 449 (2009), the Supreme Court, reaffirmed that:

> Although the Due Process Clause of the Fourteenth Amendment, as interpreted by *Brady*, only mandates the disclosure of material evidence, the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations. *See Kyles*, 514 U.S., at 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 ("[T]he rule in *Bagley* (and, hence, in *Brady*) requires less of thmae prosecution than the ABA Standards for Criminal Justice . . . . See . . . Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993)"). See also ABA Model Rule of Professional Conduct 3.8(d) (2008) ("The prosecutor in a criminal case shall" "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal").

*Cone*, 556 U.S. at 470, n. 15.

*See also Moore v. Illinois*, 408 U.S. 786, 795 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case."). Gershman, however, does not discern the difference between what is constitutionally required and broader obligations imposed by statutes or ethical considerations.

Our reading of Supreme Court cases concerning the scope of a prosecutor's constitutionally mandated discovery obligations is confirmed, at least in part, by those who, like Gershman, are highly critical of the Supreme Court's pronouncements on the narrow scope of

constitutionally mandated pretrial disclosure.[9]   For example, in a white paper published by Mr. Gershman's colleagues[10] under the auspices of the National Association of Criminal Defense Lawyers, the authors charge that, in the years following its *Brady* decision, the Supreme Court moved away from a from a broad interpretation of *Brady* and towards a narrower definition of materiality and stricter application of the rule:

> The Court did this by driving home that *Brady* did not create a right to discovery per se, but rather acknowledged a Constitutional Due Process right to a fair trial that includes a right to discovery of favorable information — that is exculpatory or impeaching information of such importance that if omitted would create 'a reasonable doubt of guilt that did not otherwise exist.'

"Cookie" Ridolfi, Tiffany M. Joslyn & Todd H. Fries, *Material Indifference*, at 7 (2014).  The authors also note with approval an article by Alafair S. Burke, who laments that:

> *Brady*'s progeny have made clear that prosecutors are not constitutionally obligated to disclose all exculpatory evidence, or even all relevant exculpatory evidence. In fact, the definition of 'material' exculpatory evidence is so restrictive that it is probably best articulated not as a duty of the prosecutor to disclose, but as a narrow exception to a prosecutor's general right to withhold evidence from the defense. Under *Brady*'s progeny, a prosecutor can constitutionally withhold all evidence, except for exculpatory evidence that 'creates a reasonable doubt that did not otherwise exist.'

Alafair S. Burke, *Revisiting Prosecutorial Disclosure*, 84 IND. L.J. 481, 483 (2009).

---

[9] Obviously, many in the defense bar would not agree with the proposition that Justice Douglas's opinion in *Brady* was never intended to create the broader rule of disclosure that Gershman advocates.  However, they would have to concede that the Supreme Court's subsequent opinions have held that *Brady* did not create a constitutional obligation to disclose all evidence favorable to the defense but only that evidence that is exculpatory (including impeachment evidence) and material (meaning it  would create a reasonable probability of a different outcome at trial).

[10] Gershman is listed among the various law professors and lawyers whom the authors thank for reviewing drafts of their report.  *Material Indifference*, at vii.

To recapitulate, to the extent that Gershman asserts that the United States Constitution requires the disclosure of all evidence that may be helpful or - useful to the defense, he is clearly and undeniably wrong.   Furthermore, it is not the lawyers at the Dutchess County District Attorney's office who "narrowed" the scope of *Brady*. Assuming the holding in *Brady* was narrowed at all, the Supreme Court is solely responsible for that development.

B. *What the Supreme Court's Opinions Say About Materiality*

At one point in his deposition, Gershman, seemed to suggest that the standard determining whether a prosecutor has a constitutional obligation to disclose, either prior to or during trial, information or evidence is not as strict or as exacting as the standard that appellate courts must use when they later review the prosecutor's decision.   *See Exhibit C*, Gershman Deposition at 132 ("It's a higher degree of scrutiny by the appellate courts... It's not a higher degree of scrutiny for the prosecutor.").  However, as Justice Stevens observed in *Agurs*, 427 U.S. at 107-108, "[l]ogically the same standard must apply [before and after trial].   For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose."   *See also Bagley*, 473 U.S. 667, 700 (Judge Marshall dissenting that "[a]lthough [materiality] looks like a post-trial standard of review, it is not. Instead, the Court relies on this review standard to define the contours of the defendant's constitutional right to certain material prior to trial.").   *See also United States v. Coppa,* 267 F.3d 132*, 146 (2d Cir. 2001).

Furthermore, although prosecutors are urged to err on the side of caution, nothing in the Supreme Court's decisions suggest that a prosecutor must assume that he is constitutionally required to disclose anything and everything that a defendant might find useful or helpful.  To the contrary,

the Supreme Court has asserted that prosecutors, "who alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure **when the point of 'reasonable probability' is reached**. Kyles, 514 U.S. at 437 (emphasis supplied), *citing Bagley*, 473 U.S. at 682.  *See United States v. Coppa (In re United States)*, 267 F.3d 132, 143 (2d Cir. N.Y. 2001).  Indeed, a more lenient rule would transform the Due Process Clause into a general discovery clause.  As the Supreme Court stated in *Agurs*, 427 U.S. at 409, "[i]f everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice.  Whether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely does not demand that much."

> D.  *Whether the expert has reliably applied the principles and methods to the facts of the case*

Because Gershman starts from faulty premises, his findings are inherently unreliable. For example, because he essentially ignores the language of the Supreme Court decisions that conflict with his expansive view of a prosecutor's constitutionally mandated disclosure obligations, he has no problem concluding that Assistant District Attorneys' responses to various omnibus motions erroneously narrowed the scope of the prosecutors' constitutionally mandated discovery obligations.

Not only does Gershman ignore the impact of post-*Brady* Supreme Court precedents upon the scope of what a prosecutor is constitutionally obligated to disclose,  he also ignores obvious deficiencies in the omnibus motions that he reviewed – in particular the fact that the defense lawyers who made those motions   e.g., Mr. Garrity – also frequently ignored the Supreme Court's post-*Brady* precedents.

17

Gershman's blindness to defense attorneys' tendency to ignore judicial authority that mandated or at least permitted prosecutors to validly refuse to provide information that they were not constitutionally required to disclose obviously facilitates Gershman's accusation that Assistant District Attorney's responsive affirmations – which did little more than clarify the scope of their constitutional duties after such cases as *Agurs* – constitute evidence of an unconstitutional policy.  Indeed, because the "correctness" of the Assistant District Attorneys' responsive affirmations cannot reliably be gauged solely by reference to the language in *Brady*, the legal opinions stated in the Report lack a sufficient indicia of reliability to be introduced to the jury.

For example, the omnibus motion in *People v. Britton*, one of the requests cited in Mr. Gershman's Report as typical (*see Exhibit A* at p. 7 & n.12) asserts that *Brady* entitles the defendant to any information that :

> (2) bears upon and could reasonably weaken or affect any evidence proposed to be introduced against the defendant by the prosecution, (3) bears in any material degree on the charges contained in the Indictment, or is relevant to the subject matter of the Indictment and in any manner may aid the defendant in the ascertainment of truth. The requested evidence refers to such evidence in the control possession or custody of the prosecution or such custody of any government agencies or agencies working under the supervision of the government. This demand is made pursuant to the authority of *Brady v. Maryland* 373 U.S. 83 1963 and its progeny.

*People v. Britton*, Ind. No. 29/89, Affirmation of John B. Garrity Jr. dated 1989 at p. 7, para. 18, attached as *Exhibit D*.

In addition, Mr. Garrity demanded "under *Brady*" and its progeny a laundry list of items many of which did not fall within the ambit of *Brady*, under even the most expansive formulation of exculpatory or impeaching evidence.  *See id*. at 7-14.

The phrases – "bears upon and could reasonably weaken or affect any evidence proposed to be introduced against the defendant by the prosecution" and "is relevant to the subject matter of the Indictment and in any manner may aid the defendant in the ascertainment of truth" and "bears in any material degree on the charges contained in the Indictment" – do not appear anywhere in Justice Douglas's opinion in *Brady*. Furthermore, these phrases represent the sporting theory of justice that *Agurs*, 427 U.S. at 108-109, rejected as early as 1976:

> The Court of Appeals appears to have assumed that the prosecutor has a constitutional obligation to disclose any information that might affect the jury's verdict. That statement of a constitutional standard of materiality approaches the 'sporting theory of justice' which the Court expressly rejected in *Brady*. For a jury's [427 U.S. 97, 109] appraisal of a case 'might' be affected by an improper or trivial consideration as well as by evidence giving rise to a legitimate doubt on the issue of guilt. If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice.

Yet, Mr. Garrity's erroneously expansive misinterpretation of what the Constitution requires a prosecutor to disclose appears not only in his affirmation in the *Britton* case, he used that language again in his affirmation in support of the omnibus motion in *People v. Taylor*, Ind. No. 72/88, Affirmation in Support of Motion, at 4 ¶ 16, attached as *Exhibit E*, and it also appears in a memorandum of law submitted by one his colleagues at the Public Defender's office in support of the omnibus motion in *People v. Fuller*, Ind. No. 87/91, at 7-8, attached as *Exhibit F*.

Gershman, however, ignores the obvious implications of the dearth of judicial pronouncements from either the lower courts that decided the motions, or an appellate court, rebuking the District Attorney's office for relying upon an erroneous legal interpretation to wrongfully deny defense counsel information to which defense counsel were constitutionally entitled. Judges are presumed to know the law. Consequently, if as Gershman contends,

Dutchess County Assistant District Attorneys consistently misrepresented the scope of their constitutionally mandated discovery obligations, surely a lower court judge would have -- in the course of ordering the Assistant District Attorney to turn over the information that defense counsel had requested -- "educated" these Assistant District Attorneys and perhaps District Attorney Grady himself as to the scope of a prosecutor's constitutionally mandated discovery obligations.  Gershman points to no such judicial rebukes because there are none.

The judge who decided the omnibus motion did not order the District Attorney to provide the multitude of items that Garrity claimed he was entitled to under *Brady*.  Nor did she direct the prosecution to provide to Garrity all evidence which "bears upon and could reasonably weaken or affect any evidence proposed to be introduced against the defendant by the prosecution bears in any material degree on the charges contained in the Indictment."  *Exhibit D*, 7.  Instead, the judge's decision on the omnibus motion states:

> Concerning defendant's motion to disclose all evidence favorable to him the same is granted to the limited extent that the People shall provide the defendant with any evidence in their possession or control which is favorable to him as provided in *Brady v. Maryland*, 373 U.S. 83.

*Exhibit G*, Decision and Order, People v. Britton, August 22, 1989, 3.

The judge's decision in *Britton* is representative of the decisions filed by judges in the fifty other cases submitted for Gershman's review.

Gershman's explanation for the absence of any judicial criticism of Dutchess County Assistant District Attorneys for their reliance upon an allegedly erroneous construction of legal precedent regarding their  constitutionally mandated discovery obligations is as feeble as it is misleading.   He asserts that courts are helpless to intervene because defense counsel cannot possibly bring to a judge's attention information that defense counsel does not have because it is

hidden in the prosecutor's files.  Surely, Gershman, who is no stranger to appellate courts, knows that a court's use of the wrong legal standard to gauge what information a prosecutor is constitutionally required to disclose   is a legal issue that can be raised in a motion for reconsideration in the lower court and if necessary on direct appeal.   Moreover, it is not necessary for defense counsel in those circumstances to point to specific items withheld by a prosecutor in order to argue on appeal that a lower court used an erroneous legal standard to deny the defense's request for "*Brady*" material.

Gerhsman's review of other cases, and indeed Plaintiff's case, is also impaired by his inability to see the forest for the trees.    A fair and objective review of the fifty-one cases submitted for examination to Gershman shows that the Dutchess County District Attorney's Office nearly always complied with its constitutionally mandated disclosure obligations in its responsive affirmation, thus fulfilling its constitutional obligations before a court even rendered a decision on defense counsel's omnibus motion. [11]   Gershman, however, indulges in an assumption that only one completely unacquainted with criminal motion practice can make – i.e., he assumes that just because defense counsel has asked for certain information, defense counsel

---

[11] For example in *People v. Belot*, Indictment No. 47/94, the Assistant District Attorney's responding affirmation provided the information requested in the defendant's omnibus motion before a court even ruled on defense counsel's request.  Defense counsel had requested and ADA Whitesell provided the name of a witness who had previously asserted that a person other than the defense lawyer's client was responsible for a murder.  Although like any careful lawyer, Assistant District Attorney Whitesell included in his responsive affirmation a few paragraphs and case citations that accurately set forth a prosecutor's constitutionally mandated discovery obligations, Whitesell also supplied counsel with the name of the witness who had implicated an alternative suspect and a tape recording of a statement in which this witness implicated the alternative suspect. *See*, *Exhibit H*, People v. Belot, Ind. #204/94, Affirmation in Answer to an Omnibus Motion. The judge's decision on defense counsel's omnibus decision did little more than direct the District Attorney to turn over the same information that ADA Whitesell had already voluntary provided to defense counsel. *See, Exhibit I*, People v. Belot, Ind. #204/94, Decision and Order.

must not have been provided with that information.  To the contrary, to ward off future allegations of waiver or procedural default or ineffective assistance of counsel, defense lawyers will frequently file a motion asking for information that prosecutors may already have provided without the compulsion of a judge's decision granting an omnibus motion.

To recapitulate, Gershman's data is woefully inadequate, his review of the data he does have is haphazard and skewed, and he fails to acknowledge post-*Brady* Supreme Court precedents.


## POINT III

### GERSHMAN'S TESTIMONY SHOULD BE PRELCUDED BECAUSE ANY PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY ITS POTENTIAL TO CAUSE UNFAIR PREJUDICE

Assuming *arguendo* that Plaintiff can establish the admissibility of Gershman's testimony under Fed. R. 702, the Court should exercise its jurisdiction under Fed. R. Evid. 403 to exclude it.

As the Supreme cautioned in *Daubert*, 509 U.S. at 595 (1993),

> Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.

Absent a crash course in Supreme Court jurisprudence on the scope of a prosecutor's constitutionally mandated disclosure obligations, lay jurors cannot assess how much weight, if any, they should give to Gershman's assertions that the Assistant District Attorneys in Dutchess County either failed to understand or willfully refused to fully comply with those obligations. Indeed, cross-examination is not a viable means of acquainting the jury with the relevant

Supreme Court precedents.  Nor can lay jurors be expected to read Supreme Court cases with the degree of scrutiny necessary to acquire even a rudimentary understanding of the applicable law.

Second, more will be required of jurors than just the mastery of the relevant Supreme Court decisions.  Gershman asserts that his conclusions are premised upon review of numerous documents including motion papers in some fifty different criminal cases.   Cross-examination will be a poor vehicle for exposing the flaws in the conclusions that Gershman purports to draw from these documents.   Furthermore, most lay jurors will be either ill-equipped and/or disinclined to review those documents with the degree of scrutiny necessary to determine if those documents actually support Gershman's opinions.   Indeed, the amount of time and intellectual effort required of lay jurors to undertake such an effort creates an unjustifiable risk that all or many of them will simply rely on the "say so" of the law professor rather than make their own independent assessment of the facts.  [preclude documents from 51 cases]

Third, Gershman's testimony should be precluded because of its overwhelming tendency to exploit lay jurors' fears and prejudices.  Unfortunately, a significant number of Americans subscribe to the belief that the criminal justice system in this country is rigged against them.  If permitted, testimony that reiterates Gershman's claim that "courts and commentators uniformly agree that most *Brady* evidence never gets discovered, and remains instead buried somewhere in the prosecutor's files," *Exhibit A* at 23, will stoke those passions and mislead the jury.

**CONCLUSION**

**FOR THE ABOVE STATED REASONS,**
**THE COURT SHOULD PRECLUDE TESTIMONY**
**FROM PETITIONER'S EXPERT WITNESS**

Dated: December 10, 2014
      New York, New York                /s/ Louis M. Freeman

_____

Louis M. Freeman

Nadjia Limani

Special Counsel for Defendant

**County of Dutchess**

Freeman, Nooter & Ginsberg

75 Maiden Lane, Suite 503

New York, New York 10038