UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DEWEY R. BOZELLA,                                            **10 CIV 4917 (CS)**

                                  Plaintiff,

             -against-

THE COUNTY OF DUTCHESS,

                                  Defendant.
--------------------------------------------------------x

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE*
TO PRECLUDE AS INADMISSIBLE HEARSAY – THE HOLLAND TAPE, THE
DOBLER REPORT, AND THE NEIGHBORS' STATEMENTS**

---

Patrick T. Burke, Esq.
Michael K. Burke, Esq.
Phyllis A. Ingram, Esq.
Burke, Miele & Golden, LLP
*Attorneys for Defendant County of
Dutchess*
40 Matthews Street, Suite 209
Post Office Box 216
Goshen, New York 10924
(845) 294-4080

## PRELIMINARY STATEMENT

Defendant County of Dutchess ("County") respectfully submits this Memorandum of Law in support of its motion in limine to preclude Plaintiff from admitting as evidence the Holland Tape (*see* Plaintiff's Pretrial Order ("PTO") Ex. 16—18), the Dobler Report (*see*  Plaintiff's PTO Ex. 8), and the Neighbors' Statements. (*See* Defendant's PTO Ex. Y-5—Y-9; Y-22, Y-23, AA; AA-1—AA-5; *see also* Plaintiff's PTO Ex. 1—4),

Plaintiff's *Brady* claim must be evaluated under the law in effect at the time of the alleged violation. Under the law in 1983 and 1990, inadmissible evidence could not be material under *Brady*. Not one of the three items Plaintiff claims to be *Brady* is admissible and, thus, not one could have come before the jury in 1983 or 1990 and affected the outcome of Plaintiff's trials. Specifically, the Holland Tape, Dobler Report, and Neighbors' Statements all would have been, *inter alia*, inadmissible hearsay, not subject to an exception. As a matter of law, this evidence could not have been admitted in Plaintiff's criminal trials and, thus, can not be considered by the jury in Plaintiff's present case.

## ARGUMENT

### POINT I
### THE LAW OF *BRADY* AND ADMISSIBILITY

When *Brady* was decided in 1963, admissibility of evidence was key to its materiality. Because the Maryland Court of Appeals found that the undisclosed confession was not evidence admissible on the issue of guilt or innocence, it was proper to restrict Brady's new trial to the issue of punishment. *Brady v. Maryland*, 373 U.S. 83, 88-90(1963). The Supreme Court explained that because "the confession was inadmissible on" the issue of guilt or innocence, "the confession could not have affected the outcome on the issue of guilt" and was not therefore material on that issue. *United States v. Agurs*, 427 U.S. 97, 105-06, (1976) *holding modified by United States v. Bagley*,

473 U.S. 667 (1985). Consistently, in 1983 the First Circuit recognized that "[i]nadmissible evidence is by definition not material, because it never would have reached the jury and therefore could not have affected the trial outcome." *United States v. Ranney*, 719 F.2d 1183, 1190 (1st Cir. 1983) (citing *Agurs*, 427 U.S. at 105-06). *See also United States v. Grossman*, 843 F.2d 78, 84-85 (2d Cir. 1988) (analyzing *Brady* claim and recognizing that the defendant claimed the evidence would have been admissible).

The First Circuit's view in *Ranney* was adopted by this District in *United States v. Persico*, No. S 84 CR. 809 (JFK), 1993 WL 385799, at *7 (S.D.N.Y. Sept. 29, 1993). At issue in *Persico* were statements in an FBI report made by a witness who could not be located and was unable to be produced at trial. *Id.* The court concluded that without the witness's "in court testimony, her statements to the FBI would have been inadmissible". The court found that the government's failure to disclose the FBI report was not a *Brady* violation. *Id.* (citing *Ranney*, 719 F.2d at 1190). When a co-defendant sought a new trial based upon this same *Brady* claim, the court similarly held that the "report was not material since it was not admissible and could not have affected the outcome of the trial," and the Second Circuit affirmed. *Scarpati v. United States*, No. 93 CIV. 740 (JFK), 1994 WL 256691, at *3 (S.D.N.Y. June 7, 1994) *aff'd*, 50 F.3d 4 (2d Cir. 1995).

The Supreme Court addressed whether inadmissible evidence could be material under *Brady* in 1995. *See Wood v. Bartholomew*, 516 U.S. 1, 6 (1995). In *Wood*, the Supreme Court held that polygraph results that were inadmissible under state law could not be material under *Brady*. *Id.* Specifically, "[t]he information at issue here, then—the results of a polygraph examination of one of the witnesses—is not "evidence" at all. *Id.* Disclosure of the polygraph results, then, could have had no direct effect on the outcome of trial, because respondent could have made no mention of them either during argument or while questioning witnesses." *Id.* In doing so, it expressly

rejected the Ninth Circuit's finding "that the information, had it been disclosed to the defense, might have led respondent's counsel to conduct additional discovery that might have led to some additional evidence that could have been utilized." The Supreme Court found that the Ninth Circuit "did not specify what particular evidence it had in mind" and that "[i]ts judgment is based on mere speculation, in violation of the standards we have established." This holding has been recently relied upon by Courts in this Circuit. *See Pepe v. Walsh*, No. 9:04-CV-0835 GTS/VEB, 2012 WL 1900545, at *50 (N.D.N.Y. May 24, 2012) *aff'd*, 542 F. App'x 54 (2d Cir. 2013*) cert. denied sub nom. Pepe v. Griffin*, 134 S. Ct. 1913, 188 L. Ed. 2d 939 (2014) (argument "contends that the prosecution violated its *Brady* obligation by failing to disclose the results of a polygraph test. . . is without merit as a matter of clearly-established law.") (citing *Wood*, 516 U.S. at 6). *See also Penick v. Filion*, 144 F. Supp. 2d 145, 158 (E.D.N.Y. 2001).

A court in this District again held that inadmissible evidence could not be material under *Brady* in 1996, and the Second Circuit again affirmed. *See Phillips v. Walker*, No. 92 CIV. 8018 (SS), 1996 WL 1236, at *2-3 (S.D.N.Y. Jan. 2, 1996) *aff'd*, 107 F.3d 3 (2d Cir. 1997). At issue in *Phillips* was the statement of a doorman who worked in the building where the murder occurred and gave the police "a description of the killer" but had died before the criminal trial. *Id.* at *2. "The Magistrate Judge determined that *Brady* did not require the statement's production to Phillips because the statement did not constitute *Brady* material in that it was inadmissible at trial, had no impeachment value and therefore had no bearing on Phillips's guilt or innocence." *Id.* The Southern District upheld the Magistrate Judge's determination, finding that the "the deceased doorman could not have testified at trial and his description of the killer was inadmissible at trial" and holding that "[i]n the words of *Bagley,* there was no 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at *3 (quoting

*Bagley*, 473 U.S. 667 (1985).  In affirming this decision, the Second Circuit expressly held that "[t]he district court did not err in concluding that the alleged omissions would not likely have affected the trial outcome." *Phillips v. Walker*, 107 F.3d 3 (2d Cir. 1997). In 1999, the Southern District again reiterated that inadmissible evidence cannot be material. *See Shakur v. United States*, 32 F. Supp. 2d 651, 658 (S.D.N.Y. 1999) ("Furthermore, I think it evident that nondisclosed evidence must have been *admissible* at trial if known to the defense. Evidence cannot be material, as that element is construed, if it was not admissible, and so could not have come before the jury.").

In 2000, it was recognized that "[s]everal decisions in this district have held that suppressed information that would be inadmissible at trial does not violate *Brady* since it could not have affected the trial's outcome" but that other circuits "have found inadmissible evidence to be material for *Brady* purposes if it 'would have led to admissible evidence.'" *Mendez v. Artuz*, No. 98 CIV. 2652 (LMM)(A, 2000 WL 722613, at *14-15 (S.D.N.Y. June 6, 2000) *report and recommendation adopted*, No. 98CIV.2652(LMM), 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000) *aff'd*, 303 F.3d 411 (2d Cir. 2002). Although the Court acknowledged that in its belief "the better view is that inadmissible evidence may be material for *Brady* purposes if it would lead to admissible evidence," it did not have to decide the issue because "the suppressed information would have been admissible." *Id.* at *15. The next year, the Second Circuit followed the view of the other circuits and held that inadmissible evidence could be material if it could lead to evidence that is admissible. *See United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002). Prior to then, however, it is clear that courts in this District consistently found that evidence cannot be material unless it is admissible. *See Persico*, *Scarpati*, *Phillips*, *and Shakur*, *supra*.

After *Gil*, the prosecution's duty to disclose materially favorable information is no longer limited to disclosure of evidence that is admissible. Today, the law in this Circuit "require[s] that

the prosecution make the defense aware of material information potentially leading to admissible evidence favorable to the defense." *United States v. Rodriguez*, 496 F.3d 221, 226, n.4 (2d Cir. 2007). Although courts in this Circuit find that evidence need not be admissible in order to be material, the law still adheres to the Supreme Court's holding in *Wood*. Specifically, where the statements claimed to be *Brady* evidence "are all hearsay or speculation," they cannot potentially lead to admissible evidence and are not material. *United States v. Rodriguez*, 503 F. App'x 72, 75 (2d Cir. 2012*) cert. denied*, 134 S. Ct. 136, 187 L. Ed. 2d 258 (2013) (quoting *United States v. Santos*, No. CR-01-537 (DGT), 2010 WL 2985913, at *6 (E.D.N.Y. July 27, 2010) *aff'd*, 486 F. App'x 133 (2d Cir. 2012). *See also United States v. Polanco*, 510 F. App'x 10, 12 (2d Cir*.) cert. denied*, 133 S. Ct. 2784, 186 L. Ed. 2d 230 (2013)

## POINT II
### THE ALLEGED *BRADY* EVIDENCE IS INADMISSIBLE

The Court must apply the law on *Brady* materiality and admissibility that was in effect at the time of Plaintiff's trials – in 1983 and 1990 – as that is the law that governed at the time of the alleged *Brady* violation. At that time, the prosecution was not required to disclose inadmissible evidence because, as a matter of law, such evidence could not be material; since it could never get before the jury, there could not be a reasonable probability that it would affect the outcome of the trial and/or undermine confidence in the jury's verdict. It is clear that up until the Second Circuit's decision in *Gil* in 2002, courts in this Circuit consistently held that *Brady* evidence must be admissible. Thus, at the time of Plaintiff's trials, 1983 and 1990, the Holland Tape, the neighbors' statements, and the Dobler Report were not material evidence because they were inadmissible hearsay, not subject to an exception. *See* Fed. R. Evid. 801-803. Plaintiff's *Brady* violation must be evaluated in the context of the rule in effect at the time of his trial, as this is when he claims material evidence was not disclosed as required by *Brady*.

Alternatively, if the Court adheres to the law on admissibility of *Brady* evidence now in effect, the information Plaintiff claims is *Brady* evidence could not have potentially led to admissible evidence and, thus, could not be considered by the jury in this case.  Even under the current law, the Supreme Court's holding in *Wood*, *supra*, is applicable to bar the admission of the evidence at issue because that information is hearsay or pure speculation and therefore cannot potentially lead to admissible evidence.  As such it is therefore not material. *See Rodriguez*, *supra*, 503 F. App'x at 75.

Here, Plaintiff seeks to introduce the Holland Tape, a recording of an interrogation on February 23, 1978 of a man named Saul Holland ("Saul Holland") in connection with the King murder, which was a break-in at an apartment of some elderly sisters who were beaten and tied up with neckties, one of whom died from strangulation caused by ties around her neck. Donald Wise and Anthony Wise were eventually convicted of this crime. Holland pled guilty to a reduced charge and cooperated against Donald and Anthony. In the Holland Tape, Holland says that he and Donald Wise, among others, were responsible for the King murders, and Holland said that Donald Wise told him that he had done "one of these jobs before," meaning a burglary where "the lady came home." The Holland Tape would be inadmissible and could not lead to admissible evidence.  Even if Holland was called as a witness, his testimony about what he said in this interview or about the alleged conversation with Wise would have been inadmissible hearsay – testimony that Wise told him he committed a burglary when the woman came home – offered to prove the truth of that statement, *i.e.*, that Wise committed a burglary when the woman came home, to suggest that Wise committed the Crapser murder. The only way to get this alleged conversation between Holland and Wise into evidence would have been through Wise's testimony, and Wise was called as a witness by Plaintiff's criminal trial counsel and exercised his Fifth Amendment Rights. Further,

not only is the Holland Tape inadmissible hearsay, it is also purely speculative.  There is no indication that Holland had any knowledge of the "other job" Wise was referring to and no evidence exists that Wise was referring to his having committed the Crapser burglary and murder. There is no suggestion that this purely speculative hearsay statement could possible lead to material admissible evidence for use in Plaintiff's defense.

Similarly, the neighbors' statements are all inadmissible hearsay, irrelevant, and could not have led to admissible evidence. These are statements of Cecil Carpenter, Curtis Carpenter, Shirley Ellerby, Diedre Walker and Linda Miller who were in and out of the upstairs apartment throughout the night of the murder and claimed they did not hear or see anything unusual in front of Ms. Crasper's building that night. Also included in this category is the statement of Cynthia Murphy who sat on a park bench down the block over 300 feet away (*see* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Reconsideration and to Reargue [Dkt. No. 196] at 7-8, n. 7) and said that she did not see the plaintiff or one of the prosecution's witnesses, Lamar Smith, who she knew. In addition to the statements constituting inadmissible hearsay, there is no way that the disclosure of their statements could potentially lead to admissible evidence. Plaintiff's defense counsel admitted that the DA's Office provided him with information on at least some of these individuals, including their names and addresses, but that he was unable to locate them prior to Plaintiff's trials. (*See* Burke Aff. Ex. G at 239-243).[1] Without these individuals' in court testimony, their statements would be inadmissible. *See, e.g.*, *Scarpati*, *supra*, No. 1994 WL 256691, at \*3. These statements are also irrelevant and revealed nothing about Plaintiff's alleged activities on the date of the murder. *See, e.g.*, *United States v. Beverly*, 913 F.2d 337, 353 (7th Cir. 1990) *aff'd sub nom. Griffin v. United States*, 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991) (excluding

---

[1] Burke Aff. Ex. as used herein refers to Exhibits annexed to the Affirmation of Patrick T. Burke in Opposition to Plaintiff's Partial Motion for Summary Judgment and in Support of Defendants' Motion for Summary Judgment.

testimony that witness never saw defendant "buy or sell cocaine outside of Somons Lounge" since "proof of an assertion by a negative is inadmissible."). *See also Com. v. Satterfield*, 373 Mass. 109, 114-15, 364 N.E.2d 1260, 1263-64 (1977). The neighbors did not hear anything occurring in Ms. Crapser's apartment, when it is undisputed that she was being burglarized and murdered. Their statement that they did not hear or see anything is not probative on what occurred since, according to them, nothing occurred.

Additionally, Plaintiff seeks to introduce the Dobler Report, a police report describing the 1977 assault of an elderly woman named Estelle Dobler in which Ms. Dobler's hands, legs and mouth were bound with black electrical tape and a stocking had been stuck in her mouth. Donald Wise was named as a possible suspect by another possible suspect, Christopher Gill, but no charges ever resulted from this assault. The Dobler Report would be inadmissible hearsay and irrelevant to Plaintiff's charged crime. *See, e.g.*, "evidence that the defendant may not have committed a crime he was not charged with is irrelevant and inadmissible and is not exculpatory as to the charged crime.") (internal citations omitted).  *People v. Reynolds*, 104 A.D.2d 611, 614 (2d Dept. 1984). It is completely speculative to imagine that a police report in an unrelated matter could lead to admissible evidence that would be material to Plaintiff's guilt or punishment in the Crapser murder case. Accordingly, the Dobler Report would fail under the test of *Rodriguez*.

## CONCLUSION

It is respectfully requested that the County's Motion in Limine to exclude the Holland Tape, Dobler Report, and Neighbors' Statements be granted in all respects.

Dated: December 10, 2014
   Goshen, New York

        /s/ Michael K. Burke
        Michael K. Burke (MB 7554)
        BURKE, MIELE & GOLDEN, LLP
        *Attorneys for Defendant*
        40 Matthews Street, Suite 209
        P.O. Box 216
        Goshen, New York 10924
        (845) 294-4080