UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
DEWEY R. BOZELLA,                                    10 CIV 4917 (CS)

                          Plaintiff,

    -against-

THE COUNTY OF DUTCHESS,

                          Defendant.
----------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE AS INADMISSIBLE HEARSAY – ALL TESTIMONY OF JOHN B. GARRITY RELATED TO WHAT HE ALLEGES THAT THEODORE ALSTON STATED TO HIM**

Patrick T. Burke, Esq.
Michael K. Burke, Esq.
Phyllis A. Ingram, Esq.
Burke, Miele & Golden, LLP
*Attorneys for Defendant County of Dutchess*
40 Matthews Street, Suite 209
Post Office Box 216
Goshen, New York 10924
(845) 294-4080

## PRELIMINARY STATEMENT

Pursuant to Federal Rules of Evidence 802, 402 and 403, the Defendant County of Dutchess respectfully submits this Memorandum of Law in support of its Motion in Limine to preclude and exclude all testimony and evidence of hearsay statements of John B. Garrity ("Garrity") related to what Garrity alleges that Theodore Alston ("Alston") stated to him (hereinafter "Alston Disclosure"). Any such testimony or evidence seeking to put words into Alston's mouth is hearsay, not to mention irrelevant and misleading, and is thus impermissible.

## ARGUMENT

In the instant matter, allegations have been made by Garrity in connection with the *People v. Acquitted Defendant #1* matter that *Brady* evidence was not turned over by the District Attorney's office in that case. Specifically, it has been alleged that Alston told Garrity that Officer Witness #1 had intercourse with Victim #1 after she was found dead. (*See* Burke. Aff. Ex. SSSSS, at 37-40).[1] Theodore Alston denies having any such conversation or communication with Garrity at any time. (*See* Burke Aff. Ex. VVVVV). Any testimony concerning these statements is plainly inadmissible hearsay, not subject to an exception, and must therefore be excluded. *See* Fed. R. Evid. 801-803. *See also* Defendant's Memorandum of Law in support of its Motion in Limine to preclude and exclude the Email purportedly from Wayne Moseley to Ross Firsenbaum, dated April 23, 2012. Neither Garrity, nor any other witness, should be permitted to put evidence before the jury of the hearsay statements of Garrity.

Similarly, because the hearsay rule applies to what is written as well as what is spoken, any document or record, including the Garrity deposition transcript and Amended Complaint, containing a statement of Garrity concerning the Alston disclosure is also inadmissible as hearsay.

---

[1] Burke Aff. Ex. As used herein refers to Exhibits annexed to the Affirmation of Patrick T. Burke in Opposition to Plaintiff's Partial Motion for Summary Judgment and in Support of Defendants' Motion for Summary Judgment.

*See, e.g., Sadowsky v. Chat Noir,* 64 A.D.2d 697 (2d Dept. 1978)(a document inadmissible as hearsay is "worthless as a blank piece of paper".)  Paragraphs 172, 190, 191 and 192 of the Amended Complaint contain the following allegations:

> 172. Indeed, the District Attorney's failure to disclose critical evidence to defense counsel in the prosecution of [Acquitted Defendant #1] highlights this unconstitutional policy (see also paragraphs 189-193. *infra*). In that case, the City Police and District Attorney knew that a City Officer's semen had been found inside of [Victim #1's] dead body and had been left there near the time of death. That evidence pointed to the City Officer as a perpetrator of the crime, and was thus information favorable to [Acquitted Defendant #1] that the District Attorney was required to provide [Acquitted Defendant #1] pursuant to *Brady*. But the District Attorney never disclosed that information to [Acquitted Defendant #1] at or prior to [Acquitted Defendant #1's] trial. [Acquitted Defendant #1's] counsel, then County Public Defender John Garrity, first learned of that information approximately 25 years after [Acquitted Defendant #1's] acquittal.

> \*\*\*

> 190. In approximately 2010, the lead detective from the [Victim #1] case-Detective Theodore Alston of the City Police-informed Judge Garrity that it was well-known to both the City Police and District Attorney at the time of the investigation and prosecution of the [Victim #1] Murder that the Police had information pointing to another suspect in the case. Specifically, Detective Alston informed Judge Garrity that the City Police knew at the time that semen *was* found inside the body of [Victim #1] at the time of her murder, and that semen belonged to a City Officer.

> 191. According to now retired Judge Garrity, this information was never provided to him prior to 2010, and *was* evidence favorable to [Acquitted Defendant #1] because it was strong evidence of another man being with [Victim #1] at the time of death (when, in contrast, there was no physical evidence placing [Acquitted Defendant #1] at the scene of the crime). Mr. Garrity further believes that such evidence would have been material to the determination of guilt in [Acquitted Defendant #1's] trial.

> 192. The lead investigator for [Acquitted Defendant #1's] defense team confirms that this information was never disclosed to [Acquitted Defendant #1] and was evidence favorable to [Acquitted Defendant #1] because it pointed to a different suspect. The lead investigator further believes that such evidence would have been material to the determination of guilt in [Acquitted Defendant #1's] trial.

(Amended Complaint [Dkt. No. 80] at ¶¶ 172, 190-192). Additionally, during his deposition, Garrity stated,

2

> What Teddy Alston told me in court was that, of course, Jim and I told you that [Witness #1] had sex with a dead body, Victim #1 - and this is expansive so you get the full flavor - Victim #1 was a 15 year old who was found dead in the woods in the city of Poughkeepsie. I represented [Acquitted Defendant #1], charged with her murder. And in some time late 2009 or 2010 Teddy Alston is telling me that he and Jim O'Neil disclosed to us before or during the trial that [Witness #1], a City of Poughkeepsie police officer, had sex with that girl's dead body.
>
> *   *   *
>
> The fact that Teddy Alston had told me that [Witness #1] had had sex with a dead body of the murder victim in the [Acquitted Defendant #1] case just before he retired, and that I knew that they had not told us that as part of the discover process – pre-trial or during the trial. [Witness #1] was a witness in that trial, and a City of Poughkeepsie police officer.

(Burke. Aff. Ex. SSSSS at 37-38, 40). Any such allegations related to the Alston Disclosure in Plaintiff's Amended Complaint or Garrity's deposition testimony as well as any testimony about the Alston Disclosure must be excluded as inadmissible hearsay. In fact, in contrast to the allegations of Garrity, Alston submitted an affidavit, dated August 30, 2013, stating that "[a]t no time did [he] tell John Garrity that [Witness #1], a City of Poughkeepsie police officer had sex with [Victim #1's] dead body. . . . " (*See* Burke Aff. Ex. VVVVV at ¶ 6).

Aside from its inadmissibility under Rule 802, a hearsay rendition of the alleged conversation between Garrity and Alston would be irrelevant and would simply confuse the jury. *See* Fed. R. Evid. 401. In the Amended Complaint, Plaintiff alleges that "[o]ther instances of assistant district attorneys' failure to comply with *Brady* provide additional evidence of the County's unconstitutional disclosure policy." (Amended Complaint [Dkt. No. 80]) at ¶188) (*See also id.* at 46, where the heading states "The County's Violations of *Brady* in Other Cases as Further Evidence of its Unconstitutional Policy."). Plaintiff identifies the Victim #1 case as one such instance, and alleges that the Alston disclosure is important because it pointed to an alternative suspect for Victim #1's murder. (*Id.* at ¶¶ 190-193). However, even if the statements were true – which they are not – Witness #1 would not have been an alternative suspect for the

3

*murder*. Evidence that someone had sex with a murder victim's *dead body* does not identify that person as an alternate suspect for the murder. At best, the information alleged suggests that Witness #1 could have been guilty of tampering with a crime scene. The issue of whether a police officer had sex with a dead body in 1985 is thus irrelevant to the Plaintiff's proof of his claims, and as such, any testimony or evidence of the alleged Alston disclosure fails as *Brady* evidence.

Further, the fact that the defendant in this case was acquitted of the Victim #1 murder (Amended Complaint [Dkt. No. 80] at ¶ 189) establishes that no *Brady* violation occurred in that case and, thus, the Victim #1 case cannot be offered as evidence of the County's alleged unconstitutional disclosure policy. (*Id.* at ¶ 188). *See Ambrose v. City of New York*, 623 F. Supp. 2d 454, 471 (S.D.N.Y. 2009) ("verdict acquitting Plaintiff of the criminal charges against him negates any violation of his *Brady* rights."). The prosecutor's obligation under *Brady* is not to disclose all exculpatory and impeachment information but only that which is material – "the prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different. " *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001). In that regard,

> Although the government's obligations under *Brady* may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty—and, concomitantly, the scope of a defendant's constitutional right—is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial.

*Id.* at 140. If the jury acquits a defendant even without the disclosure of certain evidence, there is no prejudice from nondisclosure and *Brady* is not violated. There was no *Brady* violation in the Victim #1 case, the DA's Office did not fail to comply with *Brady* in that case, and, thus, that case is irrelevant to Plaintiff's claim.

Additionally, Garrity's testimony creates a strong potential for prejudice and confusion. The allegation that a police officer had sex with a victim – or insinuating that Alston 'approved'

4

of such actions – will erase the nuance of what the present matter is actually about. The repetition of this allegation, and testimony by Garrity, to the jury risks confusing them and places an unfair burden on the Defendant to rebut allegations completely irrelevant, untruthful and prejudicial to this matter. Even if this evidence could be relevant, which it is not, it fails to pass muster under Fed. R. Evid. 403. Under Fed. R. Evid. 403, "[c]ourts are reluctant to admit evidence that appears at first to be plausible, persuasive, conclusive, or significant if detailed rebuttal evidence . . . would be required to demonstrate that the evidence actually has little probative value." *Arlio v. Lively,* 474 F.3d 46, 53 (2d Cir. 2007) (quoting 2 Weinstein & Berger, *Weinstein's Federal Evidence* § 403.05[3][b]). To the extent this Court finds the Alston Disclosure relevant in any way to Plaintiff's claim, any potential probative value is substantially outweighed by the risk of prejudice, confusion, and misleading the jury that would result and it must be excluded under Fed. R. Evid. 403.

## CONCLUSION

It is respectfully requested that the County's Motion in Limine to exclude all evidence of hearsay statements and testimony of John B. Garrity related to the "Alston Disclosure" be granted in all respects.

Dated: December 10, 2014
       Goshen, New York 10924

                                       /s/ Michael K. Burke
                                       Michael K. Burke (MB 7554)
                                       BURKE, MIELE & GOLDEN, LLP
                                       *Attorneys for Defendant*
                                       40 Matthews Street, Suite 209
                                       P.O. Box 216
                                       Goshen, New York 10924
                                       (845) 294-4080