UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEWEY R. BOZELLA,<br><br>   Plaintiff,<br><br> v.<br><br>THE COUNTY OF DUTCHESS,<br><br><br>   Defendant. | )<br>)<br>)<br>)<br>)  No. 10 Civ. 4917 (CS)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF DEWEY R. BOZELLA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE THE GRAY DOCUMENTS, GRAY STATEMENTS, HUNTLEY STATEMENT, AND SMITH REPORT**

**WILMER CUTLER PICKERING
HALE AND DORR LLP**

Peter J. Macdonald
Ross E. Firsenbaum
Shauna K. Friedman
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Plaintiff Dewey R. Bozella*

## **TABLE OF CONTENTS**

STATEMENT OF FACTS .................................................................................................................1

    A.    The Crapser Murder ..............................................................................................1

    B.    The Gray Documents .............................................................................................4

    C.    The Gray Statements ..............................................................................................7

    D.    The Smith Report ...................................................................................................8

    E.    The Huntley Notice ................................................................................................8

ARGUMENT ...................................................................................................................................9

    I.    ALL OF THE ALLEGED STATEMENTS ARE INADMISSIBLE HEARSAY ................................................................................................................9

    II.    ANY PROBATIVE VALUE OF THE ALLEGED STATEMENTS IS SUBSTANTIALLY OUTWEIGHED BY THEIR UNFAIRLY PREJUDICIAL EFFECT .......................................................................................11

    III.    THE COUNTY CANNOT AUTHENTICATE THE GRAY DOCUMENTS ......................................................................................................12

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cash v. County of Erie*,
  654 F.3d 324 (2d Cir. 2011)......................................................................................................11

*Sorlucco v. New York City Police Dep't*,
  971 F.2d 864 (2d Cir. 1992)......................................................................................................11

*United States v. Almonte*,
  956 F.2d 27 (2d Cir. 1992)...................................................................................................11, 12

*United States v. Cruz*,
  894 F.2d 41 (2d Cir. 1990)..........................................................................................................9

**RULES**

Fed. R. Evid. 104(b)......................................................................................................................12

Fed. R. Evid. 403 ..........................................................................................................................11

Fed. R. Evid. 613(b)......................................................................................................................11

Fed. R. Evid. 801(c).......................................................................................................................9

Fed. R. Evid. 802 ...........................................................................................................................9

Fed. R. Evid. 805 ......................................................................................................................9, 10

Fed. R. Evid. 901(a)......................................................................................................................12

**OTHER AUTHORITIES**

4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 805[01] (1988)..........................................10

Mr. Bozella respectfully requests that this Court preclude the County from introducing into evidence (i) all versions of a purported transcript of a conversation between 15-year-olds Wayne Moseley and James Gray (collectively, the "Gray Documents"), (ii) all versions of a purported written statement by James Gray (collectively, the "Gray Statements"); (iii) an April 3, 1983 police report (the "Smith Report"), (iv) an Amended Huntley Notice, dated June 21, 1983, and all prior Huntley notices provided (or not provided) by the Dutchess County District Attorney's Office (the "DCDAO") to Mr. Bozella's trial counsel in connection with the prosecution of Mr. Bozella for the murder of Emma Crapser ("the Huntley Notices") (collectively with the Gray Documents, the Gray Statements, and the Smith Report, the "Alleged Statements"), and (v) any other document (or portion thereof) referring to or attaching such Alleged Statements; and precluding the County from referencing these materials or their contents at trial.

## STATEMENT OF FACTS

### A.  The Crapser Murder

Ninety-two-year-old J. Emma Crapser was murdered in her own home in Poughkeepsie, New York at approximately 11:00 p.m. on June 14, 1977 (the "Crapser Murder"). *See* Rule 56.1 Statement in Supp. Defs. Dutchess County and William J. O'Neill's Mot. Summ. J., dated Sept. 13, 2013 [Dkt. No. 147] (the "County 56.1 Statement"), ¶¶ 1, 8; Omnibus Declaration of Ross E. Firsenbaum, dated Dec. 10, 2014 (the "Firsenbaum Decl."), Ex. 6 (O'Neill Dep. Tr.) at 238:20-239:15.  On June 16, 1977, the City of Poughkeepsie Police Department (the "Police") interviewed Lamar and Stanley Smith (the "Smith brothers") regarding the Crapser Murder and both claimed not to have any knowledge about the crime. *See* County 56.1 Statement ¶ 21; Firsenbaum Decl. Ex. 14 (6/15/77 Shelly Report) at WH-BOZELLA-0005508.  Nine days later, on June 25, 1977, the Police again questioned the Smith brothers regarding the Crapser Murder,

telling them that others had implicated them in the Murder; again, both stated that they had no knowledge of the crime. *See* County 56.1 Statement ¶ 22; Firsenbaum Decl. Ex. 12 (6/15/77 Regula, Groth Report) at WH-BOZELLA-0006521.  Four days after that, Lamar was picked up for an unrelated crime, and was then questioned for a third time regarding the Crapser Murder, at which point he changed his story and identified Mr. Bozella and Wayne Moseley as the perpetrators.  *See* County 56.1 Statement ¶ 23; Firsenbaum Decl. Ex. 12 (6/15/77 Regula, Groth Report) at WH-BOZELLA-0006522-24.  Lamar's brother Stanley initially denied Lamar's new story, but after Lamar told Stanley what he had told the Police and said that "it would help Lamar's cases," Stanley echoed Lamar.  *See* Firsenbaum Decl. Ex. 12 (6/15/77 Regula Report) at WH-BOZELLA-0006524.  Based on this "evidence," the DCDAO attempted to indict Mr. Bozella for the Crapser Murder.  *See* County 56.1 Statement ¶ 62.  The Grand Jury returned a "no-bill," *see id.* ¶ 63, thus concluding that the Smith brothers' testimony did not even give the DCDAO probable cause to believe that Mr. Bozella was responsible for the Crapser Murder.

Mr. Bozella was indicted for the Crapser Murder six years later, only after prosecutors from the DCDAO visited Wayne Moseley at least six times in prison to convince him to testify against Mr. Bozella, *see* County 56.1 Statement ¶¶ 65-67, 69, 72-73; Firsenbaum Decl. Ex. 16 (2/17/83 O'Neil Memo), struck a deal with Moseley that resulted in his immediate release from prison and immunity from perjury charges for changing his testimony, *see* County 56.1 Statement ¶ 74, and struck a deal with Lamar Smith that resulted in his early parole, *see id.* ¶¶ 108, 201; Firsenbaum Decl. Ex.10 (1990 Trial Tr.) at 417:8-418:17.

During his deposition, Assistant District Attorney William J. O'Neill, the Dutchess County prosecutor responsible for prosecuting Mr. Bozella for the Crapser Murder, candidly revealed his approach to this investigation:

> [B]y '78, you know, we had pretty much the Crapser case established except to the extent of getting Mos[e]ley to tell the truth, and that took a little bit of doing, as you know.

Firsenbaum Decl. Ex. 6 (O'Neill Dep. Tr.) at 77:25-78:5.  ADA O'Neill reached this conclusion without considering any other suspects for the Crapser Murder, *see id.* at 253:15-24, despite evidence implicating Donald Wise for both the Crapser Murder and two similar crimes, *see* Firsenbaum Decl. Ex. 21(Holland Transcript); Firsenbaum Decl. Ex. 15 (Dobler Report); Firsenbaum Decl. Ex. 6 (O'Neill Dep. Tr.) at 74:19-75:10, 76:5-18 (ADA O'Neill was aware of Holland Transcript and Dobler Report), and despite the absence of any physical evidence implicating Mr. Bozella for the crime, *see id.* at 285:23-287:10.

Immediately following Mr. Bozella's 1983 trial, Stanley Smith recanted his testimony implicating Mr. Bozella for the Crapser Murder.  *See* County 56.1 Statement ¶ 159.  He explained that his brother Lamar had asked him to claim knowledge of the crime to secure Lamar's early release from prison, but that in fact he and Lamar were together elsewhere at the time of the Murder and that he had no knowledge of the crime.  *See* Firsenbaum Decl. Ex. 23 (Recantation Hearing) at WH-BOZELLA-00011169 ("[M]y brother asked me to help him out by falsely confirming to the police that he I had seen Wayne Moseley and Dewey Bozella trying to break into 15 North Hamilton Street with some tool during the evening of June 14th, 1977.  Despite the fact that this was false, I did so in hopes of helping my brother out of the difficulty he seemed to be in with the police."), WH-BOZELLA-0001166-67 ("[M]y brother Lamar Smith and I were together continuously at the residence of Wanda Elting on Smith Street [at the time of the Crapser Murder]."), WH-BOZELLA-0001152-53 ("I had a lot of pressure [to claim knowledge of the murder, but] I couldn't go ahead with the whole lie and let this man go up here, and my conscience won't let me do that, and God won't let me do that. . . . The truth of the

matter is that I was never there and I never seen Dewey Bozella, Wayne Moseley, or Elbert Pittman that day.").

After Mr. Bozella had spent 26 years in prison, Wayne Moseley recanted his testimony as well.  In 2009, while Mr. Bozella's 440 Motion was pending before the Dutchess County Court, Moseley told Dutchess County ADA Edward Whitesell that he had no knowledge of the Crapser Murder.  *See* Firsenbaum Decl. Ex. 35 (Whitesell Dep. Tr.) at 130:16-20 ("[H]e said to me essentially I wasn't there.  And I said, 'Really, you weren't there.'  And he said, 'No, I wasn't there.'").  Three years later, Moseley sent Mr. Bozella's counsel an unsolicited email to the same effect.  *See* Firsenbaum Decl. Ex. 22 (Moseley Email) ("I would like to set the record straight about the wrongful conviction of Mr. Bozella by the District Attorney of Dutchess County . . . .  I confessed to this crime but did not commit it nor did I have any knowledge of this crime. . . . I would like Mr. Bozella and the family of the victim to have this information so they may know his conviction was based on lies.").

**B.    The Gray Documents**

The County has included two different versions of the Gray Document on its trial exhibit list.  *See* Joint Pretrial Order, dated Dec. 9, 2014 [Dkt. No. 203] (the "JPO"), at County Trial Ex. Y-30 (identifying Firsenbaum Decl. Ex. 17 ("Gray Document Version 1")); *id* at County Trial Ex. BBB-21 (identifying Firsenbaum Decl. Ex. 18 ("Gray Document Version 2")[1]) (collectively, the "Gray Documents").  The County contends that the Gray Documents are transcripts of a tape-recorded conversation that 15-year-old James Gray recorded between himself and 15-year-old Wayne Moseley on September 10, 1977.  *See* County 56.1 Statement ¶¶ 48, 52.  According to the purported transcripts, Moseley stated that he and Mr. Bozella both *were and were not*

---

[1] The Bates range provided for County Trial Ex. BBB-21 also includes an additional document:  one version of the Gray Statement, discussed below.  *See infra* Part C.

4

involved in the Crapser Murder.[2]  *See* Firsenbaum Decl. Exs. 17-18 (Gray Documents).  The documents are not signed or notarized; they bear no indication of their origin beyond their title; they contain no indication of who created the alleged transcriptions; and they contain no description of the circumstances of the tape's alleged recording.  *See id.*  The purported transcripts are self-evidently incomplete:  they both begin and end mid-conversation.  *See id.*; Firsenbaum Decl. Ex. 10 (1990 Trial Tr.) at 903:21-904:8.  One version of the purported transcript contains only three typewritten pages, *see* Firsenbaum Decl. Ex. 17 (Gray Document Version 1); the other contains those three pages, followed by duplicate copies of the third page bearing ambiguous, hand-written amendments, *see* Firsenbaum Decl. Ex. 18 (Gray Document Version 2).  The County offers no information regarding how or when the handwritten amendments were made or which assembly of pages—with or without the amendments—it claims is accurate.  As early as 1983, the DCDAO was unable to produce an underlying tape.  *See* Firsenbaum Decl. Ex. 10 (1990 Trial Tr.) at 893:20-22 (ADA O'Neill: "I know that the tape is not available, otherwise I would have given it to Mr. Steiman in '83.").  Indeed, the Police had destroyed it in 1980.  *See* Firsenbaum Decl. Ex. 47 (O'Neill Notes).

ADA O'Neill did not even attempt to introduce the Gray Documents into evidence at Mr. Bozella's 1983 trial for the Crapser Murder.  When his case against Mr. Bozella was even

---

[2]  To the extent that Moseley allegedly stated that they were involved in the murder, he conveyed four purported pieces of information regarding the Crapser Murder:  three that had appeared in the headline, the lede, and the third paragraph, respectively, of the *Poughkeepsie Journal* two days after the Crapser Murder, and one that was inaccurate.  *Compare* Firsenbaum Decl. Exs. 17-18 (Gray Documents) (indicating (i) that Ms. Crapser was gagged and (ii) that the police found her the following morning (iii) on the kitchen floor) *with* Firsenbaum Decl. Ex. 48 (6/16/77 Poughkeepsie Journal article) (same); *compare* Firsenbaum Decl. Exs. 17-18 (Gray Documents) (suggestion by Gray, which Moseley does not contradict, that Ms. Crapser was gagged with a scarf) *with* Firsenbaum Decl. Ex. 10 (1990 Trial Tr.) at 106:8-108:11, 111:23-112:10 (Ms. Crapser was not gagged with a scarf).

weaker in 1990, ADA O'Neill did attempt to introduce (a version of) the Gray Document,[3] and the Dutchess County Court precluded it from evidence[4] because ADA O'Neill was unable to establish that the purported transcript was an accurate transcription of the tape or, even if it were an accurate transcription, that the voice on the tape belonged to Moseley.  *See* Firsenbaum Decl. Ex. 10 (1990 Trial Tr.) at 881:18-20 (Court: "Where is Gr[a]y?  He can be the only one to testify to . . . whether that was a true conversation or not."), 892:13-15 (Court: "[Y]ou can't [introduce a transcript] that's not been verified by both sides."), 896:2-4 (Court: "[The defense is] entitled to have [the tape] to have their expert go say it's a fabrication, it's not Moseley's voice on the tape."); *see generally id.* at 875:23-904:17, 945:8-21.

After the Dutchess County Court prohibited ADA O'Neill from referencing the Gray Document, he nonetheless discussed it in his closing argument.  *See* Firsenbaum Decl. Ex. 10 (1990 Trial Tr.) at 875:23-904:17 (prohibition of reference to Gray Document), 1422:2-1424:13 (subsequent references to Gray Document by ADA O'Neill).  The judge instructed the jury to disregard ADA O'Neill's improper statements.  *Id.* at 1424:1-3.  ADA O'Neill again referred to the Gray Document, *see id.* at 1428:16-1430:2, and the trial judge again instructed the jury to disregard his statements, noting "There is no [Gray Document] before the jury."  *See id.* at 1430:4-7.[5]

---

[3] It is not clear which of the Gray Documents—with or without the handwritten amendments—ADA O'Neill attempted to enter at trial.  The first three pages of the two versions overlap, and the first page of each bears a sticker reading "People's Exhibit ID 55," which is how ADA O'Neill marked the Gray Document for identification when he attempted to introduce it into evidence.  *See* Firsenbaum Decl. Exs. 17-18 (Gray Documents); Firsenbaum Decl. 10 (1990 Trial Tr.) at 875:23-876:8.

[4] Although the version of the Gray Document ADA O'Neill introduced was precluded from evidence, the County describes its Trial Exhibit BBB-21 in this case as 1990 "People's Exhibit 55."  *See* JPO at County Trial Ex. BBB-21.

[5] Thus, to the extent that transcripts of opening statements or closing arguments from the 1983 and 1990 criminal trials are otherwise admissible (and Mr. Bozella does not concede that

### C. The Gray Statements

The County has also included two different versions of the Gray Statement on its trial exhibit list. *See* JPO at County Trial Ex. Y-1 (identifying Firsenbaum Decl. Ex. 19 ("Gray Statement Version 1")); *id.* at County Trial Ex. BBB-21 (identifying Firsenbaum Decl. Ex. 20 ("Gray Statement Version 2"), along with Gray Document Version 2). One version is unsigned and undated. *See* Firsenbaum Decl. Ex. 20 (Gray Statement Version 2). The other version is signed and dated but the month and year are illegible. *See* Firsenbaum Decl. Ex. 19 (Gray Statement Version 1). The County identifies Gray Statement Version 1 as being dated September 10, 1977, but the one part of the date that is legible, the day of the month, is "15." *Compare* JPO at County Trial Ex. Y-1 *with* Gray Statement Version 1. The County identifies Gray Statement Version 2—the unsigned, undated version—as part of the 1990 trial's "People's Exhibit 55," *see* JPO at County Trial Ex. BBB-21, although the document marked for identification at trial as People's Exhibit 55 included (a version of) the Gray Document only, and although the document offered as People's Exhibit 55 was not admitted into evidence. *See* Firsenbaum Decl. Ex. 10 (1990 Trial Tr.) at 875:23-876:8 (ADA O'Neill described the proposed People's Exhibit 55 as a three-page document transcribing a conversation between Gray and Moseley); *id.* at 875:23-904:17, 945:8-21 (the proposed People's Exhibit 55 was excluded from evidence).

The Gray Statements allege that Moseley told Gray on September 8, 1977[6] that he, Bozella, and Pittman were involved in the Crapser Murder. *Id.*

---

they are, at least not for all purposes), Mr. Bozella respectfully requests that the parties be instructed to redact the portions of ADA O'Neill's closing argument that refer to a version of the Gray Document.

[6] This is different from the date of the Gray Documents, which are labeled September 10, 1977. *See* Firsenbaum Decl. Exs. 17-18 (Gray Documents).

7

### D. The Smith Report

The Smith Report, designated as County trial exhibit E-1, purports to describe an April 3, 1983 telephone call between Mr. Bozella and police officer "RG Smith #69," (the "Smith Statement"). *See* Firsenbaum Decl. Ex. 24 (Smith Report). The Smith Report asserts that Mr. Bozella stated that the warrant for his arrest was "for a homicide he did." *See id.* The Police tape-recorded this call, but they destroyed the tape prior to Mr. Bozella's 1983 trial. *See* Firsenbaum Decl. Ex. 47 (O'Neill Notes). The Smith Report was not admitted into evidence at either of Mr. Bozella's criminal trials.

Mr. Bozella admits making a call to the police department, but unequivocally denies referring to "a homicide he did." *See* Firsenbaum Decl. Ex. 37 (Bozella Dep. Tr.) at 102:19-106:14 ("No, sir, I never in my life ever told anybody I committed a murder."). Mr. Bozella testified that he learned in 1983 that a warrant was out for his arrest for a six-year-old murder that he had previously been arrested for, and that he called the Police to confirm whether the information was accurate. *See id.* Mr. Bozella, who knew he was innocent of the crime, *see, e.g.*, Firsenbaum Decl. Ex. 49 (2008 Parole Hearing Tr.) at WH-BOZELLA-0016332, told the Police that he would come in to talk to them about it. *See* Firsenbaum Decl. Ex. 37 (Bozella Dep. Tr.) at 102:12-106:14.

### E. The Huntley Notice

The Huntley Notice—designated, along with prior versions, as County trial exhibits C through E—purports to describe four alleged statements by Mr. Bozella. *See* Firsenbaum Decl. Ex. 50 (Huntley Notice). One of these alleged statements is the Smith Statement found in the Smith Report. *Compare id. to* Firsenbaum Decl. Ex. 24 (Smith Report). Two are alleged statements to inmates at the Dutchess County Jail (collectively, the "Inmate Statements"), according to which Mr. Bozella supposedly both stated that "Wayne Moseley had gone crazy on

8

the woman and killed her" and that the murder "was an accident" by Mr. Bozella, who "did it with a young kid and a kid from New York." *See* Firsenbaum Decl. Ex. 50 (Huntley Notice). The fourth is an alleged statement to Detective Enno Groth at the Dutchess County Jail in 1977 (the "Groth Statement") (collectively with the Smith Statement and the Inmate Statements, the "Huntley Statements"), according to which Mr. Bozella stated that he had no knowledge of the crime. *See id.* The Huntley Statements were not admitted into evidence at Mr. Bozella's criminal trials.

Mr. Bozella was not questioned at his deposition regarding the Inmate Statements, but he testified that he had never told anybody that he had been involved in the Crapser Murder. *See* Firsenbaum Decl. Ex. 37 (Bozella Dep. Tr.) at 106:13-14.

## ARGUMENT

### I. ALL OF THE ALLEGED STATEMENTS ARE INADMISSIBLE HEARSAY

The Alleged Statements are all inadmissible because they constitute one or more levels of inadmissible hearsay. *See* Fed. R. Evid. 802; Fed. R. Evid. 801(c); Fed. R. Evid. 805.

Each Gray Document is a series of out-of-court statements that the County claims are of two 15-year-olds: James Gray and Wayne Moseley. *See* Firsenbaum Decl. Exs. 17-18 (Gray Documents). The County relies on the documents for the supposed "truth" of their contents—that Moseley supposedly committed the Crapser Murder with Mr. Bozella. *See* County 56.1 Statement ¶¶ 52-59. Moseley's statements themselves, if he made them, are hearsay; the actual recording (which the Police destroyed before Mr. Bozella's 1983 trial) was a second level of hearsay; and the purported transcription of the recording constitutes a third level of hearsay. *See, e.g.*, *United States v. Cruz*, 894 F.2d 41, 44 (2d Cir. 1990) ("[T]he reports remain inadmissible [despite potential exception for one level of hearsay] because Geisel's recording of what Hunt told him Perez said constitutes multiple hearsay. Each hearsay statement within multiple hearsay

9

statements must have a hearsay exception in order to be admissible." (*citing* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 805[01], at 805–5 (1988)); Fed. R. Evid. 805 (hearsay within hearsay inadmissible unless each part of combined statement falls within a hearsay exception).

Similarly, the Gray Statements are out-of-court statements allegedly made by Gray, on an unknown date, regarding a different conversation he supposedly had with Mr. Moseley. *See* Firsenbaum Decl. Exs. 19-20 (Gray Statements). Here, too, the County seeks to rely on the documents for their truth—to prove that the conversation actually took place and that Moseley made the alleged statements (one level of hearsay), and to prove that Moseley's alleged statements were accurate (another level of hearsay).

The Smith Report—an out-of-court statement by Officer Smith regarding his supposed recollection of a telephone call with Mr. Bozella—fares no better. *See* Firsenbaum Decl. Ex. 24 (Smith Report). The County endeavors to establish that the statements Smith made in the police report were the words Mr. Bozella spoke on the call. In other words, the County is relying on an out-of-court statement by Smith to establish the truth of that statement—that Mr. Bozella confessed to the Crapser Murder. *See* County 56.1 Statement ¶ 76. Once again, the County seeks to, but cannot, rely on hearsay for the truth of the matter stated.

Finally, the Huntley Notice, like the Gray Documents and the Gray Statements, contains multiple levels of inadmissible hearsay. *See* Firsenbaum Decl. Ex. 50 (Huntley Notice). An unknown DCDAO prosecutor[7]—not the Inmates, Groth, or Smith, whose statements are supposedly documented in the Huntley Notice—prepared the Huntley Notice. Thus, through some unidentified means—either directly or through additional intermediaries—the Inmates', Groth's, and Smith's accounts of the Huntley Statements were conveyed to the author of the

---

[7] The Huntley Notice bears a typed signature block by then-District Attorney John King. It does not identify the individual author. *See id.*

Huntley Notice.  The author then communicated his impressions of those accounts in the Huntley Notice.  Accordingly, the Huntley Notice itself constitutes one level of hearsay; the conveyance of the Inmates', Groth's, and Smith's accounts of the Huntley Statements to the Huntley Notice's author constitutes at least a second level of hearsay; and any additional intermediate steps between the author and the Inmates, Groth, and Smith constitute a corresponding number of additional levels of hearsay.  Because these multiple layers of out-of-court statements are not subject to hearsay exceptions, the Huntley Notice is inadmissible.[8]

## II. ANY PROBATIVE VALUE OF THE ALLEGED STATEMENTS IS SUBSTANTIALLY OUTWEIGHED BY THEIR UNFAIRLY PREJUDICIAL EFFECT

Even if the Alleged Statements were not inadmissible hearsay, they still would be inadmissible under Federal Rule of Evidence 403.  The Alleged Statements' prejudicial effect and tendency to mislead outweigh any potential probative value.

The documents' probative value is minimal or non-existent.  The Alleged Statements, which were not admitted at either of Mr. Bozella's criminal trials, have no bearing on any element of the County's liability under *Monell*:  they are not relevant to whether Dutchess County maintained (1) an official policy, practice, or custom that (2) caused Mr. Bozella's (3) constitutional injury.  *See Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992).  And relevance aside, for the reasons above the Alleged Statements are highly suspect, severely undermining any potential evidentiary value.

---

[8] Similarly, the Alleged Statements are inadmissible for purposes of attempting to impeach Mr. Bozella.  *See* Fed. R. Evid. 613(b); *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) ("[I]n the absence of endorsement by the witness, a third party's notes of a witness's statement may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words."); s*ee generally* Pl. Mem. of Law in Supp. of Mot. in Limine To Exclude McKinney Doc. and McKinney Stmt., dated Dec. 10, 2014, at Part IV.

Meanwhile, by suggesting that Mr. Bozella or Moseley claimed that Mr. Bozella was involved in the Crapser Murder, the Alleged Statements would mislead the jury and unfairly prejudice Mr. Bozella. While the Alleged Statements are legally flimsy evidence, the jury would be likely to accord them undue weight. *See also* Pl. Mem. Law Supp. Mot. in Limine To Exclude McKinney Doc. and McKinney Stmt., dated Dec. 10, 2014, at Part III.

### III.   THE COUNTY CANNOT AUTHENTICATE THE GRAY DOCUMENTS

The Gray Documents are inadmissible for the additional reason that the County cannot satisfy its burden that they are transcripts of a conversation between Gray and Moseley. Where the relevance of evidence depends on a condition of fact, the introducing party must first present evidence sufficient to establish that condition of fact. *See United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992); *see also* Fed. R. Evid. 104(b); Fed. R. Evid. 901(a). Any arguable relevance of the Gray Documents would be predicated on a showing by the County that they accurately transcribe a conversation between Gray and Moseley. The County cannot do so.

As the Dutchess County Court noted in refusing to admit (one version of) the Gray Document at Mr. Bozella's 1990 criminal trial, without an underlying tape the County cannot establish either that the Gray Documents are accurate transcriptions of the recording[9] or that the recording was of Moseley (two essential elements for establishing the requisite condition of fact). The County's Rule 56.1 statement points to no evidence supporting either element. *See* County 56.1 Statement ¶¶ 52-59. The absence of evidence regarding the circumstances of the recording; the conflicting versions of the document; the unexplained omission of the beginning and end of the purported conversation; and the absence of notary seal, court reporter's signature, or any other indication of formality or accuracy cast further doubt on the document's reliability.

---

[9] And because the Gray Documents are different from each other, at least one must be inaccurate.

## CONCLUSION

For these reasons, Mr. Bozella respectfully requests that the Court preclude the County from entering the Alleged Statements (or any other document or portion thereof referring to or attaching such Alleged Statements) into evidence or referencing them (or their contents) at trial. To the extent that exhibits referencing or attaching the Alleged Statements are relevant for a different reason and admissible, Mr. Bozella respectfully requests that the parties be instructed to redact such documents so the portions referring to the Alleged Statements are not presented to the jury.

Dated: December 10, 2014                                        Respectfully submitted,

**WILMER CUTLER PICKERING
    HALE AND DORR LLP**

By: /s/ Peter J. Macdonald_____
Peter J. Macdonald
Ross E. Firsenbaum
Shauna K. Friedman
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Plaintiff Dewey R. Bozella*