UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DEWEY R. BOZELLA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE COUNTY OF DUTCHESS, ) <br> ) <br> ) <br> Defendant. ) <br> ) | No.  10 Civ. 4917 (CS) |

**PLAINTIFF DEWEY R. BOZELLA'S MEMORANDUM OF LAW IN OPPOSITION TO DUTCHESS COUNTY'S MOTION IN LIMINE TO PRECLUDE AS INADMISSIBLE HEARSAY THE HOLLAND TAPE, THE DOBLER REPORT, AND THE NEIGHBORS' STATEMENTS [DKT. NO. 228]**

WILMER CUTLER PICKERING
HALE AND DORR LLP

Peter J. Macdonald
Ross E. Firsenbaum
Shauna K. Friedman
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Plaintiff Dewey R. Bozella*

## **TABLE OF CONTENTS**

                                                                                                               **Page**

ARGUMENT ..................................................................................................................................1

I.     THE *BRADY* EVIDENCE DID NOT NEED TO BE ADMISSIBLE AT MR. BOZELLA'S CRIMINAL TRIAL TO BE MATERIAL .......................................................1

II.    THE *BRADY* EVIDENCE WAS ADMISSIBLE, COULD HAVE LED TO ADMISSIBLE EVIDENCE, AND/OR WOULD HAVE OTHERWISE AIDED IN MR. BOZELLA'S DEFENSE ..............................................................................3

        A.     The Holland Statement .........................................................................................4

        B.     The Neighbors' Statements...................................................................................6

        C.     The Dobler Reports...............................................................................................7

CONCLUSION................................................................................................................................8

Mr. Bozella respectfully submits this memorandum in of law in opposition to the County's "Motion in Limine to Preclude as Inadmissible Hearsay—the Holland Tape, the Dobler Report, and the Neighbors' Statements," dated December 10, 2014 [Dkt. No. 228] (the "Motion").  At both his 1983 and 1990 trials, Mr. Bozella was denied the opportunity to present the Holland Statement, Dobler Reports, and Neighbors' Statements (collectively, the "*Brady* Evidence") to the jury because DCDAO prosecutors failed to disclose that favorable evidence to Mr. Bozella.  Now the County has moved in limine to prevent the jury in *this* case from hearing about the *Brady* Evidence—a bizarre and illogical request in a §1983 suit where the County's suppression of that very evidence (and resulting harm to Mr. Bozella) is a central issue.  The Motion is premised on a misreading of controlling Second Circuit and New York state law and should be denied.

## ARGUMENT

**I.     THE *BRADY*  EVIDENCE DID NOT NEED TO BE ADMISSIBLE AT MR. BOZELLA'S CRIMINAL TRIAL TO BE MATERIAL**

The County's principal argument in this Motion—that the *Brady* Evidence cannot be "material" under *Brady* because it was not admissible at Mr. Bozella's 1983 and 1990 trials (*see* Motion at 1-5)[1] —is contrary to controlling Second Circuit precedent.  *See, e.g., United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002) (holding that a withheld memorandum that was favorable to the defendant could be material if either it (1) was admissible; (2) could lead to admissible

---

[1] We do not understand the  County's motion to be arguing that the *Brady* Evidence should be excluded because it is inadmissible hearsay for purposes of this case. However, we note that that argument would be incorrect as well.  The *Brady* Evidence is admissible in this case not for the truth of the underlying statements but to show the DCDAO's knowledge of the three categories of evidence and the fact of their non-disclosure.  *See Fischl v. Armitage*, 128 F.3d 50, 58 (2d Cir. 1997) (statements are not hearsay if offered to show knowledge); 5-801 Weinstein's Federal Evidence § 801.11 ("Statements are not hearsay when they are offered not for their truth but to prove the extent of a declarant's knowledge or a recipient's notice of certain conditions.").

evidence; or (3) would be an effective tool in disciplining witnesses during cross-examination by refreshment of recollection or otherwise); *see also People v. Bozella,* No. 102/83, 2009 WL 3364575, at *13 (N.Y. Cnty. Ct. Oct. 14, 2009) (rejecting the same argument advanced by County here and concluding with respect to the same evidence that "evidence need not be admissible to constitute *Brady* material.").

The County's argument that Mr. Bozella's claim must be analyzed under the "law that governed at the time of the alleged Brady violation" (*see* Motion at 5) fares no better. Even if that were true (and it is not),[2] it was equally clear prior to 1983, as it is now, that evidence did not need to be admissible to be "material" under *Brady*. The Second Circuit had held in 1974 that evidence could be material under *Brady* if it could have led to other evidence or aided in counsel's preparation for trial:

> [W]e believe that the pretrial disclosure that the teller had selected Walsh's picture probably would have enabled trial counsel to uncover the Walsh information contained in the East Hartford Police Department report, and thereby would have created "a significant chance that this added item, developed by skilled counsel as it would have been, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction." It is instructive to note that the phrase "developed by skilled counsel as it would have been" does not necessarily restrict the scope of our inquiry to show how the "added item" would have been used at the trial itself but would rather seem to be of sufficient latitude to permit us to examine how defense counsel might have utilized his knowledge of the "added item" in preparation for the trial.

*See Grant v. Alldredge*, 498 F.2d 376, 381 (2d Cir. 1974); *see also, e.g.*, *United States v.*

---

[2] The County cites no authority for the proposition that the Court must look only to the "law that governed at the time of the alleged Brady violation." *See* Motion at 5. Indeed, the DCDAO made the same argument when opposing the 440 Motion and Judge Rooney rejected it. *See* Declaration of Shauna K. Friedman, dated Dec. 17, 2014 (the "Friedman Decl.") Ex. 5 (DCDAO Opposition to 440 Motion) at 2 ("reminding" Court of *Brady* law as it existed in 1990); *People v. Bozella,* 2009 WL 3364575, at *12 (citing and applying post-1990 cases for *Brady* standard).

2

*Gleason*, 265 F. Supp. 880, 886 (S.D.N.Y. 1967) ("[T]he prosecution's duty of disclosure as affirmed in Brady, cannot be limited to materials or information demonstrated in advance to be 'competent evidence.' The duty surely extends to favorable information unknown to the defense—e.g., the existence of witnesses, an item of knowledge which is not, at least in itself, normally admissible in evidence. How far beyond admissible evidence the prosecution may be required to go it is not necessary to decide now. It is enough to hold that the Government may not resist disclosure on its own view—or even on the view of the motion judge before trial— that it will succeed on debatable evidence theories in blocking admission of the information demanded.").[3]

## II. THE *BRADY* EVIDENCE WAS ADMISSIBLE, COULD HAVE LED TO ADMISSIBLE EVIDENCE, AND/OR WOULD HAVE OTHERWISE AIDED IN MR. BOZELLA'S DEFENSE

The County's assertion that the "Brady evidence could not have potentially led to admissible evidence and, thus, could not be considered by the jury in this case" (Motion at 6), is

---

[3] None of the cases on which the County relies, *see* Motion at 2-4, establish the *per se* bar for inadmissible evidence that the County advocates for in this Motion. In *Wood v. Bartholomew*, the Supreme Court held that certain withheld and inadmissible polygraph results were not material, but only after *also* considering whether, if disclosed, the results could have affected trial counsel's preparation and, hence, the results of trial. 516 U.S. 1, 6 (1995). Similarly, in *United States v. Persico*, the court noted inadmissibility as "one of several reasons" that witness statements in an FBI report were not material in light of the "vast amount of evidence" introduced against the defendant at trial. No. 84 Cr. 809, 1993 WL 385799, at *7-8 (S.D.N.Y. Sept. 29, 1993). *See also Scarpati v. United States*, No. 93 Civ. 740, 1994 WL 256691, at *4 (S.D.N.Y. June 7, 1994) (finding no materiality where statements were inadmissible at trial *and* where there was "overwhelming and powerful evidence" against defendant), *aff'd*, 50 F.3d 4 (2d Cir. 1995); *Philips v. Walker*, No. 92 Civ. 8018, 1996 WL 1236 (S.D.N.Y. Jan. 2, 1996) (finding no *Brady* violation where non-disclosed statement was inadmissible *and* had no impeachment value) *aff'd*, 107 F.3d 3 (2d Cir. 1997); *Shakur v. United States,* 32 F. Supp. 2d 651 (S.D.N.Y. 1999) (finding no *Brady* violation where non-disclosed evidence was unknown to prosecutors, not admissible at trial, *and* would have been cumulative of evidence at trial).

3

equally flawed. The *Brady* Evidence would have been admissible at Mr. Bozella's trials or, at the very least could have led to admissible evidence or aided in Mr. Bozella's defense.

### A. The Holland Statement

Saul Holland's tape recorded statement to Detectives De Mattio and Gray and ADA William O'Neill was made during an interrogation on February 23, 1978 in which Holland confessed his involvement in the King Murder. When a detective asked Holland how his co-conspirator Donald Wise recruited him to burglarize the King home, Holland responded that "[Donald and his brother Anthony Wise] had did one of these jobs before" and gotten away with it. Declaration of Ross E. Firsenbaum, dated Dec. 10, 2014 [Dkt. No. 241] (the "Firsenbaum Decl.") Ex. 21 (Holland Tape) at 2001-2002. When Holland described the prior job, he said that Donald Wise told him that "when [Donald and Anthony Wise] got to the house, there wasn't nobody there you know, and they just found all this money and stuff and then around, you know – they said around 9 or 10 or 11, that's when the lady came home." *Id.* This description of the prior crime bears a strong resemblance to the Crapser Murder and this Court has already concluded that the Holland Statement was favorable to Mr. Bozella. *See* Declaration of Shauna K. Friedman, dated Dec. 17, 2014 (the "Friedman Decl.") Ex. 1 (Sept. 23, 2014 Order) at 30:5-35-15.

Had Mr. Bozella's trial counsel, Mickey Steiman, known of the Holland Statement before trial, the statement would have aided his defense of Mr. Bozella and led to admissible evidence. *See* Friedman Decl. Ex. 3 (Steiman 440 Affirm.) ¶¶ 53-54. Mr. Steiman could have located Holland, who could have testified about his conversation with Donald Wise in which Wise described the "prior job." *See id.* Wise's statement was a declaration against penal interest that meets all four prerequisites under New York law for admissibility. *People v. James*, 717 N.E.2d 1052, 1061 (N.Y. 1999). Wise was unavailable to testify, having invoked his Fifth Amendment

4

right against self-incrimination.  *See id.*  He would have been aware at the time he made the statement to Holland that it was incriminating—he was confessing to commission of a prior murder.  *See id.*  He was describing his and his brother's actions so had competent knowledge of the matter under discussion.  *See id.*  And there was independent evidence at trial to support the trustworthiness of Wise's statement regarding his prior crime and to link it to the Crapser Murder:   (i) Wise's fingerprint was found inside Ms. Crapser's bathroom window; (ii) Wise had been convicted of a similar murder of an elderly woman and attack of her two sisters; and (iii) Madeline Dixon South had testified that Donald Wise had confessed to her about his role in the Crapser Murder.

Moreover, even if Holland himself were unavailable, Mr. Steiman could have attempted to introduce the tape itself at trial or called one of the detectives to recount the Holland interview.  In either case the basis for admissibility would have been the same:  the entire Holland interview was itself a statement against interest because Holland was confessing to his involvement in the King Murder during the course of a police interrogation.  That would have cured the first level of hearsay and, as described above, Wise's statement was also admissible as a statement against penal interest.

Finally, another defense theme at trial was the sloppy nature of the investigation and prosecution of the Crapser Murder.  *See* Friedman Decl. Ex. 3 (Steiman 440 Affirm.) ¶ 26.  Given ADA O'Neill's presence at the Holland interrogation, Mr. Steiman may have found a way (through cross-examination of Mr. O'Neill or others) to use the Holland Statement not for the truth of Wise's statement but to show the DA's knowledge of, and failure to pursue, alternative suspects.

### B.      The Neighbors' Statements

The Neighbors' Statements were contemporaneous statements of five individuals who either entered or exited the second floor apartment above Ms. Crapser's apartment, or were just outside her home, between 10:00 and 11:30 on the night of the Crapser Murder.  *See* Friedman Decl. Ex. 3 (Steiman 440 Affirm.) at Exs. C & D.  These individuals' statements—that they did not hear or see anything unusual or notice anything wrong with the doors in the residence where the Crapser Murder occurred—contradicted the two key prosecution witnesses, Lamar Smith and Wayne Moseley, who testified against Mr. Bozella.  This Court has already concluded that these statements were favorable to Mr. Bozella.  *See* Friedman Decl. Ex. 1 (Sept. 23, 2014 Order) at 30:5-35:15.

Had the Neighbors' Statements been disclosed to Mr. Steiman before trial, he would have made his best efforts to locate some or all of these individuals so that they could testify at trial.[4] *See* Friedman Decl. Ex. 3 (Steiman 440 Affirm.) ¶ 36.  These witnesses could have testified

---

[4] The County argues that Mr. Steiman would not have been able to locate these individuals even if the Neighbors' Statements had been disclosed.  Motion at 7.  The reason, it says, is that Mr. Steiman already had *some* information about these witnesses and his prior attempts to locate them were unsuccessful.  *Id.*  This argument is illogical.  Mr. Steiman received summaries of some (but not all) of these witnesses' statements but the summaries did not contain sufficient detail to reveal that the witnesses actually had favorable evidence.  *See* Pl. Rule 56.1 Response and Counterstatement in Supp. of Opp. to Defs.' Motion for Summary Judgment [Dkt. No. 188] ¶¶ 106 (disclosures in June 14, 1983 letter from D. James O'Neill regarding Cecil Carpenter, Cheryl Ellerby, and Linda Miller were incomplete); Friedman Decl. Ex. 13(Steiman Tr.) at 168:5-16 (testifying that Voluntary Statements were not attached to Shelly Report); 157:18-159:8 (testifying that he did not receive the Voluntary Statements) *id.* at 171:1-172:2 (testifying that he did not receive the entire 15 page Regula report); *id.* at 174:2-5 (testifying that he only received certain pages of Regula report before trial).  Mr. Steiman may well have chosen to allocate his limited investigatory resources differently had he received the information about these witnesses that was actually favorable to Mr. Bozella.  Moreover, the limited information he received made no mention at all of Cynthia Murphy, who knew the Smith brothers and Elbert Pittman, and informed police that she did not see them on the night of the murder.  Mr. Steiman would have sought to locate Ms. Murphy so that she could testify at trial and provide testimony that undermined Smith and Moseley.  *See* Friedman Decl. Ex. 3 (Steiman 440 Affirm.) ¶¶ 36-37.

directly about their observations on the night of the murder and that testimony would have provided important evidence contradicting Smith and Moseley's testimony. *Id.* ¶ 37. Moreover, at the 1990 trial, their testimony could have corroborated Stanley Smith's testimony that neither he nor his brother Lamar were near the Crapser residence the night of the murder or witnessed Mr. Bozella entering it. *Id.* ¶ 38.

Further, Mr. Steiman noted in his affidavit that he might have tried to introduce the Neighbors Statements through police testimony. *See* Friedman Decl. Ex. 3 (Steiman 440 Affirm.) ¶ 36. Arthur Regula, the detective who authored the police report containing the witness statements favorable to Mr. Bozella testified at trial about, among other things, his observations about pry marks on the door in the Crapser residence several weeks after the murder and the Police's conclusion that the door was the point of entry. *See* Friedman Decl. Ex. 4 (1990 Trial Tr.) at 360-362. In cross examining Mr. Regula, Mr. Steiman tried to establish that Detective Regula had not observed any pry marks or other defects in the door the day after the murder. *Id.* Mr. Steiman would have been aided in that cross examination if he had been able to use Detective Regula's report (in which the witnesses reported to him that on the night of the murder that they did not observe anything unusual about the condition of the door). *See* Friedman Decl. Ex. 2 (Steiman 440 Affirm.) at Ex. C.

C. **The Dobler Reports**

The Dobler Reports documented in two police reports an attack on Estelle Dobler, evidencing a common modus operandi with the Crapser Murder and King Murder (in the same neighborhood and during the same time frame) involving burglarizing and beating an elderly woman in her own home late at night and attempting to stuff material into her mouth. Firsenbaum Decl. Ex. 15 (Dobler Reports). The Dobler Reports indicate that Ms. Dobler, who survived the attack, gave a description of her attacker that matched Donald Wise. *See id.* The

reports also contain statements of a man named Christopher Gill, who claimed that Wise had been the perpetrator of the Dobler assault and had confessed to him. *See id.* This Court has already concluded that the Dobler Reports were favorable to Mr. Bozella. *See* Friedman Decl. Ex. 1 (Sept. 23, 2014 Order) at 30:5-35:15.

Had Mr. Steiman received the Dobler Reports before trial, he would have tried to locate and interview Ms. Dobler as a potential defense witness. *See* Friedman Decl. Ex. 3 (Steiman 440 Affirm.) ¶ 47. Through her testimony, the jury would have heard an account of her attack (which bore similarities to the Crapser Murder) and her assailant, whose description matched Donald Wise.

Mr. Steiman also could have called Christopher Gill as a witness. Gill could have testified about Wise's confession, which was a declaration against penal interest and admissible as an exception to hearsay. *See supra.* Moreover, Mr. Steiman would also have tried to locate and speak to Enno Groth and James Precious, the authors of the Dobler Reports, and may have been able to develop additional evidence to support the theory that Donald Wise committed the Crapser Murder. *See* Friedman Decl. Ex. 3 (Steiman 440 Affirm.) ¶ 47.

Finally, given that the Dobler Report was located inside the King file (indicating that prosecutors and police were considering a connection between the Dobler and King crimes), Mr. Steiman may also have been able to use the report as evidence, not for the truth, but as the DCDAO's knowledge of and failure to pursue potential alternative suspects for the Crapser Murder.

## CONCLUSION

There is no legal basis for the County's argument that—either today or as of 1983 or 1990—there was a *per se* rule that evidence had to be admissible at a criminal trial in order for that evidence to be material under *Brady*. Mr. Bozella will present evidence to the jury that the

8

Holland Statement, Dobler Reports, and Neighbors' Statements each would have been admitted into evidence in his criminal trials, would have led to other admissible evidence, and/or would otherwise been used by trial counsel to undermine the prosecution's case against Mr. Bozella. For these reasons, Mr. Bozella respectfully requests that the Court deny the Motion.

Dated: December 17, 2014  Respectfully submitted,

**WILMER CUTLER PICKERING HALE AND DORR LLP**

By: /s/ Peter J. Macdonald
Peter J. Macdonald
Ross E. Firsenbaum
Shauna K. Friedman
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Plaintiff Dewey R. Bozella*