UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DEWEY R. BOZELLA,                                    10 CIV 4917 (CS)

                              Plaintiff,
   -against-

THE COUNTY OF DUTCHESS,

                              Defendant.
-----------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE HIS PRIOR ARRESTS AND THEIR DISPOSITIONS [DKT NO. 210]

Patrick T. Burke, Esq.
Michael K. Burke, Esq.
Phyllis A. Ingram, Esq.
Burke, Miele & Golden, LLP
*Attorneys for Defendant County of Dutchess*
40 Matthews Street, Suite 209
Post Office Box 216
Goshen, New York 10924
(845) 294-4080

## PRELIMINARY STATEMENT

This memorandum of law of Defendant County of Dutchess ("County") is respectfully submitted in opposition to Plaintiff Dewey R. Bozella's ("Plaintiff" or "Bozella") motion in limine to exclude his prior arrests and their dispositions.

## ARGUMENT

### POINT I
### PLAINTIFF'S PRIOR ARRESTS AND DISPOSITIONS ARE RELEVANT

Plaintiff's prior arrests and their dispositions are extremely relevant to damages. Plaintiff's attempt to preclude his prior arrests and their dispositions because they are not relevant to what he identifies as his "principal theory of damages—those attributable to his lost liberty" is unavailing.

Plaintiff failed to identify damages for "lost liberty" on his Amended Complaint, but nevertheless sought damages of $25,000,000.00. In his Amended Complaint, Plaintiff only identified the following damages: "pain and suffering; severe mental anguish; emotional distress; loss of family relationships; several psychological damage; loss of educational opportunity; loss of professional opportunity; loss of income; humiliation, indignities, and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom." Amended Complaint [Dkt. No. 80] at ¶ 203. On the Joint Pretrial Order, however, Plaintiff "seeks compensation for his lost liberty, calculated by the number of years (more than 26) that he spent in prison for the Crapser Murder" and "also seeks compensation for physical, psychological, and emotional harm that he suffered while incarcerated, and continues to suffer, as a result of his wrongful imprisonment" including the following: "mental anguish; emotional distress; loss of family relationships; humiliation, indignities, and embarrassment;

degradation; and permanent loss of natural psychological development." Joint Pretrial Order [Dkt. No. 204] at 16-17.[1]

The Joint Pretrial Order is devoid of any indication that "lost liberty" damages are Plaintiff's principal theory of damages. To the contrary, because Plaintiff has failed to comply with this Court's Individual Practices and has not "itemiz[ed] each component or element of the damages sought with respect to each claim, including the manner and method used to calculate the claimed damages," it is impossible to determine Plaintiff's "principal theory of damages." *See* Individual Practices of Judge Cathy Seibel Rule 3(A)(xi). While Plaintiff indicates he is seeking damages to be calculated by the years he was incarcerated for the Crapser Murder, he fails to identify a specific amount of damages. Further, Plaintiff "also seeks compensation for physical, psychological, emotional harm" and identifies specific "harm" that is nearly identical to the damages identified on the Amended Complaint. (Joint Pretrial Order [Dkt. No. 204] at 16). If Plaintiff is still seeking the $25 million sought in his Amended Complaint, this is the compensation he sought for damages that did not include loss of liberty. Thus, it is apparent that Plaintiff's "primary theory of damages" is not loss of liberty but, rather, the emotional and psychological damages previously identified on the Amended Complaint.

Moreover, the fact that Plaintiff also seeks compensation for physical, psychological, emotional harm negates his relevancy argument. *Cf. Nibbs v. Goulart*, 822 F. Supp. 2d 339, 344 (S.D.N.Y. 2011). In *Nibbs*, the plaintiff withdrew "any claim to emotional damages and argue[d] that his arrest history is therefore irrelevant to the value of his lost liberty." *Id.* at 345. This District agreed, and held that the plaintiff's "arrest history is irrelevant to the question of lost liberty damages," which was "the only type of damages" the plaintiff in *Nibbs* sought. *Id.* However, the

---

[1] Notably, Plaintiff has eliminated various damages – several psychological damage; loss of educational opportunity, loss of professional opportunity; loss of income; and restrictions on all forms of freedom.

court in *Nibbs* did not have occasion to answer the question here: the admissibility of Plaintiff's prior arrests and their dispositions where Plaintiff seeks more than just "lost liberty damages." Even if, as Plaintiff argues, his prior arrests and dispositions are not relevant to his loss of liberty damages, they are still very relevant to his emotional and psychological damages, which truly constitute his "principal theory of damages." (*See* Amended Complaint [Dkt. No. 80] at 203). Evidence of Plaintiff's prior arrests and dispositions cannot be excluded on relevance grounds where he still seeks such emotional and psychological damages. *Cf. Nibbs, supra. See Cicero v. City of New York*, No. 11 CV 0360 NGG, 2011 WL 3099898, at *4 (E.D.N.Y. July 25, 2011):

> Neither party disputes that plaintiff's prior incarcerations are relevant to the issue of damages and emotional injury. A plaintiff who has previously been incarcerated "may suffer less damage as a result of a subsequent wrongful incarceration." Thus, details of plaintiff's prior arrests may be relevant to assessing his emotional injuries in the pending litigation.

(internal citations omitted). *See also Wisdom v. Undercover Police Officer No. C0127*, 879 F. Supp. 2d 339, 342 (E.D.N.Y. 2012) (denying plaintiff's "request to preclude evidence of his prior arrests" as it was relevant to damages); *Bryan v. Jones*, 519 F.2d 44, 46 (5th Cir. 1975) (remanding for new trial on damages where the district court precluded evidence of plaintiff's prior imprisonment because "the fact of prior imprisonment is a consideration to the extent of mental suffering occasioned by the wrongful confinement."). Plaintiff's prior arrests and are also clearly relevant to Plaintiff's lost liberty damages, as the parole board consistently relied not only on the heinous nature of the Crapser murder but also on his prior criminal history – "criminal record consists of eight misdemeanor and one felony convictions" – as one of the factors for denying parole. *See* Affirmation of Michael K. Burke, Ex. C.

While Fed. R. Evid. 404(b) prohibits "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," it permits such evidence to be admitted "for another purpose."

3

Fed. R. Evid. 404(b).  Here, Plaintiff's prior arrests and their dispositions, including his prior periods of incarceration, are extremely relevant to the issues of damages and, thus, admissible under Rule 404(b) for this permissible other purpose. *See Lewis v. D.C.*, 793 F.2d 361, 363 (D.C. Cir. 1986) (evidence of "bad acts" properly admitted for "other purpose' under Rule 404(b) where it was offered for the jury to consider in measuring damages). *See also Nibbs, supra*, 822 F. Supp. 2d at 345 (recognizing "a plaintiff's frequent arrests and detentions may diminish the emotional toll or embarrassment caused by the arrest and detention at issue."); *Bryan, supra*, 519 F.2d at 46 (recognizing that "mental anguish [from penal confinement] may be much less for the recidivist than for one incarcerated for the first time."); *Alamo Downs, Inc. v. Briggs*, 106 S.W.2d 733, 738 (Tex. Civ. App. 1937) (plaintiff's prior incarcerations  "fact would be pertinent to go before the jury for their consideration as to the amount of damages" where plaintiff alleged "he suffered great mental anguish, pain, and humiliation" from, *inter alia*, "false arrest and imprisonment.")

Plaintiff's prior arrests and dispositions are admissible not only as proof that they caused some or all of his injuries, but as proof that Plaintiff was less damaged by the incarceration he is challenging in this action. Any damages attributable to a claimed stigmatizing effect from Plaintiff's incarceration for the Crapser murder cannot be considered without evidence of his prior periods of incarceration, including his 18 month incarceration for attempted robbery. Specifically, Plaintiff has five misdemeanor convictions, two youthful offender convictions, one violation, and one felony conviction:

1) Plaintiff was arrested on June 19, 1977 for Robbery in the Third Degree and Assault in the Second Degree (two class D felonies).  Firsenbaum Decl. Ex. 4 at WH-23217.  On September 30, 1977 he was adjudicated as a youthful offender, charged with attempted petit larceny – a class B misdemeanor – and sentenced to 45 days in jail. *Id.*
2) Plaintiff was arrested on June 30, 1977 for grand larceny – a class E felony. *Id.* He was again adjudicated as a youthful offender on October 11, 1977, charged with attempted petit larceny – a class B misdemeanor – and sentenced to 90 days in jail. *Id.*

4

3)      Plaintiff was arrested on June 29, 1978 for Possession of Burglar Tools (class A misdemeanor). *Id.* at WH-23218. He was convicted upon a plea of guilty to this charge on August 24, 1978 and sentenced to 60 days in jail. *Id.*

4)      Plaintiff was arrested on August 23, 1978 and on December 18, 78 for petit larceny (a class A misdemeanor). *Id.*; Burke Aff. Ex. P at WH-17459. He was convicted upon a plea of guilty to this charge on March 1, 1979 and sentenced to 60 days in jail. Firsenbaum Decl. Ex. 4 at WH-23218; Burke Aff. Ex. P at WH-17459.

5)      Plaintiff was arrested on December 18, 78 for petit larceny (a class A misdemeanor). *Id.*; Burke Aff. Ex. P at WH-17459. He was convicted upon a plea of guilty to this charge on March 1, 1979 and sentenced to 60 days in jail. Firsenbaum Decl. Ex. 4 at WH-23218; Burke Aff. Ex. P at WH-17459.

6)      Plaintiff was arrested on August 1, 1979 for Robbery in the Second Degree (class C felony), Criminal Possession of Stolen Property over $250 (class E felony), and Criminal Possession of a Weapon Firearm/Knife (class A misdemeanor). *Id.* Plaintiff was convicted upon a plea of guilty to Attempted Robbery in the Second Degree – a class D felony – on January 10, 1980. Burke Aff. Ex. P at WH-17459. He was sentenced to three years and admitted on January 22, 1980. Firsenbaum Decl. Ec. 4 at WH-23218.

7)      Plaintiff was arrested on April 29, 1981 for Burglary in the Third Degree (class D felony). *Id.* On May 15, 1981 he was convicted upon a plea of guilty to Criminal Trespass in the Third Degree – a class B misdemeanor – and sentenced to 90 days in jail. *Id.* at WH-23218-19.

8)      Plaintiff was arrested on January 23, 1982 for Obstructing Governmental Administration and on April 12, 1982 he plead guilty to disorderly conduct (a violation) and was sentenced to 3 days in jail. *See* Affirmation of Michael K. Burke, Ex. B at WH-23238.

9)      On July 24, 1982 Plaintiff was arrested for Petit Larceny and Resisting Arrest (2 class A misdemeanors). *Id.* at WH-23219. On August 5, 1982 he was convicted upon a plea of guilty to Resisting Arrest and sentenced to 90 days in jail. *Id.*

The fact that Plaintiff was previously incarcerated under a three year sentence in state prison for a violent felony, during which time he was subject to strip searches and other forms of confinement, means he may have suffered less damage as a result of his subsequent incarceration for the Crapser murder. Similarly, Plaintiff's nine other incarcerations also suggests he may have suffered less damage from being incarcerated. *See, e.g.*, *Bryan*, *supra*, 519 F.2d at 46 ("Even a minimal sort of penal confinement may be debilitating to many. Under comparable conditions of confinement, however, this mental anguish may be much less for the recidivist than for one

5

incarcerated for the first time."). Most importantly, Plaintiff had been arrested another time – on May 21, 1977 – for Robbery in the Second Degree (class C Felony) and attempted suicide while incarcerated at the County Jail. Burke Aff. Ex. P at WH-17458. Although the charges were ultimately disposed of pursuant to a C.P.L. Article 730 order (*see infra* p. 11), this suicide attempt demonstrates his mental and psychological condition well before he was incarcerated for the Crapser Murder. All of this evidence is "of consequence" in evaluating the validity of the very damages Plaintiff claims.

Additionally, to the extent Plaintiff seeks damages for "loss of professional opportunity" (Amended Complaint [Dkt. No. 80] at ¶ 203), the fact that Plaintiff was a convicted violent felon, and had five misdemeanor convictions, in addition to his two youthful adjudications and one violation, is relevant to any claim of lost business opportunities, as certain jobs are unavailable to individuals with prior criminal convictions, especially felony convictions. Individuals are typically required to disclose their prior criminal history when applying for a variety of jobs, and many jobs conduct background checks of all applicants that would reveal such prior convictions. Similarly, with respect to Plaintiff's claimed "loss of educational opportunity," Plaintiff's prior convictions would have affected his ability to obtain financial aid and perhaps even his admission into college, as this is information typically required to be disclosed by college applicants.

Further, Plaintiff's prior arrests and their dispositions are also relevant on the first part of his *Monell* claim – whether his constitutional rights were violated. The fact that Plaintiff's prior arrests and dispositions were not admitted at his 1983 and 1990 trials is not dispositive here. Plaintiff chose not to testify at his two criminal trials. Had he testified, he would have been subject to the trial court's Sandoval rulings. At the 1983 *Sandoval* Hearing, the court ruled that the prosecutor would be permitted to inquire into Plaintiff's convictions stemming from his arrests on

6

June 19, 1977 (attempted petit larceny), June 30, 1977 (attempted petit larceny), June 29, 1978 (possession of burglar tools), December 18, 1978 (petit larceny), including the underlying facts. (Burke Aff. Ex. K at WH-6388). Regarding Plaintiff's August 1, 1979 arrest and conviction for attempted robbery in the second degree, the prosecutor was permitted to inquire if Plaintiff "had ever been convicted of a felony, or bring up the fact that he had been convicted of a felony on that date, without identifying." (*Id.*). The prosecutor was also permitted "to bring out the conviction of April 29, 1981, of criminal trespass." (*Id.* at 6389). Based upon the court's Sandoval rulings, if Plaintiff took the stand at his criminal trials he would have been subject to cross-examination on these prior arrests and convictions, similar to Lamar Smith and Wayne Moseley. Here, although the County maintains that this action should be trifurcated and Plaintiff must be precluded from testifying until the final trial phase on damages, if Plaintiff is permitted to testify during the liability stage the prior *Sandoval* rulings must apply. Plaintiff cannot have it both ways; he cannot testify about his proclaimed innocence when the jury is considering the materiality question in connection with his alleged *Brady* violation and also preclude evidence of his prior convictions that would have been admissible if he testified during his criminal trials. If the Court permits the jury to consider Plaintiff's testimony on the materiality question, evidence that is *dehors* the record of his criminal trial, it must also permit the jury to consider his prior arrests and dispositions – evidence that would have necessarily accompanied Plaintiff's testimony in his criminal trials.

## POINT II
### PLAINTIFF'S PRIOR ARRESTS AND DISPOSITIONS SHOULD NOT BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 403

As set forth above, Plaintiff's prior arrests and dispositions are extremely relevant to damages and, if Plaintiff is able to testify during the liability phase, such are extremely relevant to

the question of materiality. Any prejudice that would result from this evidence does not outweigh this high probative value.

Plaintiff's reliance on *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009) is misplaced, as that was a criminal case where the prior convictions were admitted on issues that were able to be proved by other evidence.[2] Here, in this civil rights action, Plaintiff's prior convictions are extremely probative to the extent of his damages and there is not, as in *McCallum*, other readily available proof with the same probative value. Plaintiff's reliance on *Brandon v. Vill. of Maywood*, 179 F. Supp. 2d 847 (N.D. Ill. 2001) fairs no better. In *Brandon*, the district court distinguished *Bryan*, *supra*, that found evidence of plaintiff's prior convictions and confinement admissible where he sought emotional damages for wrongful incarceration that was caused by the incarceration itself. *Id.* at 855. The key distinguishing feature was that the plaintiff in *Brandon* sought damages "for mental anguish as a result of being restrained and unable to move to safety as four officers fired their guns at a dog" which was "qualitatively different than a routine mistaken handcuffing." *Id.* Because the plaintiff's prior arrests did not involve similar circumstances, they were excluded under Rule 403. *Id.* Here, however, Plaintiff's prior arrests and dispositions include multiple periods of incarceration, such as the 18 month period for attempted robbery, and nine other periods of incarceration for, *inter alia*, 5 misdemeanor convictions (*see* pg. 4-5, *supra* ), and Plaintiff is seeking damages directly stemming from his incarceration. There are no "qualitatively different" circumstances in Plaintiff's routine arrests and incarcerations; that he was arrested for different crimes is not the type of difference that warranted exclusion in *Brandon*. Rather, the fact that he was consistently arrested and incarcerated renders his prior arrests and dispositions similar to the incarceration for which he seeks damages. Additionally, Plaintiff's prior incarceration

---

[2] The admission of the convictions, even in this different context, was harmless error. *Id.* at 478.

where he attempted suicide prior to his incarceration for the Crapser Murder is also relevant to impeach Plaintiff's claims of emotional and psychological damages.

Further, in *Ricciuti v. New York City Transit Auth.*, No. 90 CIV. 2823 (CSH), 1998 WL 171469, at *2 (S.D.N.Y. Apr. 14, 1998), the court found that evidence related to the plaintiff's arrest "for assaulting a uniformed highway officer on the Garden State Parkway as [the plaintiff] was walking toward a telephone after being involved in a traffic accident. . . would not pass muster under the balancing analysis mandated by Rule 403" because "[t]he probative value of so old an incident, occurring under quite different circumstances, is minimal, while there would be manifest and unfair prejudice to plaintiff in a case which turns on the issue of whether plaintiff assaulted an uniformed corrections officer or *vice-versa*." The "manifest and unfair prejudice" that was present in *Ricciuti* is not present here –there is no defense in this case that seeks to attribute conduct to Plaintiff that resembles his conduct in connection with his prior arrests or convictions. Plaintiff's prior arrests and dispositions are not being offered for any "superficial similarity" to the incarceration underlying his action but, rather, for their probative value on the extent of his damages. The mere fact that Plaintiff was previously arrested and incarcerated, multiple times, is probative of whether, or how much, he was actually damaged from his specific incarceration for the Crapser murder. Evidence of Plaintiff's prior arrests and convictions, including the facts leading up to such convictions, are more probative to the issue of damages than prejudicial to Plaintiff.

Further, while Plaintiff correctly notes that there is other evidence that shows he suffered emotional and psychological injuries prior to his incarceration for the Crapser murder, there is no evidence, other than his prior arrests and dispositions, with comparable probative value on damages. Plaintiff is claiming damages from the fact that he was incarcerated. Evidence that he

9

was previously incarcerated numerous times is not merely cumulative to evidence that otherwise explains his emotional and psychological injuries (*i.e.*, his childhood, abuse, foster care, and loss of his brother), but is the sole probative evidence on the extent of his damages from being incarcerated. Additionally, evidence of Plaintiff's attempted suicide when previously incarcerated in an unrelated case is extremely probative to his claimed emotional and psychological damages. To the extent Plaintiff seeks damages from the stigma and effect of being incarcerated or labeled a criminal, the jury must know his prior criminal history to fairly evaluate what, if any, damages stemmed from his incarceration for the Crapser murder. Evidence of other causes of his emotional and psychological injuries, while relevant, is not of equal probative value on this issue and does not warrant exclusion of his prior arrests and dispositions.

## POINT III
### PLAINTIFF'S PRIOR ARRESTS AND DISPOSITIONS MAY BE USED TO IMPEACH PLAINTIFF'S TESTIMONY UNDER RULE 609

The ten-year limit on using evidence of criminal convictions under Fed. R. Evid. 609(b) does not bar the use of Plaintiff's arrest and conviction for attempted robbery to impeach his testimony. First, the ten-year time period must be tolled during the time Plaintiff was incarcerated. Given Plaintiff's extensive criminal history prior to his conviction for the Crapser Murder (15 arrests between 1976 and 1983, including one felony conviction and five misdemeanor convictions), the lack of criminal conduct after 1983 must be attributed to his incarceration. This is vastly supported by a cursory review of Plaintiff's arrest record.

For example, Plaintiff was arrested on May 21, 1977 for Robbery in the Second Degree. (Burke Aff. Ex. P at WH-17458). After this arrest, Plaintiff attempted to hang himself while incarcerated at the County Jail and he was admitted to the Hudson River Psychiatric Center on May 27, 1977 on a C.P.L. Article 730 order with the charges dropped. (Burke Aff. Ex. Q at WH-

23733). He was discharged on June 3, 1977 to reside with his brother. (*Id.* at WH-23734). A little over two weeks later, on June 19, 1977, he was arrested for robbery in the third degree and assault in the second degree, and later that month, on June 30, 1977, he was arrested for grand larceny. (Burke Aff. Ex. P at WH-17458). Plaintiff pled guilty to petit larceny on September 30, 1977 in connection with his June 19, 1977 arrest and was sentenced to 45 days. (*Id.*). Plaintiff also pled guilty to petit larceny in connection with his June 30, 1977 arrest on October 11, 1977 and was sentenced to 90 days. (*Id.*). Plaintiff was next arrested on June 29, 1978 for possession of burglar tools and then on August 23, 1978 for petit larceny. (*Id.* at WH-17459). Plaintiff pled guilty to possession of burglar tools on August 24, 1978 and was sentenced to 60 days and 34 months probation. (*Id.*). Plaintiff was then arrested on December 18, 1978, again for petit larceny. He pled guilty to petit larceny in connection with his August 1978 and December 1978 arrests on March 1, 1979 and was sentenced to 60 days. Five months later, on August 1, 1979, Plaintiff was arrested for Robbery in the Second Degree, Criminal Possession of Stolen Property and Criminal Possession of a Firearm/Weapon. Plaintiff was sentenced to three years after pleading guilty to Attempted Robbery in the Second Degree on January 10, 1980. (Burke Aff. Ex. B at WH-17459). He was also arrested for Burglary in the Third Degree for a crime that was committed in 1979, pled guilty to Criminal Trespass in the Third Degree on May 15, 1981, and was again sentenced to 90 days. (*Id.*). After being paroled on his armed robbery conviction on July 27, 1981, Plaintiff was arrested four more times and was sentenced to another 90 days of incarceration before his April 7, 1983 arrest for the Crapser Murder. (*Id.* at WH-17459-60). Thus, as shown on Plaintiff's "rap sheet" and "inmate status report," Plaintiff had a steady cycle of arrests and incarceration up until his conviction for the Crapser Murder and, thus, the only logical explanation for the lack of criminal conduct after 1983 was the fact that he was incarcerated. This is further supported by

Case 7:10-cv-04917-CS   Document 256   Filed 12/17/14   Page 13 of 16

Plaintiff's conduct while incarcerated after his April 7, 1983 arrest for the Crapser Murder. For example, a Disciplinary Report from the County Department of Correction indicates that on May 29, 1983 Plaintiff engaged in prohibited acts of "[f]ighting with another person" and "[a]ssault." (Burke Aff. Ex. II at WH-24582). Similarly, Plaintiff's Inmate Status Report for his 2002 parole board appearance explains his disciplinary record as follows: "Since the subject's reception into DOCS, he has obtained eight Tier II tickets for interference, harassment, direct order, weapon and out of place, resulting in a total of 57 days keeplock, counseling, 75 days loss of phone, package and commissary privileges," (Burke Aff. Ex. P at WH-17461). While Plaintiff claims "he had only two disciplinary violations in his final ten years of incarceration," he fails to mention his disciplinary record in the first sixteen years, since clearly this record does not show he "mended his ways." (*See* Plaintiff's Memorandum of Law in Support of Motion in Limine to Exclude His Prior Arrests and Their Dispositions at 8-9).

Second, even if the ten-year time period is not tolled, Plaintiff's attempted robbery conviction is admissible because "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).[3] The analysis under Rule 609(b)(1) involves the same factors considered in a Rule 609(a) analysis – "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness" – but under a "heightened standard" that "requires that the evidence has a greater probative value than that required under Rule 609(a)." *Corcoran v. CHG-Meridian U.S. Fin., Ltd.*, No. 5:11-CV-1462 MAD/DEP, 2014 WL 1976671, at *2 (N.D.N.Y. May 15, 2014) (citations

---

[3] The second requirement for use a conviction outside the ten-year period – that "the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use" – is clearly satisfied here, as Plaintiff does not argue otherwise and is contesting the use of this conviction in his motion in limine. Fed. Evid. R. 609(b).

omitted). In exercising discretion to determine if a conviction should be admitted under Fed. R. Evid. 609(b), courts are to consider factors including "the nature, age, and severity of the crime and its relevance to the witness's credibility, the importance of credibility as an issue in the case, the availability of other means to impeach the witness, and whether the witness has 'mended his ways' or engaged in similar conduct recently." *Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997).

Here, the factors weigh heavily in favor of admission of Plaintiff's attempted robbery conviction. First, Plaintiff's conviction has a high impeachment value in this case. In that regard, "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully." *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005). While the nature of Plaintiff's conviction may not be the type routinely found highly probative of truthfulness, this District has recognized that "stealing is sufficiently related to veracity." *Williams v. McCarthy*, No. 05 CIV. 10230 (SAS), 2007 WL 3125314, at *2 (S.D.N.Y. Oct. 25, 2007) (admitting attempted robbery and grand larceny convictions). Additionally, "the gravity of an offense may bear on truthfulness, to the extent that more serious offenses indicate a stronger willingness to ignore the law." *Estrada*, 430 F.3d at 618. Here, Plaintiff's attempted robbery conviction involved a serious offense for which he was sentenced to three years in prison and, as such, suggests he is more willing to ignore the law and not testify truthfully. Further, Plaintiff's credibility will be extremely important in this case, and other impeachment evidence is lacking. While Plaintiff claims "[t]he County will likely rely on other evidence to attempt to impeach" him, he has failed to identify any such "other evidence." (*See* Plaintiff's Memorandum of Law in Support of Motion in Limine to Exclude His Prior Arrests and Their Dispositions at 8.)

Second, while Plaintiff's conviction is fairly remote, the lack of more recent criminal conduct is attributed to his incarceration and, as such, this factor is not determinative on the question of admissibility. He had consistently engaged in criminal conduct up until his incarceration for the Crapser murder, and his incarceration precluded him from doing so in the interim. Third, "similarity of the crimes[] deals with the similarity of the charged crimes, or the incident at issue in the pending case, to the conviction. The less similar the pending case to the prior conviction, the less prejudicial its admission is." *Corcoran*, 2014 WL 1976671, at *3 (quoting *Stephen v. Hanley,* No. 03-CV-6226 (KAM)(LB), 2009 WL 1471180,*5 (E.D.N.Y. May 21, 2009)). Here, there is no similarity between Plaintiff's attempted robbery conviction and his claim that his *Brady* rights were violated in connection with a different crime pursuant to a policy of the County. Accordingly "the absence of any danger of unfair prejudice in this regard weighs in favor of admitting this evidence." *Id.* Further, because Plaintiff's conviction is admissible on the issue of damages, any prejudice that may result from also using this conviction to impeach his testimony is minimal and not enough to warrant exclusion under Rule 609. *See, e.g.*, *United States v. Mahler*, 579 F.2d 730, 736 (2d Cir. 1978) (when convictions properly admitted for other purpose "any incremental prejudice flowing from the use of the convictions for impeachment purposes had to have been minimal.").

## CONCLUSION

For the reasons set forth herein, the County respectfully requests that this Court deny Plaintiff's motion in limine to exclude his prior arrests and their dispositions be denied in all respects.

Dated: December 17, 2014
       Goshen, New York

/s/ Michael K. Burke
Michael K. Burke (MB 7554)
BURKE, MIELE & GOLDEN, LLP
*Attorneys for Defendant*
40 Matthews Street, Suite 209
P.O. Box 216
Goshen, New York 10924
(845) 294-4080