UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DEWEY R. BOZELLA,                                    10 CIV 4917 (CS)

                              Plaintiff,
    -against-

THE COUNTY OF DUTCHESS,

                            Defendant.
-------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE MCKINNEY DOCUMENT AND THE MCKINNEY STATEMENT [DKT NO. 214]**

Patrick T. Burke, Esq.
Michael K. Burke, Esq.
Phyllis A. Ingram, Esq.
Burke, Miele & Golden, LLP
*Attorneys for Defendant County of Dutchess*
40 Matthews Street, Suite 209
Post Office Box 216
Goshen, New York 10924
(845) 294-4080

**PRELIMINARY STATEMENT**

This memorandum of law of Defendant County of Dutchess ("County") is respectfully submitted in opposition to Plaintiff Dewey R. Bozella's ("Plaintiff" or "Bozella") motion in limine to exclude the "McKinney Document" – the confession – and the "McKinney Statement" – the third-party admission.

Bozella seeks to exclude his typewritten confession to the Crapser Murder, dated July 29, 1983, and an accompanying handwritten acknowledgement, sworn to by Bozella on July 30, 1983. *See* Firsenbaum Decl. Ex. 32 and 33.[1] The typed confession and handwritten acknowledgement were "provided to the District Attorney's Office by Alan McKinney." Burke Aff. Ex. AA at 205.[2] Bozella also seeks to exclude a sworn transcribed statement of Alan McKinney ("McKinney") to Assistant District Attorney D. J. O'Neil, in which McKinney relays what Bozella told him about his involvement in the Crapser Murder. *See* Firsenbaum Decl. Ex. 31. As set forth herein, Bozella's arguments for the exclusion of the confession and third-party admission go to the weight of this evidence, not admissibility, and Bozella's motion must be denied.

**POINT I**
**THE CONFESSION CAN BE AUTHENTICATED**

Bozella's typed confession can be authenticated under Fed. R. Evid. 901(b)(4). This rule provides for authentication by "Distinctive Characteristics and the Like" where "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). Bozella's typed confession contains specific details and information about the Crapser Murder and uses names that closely resemble the names

---

[1] References to "Firsenbaum Decl. Ex." herein are to Exhibits annexed to the Omnibus Declaration of Ross E. Firsenbaum, dated December 10, 2014.
[2] References to "Burke Aff. Ex." Herein are to Exhibits annexed to the Affirmation of Patrick T. Burke in Opposition to Plaintiff's Partial Motion for Summary Judgment and in Support of Defendants' Motion for Summary Judgment.

of actually involved[3] – all of which is information that would not have been known by someone who was not involved in this crime. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990):

> In accordance with Rule 901(b)(4), "the contents of a writing may be used to aid in determining the identity of the declarant," if, for example, the writing "deal[s] with a matter sufficiently obscure or particularly within the knowledge of the persons corresponding so that the contents of the [writing] were not a matter of common knowledge."

(internal citations omitted).  Based upon the specific contents of this confession, Assistant District Attorney William O'Neill ("ADA O'Neill") testified that he "accept[s] it as a statement by Dewey Bozella." Burke Aff. Ex. AA at 207.

Bozella's claim that the confession "is a pastiche of public information about the Crapser Murder" is incorrect. *See* Plaintiff's Memorandum of Law in Support of Motion in Limine to Exclude the McKinney Document and the McKinney Statement ("Pl. Memorandum of Law") at 1-2.  Bozella fails to identify the source "of public information" that supplied all of the specific details and information about the Crapser Murder and about Bozella's actions thereafter. Rather, Bozella points to a single article from the Poughkeepsie Journal that provides only general information. Specifically, the article relied upon by Bozella 1) identifies Bozella by name, referencing his release and stating that he "was the second defendant to gain freedom while awaiting grand jury action;" 2) identifies "[c]odefendant Elbert Pittman," noting he "is free on $7,500 bail;" 3) states that "[a]n unidentified 15-year-old also charged in the murder is awaiting a Family Court ruling on a release petition;" and 4) in discussing the murder of Ms. Crapser, states that "[s]he was bound with wire and prevent from yelling for help with a gag that suffocated her." Firsenbaum Decl. Ex. 25 at WH-7882-83. Bozella offers no explanation for the discussion in the

---

[3] The confession identifies "Wayne Mosbey" instead of Wayne Moseley, "Lament and his brother" instead of Lamar and Stanley Smith, and "Marylyn" instead of Madeline Dixon South.

confession of specific details surrounding the crime and of Bozella's conduct after the murder, none of which can be found in any source of public information. Specifically,

1) The confession states "i and Wayne Mosbey [sic] along with Lamont and his brother, began talking about getting some money." Firsenbaum Decl. Ex. 32. Wayne Moseley was the "unidentified 15-year-old" referenced in the above Poughkeepsie Journal Article who, along with Lamar Smith and Stanley Smith, testified against Bozella at his criminal trials. Bozella was asked at his deposition how, prior to his criminal trial, someone would "know that Wayne Moseley and Lamont, and his brother, how would they be able to make that up on July 29, 1983?" and Bozella testified "I don't know. I'm not a lawyer." Burke Aff. Ex. R at 115-16.
2) The confession states "I needed some money because I wanted to go back to New York." Firsenbaum Decl. Ex. 32. Bozella left Poughkeepsie and was arrested in New York City just four days after the Crapser Murder, but claims this is a coincidence. *See* Burke Aff. Ex. R at 123-25.
3) The confession states "Wayne and i went in and . . . Pittman layed by the front." Firsenbaum Decl. Ex. 32. When Bozella was asked at his deposition whether that description was what people testified to at his criminal trials, Bozella testified that "some of the things in here are coincidence, coincidence of the case, and other things that are said in here are just straight up fabricated. ** I'm not a lawyer, you know, but so paragraph about Wayne and them said I did, you know, accused me of, you know, is what they said, but it's still fabrication." Burke Aff. Ex. RR at 120-121.
4) The confession states "I tied her up and she was still saying loud get out. . . . " Firsenbaum Decl. Ex. 32. Moseley testified at Bozella's two trials, both after the date of the confession, that Bozella had tied up Ms. Crapser. At his deposition, Bozella testified "[t]hat's what Wayne had said" and that "it was a coincidence, anybody could get this." Burke Aff. Ex. R at 121-22.
5) The confession states "I called up here hours before they arrested me and told the police that I was a cop from Queens New York and had Bozella, did they want him, this cop Smith jumped all over it saying yeah, then i called right back and said it was me, and the whole thing changed the same cop says only on a menace charge." Firsenbaum Decl. Ex. 32. Bozella confirmed that he made this phone call when he moved for a reduction of bail prior to his 1990 trial. *See* Burke Aff. Ex. CCC. Specifically, the affirmation submitted in support of this motion states: "at the time that a warrant was issued for his arrest, the defendant was in New York City at the home of his relatives. When he learned of the warrant, the defendant telephone the City of Poughkeepsie Police Department and indicated that he would return to the City of Poughkeepsie to surrender." *Id.* at WH-3438-39. More recently, Bozella testified about this phone call at his deposition. Bozella testified that he was in New York when he learned about his arrest warrant for the Crapser Murder and that he called the police department in Poughkeepsie and asked if they had a warrant for him. *See* Burke Aff. Ex. R at 101-04. The relevant City of Poughkeepsie Police Department

3

> General Incident Report indicates that the police officer who received the call, Officer Smith, informed Bozella "that the dept. had a warrant for menacing & told him to come in & turn himself in & get it over with." Firsenbaum Decl. Ex. 24. When Bozella was asked at his deposition who else would know that he made a phone call to Police Officer Smith at the police department, Bozella testified that he "had the slightest idea. . . but [he] never talked about it to anybody." Burke Aff. Ex. R at 113.

Bozella provides no newspaper article or other basis to show that the above statements were public information, as none exists. Rather, the confession provides specific details of the Crapser Murder and individuals involved that could only be known by someone with personal knowledge of this crime, and further discusses specific actions taken by Bozella – such as his phone call from New York City to the police department – that only he could know.

Bozella's self-serving testimony at his deposition wherein he denies knowledge of the typewritten confession and denies making it, or having someone make it, does not render this evidence inadmissible. *See* Pl. Memorandum of Law at 2. The confession expressly states ". . . i am putting this together like Al[4] suggests in my own words to help myself in case i get jammed this is to the best of my knowledge and true *and the notary and my wittness [sic] to this any my handwritten acknowledgement to it, is attached to this document*." Firsenbaum Decl. Ex. 32 (emphasis added). The accompanying handwritten document states: "Wherefore this petitioner prays that the Honorable Court grant him any relief it deems *just under the aforementioned facts and contentions of disclosure* to the aforesaid. Sworn to this 30 day of July 1983." Firsenbaum Decl. Ex. 33 (emphasis added).

The handwritten statement is signed by "Dewey R. Bozella," and is notarized by Theo T. Howley, Jr., a notary public who worked as a corrections officer inside the County jail. Firsenbaum Decl. Ex. 33; Burke Aff. Ex. AA at 205 and RR at 107. Bozella has admitted that the handwritten

---

[4] The reference to "Al" is consistent with McKinney providing this statement to the District Attorney's Office and stating that it was what Bozella told him about the Crapser Murder. (Burke Aff. Ex. AA at 205-06).

4

document "is mine"; it contains his signature and his handwriting. Burke Aff. Ex. RR at 106:21-107:15, 111:10-20, 112:2-5.  Bozella further testified that the use of the phrase "the aforementioned facts" means "[s]omething that's being acknowledged beforehand," but he "had the slightest idea" when what "aforementioned facts" the handwritten statement referenced. *Id.* at 114:16-23. Although he testified that "if it was anything, it was something already attached to my handwriting," he denied that he ever said what was contained in the typewritten confession. *Id.* at 114:16-115:4. The contents of the confession itself, however, show otherwise. *See* pg. 2-4, *supra*. Additionally, Bozella's claim that "[ADA] O'Neill testified that connecting the two documents has always been 'a problem' for the [District Attorney's Office]" is completely inaccurate. *See* Pl. Memorandum of Law at 3. ADA O'Neill's testimony is clear:

> Q.  Did Jim O'Neil speak to Mr. Howell about this document, to your knowledge?
> A.  I -- I imagine he -- he would have confirmed at least that second page.  But to connect it to the first page, that was a problem.

ADA O'Neill does not indicate it was "always a problem to connect the pages but, rather, states "it was a problem" when discussing the ability of Mr. Howell, the notary, to connect the page he notarized to the first typewritten page.  ADA O'Neill testified that he accepted the two-page confession as a statement by Bozella. *See id.* at 207.

Bozella's attempt to differentiate statements in the confession from the evidence against Bozella at his criminal trials is unavailing. This argument is based upon a flawed reading of the confession and the "inaccurate" or "inconsistent" statements identified by Bozella are insignificant.  Additionally, nowhere in the confession is it stated "that 'they' entered the house through the window" but, rather, it states only that "i cracked the window, in the process i cut my new black gloves i use for 'training in boxing'. Wayne and i went in and . . . 'Pittman layed by the front.'" Firsenbaum Decl. Ex. 32. Bozella reads the proximity of these statements to mean that the

declarant is saying they entered through the window. However, this is not accurate. These are two distinct statements – "i cracked the window. . . . "; "Wayne and i went in." Firsenbaum Decl. Ex. 32. Bozella has not identified a true "inaccuracy or inconsistency" in these statements but, rather, relies only upon an inference from these two statements. However, it is for the jury to make inferences and determine whether or not to believe Bozella's inference in assessing the weight of this confession. Bozella's argument based upon his own inference does not warrant the exclusion of this statement, nor do any of the other alleged "inaccurate" or "inconsistent" statements, especially given the significant, specific, unique details that are correctly stated elsewhere in the confession. *See* pg. 2-4, *supra*. *See United States v. Portrait of Wally*, 663 F. Supp. 2d 232, 255 (S.D.N.Y. 2009) (assertions that documents " are not credible and that some of them appear to be incomplete, even if true, do not preclude a finding of authenticity for purposes of this motion" since "these arguments go to the weight of the evidence rather than its admissibility.").

Bozella's also argues that McKinney "easily could have obtained 'facts' about the Crapser Murder" when he was in the District Attorney's office to give a statement on July 25, 1983. *See* Pl. Memorandum of Law at 6. This conclusory assertion is baseless. To suggest that McKinney was told "facts" or given access to information about the Crapser Murder simply because he was at the District Attorney's Office – to give a voluntary statement about what Bozella had told him about his involvement in the crime – is pure speculation. Nothing in the record suggests any impropriety in connection with McKinney's voluntary statement to the Assistant District Attorney D.J. O'Neil on July 25, 1983. In any event, this too is an argument that goes only to the weight of the confession, not its admissibility.

Nor can Bozella rely upon misstatements from the deposition transcript of ADA O'Neill that were subsequently corrected to challenge the authenticity of his confession. Bozella argues

6

that "[ADA] O'Neill twice speculated that Moseley is the declarant who made the statement in the document" and that ADA O'Neill later "changed his testimony, asserting in an "errata sheet" that Mr. Bozella was the declarant." *See* Pl. Memorandum of Law at 2. At his deposition, ADA O'Neill was asked about the result of the meeting with McKinney in the District Attorney's Office on July 25, 1983, and testified as follows:

> A.   Well, that, again, I don't know. I mean, I talked with O'Neil about the agency aspect. He couldn't really -- I mean, there wasn't anything anybody could say. This was McKinney's own deal. He went back into jail and he had ~~Mosley~~ Bozella type this up and then sworn.
>
> Q.   He had Mosley type it?
>
> A.   I don't know. He could have. To be honest, I don't know who typed it. He -- he had Exhibit 20 created by ~~Mosley~~ Bozella and this jail officer kind of on his own, is my recollection. But he would have been acting, in my opinion, as the agent of the DA, whether he did it on his own or not.

Burke Aff. Ex. AA 6 at 217. Contrary to Bozella's claim otherwise, ADA O'Neill did not change his testimony but, in accordance with the Federal Rules of Civil Procedure, corrected his testimony on an Errata Sheet, sworn to on November 15, 2012, after he reviewed his deposition testimony. Specifically, ADA O'Neill corrected the two above references to Moseley, modifying them to say "Bozella." In making this correction, ADA O'Neill wrote "mis-spoke I said Mosley, I meant Bozella." *See* Burke Aff. Ex. AA at Errata Sheet. ADA O'Neill's corrections were entirely proper under Fed. R. Civ. P. 30(e), which provides a deponent with the opportunity, upon request, "(A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Such an opportunity was requested at the start of ADA O'Neill's deposition. *See* Burke Aff. Ex. AA at 6. Thus, ADA O'Neill's corrections control and Bozella must be precluded from relying upon, and offering evidence of, ADA O'Neill's prior misstatement.

7

Finally, merely because the confession was not used in Bozella's criminal trials does not mean it is not authentic. Rather, as recognized by Bozella, ADA O'Neill provided a logical explanation as to why it was not used. *See* Pl. Memorandum of Law at 8, n. 1. Specifically, ADA O'Neill testified:

> The strategy had been decided by myself to not use any statements against the defendant Bozella at his trial, but to hold them in the event, you know, he testifies, and then we would use them, the Harris rules.
>
> So that way, you know, we were prepared to use this [the confession] if Bozella testified at his trial. It turned out he never did, so we never used it. He was convicted just on the testimony that we had, and same thing in '90, followed the same procedure.
>
> ***
>
> We had talked to Allen McKinney before he got this, so he would have been -- I mean, my position he would have -- it could have been argued he was an agent of the DA, we didn't him his rights, et cetera.
>
> So I didn't want to get into that as a legal issue at the trial. It wasn't worth it. This would have been great for trial but the downside was the legal issue of how he got this statement.

Burke Aff. Ex. AA at 209-13. Regardless of whether or not ADA O'Neil had disclosed other statements in a Huntley Notice that would not have been admissible, it was clear ADA O'Neill had no intent to use the confession unless Bozella testified and, thus, was not obligated to disclose it. *See* Pl. Memorandum of Law at 8, n. 1. The fact that Bozella's confession was not used speaks volumes about the strength of the evidence of Bozella's guilt at his criminal trials. Additionally, although completely irrelevant, Assistant District Attorney Edward F. Whitesell explained why this statement was not used when opposing Bozella's 440 Motion – he had not seen it until after Bozella's indictment was dismissed. *See* Burke Aff. Ex. KK at 276-77.

## POINT II
## BOZELLA'S CONFESSION IS NOT HEARSAY

Bozella's confession is not subject to exclusion under the rule against hearsay.

First, the confession is admissible for a non-hearsay purpose. Rather than being offered "to prove the truth of the matter asserted in the statement" – that Bozella did what is stated in the confession – the County can offer Bozella's confession to show what information about Bozella's involvement in the Crapser Murder ADA O'Neill knew prior to Bozella's criminal trials. Fed. R. Evid. 801(c). Bozella identifies William O'Neill as an "[a]dvese fact witness" who "may testify regarding. . . events that took place during the pre-trial stage of Mr. Bozella's 1983 and 1990 criminal trials." Joint Pretrial Order [Dkt No. 203] at 9. Defendants similarly identify William O'Neill as a witness "expected to testify regarding the prosecution of . . . Bozella." *Id.* at 12. On these issues, ADA O'Neill can testify about his knowledge of the confession before Bozella's criminal trials.

Second, the confession is admissible as an opposing party's statement – that of Bozella – and, thus, is "not hearsay" under Fed. R. Evid. 801(d)(2). As set forth in Point I, *supra*, the confession can be authenticated by its distinctive characteristics.

Third, Bozella's confession is admissible under the hearsay exception for "Statements in Ancient Documents." Fed. R. Evid. 803(16). Under this exception, "[a]statement in a document that is at least 20 years old and whose authenticity is established" is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid. 803(16). As set forth in Point I, *supra*, the confession can be authenticated by its distinctive characteristics. Additionally, the confession is dated July 29, 1983, making it over 30 years old. Thus, the statements in the confession are admissible under the ancient documents hearsay exception.

9

## POINT III
### EXCLUSION OF THE CONFESSION UNDER RULE 403 IS NOT WARRANTED

As stated above, the confession is relevant to show what information was known about Bozella's involvement in the Crapser Murder at the time of his prosecution.[5] The confession was in the District Attorney's trial file and ADA O'Neill testified that he "accept[s] it as a statement by Dewey Bozella." Burke Aff. Ex. AA at 207. The confession is also relevant on the issue of damages. If Bozella seeks to testify about his proclaimed innocence, this confession is extremely probative. *See id.* at 213 ("It definitely undercuts his innocence on the Crapser trial."); *see also* Pl. Memorandum of Law at 9 ("To be sure, Mr. Bozella is innocent of the Crapser Murder.").

Bozella's arguments for exclusion under Rule 403 all go to the weight of the confession, not its admissibility. This document exists and was known to exist at the time of Bozella's criminal trials by the assistant district attorney who prosecuted him. It can be authenticated and admitted at trial for various purposes. *See* Points I & II, *supra* and Point IV, *infra*. Simply because Bozella wants to avoid having to offer evidence in opposition to this authentic document does not mean its admission "would lead to a significant waste of time." *See* Pl. Memorandum of Law at 10.

## POINT IV
### THE CONFESSION IS ADMISSIBLE TO IMPEACH BOZELLA

Given that Bozella's maintains he is innocent of the Crapser Murder, evidence of the confession is extremely relevant and is admissible to impeach his testimony. As stated above, the confession can be authenticated and is admissible for the non-hearsay use of establishing ADA O'Neill's knowledge about Bozella's involvement in the Crapser Murder before the criminal trials, as a non-hearsay statement of an opposing party, and under the hearsay exception for ancient

---

[5] If the Court grants the County's motion to trifurcate, and Bozella is precluded from testifying until the damages trial phase, the County will not seek to admit the confession on the question of materiality. However, if the County's motions in those respects are denied, the confession is relevant and admissible on all issues.

10

documents. *See supra* Points I, II, & III. Since this statement is admissible as, *inter alia,* "an opposing party's statement under Rule 801(d)(2)" the requirements for admission of extrinsic evidence of the statement under Fed. R. Evid. 613(b) do not apply. *See* Fed. R. Evid. 613. In any event, the confession is admissible as extrinsic evidence of Bozella's statement because Bozella will be "given an opportunity to explain or deny the statement and an adverse party [will be] given an opportunity to examine the witness about it." Fed. Evid. R. 613(b). Further, because the confession is admissible on its own, extrinsic evidence of the confession can be introduced to impeach Bozella's testimony. *See supra* Points I, II, & III.

Specifically, the confession is admissible for impeachment as a prior inconsistent statement. In that regard, "a 'third party's characterization' of a witness's statement does not constitute a prior statement of that witness *unless the witness has subscribed to that characterization*." *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (emphasis added). It is only when such a subscription is lacking does the "verbatim transcript" requirement come into play: "*in the absence of endorsement by the witness*, a third party's notes of a witness's statement may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words." *Id.* (emphasis added). Here, the County need not establish that the confession "is a verbatim transcript" of Bozella's statement because Bozella had signed the second page of his confession, a handwritten acknowledgement that is expressly referenced in the typewritten confession and, thus, adopted as his the statements in the confession. *See United States v. Strother*, 49 F.3d 869, 875 (2d Cir. 1995) (fact that witness did not actually prepare the memorandum "should not have precluded its admission as a prior inconsistent statement" where witness signed the memorandum to confirm it was discussed; witness adopted the memorandum and it was admissible "as a prior inconsistent statement").

11

In any event, the County has proved "a rational basis for concluding that [the confession] is what it is claimed to be" and, thus, the County is able to meet its burden on this issue. *Almonte*, 956 F.2d at 30 (quoting *United States v. Hon,* 904 F.2d 803, 809 (2d Cir.1990), *cert. denied,* 498 U.S. 1069 (1991)). Here, the County has established, *inter alia*, 1) the confession identifies specific details and information that would only be known by someone involved in the Crapser Murder; 2) the confession identifies specific actions by Bozella that would only be known by Bozella himself; 3) the confession references a handwritten acknowledgement that is attached to it; 4) the confession that was found in the file from the District Attorney's Office was attached to a handwritten acknowledgement signed by Bozella. *See supra* Point I. The only rational conclusion is that this confession was Bozella's sworn confession. This is supported by way the confession is written, including the language and tone used. *Cf. Almonte*, 956 F.2d at 30. In *Almonte*, the Second Circuit found that the notes in question were not a prior inconsistent statement where the "only evidence that [the] notes were verbatim was the assertive form of the notes." *Id.* The Second Circuit explained that the district court had "considered the form of the notes[] and reasonably concluded that a rational jury could not attribute the words to [the witness]" as the "notes look and sound not like a memorialization of [the witness's] exact words, but like a quickly jotted summary." *Id.* Here, in contrast, the confession does not sound "like a quick jotted summary" but, rather, it is a detailed, one-page account of what occurred on the night of the Crapser Murder and sounds like Bozella is telling the same in his words. Accordingly, the confession is admissible to impeach Bozella's testimony.

### POINT V
### MCKINNEY'S STATEMENT IS ADMISSIBLE

McKinney's statement to ADA D.J. O'Neil about Bozella's confession to him – the third party admission – is also admissible. McKinney's statement was transcribed by a court report while

he was under oath, and, like the confession, provides specific details of the Crapser Murder that could only be known by someone involved in the crime. *See* Firsenbaum Decl. Ex. 31.

First, McKinney's statement can be authenticated under Fed. R. Evid. 901(b)(8) – Evidence About Ancient Documents or Data Compilations." Specifically, " a document or data compilation" can be authenticated by "evidence that it: (A) is in a condition that creates no suspicion about its authenticity; (B) was in a place where, if authentic, it would likely be; and (C) is at least 20 years old when offered." Here, there is no suspicion about the statement's authenticity based upon its condition – it is a statement typed by a court reporter and nothing suggests it has been modified or edited in any way, nor does Bozella allege someone tampered with the statement. The statement was found in the District Attorney's file, which is where such a witness statement would be expected to be found, and it is dated July 25, 1983, making it over 30 years old. ADA O'Neill identified this transcribed statement at his deposition and testified that he first saw McKinney's statement "sometime after July of 1983" and that he "had it in preparation for the trial." Burke Aff. Ex. AA at 214-15. Thus, authentication of McKinney's statement is clearly established under Fed. R. Evid. 901(8).

Second, McKinney's statement is admissible, as was the confession, for the non-hearsay use of establishing what ADA O'Neill knew about Bozella's involvement in the Crapser Murder prior to his criminal trials. *See supra* Point II.

Third, McKinney's statement is admissible under the hearsay exception for "[a] statement in a document that is at least 20 years old and whose authenticity is established" under Fed. R. Evid. 803(16). "Rule 803(16) provides a broad hearsay exception that applies to any level of hearsay within an ancient document. That is, even following Rule 805's mandate that a court examine each level of hearsay independently, Rule 803(16) supplies the grounds by which each

level within an ancient document becomes admissible." *Langbord v. U.S. Dep't of Treasury*, No. CIV.A. 06-5315, 2011 WL 2623315, at *17 (E.D. Pa. July 5, 2011). Thus, the County need not establish a hearsay exception for the statements in the letter.

Prior applications of the ancient documentation exception by courts in this District indicate, without expressly discussing the "hearsay within hearsay rule," that once a document is authenticated, all statements in it are admissible. *See Arasimowicz v. Bestfoods, Inc.*, 81 F. Supp. 2d 526, 528 (S.D.N.Y. 2000) (admitting "Confirmation Letter" to distributor that confirmed "what was discussed at the initial interview" under ancient document exception); *United States v. Portrait of Wally*, 663 F. Supp. 2d 232, 253 (S.D.N.Y. 2009) (admitting letters and written statement of deceased asserting that a Nazi stole a painting from her without compensating her, came to her apartment "and demanded she hand it over" under ancient document exception). Bozella's arguments against the McKinney statements are premised on its credibility and reliability (*see* Pl. Memorandum of Law at 13) and, as such, go only to the weight of this evidence. *See Portrait of Wally*, 663 F. Supp. 2d 232 at 255 ("The Museum's assertions that the Bondi letters and Statement are not credible and that some of them appear to be incomplete, even if true, do not preclude a finding of authenticity for purposes of this motion. As the Government correctly observes, these arguments go to the weight of the evidence rather than its admissibility."). In any event, the statements attributed to Bozella in the McKinney statement would be admissible as Bozella's "then-existing state of mind" (Fed. R. Evid. 803(3))– he was seeking help from McKinney. S*ee* Firsenbaum Decl. Ex. 31 at 3601).

Fourth, McKinney's statement can be used to impeach Bozella because it can be authenticated and it is admissible, both for a non-hearsay use and under hearsay exceptions. *See* Point III.

Fifth, simply because Bozella would prefer to avoid explaining his confession to McKinney does not warrant exclusion of the third-party admission under Rule 403.  Similar to the confession, McKinney's statement is probative of both what ADA O'Neill knew prior to Bozella's prosecution and Bozella's innocence.  *See* Point III, *supra*.  Bozella's repeated references to McKinney as a "wheeler and dealer" is of no moment – Bozella has not identified any "deal" that McKinney received for providing this statement and, in any event, this would only go to the credibility of the statement and weight of the evidence.

## CONCLUSION

For the reasons set forth herein, the County respectfully requests that this Court deny Bozella's motion in limine to exclude the confession and the third-party admission in all respects.

Dated: December 17, 2014
      Goshen, New York

/s/ Michael K. Burke
Michael K. Burke (MB 7554)
BURKE, MIELE & GOLDEN, LLP
*Attorneys for Defendant*
40 Matthews Street, Suite 209
P.O. Box 216
Goshen, New York 10924
(845) 294-4080