UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DEWEY R. BOZELLA,                                              **10 CIV 4917 (CS)**

                                    Plaintiff,

            -against-

THE COUNTY OF DUTCHESS,

                                    Defendant.
--------------------------------------------------------x

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE
TO EXCLUDE THE GRAY DOCUMENT, HUNTLEY STATEMENT, AND SMITH
REPORT [DKT NO. 234]**

---

Patrick T. Burke, Esq.
Michael K. Burke, Esq.
Phyllis A. Ingram, Esq.
Burke, Miele & Golden, LLP
*Attorneys for Defendant County of
Dutchess*
40 Matthews Street, Suite 209
Post Office Box 216
Goshen, New York 10924
(845) 294-4080

## PRELIMINARY STATEMENT

This memorandum of law of Defendant County of Dutchess ("County") is respectfully submitted in opposition to Plaintiff Dewey R. Bozella's ("Plaintiff" or "Bozella") motion in limine to exclude the "Gray Documents," "Gray Statements," "Huntley Statement," and "Smith Report." In this motion, Plaintiff seeks to exclude 1) "Gray Documents" (transcripts of a recorded conversation between Wayne Moseley and James Gray on September 10, 1977) (hereinafter "Gray Transcripts"); 2) "Gray Statements" (a written statement by James Gray), 3) "Huntley Statements" (statements identified in Huntley Notices as being made by Plaintiff) and the "Smith Report" (an April 1983 police report describing a phone call the police officer received from an individual who identified himself as Bozella).

Prior to responding to the merits of Plaintiff's motion, the County must first correct various mischaracterizations and/or misrepresentations of Plaintiff's recitation of facts about the investigation of the Crapser Murder. *See* Plaintiff's Memorandum of Law in Support of Motion in Limine to Exclude the Gray Documents, Gray Statements, Huntley Statement, and Smith Report ("Pl. Memorandum of Law") at 1-4.

Regarding the July 16, 1977 interview by Detectives Shelley, Groth, and Precious, three individuals were interviewed – Lamar Smith, Stanley Smith, and Elbert Pittman (Firsenbaum Decl. Ex. 14 at WH-5508)[1] – not just Lamar and Stanley. *See* Pl. Memorandum of Law at 1. Also, the "Shelly Report" does not state that Lamar and Stanley "both claimed not to have any knowledge about the crime" (*id.*) but, rather, all three individuals "told some conflicting stories about them being at the vicinity of 15 N. Hamilton Street" and

> At the end of the interview with the three individuals, there was nothing actually conclusive drawn from it but there were some mistakes made by them and it is

---

[1] References to "Firsenbaum Decl. Ex." herein are to Exhibits annexed to the Omnibus Declaration of Ross E. Firsenbaum, dated December 10, 2014.

> thought that we might possible be on the right track and the investigation will
> intensify and continue along these lines until something concrete can be offered.

Firsenbaum Decl. Ex. 14 at WH-5508. Similarly, Plaintiff also misstates what went on during the

interview of Lamar and Stanley Smith on June 25, 1977. *See* Pl. Memorandum of Law at 1-2.

According to the police report, Detectives Regula and Groth conducted an interview with the two

brothers "to see if they had incurred any street talk regarding the homicide and they mentioned

that they had heard that Sweet Pea [Elbert Pittman] was involved in it." Firsenbaum Decl. Ex. 12

at WH-6521. Further,

> During the interview they stated that Sweet Pea was the lookout and he also had
> something to do with tieing the old ladies feet up. *** They did not come forward
> with any other names other than Sweet Pea but they indicated that Sweet Pea and
> two other people were involved and that these subjects were wearing white T shirt
> at the time of the commission of the crime.

*Id*. Lamar and Stanley Smith did not state "that they had no knowledge of the crime" (Pl.

Memorandum of Law at 2) but, rather, provided the above information and "denied any knowledge

other than street talk about it."  Firsenbaum Decl. Ex. 12 at WH-6521.

After Lamar Smith was arrested on June 29, 1977, Detectives Regula and Groth again

questioned him "in reference to the homicide and any additional information he might have on it."

*Id*. at WH-6522. Consistent with Lamar's prior interview, Lamar identified Elbert Pittman as being

involved, as well as "Wayne Moseley and another dude Slobo" who Lamar "identified from a

picture as being Dewey Bozella." *Id.*  During this interview Lamar provided additional details,

including conversations between Moseley and Bozella in Mansion Square Park "about hitting a

crib" and how Lamar and Stanley followed them and watched them break into Ms. Crapser's

house. *Id.* at WH-6522-24. After Lamar's statement was taken, Stanley Smith was brought in for

an interview. *Id.* at WH-6524. He did not, as claimed by Plaintiff, "initially den[y] Lamar's new

story," (Pl. Memorandum of Law at 2) but, rather, "[w]hen asked about his actions on June 14,

1977, in relation to the information learned from Lamar, he refused to discuss it at all." Firsenbaum Decl. Ex. 12 at WH-6524. Lamar did not tell "Stanley what he had told the Police," (Pl. Memorandum of Law at 2) but, rather, confirmed with Stanley that he had told the police "his side of the story" and told Stanley "it would help Lamar's cases" if Stanley helped the police. Firsenbaum Decl. Ex. 12 at WH-6524.

Additionally, Plaintiff's discussion of "deals" made with Moseley and Lamar Smith is irrelevant, as is the discussion of Stanley Smith having recanted his testimony after Plaintiff's 1983. *See* Pl. Memorandum of Law at 3-4. This all goes to these witnesses' credibility, and has nothing to do with the items Plaintiff seeks to exclude in this motion. The County also notes its objection to Plaintiff's claim that "Wayne Moseley recanted his testimony" (Pl. Memorandum of Law at 4) as fully set forth in the County's motions in limine to exclude the alleged recantation. *See* County's Memorandum of Law in Support of Motion in Limine to Preclude as Inadmissible Hearsay - the Deposition Testimony of Edward F. Whitesell Regarding a Purported Conversation between Whitesell and Wayne Moseley [Dkt. No. 229] and County's Memorandum of Law in Support of Motion in Limine to Preclude as Inadmissible Hearsay - the Email Purportedly from Wayne Moseley to Ross Firsenbaum, dated April 23, 2012 [Dkt. No. 229-30].[2]

### POINT I
### THE GRAY TRANSCRIPTS ARE AUTHENTIC

Plaintiff first seeks to exclude the Gray Transcripts, a transcribed conversation between James Gray ("Gray") and Wayne Moseley that was recorded on September 10, 1977, wherein

---

[2] The County objects to Plaintiff's discussion of the absence of physical evidence against Plaintiff as pure speculation. *See* County's Motion to Preclude to preclude Plaintiff from offering evidence of, and arguing any negative inferences from, the disposal of the physical evidence by the City of Poughkeepsie Police Department in the Crapser murder case [Dkt. No. 231]. Similarly, Plaintiff's claim that Donald Wise was implicated in the Crapser Murder and "two similar murders" is pure conjecture; he was not a suspect in this crime nor were the crimes believed to be connected.

Moseley speaks of his and Plaintiff's involvement in the Crapser Murder because, *inter alia*, he claims the transcripts cannot be authenticated. *See* Pl. Memorandum of Law at 12.

The Second Circuit has recognized that "Rule 901 'does not erect a particularly high hurdle,' and the proponent of the evidence is not required 'to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.'" *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001) (internal citations omitted). Here, the County has sufficiently shown that the Gray Transcripts are what they purport to be – transcripts of a recorded conversation between Gray and Moseley on September 10, 1977.

First, the Gray Transcripts are authentic under Fed. Evid. R. 901(b)(8), which provides for authentication of a document by "evidence that it: (A) is in a condition that creates no suspicion about its authenticity; (B) was in a place where, if authentic, it would likely be; and (C) is at least 20 years old when offered." Here, the Gray Transcripts are clearly more than 20 years olds. *See, e.g.*, Burke Aff. Ex. AAA [Decision on Clayton Hearing] at WH-408 ("[t]he taped conversation of September 10th, 1977 between . . . Moseley and . . . Gray was transcribed shortly after it was made by Lt. Arthur Regula.").[3] Plaintiff has not alleged that the Gray Statements are less than 20 years old. Additionally, the Gray Transcripts were found in the District Attorney's file for the Crapser Murder, the crime to which Moseley confesses in the transcript. If authentic, a transcript of a recorded admission would likely be found in the District Attorney's file for the related crime.

Further, the condition of the Gray Transcripts does not create suspicion of its authenticity. Plaintiff's claim that the Gray Transcripts are incomplete goes only to their weight, not admissibility. *See United States v. Portrait of Wally*, 663 F. Supp. 2d 232, 255 (S.D.N.Y. 2009)

---

[3] References to "Burke Aff. Ex." Herein are to Exhibits annexed to the Affirmation of Patrick T. Burke in Opposition to Plaintiff's Partial Motion for Summary Judgment and in Support of Defendants' Motion for Summary Judgment.

(assertions that documents "are not credible and that some of them appear to be incomplete, even if true, do not preclude a finding of authenticity for purposes of this motion" because "these arguments go to the weight of the evidence rather than its admissibility."). Nor does the fact that one of the versions of the Gray Transcripts contains handwritten notes render it inadmissible but, again, this goes to credibility. The presence of additional writing on one of the documents does not render the typewritten content suspect in any way, nor is there any indication that the handwritten content is inconsistent with the typed statements.

Also, while Plaintiff correctly notes that the police had destroyed the actual tape of the recorded conversation, it was not destroyed pursuant to anything improper. *See* Burke Aff. Ex. AAA at WH-409. After the Clayton hearing in 1983, the court found that there was "sufficient documentation" of the taped conversation that was destroyed – *i.e.*, the Gray Transcript – and the "documentation can be used by the defense at the trial." Burke Aff. Ex. AAA at 410. Specifically, "information concerning the content of [the] tape[] can be used by defense in this case to attack the credibility" of the taped witness. *Id.* The fact that this evidence was not used at the 1983 trial does not render it unauthentic. Rather, if the opportunity presented itself at trial, the Gray Transcripts could have been used.

Second, the Gray Transcripts can also be authenticated under Fed. R. Evid. 901 (b)(8) by their "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." While Plaintiff contends that Moseley's statements that are reflected in the Gray Transcripts provide information about the Crapser Murder that was written in a Poughkeepsie Journal Article, Plaintiff ignores that specific details Moseley provided were not public information. *See* Pl. Memorandum of Law at 5, n. 1. Moseley discusses going down to New York City with Plaintiff after the murder and offers information about him

5

and Plaintiff entering into the apartment through the door – none of which is found in the Poughkeepsie Journal article Plaintiff relies upon.[4]  Rather, the transcript reflects things that only Moseley would know from his involvement in the crime.  *See generally* Defendant's Memorandum of Law in Opposition to Motion in Limine to Exclude the McKinney Document and McKinney Statement.

All of Plaintiff's arguments about the authenticity of the Gray Transcripts go to the weight of the evidence alone. *See, e.g.*, Pl. Memorandum of Law at 12 (arguing that certain things "cast doubt on the document's reliability.").  These questions do not, however, effect the threshold question of its authenticity. *See Portrait of Wally*, 663 F. Supp. 2d at 255.

## POINT II
## THE GRAY TRANSCRIPTS ARE ADMISSIBLE

In addition to their authenticity, the Gray Transcripts are not subject to exclusion under the rule against hearsay.

First, the Gray Transcripts are admissible for a non-hearsay use – not to prove that what is stated in the transcripts is true but to show what was known by the police and prosecution and by Plaintiff's trial counsel before his criminal trials. The transcript was provided to Plaintiff's trial counsel, Mickey Steinman, by letter dated September 29, 1983, and was the subject of a Clayton hearing prior to Plaintiff's 1983 trial. *See* Burke Aff. Ex. JJ at 12658; Burke Aff. Ex. AAA. Although the transcript was not admitted into evidence at Plaintiff's 1990 trial, it is clear the jury knew of its existence. Thomas Whalen first referenced the conversation between Moseley and Gray on direct examination. *See* Burke Aff. Ex. Y at 862-63. Whalen then identified the transcript

---

[4] Plaintiff's claim that Moseley provided inaccurate information by not contradicting Gray's suggestion "that Ms. Crapser was gagged with a scarf" lacks merit. Pl. Memorandum of Law at 5. When asked "[w]hat did you gag her with a scarf?" Moseley responds "I didn't Slo-bo gagged her." Firsenbaum Decl. Ex. 12. Moseley did not indicate that Ms. Crapser was gagged with a scarf; he only indicated that he was not the one to gag her, Bozella was.

6

on cross-examination and testified that the date of the Moseley and Gray conversation was September 10, 1977. *Id.* at 875-76, 904-05, 915. Whalen also testified about what he told Moseley about this statement – "I said as far as his not knowing anything about it, that obviously wasn't the case because not only based on other witness' statements who put him there, but his own statement to . . . Grey [sic] back in 1977, that he was involved in this crime, it was clear." *Id.* at 906.

Second, the transcript is admissible under the ancient document hearsay exception. *See* Fed. R. Evid. 803(16). Specifically, "[a] statement in a document that is at least 20 years old and whose authenticity is established" is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." *Id.*  Here, as set forth in Point I, *supra*, the transcripts are authentic under Fed. R. Evid. 901(b)(8) and/or 901(b)(4). Under the ancient document exception, the "hearsay within hearsay rule" would not bar admission of the statements within the transcript. *See, e.g.*, *Langbord v. U.S. Dep't of Treasury*, No. CIV.A. 06-5315, 2011 WL 2623315, at *17 (E.D. Pa. July 5, 2011) ("Rule 803(16) provides a broad hearsay exception that applies to any level of hearsay within an ancient document. That is, even following Rule 805's mandate that a court examine each level of hearsay independently, Rule 803(16) supplies the grounds by which each level within an ancient document becomes admissible."). Accordingly, the transcripts are authentic and admissible both for a non-hearsay use and under a hearsay exception.[5]

### POINT III
### THE GRAY STATEMENT

Plaintiff also seeks to exclude a statement by Gray to the City of Poughkeepsie Police Department about a conversation he had with Moseley on September 5, 1977 or September 6,

---

[5] The County objects to Plaintiff's request to strike references to the Gray transcript in ADA O'Neill's closing argument. On the issue of materiality, the jury is entitled to know what was before the jury in Plaintiff's criminal trials. Thus, the jury should hear the argument and also hear that the judge asked the criminal jury to disregard such references. Moreover, Bozella raised that issue on appeal from his 1990 conviction and that argument was found to have no merit.

1977, prior to the conversation in the Gray Transcripts, wherein Moseley tells Gray about his and Plaintiff's involvement in the Crapser Murder ("Gray Statement"). *See* Firsenbaum Decl. Ex. 19 and 20.

Similar to the Gray Transcripts, the Gray Statement can also be authenticated as an ancient document, as it was found in the District Attorney's file, is over twenty years old, and is not in a condition that renders its authenticity suspicious. As for the specific date of the Gray Statement, ADA O'Neill's handwritten Rosario list identifies that a deposition of Gray, dated September 10, 1977, was an item that was provided to Plaintiff's trial counsel, Mickey Steinman, on November 22, 1983.  *See* Burke Aff. Ex. EEE. The Gray Statement is entitled "Deposition of Witness Before Warrant" but the date on it is not clearly legible. Plaintiff does not allege, however, that this document is less than 20 years old. Nor does Plaintiff suggest that its condition suggests it is not authentic.  Plaintiff objects to two different versions of this statement not because of different content or suspicion of its authenticity but only because one is dated and signed while the other is not. *See* Pl. Memorandum of Law at 7.

Here, as with the Gray Transcripts, the Gray Statement is admissible to show what information was known by the prosecution and Plaintiff's trial counsel prior to his criminal trials,. Also, because the Gray Statement is authentic, it can be admitted under the hearsay exception for ancient documents. *See* Point II, *supra*.

**POINT IV**
**HUNTLEY NOTICE AND SMITH REPORT**

Plaintiff also seeks to exclude the Smith report – a City of Poughkeepsie Police Department General Incident Report, dated April 3, 1983, describing the police officer's telephone conversation with Plaintiff on that same date (Firsenbaum Decl. Ex. 24) and an Amended Huntley

Notice, dated June 21, 1983, wherein Plaintiff was notified that the prosecution intended to offer evidence of four statements made by Plaintiff to a public servant. Firsenbaum Ex. 50.

These statements in the Amended Huntley Notice include 1) an oral statement to Detective Enno Groth at the Dutchess County Jail on July 1, 1977 where Plaintiff "said that he was not involved in the homicide and that the Lord would determine the truth and clear him" and said what he could recall about his activities on the evening of the murder – "he was in Mansion Square Park at one point and then road his bicycle home to Chelsea Ridge Apartments"; 2) an oral statement in October 1982 to another inmate at the Dutchess County Jail where Plaintiff "said that he was involved in the burglary of the woman's house on June 14, 1977, but that Wayne Moseley had gone crazy on the woman and killed her"; 3) the statements made during the April 3, 1983 phone call with Officer Smith, as set forth in the Smith Report (*see* above) and 4) an oral statement in April 1983 to another inmate at the Dutchess County Jail where Plaintiff said "it was an accident, we were drinking Old English 500, we saw the house without lights, there were three of us, we went through a window," "[t]he lady walked in, we grabbed her, tied her up," "[t]he lady was not dead when we left," "I did it with a young kid and a kid from New York." Firsenbaum Decl. Ex. 50.

Both the Smith Report and the Amended Huntley Notice can be authenticated as an ancient document under Fed. Evid. R. 901(b)(8). These documents are clearly over 20 years old, were found in the District Attorney's file, and Plaintiff has not pointed to anything about their condition that renders its authenticity suspect. *See* Fed. R. Evid. 901(b)(8). The Smith Report and Amended Huntley Notice can be offered as evidence of what was known by the prosecution and Plaintiff's trial counsel prior to his criminal trials. Additionally, because they can be authenticated, the Smith

Report and the Amended Huntley Notice fall under the ancient document exception to hearsay. *See* Fed. R. Evid. 803(16). Thus, the statements therein are admissible. *See* Point II, *supra*.

Alternatively, the statements identified in the Amended Huntley Notice provide the prosecution's "then-existing state of mind" – the intent to offer evidence of statements made by Plaintiff in his criminal trial. *See* Fed. R. Evid. 801. The Amended Huntley Notice can be offered as evidence of the prosecution's intent to use certain statements against Plaintiff. Similarly, the Smith Report could also be admissible under the hearsay exception for present sense impressions – "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). Here, the phone call was received at 10:30 P.M. and the statement was written at 10:35 P.M., immediately after the conversation. The Smith Report may also be admitted as a record of a regularly conducted business activity. *See* Fed. Evid. R. 803(6). The record was made by the police officer who received the phone call shortly thereafter, in the regular course and as a regular practice – police departments routinely record phone calls they receive.

**POINT V**
**THE GRAY TRANSCRIPTS, GRAY STATEMENTS, SMITH REPORT AND**
**AMENDED HUNTLEY NOTICE SHOULD NOT BE EXCLUDED UNDER RULE 403**

The Gray Transcripts, Gray Statements, Smith Report, and Amended Huntley Notice are not subject to exclusion under Fed. R. Evid. 403. This is all evidence that was known by the prosecution and Plaintiff's trial counsel prior to his criminal trials.

Each of these items is probative to show what ADA O'Neill and his colleagues turned over to Plaintiff's trial counsel prior to trial, and what all the parties knew about Plaintiff's involvement in the Crapser Murder prior to the trial. In that regard, a prosecutor's *Brady* obligation "is ultimately defined retrospectively, by reference to the likely effect that the suppression of

particular evidence had on the outcome of the trial*." United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001). Thus, to truly evaluate whether the alleged suppression of a specific piece of evidence affected the outcome of a trial, it is relevant to know what information the prosecution knew about the defendant's guilt, and whether, given what they knew, they should have disclosed something to the defense.

The evidence Plaintiff seeks to exclude in this motion is relevant to the quality of the investigation. To the extent Plaintiff will argue that there was an incomplete investigation of the Crapser Murder (*see, e.g.*, Oral Decision on Summary Judgment at 32-33), this evidence is admissible to rebut Plaintiff's claim. Moreover, evidence of the Gray Transcripts and Gray Statement, specifically, is also admissible to rebut any claim that Moseley provided bargained for testimony. To be sure, Moseley's testimony against Plaintiff at his criminal trials is clearly relevant on the issue of materiality in this action. Based upon Plaintiff's prior claims and current arguments that Moseley's testimony was coerced and/or he recanted, the police and prosecution's knowledge of Moseley's third party admissions in 1977 is extremely relevant on this issue.

Additionally, to the extent Plaintiff will provide testimony on his proclaimed innocence, all of the documents Plaintiff seeks to exclude under this motion are relevant to rebut his claim of innocence. These documents are probative on this issue and are admissible for impeachment.  That Plaintiff denies making the statements on the Huntley Notice does not warrant its exclusion, as Plaintiff will have an opportunity to explain such statements. With respect to the Smith Report and the associated statement in the Huntley Notice, for example, Plaintiff has admitted making this call to the police department. *See* Burke Aff. Ex. R [Bozella EBT] at 102-04 (admitting that he called the City of Poughkeepsie Police Department on April 4, 1983 and asked if they had a warrant for him); Burke Aff. Ex. CCC [1990 Bail Reduction Application] at WH-3438-39 ("at the time

that a warrant was issued for his arrest, the defendant was in New York City at the home of his relatives. When he learned of the warrant, the defendant telephoned the City of Poughkeepsie Police Department and indicated that he would return to the City of Poughkeepsie to surrender."). He denies only that he said what is found in the contemporaneously report detailing what the conversation revealed – that the subject who identified himself as Plaintiff "stated it was for a homicide he did and he would turn himself in in the morning to get it over with." Burke Aff. Ex. R at 106.  Plaintiff cannot exclude this prior inconstant statement, however, simply to avoid having to explain it.

In sum, Plaintiff's argument to exclude these four items of evidence under Rule 403 all turn on the credibility of these documents or their reliability or credibility, things that affect the weight of the evidence, not its admissibility. At the every least, these items must be admitted for impeachment, including impeaching any claims that attack the quality of the investigation, impeaching any claim based upon Moseley's testimony at the criminal trials, impeaching any claim that Plaintiff is innocent. Plaintiff's fear that the jury would give evidence undue weight can be easily remedied by a jury instruction.

**CONCLUSION**

For the reasons set forth herein, the County respectfully request that Plaintiff's motion in limine to exclude the Gray Documents, Gray Statements, Huntley Statement, and Smith Report be denied in its entirety

Dated:  December 17, 2014
        Goshen, New York

                                        /s/ Michael K. Burke
                                        Michael K. Burke (MB 7554)
                                        BURKE, MIELE & GOLDEN, LLP
                                        *Attorneys for Defendant*
                                        40 Matthews Street, Suite 209
                                        P.O. Box 216
                                        Goshen, New York 10924
                                        (845) 294-4080